# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ADAM J. LEVITT and HERBERT C. MALONE, individually and on behalf of all others similarly situated, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>SOUTHWEST AIRLINES CO., )<br>)<br>Defendant. ) | Case No. 11 C 8176 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Adam Levitt and Herbert Malone, on behalf of themselves and a putative class of similarly situated individuals, have sued Southwest Airlines for its alleged failure to honor coupons for free drinks that it issued along with plaintiffs' purchase of business class airline tickets. Plaintiffs assert claims under the Illinois Consumer Fraud Act (ICFA), 815 ILCS 505/2, the Pennsylvania Consumer Fraud Act (PCFA), 73 P.S. §201-1, and Illinois common law.

Southwest has moved to dismiss three of the four claims in plaintiffs' complaint on the ground that they are preempted by the Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b)(1). Southwest has also moved the Court to stay this lawsuit pending the resolution of a case in another district concerning similar issues. For the reasons stated below, the Court grants Southwest's partial motion to dismiss but denies its motion to stay.

**Background**

The Court draws the following facts from the allegations in plaintiff's complaint, which it accepts as true for purposes of the motion to dismiss. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

For a number of years, Southwest has offered drink coupons to travelers, including plaintiffs, who purchased tickets through the "Business Select" travel program. Southwest also offered coupons to travelers through other programs, including its "Rapid Rewards" frequent flyer program. The coupons at issue were redeemable on any Southwest flight for drinks that would otherwise cost five dollars. The coupons did not include expiration dates, but they did include a version of the following statement:

> This coupon has no cash value. Drink coupon is void if altered, sold, purchased, brokered, or bartered. Not exchangeable for other goods and services. Southwest Airlines reserves the right to refuse service and/or discontinue the drink coupon program at any time. You must be 21 years of age or older to consume alcoholic beverages.

Am. Compl. ¶ 12.

On August 1, 2010, Southwest announced a change in its drink coupon programs. In a message posted to the company's blog, Southwest CEO Mike Hafner explained,

> For years, Southwest Airlines has accepted all types of drink coupons on our planes – regardless of their expiration dates. Rapid Rewards coupons. Business Select coupons. Old Company Club coupons. Coupons from the 80s, coupons from the 90s. . . . We've reached a point where being so flexible with drink coupons has put us in a position of having far too many in circulation. To help purge the system of these excess coupons, we will start enforcing expiration dates on coupons over the course of the next year.
>
> Beginning today, Southwest Airlines will only accept Business Select drink coupons on the day of travel which allows Customers to use the coupon for the flight it was purchased. This has always been the intent of the coupon, but

> starting today, August 1, 2010 we'll begin universally enforcing it. Business Select Customers may use their drink coupon on a connecting flight, as long as it is used on the day of travel printed on the coupon.
>
> Also, Rapid Rewards drink coupons earned with an Award will soon have a new look and will include an expiration date that is one year from the date of issue. Rapid Rewards will communicate with Members as the transition approaches. Not to worry, we're giving Customers a full year to use those tan paper drink coupons without expiration dates. We will continue to accept these drink coupons, whether purchased or earned with a Rapid Rewards Award, until August 31, 2011.

*Id*. ¶ 3 (quoting http://www.blogsouthwest.com/blog/a-message-about-drink-coupons (last visited Feb. 28, 2012)).

On November 16, 2011, Levitt filed a complaint seeking relief on behalf of himself and a putative class defined as "[a]ll persons who reside in the United States and who have been issued unredeemed Southwest Airlines Drink Coupons." Compl. ¶ 14. On December 20, 2011, Levitt amended his complaint to add Malone as a plaintiff and narrow the definition of the proposed class. In the amended complaint, plaintiffs assert claims of breach of contract (count one) and, in the alternative, unjust enrichment (count two) on behalf of "[a]ll persons who reside in the United States and who procured unredeemed Southwest Airline Drink Vouchers with the purchase of one or more Business Select tickets from Southwest." Am Compl. ¶ 15. In counts three and four, Levitt and Malone assert claims under the Illinois and Pennsylvania Consumer Fraud Acts on behalf of Business Select customers who live in those states.

## Discussion

### A. Motion to dismiss

On a motion to dismiss under Rule 12(b)(6), the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Hallinan*,

3

570 F.3d at 820. To survive the motion, the complaint must include enough facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

Southwest has moved to dismiss counts two, three, and four of the amended complaint, arguing that they are preempted by the ADA. The ADA provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). "The ADA incorporated this preemption provision so that '[s]tates would not undo federal deregulation with regulation of their own.'" *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996) (quoting *Morales v. Trans World Airlines*, 504 U.S. 374, 378 (1992)).

The parties disagree regarding the standard for preemption, focusing on different language from *Travel All Over*. Plaintiffs point out that the case describes "two distinct requirements for a *law* to be expressly preempted by the ADA: (1) A state must 'enact or enforce' a *law* that (2) 'relates to' airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them." *Id*. at 1432 (emphasis added). They argue that "because the Illinois and Pennsylvania Consumer Fraud Acts are statutes of general applicability not specifically directed at airline rates, routes, or services, it is only the 'significant impact' question that applies here." Pl. Surreply at 2.

As Southwest points out, however, the Seventh Circuit in *Travel All Over* also stated that "the proper examination under *Morales* is . . . whether the *claims* at issue either expressly refer to the airline's services . . . *or* would have a significant economic effect on the airline's services." *Id*. at 1434 (emphasis added).  This indicates that it is not necessary for a state statute to refer expressly to airlines in order for a claim under the statute involving an airline's services to be preempted.  This is particularly clear in light of *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), in which the Supreme Court held that the ADA preempted an ICFA claim regarding airline advertising.  Although *Wolens* contains a brief mention of the "significant effect" test in its description of the holding of *Morales*, the Court found the ICFA preempted without applying or relying on that test.  *Wolens* therefore demonstrates that an ICFA claim can be preempted without a finding of significant effect even though the law on which the claim is based does not mention airlines.  Plaintiffs' argument that *Wolens* is fact-bound and inapplicable because it contains the phrase "we conclude that [the ADA] preempts *plaintiffs' claims* under the Consumer Fraud Act," *id*. at 228 (emphasis added), is unconvincing.  Nothing in the case suggests that the Supreme Court intended to limit its holding in this manner.

The Seventh Circuit confirmed in *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605 (7th Cir. 2000), that *Wolens* forecloses plaintiffs' argument.  The court stated in that case that "[o]n [plaintiffs'] understanding, laws of general applicability would not be preempted just because the subject of a particular cause was air transportation. . . . *Wolens* read [the ADA] more broadly, however [and] held general consumer-fraud law preempted." *Id*. at 608.  The Supreme Court has referred to ADA preemption once

5

more since *Wolens*, in *Rowe v. N.H. Motor Transport Ass'n*, 552 U.S. 364 (2008), but nowhere in that case did the Court indicate that a finding of "significant effect" is a prerequisite for a holding that a particular action is preempted. Therefore, this Court need not reach the question of significant effect if it finds that plaintiffs' claims "expressly refer to the airline's services." *See id*.

Although *Wolens* involved only the ICFA, plaintiffs concede that "any potential remedy under [the PCFA] would be analogous to that provided by ICFA." Pl. Resp. at 9. They do not argue that the two statutes should be subject to differing preemption analyses. Plaintiffs' consumer fraud claims under both laws will therefore be preempted if "the claims at issue . . . expressly refer to the airline's services." *Travel All Over*, 73 F.3d at 1434. The Seventh Circuit has held that the meaning of "services" under the ADA includes "[e]lements of the air carrier service bargain [such as] provision of food and drink." *Id*. at 1433 (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir.1995)). Plaintiffs understandably do not argue that their claims do not fit this definition. The Court therefore concludes that counts three and four are preempted by the ADA.

The Supreme Court allowed the plaintiffs in *Wolens* to maintain their claims for breach of contract, declining to "read the ADA's preemption clause . . . to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Wolens*, 513 U.S. at 228. Southwest accordingly does not seek dismissal of plaintiffs' breach-of-contract claim. It argues, however, that their unjust enrichment claim is preempted because "unlike contractual duties which are self-imposed, the elements for unjust

6

enrichment are defined by state law." *See All World Prof'l Travel Servs., Inc. v. American Airlines, Inc.*, 282 F. Supp. 2d 1161, 1169 (C.D. Cal. 2003). The Seventh Circuit has found that "[s]tate common law counts as an 'other provision having the force and effect of law' for purposes of" the ADA. *Mesa Airlines*, 219 F.3d at 607 (quoting 49 U.S.C. § 41713(b)(1)). Plaintiffs do not appear to dispute Southwest's reasoning, arguing only that it has not made the "significant effect" showing. As the Court has explained, it does not agree that this is required. The Court therefore concludes that plaintiffs' unjust enrichment claim is preempted by the ADA.

For these reasons, the Court grants Southwest's motion to dismiss counts two, three, and four of plaintiffs' complaint.

**B.      Motion to stay**

Southwest's decision to cease honoring its drink coupons has led to at least one other lawsuit: *Grimsley v. Southwest Airlines Co.*, No. 2:11-cv-3420-LSC, filed in the Northern District of Alabama on September 20, 2011. In that case, plaintiff Charles Grimsley, on behalf of himself and a putative class, alleges that as "a member of the Southwest Airlines Rapid Rewards Program, [he] has given and received consideration for the contractual aspects of that program," including the coupons. Def. Ex. A ¶ 1. Grimsley seeks damages for breach of contract, alleging that the coupons "were and are inducements for Plaintiff and members of the class to remain members of the Southwest Airlines Rapid Rewards Program, and . . . to fly with Defendant at considerable expense." *Id*. at 5. He also seeks a declaratory judgment that Southwest has breached the contracts at issue and an order of specific performance.

"Courts in this district have recognized that when two related cases are pending

in separate federal courts, either of those courts may exercise [its] inherent power to stay the proceedings before it in deference to the related action." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). "A district court has 'an ample degree of discretion' in deferring to another federal proceeding involving the same parties and issues to avoid duplicative litigation." *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1996) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

Southwest asks the Court to exercise its discretion to stay this lawsuit on the that both this case and *Grimsley* concern "breach of contract claims arising out of Southwest's refusal to accept drink coupons, and both seek[] certification of the same class." Def.'s Mem. at 3. Plaintiffs oppose the motion, arguing that the cases "are based on different contracts, assert different claims and theories of liability, and seek relief on behalf of different and non-overlapping classes." Pl.'s Resp. at 1.

The Court's ruling on Southwest's motion to dismiss has removed the basis for plaintiffs' argument that the two cases involve different sorts of claims and theories of liability. Both are now essentially breach of contract actions. The Court therefore turns to plaintiffs' remaining arguments.

Southwest argues that the cases implicate identical classes because of the following paragraph in the complaint in *Grimsley*:

> The named Plaintiff brings this action on behalf of himself and all members of a class composed of all members of its Southwest Airlines Rapid Rewards Program, and all other persons issued its "Southwest Airlines Drink Coupons," that reside in the United States and that have been issued unredeemed Southwest Airlines Drink Coupons identical or similar to Exhibit A.

Def. Ex. A at ¶ 10. Southwest contends that the class proposed by Levitt and Malone is

included in the *Grimsley* class because that "complaint is broadly drafted to include *everyone* who was issued a Southwest drink coupon." Def.'s Reply at 3 (emphasis in original). Plaintiffs respond that their complaint concerns only coupons that were issued as part of the Business Select program and that those coupons are therefore "clearly different from the Rapid Rewards vouchers referenced in the *Grimsley* class definition." Pl. Resp. at 6.

The Court agrees with Southwest that the phrase "identical or similar to" in the *Grimsley* complaint could, in theory, cover the Business Select coupons. The language of the coupons in *Grimsley*'s Exhibit A is nearly identical to the language quoted in plaintiffs' complaint. Despite this, the Court is not persuaded that the putative class in *Grimsley* actually includes the plaintiffs in this case. First, the somewhat awkward language in paragraph ten of the *Grimsley* complaint does not make it so clear that the proposed class covers all persons issued drink coupons by Southwest. The antecedents of both instances of the word "its" are unclear, allowing the phrase at issue to be read as "all other persons issued [the Rapid Rewards program's] 'Southwest Airlines Drink Coupons.'"

More to the point, the remainder of the *Grimsley* complaint strongly indicates that the putative class is intended to include only members of the Rapid Rewards program, not the much broader group of those issued any free drink coupon of any sort. In paragraph nine, which, like paragraph ten, is part of the "Class Allegations" portion of the complaint, Grimsley states that Southwest "has issued hundreds of thousands of [coupons] to thousands of members of its Southwest Airlines Rapid Rewards Program." Def. Ex. A ¶ 9. He states that "[a]s a member of the Southwest Airlines Rapid Rewards

Program, the named Plaintiff has given and received consideration for the contractual aspects of *that program* to Defendant." *Id.* ¶ 1 (emphasis added). He states that Southwest "has uniformly breached these contracts with the named Plaintiff and with all members of the class he seeks to represent by unilaterally dishonoring its Rapid Rewards Program's 'Southwest Airlines Drink Coupons.'" *Id*. ¶ 10H. He also refers to the coupons as "inducements for Plaintiff and members of the class to remain members of the Southwest Airlines Rapid Rewards Program." *Id*. ¶ 12.

It is true that paragraph eight of the *Grimsley* complaint, though it primarily alleges that "no provision of the Southwest Airlines Rapid Rewards Program allows Defendant to revoke" a coupon, contains the phrase "or any other party to whom [Southwest] issues or delivers" a coupon. Like paragraph ten, however, this paragraph does not unambiguously indicate that Grimsley's proposed class includes the plaintiffs in this case. The sentence logically can be read to say that "no provision of the Southwest Airlines Rapid Rewards Program allows Defendant to revoke a [coupon] after its acceptance by [program members or by] any other party to whom it issues or delivers" a coupon. *Id*. ¶ 9. Because the thrust of this paragraph focuses on the terms of the Rapid Rewards Program, it is not apparent that Grimsley intended it to implicate the Business Select program or anyone issued a coupon through some other means. The Court concludes that the putative classes at issue in the two cases do not necessarily overlap.

The Court also agrees with plaintiffs that the alleged contracts at issue appear, at least at this stage of the cases, to be different. Levitt and Malone claim that they "procured unredeemed Southwest Airlines Drink Vouchers with the purchase of one or

more Business Select tickets from Southwest." Am. Compl. ¶ 15. Grimsley claims that "[a]s a member of the Southwest Airlines Rapid Rewards Program, [he] received" coupons. Def. Ex. A ¶ 1. As plaintiffs argue, it appears likely that the arguments in the present case will concern the legal implications of plaintiffs' alleged purchases of individual airline tickets that came with coupons, whereas those in *Grimsley* will focus on whether any "provision of the Southwest Airlines Rapid Rewards Program allows Defendant to revoke" a coupon. *Id*. ¶ 9. Finally, the Southwest blog post that announced the company's decision to cease honoring the coupons, quoted above, includes separate paragraphs describing the changes for Business Select and Rapid Rewards customers and the differing terms that will apply in the future to the two types of coupons.[1]

Southwest's arguments that the cases are functionally identical focus primarily on its contention that the putative classes overlap, which, as the Court has explained, does not appear to be the case. Thus, although the two actions are somewhat related, they do not appear to "arise out of the same series of transactions." *See Whirlpool Fin. Corp. v. Metropolis Capital Group*, No. 90 C 5845, 1991 WL 212112, at *3 (N.D. Ill. Oct. 7, 1991). Therefore, "the actions are certainly not identical, and the Court does not find them duplicative." *Id*.

For these reasons, the Court declines to stay the case.

---

[1] It is, at best, questionable whether Levitt and Malone properly could represent recipients of the Rapid Rewards coupons, because they do not appear to be, or at least do not allege that they are, parties to the contract that governs the Rapid Rewards coupons. By the same token, the plaintiff in *Grimsley* does not allege that he is a party to the contract that governs the Business Select drink coupons.

**Conclusion**

For the reasons stated above, the Court grants Southwest's motion to dismiss counts two, three, and four of plaintiffs' complaint [docket no. 14] and denies its motion to stay [docket no. 11].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 5, 2012