# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| *In re Southwest Airlines Voucher Litigation* | ) ) ) ) | No. 11-CV-8176<br><br>Hon. Matthew Kennelly |

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, <u>COSTS, AND INCENTIVE AWARDS</u>

<u>Submitted by:</u>

Joseph J. Siprut
*jsiprut@siprut.com*
Aleksandra M. S. Vold
*avold@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
**SIPRUT** PC
17 North State Street,
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.948.9196
<u>www.siprut.com</u>

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................1

II.  PROCEDURAL HISTORY.....................................................................................2

III.  CLASS COUNSEL'S UNOPPOSED FEE REQUEST ...............................................5

A.  Southwest Has Agreed to Pay Class Counsel's Requested Fees ............................5

B.  The Fee Award Is Paid Separate and Apart from the Class Relief ........................6

C.  Class Counsel Performed Substantial Work on Behalf of the Class ......................6

D.  The Percentage of the Recovery Method is Preferred in Determining Attorneys' Fee Awards ..................................................................................................8

1.  The Requested Fees Represent Only 10.3% of the Common Benefit Provided to the Class — a Percentage Well Below Market and the Range that has Been Found Reasonable by the Courts ....................10

E.  The Requested Fees are Equally Appropriate Under the Lodestar Method .........12

IV.  THE REQUESTED INCENTIVE AWARDS TO THE NAMED PLAINTIFFS ARE PROPER. ...............................................................................................14

V.  CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Fox v. Vice,*
131 S. Ct. 2205 (2011) ...............................................................................................13

*Hensley v. Eckerhart,*
461 U.S. 424 (1983).............................................................................................5, 12

*Missouri v. Jenkins,*
491 U.S. 274 (1989)...................................................................................................9

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Connolly v. Nat'l Sch. Bus. Serv., Inc.,*
177 F.3d 593 (7th Cir.1999) .....................................................................................13

*Cook v. Niedert,*
142 F.3d 1004 (7th Cir. 1998) ...........................................................................13, 14

*Florin v. Nationsbank of Ga., N.A.,*
34 F.3d 650 (7th Cir. 1994) ...................................................................................8, 9

*Gaskill v. Gordon,*
160 F.3d 361 (7th Cir. 1998) ...............................................................................8, 10

*Gastineau v. Wright,*
592 F.3d 747 (7th Cir. 2010) .............................................................................12, 13

*Harman v. Lyphomed, Inc.,*
945 F.2d 969 (7th Cir. 1991) .............................................................................13, 14

*In re Synthroid Mktg. Litig.,*
264 F.3d 712 (7th Cir. 2001) ...................................................................................10

*In the Matter of Cont'l Ill. Sec. Litig.,*
962 F.2d 566 (7th Cir. 1992) ...............................................................................8, 11

*Johnston v. Comerica Mortg. Corp.,*
83 F. 3d 241 (8th Cir. 1996) .....................................................................................11

*Kirchoff v. Flynn,*
786 F.2d 320 (7th Cir. 1986) ...................................................................................10

*Montgomery v. Aetna Plywood, Inc.,*
231 F.3d 399 (7th Cir. 2000) ...................................................................................10

*Skelton v. Gen. Motors Corp.*,
860 F.2d 250 (7th Cir. 1988) ....................................................................................13

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) .................................................................................9, 10

*Williams v. MGM-Pathe Comms. Co.*,
129 F.3d 1026 (9th Cir. 1997) ...................................................................................5

**UNITED STATES DISTRICT COURT CASES**

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
2004 WL 287902 (S.D. Ill. Jan. 22, 2004) ...............................................................10

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*,
37 F.R.D. 240 (S.D. Ohio 1991) ...............................................................................14

*In re Bayou Sorrel Class Action*,
2006 WL 3230771 (W.D. La. Oct. 31, 2006) .............................................................8

*In re Brand Name Prescription Drugs Antitrust Litig.*,
2000 WL 204112(N.D. Ill. Feb. 9, 2000) .................................................................14

*In re Domestic Air Trans. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993) ..............................................................................14

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
130 F.R.D. 366 (S.D. Ohio 1990) ............................................................................14

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
280 F.R.D. 364 (N.D. Ill. 2011) .................................................................................5

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
106 F.Supp. 2d 721 (D. N.J. 2000) ............................................................................5

*In re Trans Union Corp.*,
2009 WL 4799954 (N.D. Ill. Dec. 9, 2009) ...............................................................9

*In re Vitamin Antitrust Litig.*,
2004 WL 6080000 (D.D.C. Oct. 22, 2004) .................................................................6

*Manners v. Am. Gen. Life Ins. Co.*,
1999 WL 33581944 (M.D. Tenn 1999) .......................................................................5

*Meyenburg v. Exxon Mobil Corp.*,
2006 WL 2191422 (S.D. Ill. July 31, 2006) .............................................................11

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ..............................................................................10

*See In re Cenco, Inc. Sec. Litig.*,
519 F. Supp. 322 (N.D. Ill. 1981) ......................................................................................13, 14

*Spicer v. Chi. Bd. Options Exch., Inc.*,
844 F. Supp. 1226 (N.D. Ill. 1993) .............................................................................................14

*Summers v. UAL Corp. ESOP Comm.*,
2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) ............................................................................11

*Vista Healthplan, Inc. v. Warner Holdings Co. III*,
 246 F.R.D. 349 (D.D.C. 2007).....................................................................................................11

*Will v. Gen. Dynamics Corp.*,
2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ......................................................................10, 12

*Williams v. Gen. Elec. Capital Auto Lease*,
1995 WL 765266 (N.D. Ill. Dec. 26, 1995).................................................................................9

## STATE COURT CASES

*Ryan v. City of Chicago*, 274 Ill.App.3d 913 (1st Dist. 1995) ...................................................8, 9

## MISCELLANEOUS

*Court Awarded Attorney Fees, Report of Third Cir. Task Force*,
108 F.R.D. 237 (1985) ...................................................................................................................8

*Manual for Complex Litigation*
§ 21.7 (4th ed. 2004) .....................................................................................................................6

Posner, *Economic Analysis of Law*
§ 21.9 (3d ed. 1986) ....................................................................................................................10

Willging, Hooper & Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*,
69 (Fed. Judicial Center 1996).....................................................................................................11

Pursuant to Fed. R. Civ. P. 23, Plaintiffs Adam J. Levitt ("Levitt") and Herbert C. Malone ("Malone") (collectively, "Plaintiffs"), by their counsel, respectfully submit the following as their Motion for Attorneys' Fees, Costs, and Incentive Awards.

## I.    INTRODUCTION

Class Counsel seeks the Court's approval of an award of attorneys' fees in the amount of $3 million, the payment of costs in the amount of $30,000, and an incentive award to each of the two named Plaintiffs in the amount of $15,000 – all of which Southwest has agreed to pay. The award sought here is justified as Class Counsel have litigated tirelessly on behalf of the Class and achieved a settlement that provides substantial relief for Class Members: recovery in full (one hundred cents on the dollar) for Class members who choose to submit claims.

As demonstrated below, the value of the settlement achieved here is a minimum of $29 million (up to $58 million). In sum, the settlement requires Southwest to give back the very thing taken from Class members, which was the subject of this litigation: the drink vouchers sold to Class members through the purchase of Business Select airfare. Any Class member who never had the opportunity to use unredeemed vouchers at the time Southwest began refusing to honor them can now submit a claim for the exact number of unredeemed vouchers to which that Class member was originally entitled. There is no cap or limit to this settlement. But based on the number of vouchers in circulation, $58 million worth of vouchers were originally issued to the Class. Southwest's modeling suggests that as many as half of the vouchers were originally redeemed, which means the minimum value of the settlement is $29 million.

Even utilizing the *minimum* valuation of this settlement, the requested fees – which again, Southwest does not oppose – constitute approximately 10% of the common benefit achieved by the settlement (and well below the presumptive benchmarks utilized in the Seventh Circuit). The

result is similarly justified by the lodestar methodology. As detailed below, Class Counsel's base lodestar is 1,140,270. Thus, in order to reach the $3.0 million in fees requested here, the Court would need to utilize a mere 2.63 multiplier – again, well within the parameters utilized in the Seventh Circuit.

In the end, however, none of this matters, because the requested fees are to be paid *separate and apart* from the benefits made available for the Class. The settlement structure requires Southwest to pay the fees directly, without any reduction in benefits that were first established for the Class. Fees were negotiated *only* after first reaching agreement on the terms of the underlying Class relief. And, fees were negotiated with the assistance and input of Retired Federal Judge Wayne Anderson, a former and highly respected federal judge for the United States District Court for the Northern District of Illinois.

Accordingly, for reasons detailed below, Class Counsel and Plaintiffs respectfully request that this Court grant the request for attorneys' fees, costs, and incentive awards.

## II.     PROCEDURAL HISTORY

This Action was originally filed on November 16, 2011. On December 20, 2011, Plaintiffs filed an Amended Complaint in this Action, narrowing the proposed class to: "All persons who reside in the United States and who procured unredeemed Southwest Airline Vouchers with the purchase of one or more Business Select tickets from Southwest." (Docket No. 23, at p. 5.) Southwest moved to stay this Action based on the pendency of another lawsuit filed against Southwest in Alabama, also relating to Vouchers. *Grimsley v. Southwest Airlines Co.*, No. 2:11-cv-3420-LSC, (N.D. Ala.). (Docket No. 11.) Unlike the present case, however (which pertains to the Southwest Business Select program), the *Grimsley* action pertained to Southwest's Rapid Rewards ("frequent flyer") program. Southwest also moved to dismiss certain

counts of the Complaint, contending that Plaintiffs' claims were preempted by the Airline Deregulation Act. (Docket No. 14.)

On March 5, 2012, the Court denied Southwest's motion to stay, and granted, in part, Southwest's motion to dismiss, dismissing all claims with prejudice except for the breach of contract claim. (Docket No. 46.) This ruling made the prosecution of Plaintiffs' claims against Southwest significantly more challenging on the merits. Plaintiffs also filed a Motion to Strike Southwest's Affirmative Defenses on January 25, 2012. (Docket No. 30.) The Court granted Plaintiffs' Motion to Strike all but one of Southwest's affirmative defenses on January 31, 2012. (Docket No. 32.)

As discovery commenced, the Parties negotiated the terms of an extensive Protective Order. (Docket No. 57.) Over the course of the next several months, Plaintiffs were each deposed – Levitt in Chicago and Malone in Philadelphia. (Declaration of Joseph J. Siprut, attached hereto as Exhibit 1 ("Siprut Decl."), ¶3.) Five Southwest employees were also deposed, with four depositions taking place in Dallas and one taking place in Denver. *Id.* In addition, the Parties each propounded and responded to Interrogatories and Requests for Documents, and produced and reviewed thousands of pages of documents. *Id.*

After fact discovery was substantially completed, the Parties began discussing in earnest the possibility of settlement. *Id.*, ¶4. After weeks of back-and-forth discussions between themselves, the Parties engaged in two full days of arm's length – and often spirited – mediation sessions with the Mediator, Judge Wayne Anderson (Ret.), in Chicago, Illinois. *Id.*

In addition to these in-person sessions, the Parties also engaged in numerous telephonic and written communications over the following two months with the Mediator and between themselves, including submitting comprehensive letter briefs to the Mediator on specific areas of

impasse. *Id.*, ¶5. Throughout the mediation process, Southwest continued to deny any wrongdoing. Nonetheless, Plaintiffs and Southwest were eventually able to reach a settlement in principle on class-wide relief.

Notably, during the mediation process, it became clear that Southwest failed to track exactly how many of those Vouchers were redeemed. *Id.*, ¶6. However, Southwest's empirical and statistical modeling suggests that no more than half, or 50%, of the Vouchers were redeemed. *Id.* Thus, as of August 1, 2010, a minimum of 5.8 million Vouchers had not been redeemed by Settlement Class Members. Each Voucher is valued at $5 – the price of a premium or alcoholic beverage on a Southwest flight *without* a Voucher. This means that the Settlement provides for a minimum $29 million worth of direct benefits to the Settlement Class. If the 50% redemption variable is not considered, and the amount of unredeemed Vouchers in circulation is higher than what Southwest claims, the value of the Settlement would be as high as $58 million.

The Parties agreed on the form of a settlement agreement that has now been fully executed by the Parties, and was preliminarily approved by this Court on December 10, 2012. (Docket Nos. 86, 89.) The settlement confers significant benefits to the Class of all Southwest customers who purchased an Eligible Drink Voucher through the purchase of a Business Select ticket or otherwise, during the time period before August 1, 2010, but who did not redeem the Eligible Drink Voucher.[1]

Negotiations on attorneys' fees and incentive awards began *only* after an agreement was first reached on the material terms of class-wide relief. In fact, even through the point that the Parties filed the Joint Motion for Preliminary Approval (Docket No. 83), the Parties *still* had not

---

[1] The Settlement Class does not include Southwest customers who obtained drink vouchers or drink coupons through the Southwest Rapid Rewards program or as a result of being a member of the Southwest Rapid Rewards program, unless those customers separately purchased, but did not redeem, Eligible Drink Vouchers through the purchase of a Business Select ticket or otherwise.

reached an agreement on attorneys' fees. However, the Parties continued negotiations over the next month with the assistance of Judge Anderson, eventually coming to an agreement that was memorialized with the Court on January 17, 2013 (Docket No. 90).

## III.   CLASS COUNSEL'S UNOPPOSED FEE REQUEST

### A.  Southwest Has Agreed to Pay Class Counsel's Requested Fees.

Courts strongly encourage negotiated fee awards in class action settlements. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee."); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (recognizing that "[f]ederal courts naturally favor the settlement of class action litigation"), cited by *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 375 (N.D. Ill. 2011).

Negotiated fee awards should be given particular deference. *See Williams v. MGM-Pathe Comms. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (noting specifically that the attorneys' fees were negotiated in coming to the conclusion that the fee request was fair); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 106 F.Supp. 2d 721, n.1 (D. N.J. 2000) (giving deference to the negotiated attorneys' fees and noting that "if such agreements are likely to be subject to further reduction by the Court notwithstanding the absence of any collusion or opportunity for collusion, and notwithstanding the absence of any impact on the class recovery, then future plaintiffs' counsel will have little incentive to make such agreements"); *Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, *28 (M.D. Tenn 1999) ("the Court gives great weight to the negotiated fee in considering the fee and expense request."). This is particularly true when, as is the case here, a neutral mediator was involved in the negotiations.

Moreover, the fee was negotiated only after all class compensation was agreed upon.

(Siprut Decl., ¶9.) This approach is expressly endorsed. *Manual for Complex Litigation* 21.7 (4th ed. 2004) ("Separate negotiation of the class settlement before an agreement on fees is generally preferable."). Put simply, once the material terms of the settlement were agreed upon, Southwest had every incentive to negotiate as low a fee as possible to decrease its overall costs. Throughout the fee negotiations, Class Counsel remained ready to litigate the attorneys' fees issue if the Parties did not reach an agreement. (Siprut Decl., ¶9.) In the end, the negotiated fee reflects an arm's length compromise, in which both parties measured and attempted to manage risk.

### B.  The Fee Award Is Paid Separate and Apart from the Class Relief.

Importantly, *the fee award does not in any way diminish the consideration each class member receives*. In a traditional common fund recovery, an awarded attorney fee is withdrawn from the fund before claims are paid to class members, thus reducing the amount available to the class. Here, however, the fee requested by Class Counsel will in no way reduce the amount available for payment to the Class. Rather, the fees will be paid separately from the class benefit. This additionally bolsters the request for fees. *See In re Vitamin Antitrust Litig.*, 2004 WL 6080000, *5 (D.D.C. Oct. 22, 2004) ("The fact that "the proposed fee [did] not diminish the Plaintiffs' recovery was an important factor supporting this Court's approval of the first fee petition.") (citations omitted).

### C.  Class Counsel Performed Substantial Work on Behalf of the Class.

Class Counsel expended tremendous effort in bringing about this settlement on behalf of least 2,492,625 class members. Southwest's skilled attorneys mounted a hard defense at every stage, from attacking the pleadings through motion practice, through substantial discovery, and then through months of mediation. The settlement agreement itself took another two months to negotiate. *Id.*, ¶8.

The hours Class Counsel expended in battling Southwest, which total more than 2,651 (Siprut Decl., ¶19), included the following:

- **Pre-Complaint Factual Investigation**. Class Counsel began conducting a factual and legal investigation in mid-2011 to determine whether there was a cause of action against Southwest. This involved working with potential clients and gathering factual background and a review of documents, agreements, and other relevant materials related to the relationship between Southwest and the plaintiffs and the vouchers in dispute in this case.

- **Pre/Post-Complaint Legal Investigation**. With the initial factual investigation ongoing, Class Counsel investigated the litigation landscape. In addition, Class Counsel researched: (1) choice of law issues; (2) the appropriate venue and potentially applicable statutes and common law claims under Illinois and various other states' laws; and (3) the elements and potential defenses for each of the proposed claims. Once the initial factual and legal research were concluded, Class Counsel began: (1) formulating the consumer fraud and breach of contract claims; (2) drafting, preparing, and filing the Complaint; and (3) engaged in ongoing correspondence with clients regarding the complaint and the case in general. Throughout this process, there were strategic conferences amongst Class Counsel to present the most viable Complaint on behalf of the plaintiffs and putative class.

- **Motion Practice**. As the litigation progressed, Class Counsel reviewed defendant's motion to dismiss and motion to stay, researched prospective responses, and engaged in substantial briefing. Class Counsel also researched additional potential claims and issues and drafted, prepared and filed an amended complaint. Class Counsel also filed a substantive motion to strike Southwest's affirmative defenses. Plaintiffs' Motion for Protective Order was also fully briefed, and resulted in a ruling barring Southwest from arguing that Class Members would have to physically possess their unredeemed drink vouchers – a ruling that substantially changed the landscape of the litigation.

- **Discovery**. The Parties engaged in substantial discovery. Southwest produced thousands of pages of documents to Class Counsel, and Class Counsel reviewed and analyzed them. Furthermore, Class Counsel deposed Southwest through several of its employees, preparing extensively to obtain the most information possible and traveling to the deponents' location for the depositions. During this time, Class Counsel engaged in numerous written and telephonic discussions with opposing counsel regarding discovery disputes.

- **Interactions With Clients and the Members of the Class**. This case generated significant publicity. During the course of the past 18 months, Class Counsel have received dozens inquiries from Southwest customers, which has required Class Counsel to take the time to communicate with each individual,

collect data to help investigate the case, and regularly keep the people updated with progress in the case.

- **Settlement**. This court is already well-aware of the substantial and protracted settlement negotiations Class Counsel conducted with Defendants that spanned three months. The parties hired a well-respected mediator, retired Judge Wayne Anderson, to assist with negotiations. Class Counsel researched and drafted many memoranda regarding potential settlement structures, analyzed settlements in similar cases, consulted with an experts, reviewed discovery provided on an informal basis, and attended two in person mediation sessions as well as numerous follow-up telephone conferences and E-mail exchanges. After three months of negotiations, the parties were able to reach an agreement on substantive terms that would provide immediate and direct benefits to the Class. After the class benefit and fees were agreed to, the parties next spent two months finalizing all the details of the settlement.

### D. The Percentage of the Recovery Method is Preferred in Determining Attorneys' Fee Awards.

The Seventh Circuit has strongly endorsed the percentage of the recovery benefit method as the best means for calculating class counsels' attorneys' fees. *See In the Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992); *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 650, 566 (7th Cir. 1994); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998). "Given the issues likely to arise in computing a lodestar, courts across the country, both federal and state, are retreating from a lodestar analysis in favor of setting common benefit fees at a percentage of the benefit secured . . . ." *In re Bayou Sorrel Class Action*, 2006 WL 3230771, *3 (W.D. La. Oct. 31, 2006) (collecting cases).

The very court that developed the lodestar method – the Third Circuit[2] – ultimately identified no fewer than nine substantial defects within it. *See Ryan v. City of Chicago*, 274 Ill.App.3d 913, 923 (1st Dist. 1995) (discussing the Third Circuit's evolving view). As the First District Court of Appeals put the point, the most significant deficiencies of the lodestar method are that: (1) it increases the workload of an already overtaxed judicial system, (2) it is

---

[2] *Court Awarded Attorney Fees, Report of Third Cir. Task Force*, 108 F.R.D. 237, 242 (1985).

insufficiently objective and produces results that are far from homogenous, (3) it creates a sense of mathematical precision that is unwarranted in terms of the realities of the practice of law, (4) it is subject to manipulation by judges who prefer to calibrate fees in terms of percentages of the settlement fund or the amounts recovered by the plaintiffs or of an overall dollar amount, (5) it has led to abuses such as lawyers billing excessive hours, (6) it creates a disincentive for the early settlement of cases, (7) it does not provide the trial court with enough flexibility to reward or deter lawyers so that desirable objectives will be fostered, (8) it works to the particular disadvantage of the public interest bar because the lodestar is lower in civil rights cases than in securities or anti-trust cases, and (9) it is confusing and unpredictable in its administration. *Id.*

Accordingly, although awarding attorneys' fees based on a percentage of the recovery or Class Counsel's lodestar remains within the discretion of the district court, *In re Trans Union Corp.*, 2009 WL 4799954, *9 (N.D. Ill. Dec. 9, 2009) (*citing Florin*, 34 F.3d at 566), "[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class" especially where the percentage accurately reflects the market. *Williams v. Gen. Elec. Capital Auto Lease*, 1995 WL 765266, *9 (N.D. Ill. Dec. 26, 1995); *see also Sutton v. Bernard*, 504 F.3d 688, 693 (7th Cir. 2007) (directing district court on remand to consult the market for legal services so as to arrive at a reasonable percentage) (*citing Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (stating that in determining attorneys' fees, "we have consistently looked to the marketplace as our guide to what is 'reasonable'")).

As demonstrated directly below, under the Percentage of Recovery method, the fee request here is entirely supported and well under presumptive benchmarks used in the Seventh Circuit.

**1. The Requested Fees Represent Only 10.3% of the Common Benefit Provided to the Class — a Percentage Well Below Market and the Range that has Been Found Reasonable by the Courts.**

In deciding the appropriate fee under the percentage-of-recovery method, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton*, 504 F.3d at 692 (*quoting In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)); *see also Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000) ("the measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case").

The fee agreements between Class Counsel and Plaintiffs are contingent in nature. (Siprut Decl., ¶2.) Courts have found that in commercial, non-class litigation, attorneys regularly negotiate contingent fee arrangements, for a fee of between 33.3% and 40% of the recovery. *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, *4 (N.D. Ill. Dec. 10, 2001) (*citing Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986); *see also* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986) (explaining established practice to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases).

The same is equally true in the class action context, including in the Seventh Circuit. *See Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 2004 WL 287902, *2 (S.D. Ill. Jan. 22, 2004) (finding that 29% of the gross settlement is a reasonable fee award); *Gaskill*, 160 F.3d at 362-3 (noting that typical contingency fees are between 33% and 40% and that "[s]ome courts have suggested 25% as a benchmark figure for a contingent-fee award in a class action"). *Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, *2 (S.D. Ill. Nov. 22, 2010) (stating that, where the

market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, "the normal rate of compensation in the market" is "33.33% of the common fund recovered"); *Summers v. UAL Corp. ESOP Comm.*, 2005 WL 3159450, *2 (N.D. Ill. Nov. 22, 2005) (finding that attorneys' fees amounting to 16% of the gross settlement "is clearly within the range of what has been deemed reasonable by the Seventh Circuit"), *citing In re Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d at 572; *Meyenburg v. Exxon Mobil Corp.*, 2006 WL 2191422, *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation."). A Federal Judicial Center Study further supports the norm in attorney fee awards, finding that, in federal class actions, median attorney fee awards were in the range of 27% to 30%. Willging, Hooper & Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, at 69 (Fed. Judicial Center 1996).

Here, Plaintiffs are requesting – and Southwest has agreed to pay – $3 million in attorneys' fees. As explained above, the minimum value of the settlement is $29 million. Thus, at the most, the requested attorneys' fees equates to just over 10.3% of the total benefit obtained for the class.[3] While the going rate in the market for class action legal fees clearly suggests a fee three times in excess of the fee requested here, Class Counsel specifically agreed to limit their fee request to $3.00 million (plus $30,000 in costs), in the interests of compromise. This

---

[3] This number was calculated based on the lowest value calculated – $29 million figure – and includes the amount of requested fees and costs. The inclusion of attorneys' fees and costs is proper in calculating the total monetary value of the settlement. *Johnston v. Comerica Mortg. Corp.*, 83 F. 3d 241,246 (8th Cir. 1996) ("The award to the class and the agreement on attorney fees [and costs] represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); *Vista Healthplan, Inc. v. Warner Holdings Co. III,* 246 F.R.D. 349, 363 (D.D.C. 2007) ("because the attorneys' fees are borne by defendants and not plaintiffs, they represent a valuable part of the settlement").

compromise is well within the presumptive benchmarks set by the Seventh Circuit (and the market) and should be approved.

### E.  The Requested Fees Are Equally Appropriate Under the Lodestar Method.

Although the use of a lodestar cross-check is unnecessary, *Will*, 2010 WL 4818174, *3, a cross-check reveals that the attorneys' fees requested are equally reasonable if the Court were to apply the lodestar method. To determine the reasonableness of attorneys' fees under the lodestar method, the first step is to calculate a base lodestar amount by "multiplying a reasonable hourly rate by the number of hours reasonably expended." *Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010) (*citing Hensley*, 461 U.S. at 433-37 (1983)).

Here, the time summary included in the Siprut Declaration accurately reflects the extensive work Class Counsel performed – and expects to perform to see the case through to completion – in this novel and complex litigation. To date, four attorneys at Class Counsel's firm have spent 2,652 hours collectively in prosecuting this action to date – and anticipate spending an additional 222 hours through the end of this litigation – for a total lodestar amount of $1,140,270. (Siprut Decl., at ¶19.) As summarized in the Declaration of Joseph Siprut, the hourly rates utilized by Siprut PC attorneys and legal staff are comparable to rates charged by attorneys with similar experience, skill and reputation, for similar services in the Chicago legal market and comparable markets nationwide. (*Id.*, ¶¶14-18.)

The time summary provided in the Siprut Declaration is sufficient to form the basis of the fee request. The Supreme Court has explicitly held that

> trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must

give substantial deference to these determinations, in light of the district court's superior understanding of the litigation.

*Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) (internal quotations omitted). Class Counsel's declaration and the time records summarized therein are thus more than sufficient for establishing lodestar figures.

The base lodestar is typically adjusted using a multiplier to take into account various factors in the litigation that affect the reasonableness of the requested fees. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988). These factors include "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau*, 592 F.3d at 748. When applying a multiplier to the base lodestar amount, courts should also consider the risk plaintiff's counsel assumes in recovering nothing. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975-76 (7th Cir. 1991) (remanding case for recalculation of attorneys' fees because the trial court failed to award a risk multiplier). Multipliers can range from 2 to 4 or even higher. *See In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (applying a lodestar multiplier of 4 to lead counsel's lodestar and 2 to other counsels' lodestar). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Id.*, citing *Connolly v. Nat'l Sch. Bus. Serv., Inc.,* 177 F.3d 593, 597 (7th Cir.1999).

In this case, as detailed above, Class Counsel's base lodestar is $1,140,270. Southwest has already agreed to pay $3 million in fees. Thus, in order for this Court to determine that the award of $3 million in fees is appropriate under the lodestar methodology alone, the Court would need to utilize a multiplier of only (just over) 2.63.[4] This multiplier is certainly within the range of reasonableness considering the risk of non-recovery and the excellent result achieved. *See*

---

[4] That figure was calculated by using the total agreed amount of $3,000,000. Multiplying $1,140,270 by 2.63 equates to $2,998,910.10 – just under the agreed amount of fees.

*Harman*, 945 F.2d at 975 (noting "[a risk] multiplier is, within the court's discretion, appropriate when counsel assume a risk of non-payment in taking a suit" and "[m]ultipliers anywhere between one and four . . . have been approved"); *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. at 327 (applying a lodestar multiplier of 4 to lead counsel's lodestar and 2 to other counsels' lodestar); *In re Brand Name Prescription Drugs Antitrust Litig.*, 2000 WL 204112, (N.D. Ill. Feb. 9, 2000) (awarding $91 million above lodestar and noting that "[an] award of more than two times the lodestar calculation is believed to be fair and just in these circumstances").

Accordingly, the requested fee award of $3 million is reasonable under a lodestar analysis or lodestar cross-check and may be approved by the Court on this alternative basis.

## IV. THE REQUESTED INCENTIVE AWARDS TO THE REPRESENTATIVE PLAINTIFFS ARE PROPER.

The Settlement Agreement calls for the payment of $15,000 to each of the two Class Representatives as "incentive" or "special" awards. Incentive awards are common in class action litigation such as this case, and they serve to encourage class members to serve as class representatives and to reward individual efforts that they take on behalf of the class(es) they seek to represent. *See, e.g., Cook*, 142 F.3d at 1016 (awarding $25,000 incentive award); *Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) ($30,000 awarded from settlement fund of $10 million); *In re Domestic Air Trans. Antitrust Litig.*, 148 F.R.D. 297, 348 (N.D. Ga. 1993) ($142,500 awarded from settlement fund of $50 million); *In re Dun & Bradstreet Credit Servs. Customer Litig.,* 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) ($215,000 awarded from settlement fund of $18 million); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 37 F.R.D. 240, 250-51 (S.D. Ohio 1991) (approving $50,000 incentive awards). Such awards compensate class representatives for actual costs in time, money and the disruption of life incurred in the prosecution of the litigation.

The requested incentive awards here are reasonable. Plaintiffs were actively involved in the litigation and devoted material time and effort to the case. Siprut Decl., ¶4. These Plaintiffs, through their counsel, sought successfully to remedy a widespread wrong and have conferred valuable benefits upon their fellow Settlement Class Members. And given the procedural posture of the case when it was settled, each Plaintiff had by then sat for deposition, and participated in all aspects of written discovery. Additionally, each Plaintiff consulted with counsel on a regular basis; provided and reviewed a wide variety of documents related to these matters; offered advice and direction at critical junctures, including the Settlement of the litigation; and, in the case of Levitt, attended one of the all-day mediation sessions. *Id.*

Most importantly, Plaintiffs were prepared to litigate this action through trial to properly represent the Class and fight for significant class relief. *Id.* Their actions, input, and participation have conferred a significant benefit on the millions of individuals that comprise the Settlement Class. Furthermore, as with attorneys' fees, the Parties negotiated this payment only *after* all substantive relief to the Class was agreed to in its principal form. Siprut Decl. ¶ 9.

Therefore, the $15,000 incentive awards are entirely reasonable and appropriate and should be approved.

## V. CONCLUSION

Class Counsel's request for an award of attorneys' fees and costs in the amount of $3,000,000, plus costs of $30,000, and the award of a $15,000 incentive fee to each of the two named Plaintiffs, is fair, appropriate, and reasonable. As such, Class Counsel and Plaintiffs respectfully request that the Court grant this request for relief and any other further relief that the Court deems just and appropriate.

Dated: April 4, 2013

Respectfully submitted,

ADAM J. LEVITT and HERBERT C. MALONE, individually and on behalf of all others similarly situated

By:_____

    One of the Attorneys for Plaintiffs
    And the Settlement Class

Joseph J. Siprut
*jsiprut@siprut.com*
James M. McClintick
*jmcclintick@siprut.com*
Aleksandra M. S. Vold
*avold@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
**SIPRUT PC**
17 North State Street, Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.948.9196
www.siprut.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Awards** was filed this 4th day of April, 2013, via the electronic filing system of the Northern District of Illinois, which will automatically serve all counsel of record.

_____

Joseph J. Siprut