# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IN RE SOUTHWEST AIRLINES VOUCHER LITIGATION

_____

GREGORY MARKOW,

           Objector.

Case No. 11-CV-8176

**OBJECTION TO PROPOSED SETTLEMENT AND OPPOSITION TO MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**

Hon. Matthew Kennelly

---

## GREGORY MARKOW'S OBJECTION TO CLASS SETTLEMENT IN NO. 1-11-cv-8176

---

Melissa A. Holyoak
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (573) 823-5377
Email: melissaholyoak@gmail.com

*Attorney for Objector Gregory Markow*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. I

TABLE OF AUTHORITIES ......................................................................................... II

INTRODUCTION ......................................................................................................... 1

PRELIMINARY STATEMENT ...................................................................................... 2

I.    Objector Markow Is a Member of the Class, and Intends to Appear Through Counsel at the
      Fairness Hearing. ................................................................................................................ 3

II.   A Court Owes a Fiduciary Duty to Unnamed Class Members. ..................................... 3

III.  The Class Action Fairness Act Requires Heightened Scrutiny of this Coupon Settlement and
      Rejection of Class Counsel's Attorney Fee Request. ..................................................... 4

      A.    Class Counsel's Fee Request Must be Rejected Because It Is Not Based on the
            Number of Settlement Coupons Redeemed. .................................................... 5

      B.    Class Counsel's Fee Request Is Impermissibly Disproportionate to Class Recovery
            and Renders the Settlement Unfair. ................................................................. 7

      C.    The Fee Award Should Be Deferred Until the Actual Number of Redeemed
            Coupons Is Known. ........................................................................................... 9

      D.    A Multiplier Greater than One Is Inappropriate. ............................................ 10

IV.   The Incentive Awards Are Excessive. ............................................................................. 11

V.    The Court Should Not Infer Settlement Approval from a Low Number of Objectors,
      Especially Because the Parties Have Artificially Reduced the Number of Objections. ........... 12

CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

## Cases

*Bachman v. A.G. Edwards,*
    344 S.W.3d 260 (Mo. Ct. App. 2011) ............................................................................ 6

*Crawford v. Equifax Payment Servs.,*
    201 F.3d 877 (7th Cir. 2000) ........................................................................................ 11

*Duhaime v. John Hancock Mut. Life Ins. Co.,*
    989 F. Supp. 375 (D. Mass. 1997) ................................................................................. 9

*Fleury v. Richemont N. Am., Inc.,*
    No. C-05-4525 EMC,
    2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) ............................................................. 6-7

*Freebird, Inc. v. Merit Energy Co.,*
    No. 10-1154-KHV,
    2012 U.S. Dist. LEXIS 173075 (D. Kan. Dec. 6, 2012) ............................................. 13

*Galloway v. Kan. City Landsmen,* No. 4:11-1020-CV-W-DGK,
    2012 U.S. Dist. LEXIS 147148 (W.D. Mo. Oct. 12, 2012) ................................... 12-14

*Gonzalez v. S. Wine & Spirits of Am., Inc.,*
    No. 11-cv-5849,
    2012 U.S. Dist. LEXIS 46401 (C.D. Cal. Mar. 29, 2012) .......................................... 11

*Harman v. Lyphomed, Inc.,*
    945 F.2d 969 (7th Cir. 1991) ........................................................................................ 10

*In re Baby Prods. Antitrust Litig.,*
    708 F.3d 163, 2013 U.S. App. LEXIS 3379 (3d Cir. 2013) .................................. 1, 5, 7

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) .................................................................... 1, 4, 7, 10

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*
    292 F. Supp. 2d 184 (D. Me. 2003) ............................................................................... 9

*In re GMC Engine Interchange Litig.,*
    594 F.2d 1106 (7th Cir. 1979) ................................................................................. 4, 12

*In re Motor Fuel Temperature Sales Practices Litig.*,
    No 07-md-01840-KHV-JPO
    Order (Dkt. No. 3019) (D. Kan. Nov. 10, 2011) ..........................................................13

*In re Motor Fuel Temperature Sales Practices Litig.*,
    No 07-md-01840-KHV-JPO
    2012 U.S. Dist. LEXIS 57981, at *76 (D. Kan. Apr. 24, 2012) ....................................13

*In re Mex. Money Transfer Litig.*,
    267 F.3d 743 (7th Cir. 2001) ..........................................................................................5

*In re Pet Food Prods. Liab. Litig.*,
    629 F.3d 333 (3d Cir. 2010) ..........................................................................................11

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ........................................................................................10

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*,
    834 F.2d 677 (7th Cir. 1987) ......................................................................................4, 12

*McClintic v. Lithia Motors*,
    No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846 (W.D. Wash. Jan. 12, 2012) ............13

*Mirfasihi v. Fleet Mortg. Corp.*,
    356 F.3d 781 (7th Cir. 2004) ...................................................................................... 3-4

*Montgomery v. Aetna Plywood, Inc.*,
    231 F.3d 399 (7th Cir. 2000) ........................................................................................ 12

*Moody v. Sears Roebuck & Co.*,
    664 S.E.2d 569 (N.C. App. 2008) ..................................................................................8

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir. 2006) ........................................................................................11

*Pecover v. Electronic Arts, Inc.*,
    No. 8-2820 (N.D. Cal.) ....................................................................................................2

*Perdue v. Kenny A.*,
    130 S. Ct. 1662 (2010) ..............................................................................................10-11

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ..........................................................................................3

*Robert F. Booth Trust v. Crowley,*
   687 F.3d 314 (7th Cir. 2012) .................................................................. 2

*Smith v. Levine Leichtman Capital,*
   No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672 (N.D. Cal. Nov. 15, 2012) .................. 13

*Sobel v. Hertz Corp.,*
   No. 3:06-cv-00545-LRH-RAM, 2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27,
   2011) ........................................................................................ 6, 8-10

*Sullivan v. DB Invs., Inc.,*
   667 F.3d 273 (3d Cir. 2011) *(en banc)* ..................................................... 5

*Synfuel Technologies v. DHL Express (USA),*
   463 F.3d 646 (7th Cir. 2006) ........................................................ 1, 4, 6, 8-9, 11

*Union Fidelity Life Ins. Co. v. McCurdy,*
   781 So.2d 186 (Ala. 2000) ................................................................... 8

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.,*
   436 Fed. Appx. 496 (6th Cir. 2011) ......................................................... 11

*Vought v. Bank of Am.,*
   No. 10-cv-2052, 2012 U.S. Dist. LEXIS 143595 (C.D. Ill. Oct. 4, 2012) ................. 4, 7, 12

*Weeks v. Kellogg Co.,*
   No. 09-cv-8102,
   2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) ................................... 11

## Rules and Statutes

28 U.S.C. § 1711 note § 2(a)(3)(A) .............................................................. 4, 8

28 U.S.C. § 1712(a) ........................................................................... 1, 5, 9

42 U.S.C. § 1988 ................................................................................. 11

Fed. R. Civ. Proc. 23 ........................................................................... 14

Fed. R. Civ. Proc. 23(a)(4) ..................................................................... 11

Fed. R. Civ. Proc. 23(h) ..................................................................... 9, 11, 14

## **Other Authorities**

Brunet, Edward,
    *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. Chi. L.
    Forum. 403 (2003) ..................................................................................................................2

Jones, Ashby,
    *A Litigator Fights Class-Action Suits*, Wall St. J. (Oct. 31, 2011) ........................................2

Klonoff, Robert H.,
    *Making Class Actions Work: The Untapped Potential of the Internet*, 69 U. Pitt. L. Rev. 727
    (2008)...................................................................................................................................13

Leslie, Christopher R.,
    *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L.
    Rev. 71 (2007)....................................................................................................................12

Miller, Geoffrey P. & Lori S. Singer, Nonpecuniary Class Action Settlements,
    60 L. CON-TEMP. PROBS. 97 (1997) ................................................................................6

Nagareda, Richard A., *Class Actions in the Administrative State: Kalven and Rosenfield Revisited*, 75
    U. CHI. L. REV. 603, 644 (2008) ........................................................................................9

Notes of Advisory Committee to 2003 Amendments to Rule 23 ................................................9

Raghubir, Priya, *Coupons in context: discounting prices or decreasing profits?*,
    JOURNAL OF RETAILING 80 (2004) ....................................................................................8

Tharin, James & Brian Blockovich, *Coupons and the Class Action Fairness Act*,
    18 GEO. J. LEGAL ETHICS 1443 (2005) ..............................................................................8

Weitz, Barton & Robin Wensley,
    Handbook of Marketing, at 327 (2002) ..............................................................................8

# INTRODUCTION

This is a coupon settlement: class members that file a claim receive a Southwest drink coupon. Yet the settling parties make no mention of the Class Action Fairness Act (CAFA) and the limitations CAFA places on coupon settlements. Because this is a coupon settlement, the court must apply heightened judicial scrutiny of fairness. *Synfuel Technologies v. DHL Express (USA)*, 463 F.3d 646, 654 (7th Cir. 2006). Further, CAFA requires that any attorney fee award must be "based on the value to class members of the coupons that are ***redeemed***." 28 U.S.C. § 1712(a) (emphasis added).

Class counsel argues that the $3 million fee request is 10% of the $29 million in settlement coupons. Class counsel falsely presumes both 100% claims rate and 100% redemption rate. Even if the court were to assume an improbable 10% claims rate and an unlikely 97% redemption rate of the claimed settlement coupons, class counsel's $3 million fee would still exceed the class benefit ($2,800,000). In reality, the class benefit is likely to be substantially less than the attorney benefit. Failure to apply CAFA's limitations on attorneys' fees would result in an impermissibly disproportionate class counsel fee award; under any circumstances, the disproportion is unfair. *See, e.g., In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 2013 U.S. App. LEXIS 3379, *7-8 (3d Cir. 2013) ("[C]ourts need to consider the level of direct benefit provided to the class in calculating attorneys' fees."). This is especially problematic where, as here, class counsel has negotiated a separate fee award for itself combined with a clear-sailing agreement precluding the defendant from challenging the fee. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (combination of disproportionate fee award, clear-sailing agreement, and reversion of excessive fees to defendant is indicia of self-dealing). Finally, the settlement is objectionable because the requested incentive fees are excessive.

## PRELIMINARY STATEMENT

The Preliminary Approval Order requires an objector to this settlement to disclose "all objections [his] counsel has filed to class action settlements since January 1, 2008 to the present, the results of each objection, including any Court opinions ruling on the objections, and any sanctions by a Court in connection with filing an objection." *See* Preliminary Approval Order, Dkt. 89, ¶ 18. Such demand on dissenters is irrelevant, unduly burdensome, and an added reason to reject the settlement. *See* discussion *infra* Section V.[1]

Melissa A. Holyoak is an attorney with the non-profit Center for Class Action Fairness and is representing Objector Markow *pro bono*. Attorneys affiliated with the Center litigate on behalf of class members and shareholders against unfair class-action and derivative-action procedures and settlements, and have won millions of dollars on their behalf. *See, e.g.*, Ashby Jones, *A Litigator Fights Class-Action Suits*, Wall St. J. (Oct. 31, 2011). While attorneys affiliated with the Center have represented multiple objectors (including those who successfully appealed in several federal cases in the past two years, *e.g.*, *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012)), the Center is not a "professional objector."[2] The Center has never agreed to a *quid pro quo* payment to withdraw an appeal of an objection. Neither the Center nor any of its attorneys have ever been sanctioned. This objection is brought in good faith to overturn an unfair settlement.

---

[1] Objection is made to any procedures or requirements to object that require information or documents other than those that are contained herein to the extent that such requirements are unnecessary, unduly burdensome, are calculated to drive down the number and quality of objections to the settlement and violate Rule 23(e)(5). Notwithstanding, Melissa A. Holyoak, the undersigned counsel for Objector, has been counsel of record in one objection to a class action settlement since January 1, 2008: *Pecover v. Electronic Arts, Inc.*, No. 8-2820 (N.D. Cal.) Dkt. 404. In *Pecover*, the objector represented by Ms. Holyoak argued, *inter alia*, that a subclass was unfairly excluded from recovery. *See* Dkt. 404. At the final hearing, the judge ordered the parties to revise the plan of allocation and later approved a revised plan that provided $2.1 million relief to the previously excluded subclass. *See* Order dated April 2, 2013, Dkt. 449; Revised Plan (Dkt. 446).

[2] A "professional objector" is a specific legal term referring to a for-profit attorney who files objections to blackmail plaintiffs' attorneys for payment in exchange for withdrawing his or her objections. Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. Chi. Legal Forum 403, 437 n.150 (public interest groups are not "professional objectors").

---

I. **Objector Markow Is a Member of the Class, and Intends to Appear Through Counsel at the Fairness Hearing.**

As documented in the accompanying Declaration of Gregory Markow ("Markow Decl."), Markow is a member of the class. Mr. Markow's mailing address is 600 W. Broadway 7th Floor, San Diego, CA 92101, his phone number is (619) 500-3644, and his email address is junk1@markow.net. *See* Markow Decl. ¶ 2.

On multiple occasions before August 1, 2010, Mr. Markow flew Business Select on Southwest Airlines using the frequent flyer number 00001049489932. *See id.* ¶ 3. During most or all of those flights, Mr. Markow did not use drink coupons. *See id.* Mr. Markow thus qualifies as a class member[3], with standing to object to the settlement and fee request. *See* Preliminary Approval Order (Dkt. No. 89) ¶ 7.

Objector Markow intends to appear through his attorney Melissa A. Holyoak at the final approval hearing, in the above-captioned matter, scheduled for May 21, 2012 at 9:30 a.m. Mr. Markow wishes to discuss matters raised in this Objection. Mr. Markow reserves the right to make use of all documents entered on to the docket by any settling party or objector. Markow also reserves the right to cross-examine any witnesses who testify at the hearing in support of final approval. He joins any objections not inconsistent with the objections he makes below.

II. **A Court Owes a Fiduciary Duty to Unnamed Class Members.**

A district court must act as a "fiduciary of the class," for the rights and interests of absent class members. *Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006) (quoting *Reynolds v.*

---

[3] During the relevant time period, Mr. Markow's reservations with Southwest were made with his email address junk1@markow.net. *See* Markow Decl. ¶ 4. That email address is an alias email address that, during the pre-August 2010 period, was redirected to Mr. Markow's work email account. *See id.* Almost all emails from that time frame are on Mr. Markow's work email account at his former employer. *See id.* As of the date of this Notice, Mr. Markow's former law firm has not yet retrieved emails from the backup tapes with the flight information. *See id.* If there is any dispute whether Mr. Markow is a class member, Mr. Markow reserves the right at the fairness hearing to make use of emails that may be retrieved by his former employer and reflect specific flights during the relevant time period. However, Southwest should be able to confirm Mr. Markow's class membership by reference to its records of his frequent flyer account.

*Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002)). The Seventh Circuit has instructed district courts as fiduciaries "to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions" prior to settlement. *Synfuel*, 463 F.3d at 652.

There should be no presumption in favor of settlement approval: "the proponents of any class settlement always bear the burden of proof on the issue of fairness." *In re GMC Engine Interchange Litig.*, 594 F.2d 1106, 1126 n.30 (7th Cir. 1979). Because the settlement here is pre-certification, an even higher degree of careful scrutiny is required. *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987).

An arm's length negotiation, likewise, is necessary but not itself sufficient for approval. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011). As the Seventh Circuit has described it, "[b]ecause class actions are rife with potential conflicts of interest between class counsel and class members … district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi*, 356 F.3d at 785. This settlement presents one such instantiation of the conflict because the settlement's failure to comply with the CAFA results in a class counsel award that will drastically exceed the actual recovery of the class. *Bluetooth*, 654 F.3d at 945; *Vought v. Bank of Am.*, No. 10-cv-2052, 2012 U.S. Dist. LEXIS 143595, at *81-82 (C.D. Ill. Oct. 4, 2012) ("There must be some point at which the recovery to the class is so outweighed by attorneys' fees that … the allocation is not fair.").

## III.    The Class Action Fairness Act Requires Heightened Scrutiny of this Coupon Settlement and Rejection of Class Counsel's Attorney Fee Request.

Low-value settlements where "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value" were a central legislative motivation of the Class Action Fairness Act (CAFA). 28 U.S.C. § 1711 note § 2(a)(3)(A). Coupon settlements are disfavored because they often fail to disgorge illegal profits and instead force future business with the defendant. *Synfuel*, 463 F.3d at 654. Because of the inherent dangers of coupon settlements, CAFA

requires[4] a district court to apply "heightened judicial scrutiny," *id.* at 654, and to limit the attorneys' fee award based "on the value to class members of the coupons that are redeemed," 28 U.S.C. §1712(a); *cf. Baby Prods.* 708 F.3d 163, 2013 U.S. App. LEXIS 3379, at *34-35 n.13 (citing §1712).

### A. Class Counsel's Fee Request Must be Rejected Because It Is Not Based on the Number of Settlement Coupons Redeemed.

The law requires that attorneys' fees "shall be based on the value to class members of the coupons that are redeemed" rather than the number of coupons issued. 28 U.S.C. § 1712(a). This coupon settlement provides that upon successful submission of a claim form, class members will receive a "drink voucher entitling a Southwest Customer to one free drink during a Southwest flight." *See* Amended Stipulation of Settlement ("Settlement") (Dkt. 88) at 6. The settlement coupon expires one year after issuance. *See* Mem. in Support of Prelim. Approval (Dkt. 85) at 11. Class counsel's $3 million fee request, however, treats the settlement coupons as cash without regard for the number of drink coupons that will actually be redeemed. This is a violation of the plain language of the statute and requires rejection.

Class counsel here argues that the $3 million request is proper because it is 10% of the $29 million "common benefit achieved by the settlement." *See* Mem. in Support of Motion for Attorneys' Fees ("Fee Motion") (Dkt. 103) at 1. Plaintiffs' $29 million valuation is based on Southwest's estimation that of the $58 million coupons originally issued, 50% had been "originally redeemed." *See id.* Under the settlement, Southwest is not issuing $29 million in coupons. Southwest is only issuing coupons to those who successfully submit a claim form.[5] To redeem the coupon, the claimant must actually *use* the settlement coupon on a Southwest flight prior to the one-year

---

4   Coupon settlements were disfavored in this Circuit even before CAFA. *See In re Mex. Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001) ("The attorneys got cash, the charitable organizations got cash, and the customers got coupons. That's enough to raise suspicions.")

5   *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (*en banc*) (noting evidence that "consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns."). The number will be lower still when the prize to be claimed is a coupon.

expiration date. In basing the fee request on $29 million in coupons, class counsel assumes both a *100% claims rate* and a *100% redemption rate* of the settlement coupons. Settling parties use coupons to inflate the apparent value of the proposed settlement by claiming the coupons' nominal value is the actual value to the class members. *See* Geoffrey P. Miller & Lori S. Singer, Nonpecuniary Class Action Settlements, 60 L. & CONTEMP. PROBS. 97, 108 (1997). Class counsel's inflated valuation of the settlement violates CAFA.[6]

Further, CAFA applies to this coupon settlement despite the fact that the settling parties have termed the drink coupons "Vouchers" under the settlement. *See* Settlement at 11. In *Synfuel*, the Seventh Circuit applied CAFA to the offered relief: pre-paid envelopes from defendant DHL Express. 463 F.3d at 654. The court "recognize[d] that the pre-paid envelopes are not identical to coupons, since they represent an entire product, not just a discount on a proposed purchase." *Id.* But the court recognized that the envelopes were the type of "in-kind compensation" that "shares characteristics" with coupons and involved inherent dangers from which CAFA was designed to protect. *Id.* Indeed, relief takes a variety of nominal forms in coupon settlements.[7] This is because CAFA is not seeking to regulate semantics. Instead, it is protecting class members from worthless settlements that fall under the umbrella of coupon relief.

It also makes no difference that the settlement coupons are "replacing" the pre-settlement drink coupons at issue. *See* Settlement at 11. CAFA makes no exception for coupon relief intended to replace coupons that are at issue in the underlying claims. Indeed, courts have looked to CAFA's legislative history describing several examples of coupon relief Congress intended to be treated as

---

[6] In *Fleury v. Richemont N. Am., Inc.*, the court rejected class counsel's argument that a settlement involving $100 credits to consumer class members was valued at $10 million because the valuation "assumes that 100% of the credits will be used" and does not reflect "how many credits are actually redeemed." 2008 U.S. Dist. LEXIS 112459, *12 (N.D. Cal. Aug. 6, 2008). So too here. The court cannot accept class counsel's $29 million "valuation" when it has presented no evidence of *actual redemption* as required under CAFA.

[7] *See, e.g., Bachman v. A.G. Edwards*, 344 S.W.3d 260 (Mo. Ct. App. 2011) ("vouchers"); *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH, 2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27, 2011) ("certificates").

coupon settlements which involved replacement of the various items at issue.[8] There is no reason why Congress's examples should be treated as coupon settlements but this settlement should not.

### B. Class Counsel's Fee Request Is Impermissibly Disproportionate to Class Recovery and Renders the Settlement Unfair.

If CAFA's requirement that the attorney-fee award be based on redeemed coupons is ignored, class counsel would receive "a disproportionate distribution of the settlement." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). In performing the *Bluetooth* disproportionality analysis, courts should compare the fees and the value of the funds actually available, rather than the amount potentially available.[9] "[T]he actual benefit provided to the class is an important consideration when determining attorneys' fees." *Baby Prods.*, 708 F.3d 163, 2013 U.S. App. LEXIS 3379, *35.

The other two *Bluetooth* red flags for unfairness are also present: a clear-sailing agreement and reversion to the defendant of unawarded attorneys' fees. 654 F.3d at 948-49. The combination of all three demonstrates the settlement's unfairness: class counsel has negotiated $3 million in cash for itself, segregated from class recovery. It has negotiated protection from scrutiny on the fee award from Southwest. And if the fee award is reduced, the excess is returned to Southwest, rather than the class—even though Southwest was willing to pay the full $3 million to resolve the litigation. The *only* reason to have a reversion to Southwest instead of the class is to attempt to protect an excessive fee award from scrutiny, and deter challenges to the fee award. The $3 million should be considered part of a constructive common fund, and the fact that it is shielded from the class is inherently unfair. *Id.*

---

[8] *See, e.g., Fleury*, 2008 U.S. Dist. LEXIS 112459, at *10-11 (citing examples of whole product coupon relief including free crib repair kit or coupon toward crib; discounts on spring water or free water; and free golf gloves or golf balls).

[9] *See, e.g., Vought*, 2012 U.S. Dist. LEXIS 143595, at *56-*58 (C.D. Ill. Oct. 4, 2012) (emphasizing the "scant" 4.5% claims rate and result that $38,000 of $500,000 available would be paid out, ultimately denying approval of settlement).

The valuation of the coupons at the face value, rather than the redemption value, is egregious because coupon redemption rates are famously low, *see* 28 U.S.C. § 1711, note § 2(a)(3)(A), and cases abound in which few class members redeem their coupons or make claims on a claims-made fund.[10] The vast majority of class members will not make claims on the fund. But the parties are asking this Court to adopt the economic fiction that there is no difference between a settlement where class members have to affirmatively make claims and a settlement where the class benefit is direct-deposited into class members' bank accounts.

Indeed, numerous factors will negatively affect the redemption of the drink coupons here. The drink coupon's one-year expiration date will likely decrease redemption because redemption rates of coupons decrease as a function of expiration date.[11] The coupon's low $5 face value, will affect redemption as coupons with lower face values are less likely to be redeemed.[12] Finally, because claimants must purchase an expensive ***plane ticket*** in order to use the $5 drink coupon, redemption will likely be decreased. *See Synfuel*, 463 F.3d at 654 (noting that in-kind/coupon compensation "requires the claimant to return to the Defendant to do business with him, something at least some class members likely would prefer not to do.") It follows that class counsel's valuation may well be 10 to 90 times greater than the actual redeemed value of the coupons.

"Because redemption rates have a direct and potentially devastating impact on the actual value received by the class, such lack of evidence prevents any reasoned assessment of the

---

[10] *See, e.g., Moody v. Sears Roebuck & Co.*, 664 S.E.2d 569, 572, 574 (N.C. App. 2008) (317 valid claims filed out of 1,500,000 member class, for total of $2,402 in total redemption of coupons as compared to more than $1,000,000 in attorneys' fees and costs); *Union Fidelity Life Ins. Co. v. McCurdy*, 781 So.2d 186, 188 (Ala. 2000) (113 redemptions out of 104,000 member class); James Tharin & Brian Blockovich, Coupons and the Class Action Fairness Act, 18 GEO. J. LEGAL ETHICS 1443, 1445 (2005) (citing examples).

[11] *See* Weitz, Barton & Robin Wensley, *Handbook of Marketing*, at 327 (2002).

[12] *See* Priya Raghubir, Coupons in context: discounting prices or decreasing profits?, JOURNAL OF RETAILING 80 (2004).

---

settlement's actual value to the class." *Sobel*, 2011 U.S. Dist. LEXIS 68984, at *36; *Synfuel*, 463 F.3d at 653-54 (requiring this assessment). For example, assuming a generous 10% claim-and-redemption rate of the drink coupons, the amount actually redeemed would be $2,900,000, which is *less* than class counsel's $3 million fee request. Not only is awarding fees based on redeemed coupons required by CAFA, it will ensure that a fee award will be appropriately proportionate to the actual class benefit.

### C. The Fee Award Should Be Deferred Until the Actual Number of Redeemed Coupons Is Known.

The settling parties sought an administrative schedule designed to insulate the fee request from a comparison with the actual number of claims received (and coupons redeemed). *See* Settlement Exhibit E (Dkt. 88-5) at 6 (requesting a claims deadline of 105 days after final fairness hearing). This appears to be an attempt to hide the ball so that the Court and the public never learns how poorly the class fares. Moreover, the number of issued coupons that will *actually be used* – which is the value CAFA requires for purposes of the attorney fee award – will not be known until after the coupons are issued and the one-year expiration is over.

Even before 28 U.S.C. § 1712(a) mandated this method of valuing coupon settlements, deferring and staggering fee awards was an accepted practice.[13] Indeed, staggering the fee properly incentivizes class counsel to bestow maximum value upon class members.

---

[13] *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189-90 (D. Me. 2003) (deferring "award of attorney fees until experience shows how many vouchers are exercised and thus how valuable the settlement really is."); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 380 (D. Mass. 1997) (staging the fee award based on actual value created for the class); Notes of Advisory Committee on 2003 Amendments to Rule 23(h) ("[I]t may be appropriate to defer some portion of the fee award until actual payouts to class members are known."); Richard A. Nagareda, *Class Actions in the Administrative State: Kalven and Rosenfield Revisited*, 75 U. CHI. L. REV. 603, 644 (2008) ("What rightly matters in this corner of the class settlement is not the value made available to class members but, rather, the value of those actually redeemed.").

---

In short, class counsel's requested fee violates CAFA because it is not based on the number of redeemed coupons. Mr. Markow formally requests that the Court abstain from awarding fees until the number of redeemed coupons is known.

### D.  A Multiplier Greater than One Is Inappropriate.

Class counsel themselves properly recognize the supremacy of the percentage of recovery method in calculating attorneys' fees. *See* Fee Motion at 8. "This interest-alignment device is not perfect. . . . But [an] imperfect alignment of interests is better than a conflict of interests, which hourly fees may create." *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986).[14] The lodestar cross-check, however, can "confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate." *Bluetooth*, 654 F.3d at 945.

Here, class counsel submits a $1,140,270 base lodestar and requests a fee award of $3 million. Class counsel argues that the 2.63 multiplier is appropriate because of the risk of non-recovery and the "excellent result achieved." *See* Fee Motion at 13. Class counsel's arguments are unavailing.

Plaintiffs have failed to overcome the law's "strong presumption that the lodestar is sufficient" without an enhancement multiplier. *Perdue v. Kenny A.,* 130 S. Ct. 1662, 1669 (2010). A lodestar enhancement is justified only in "rare and exceptional" circumstances where "specific evidence" demonstrates that an unenhanced "lodestar fee would not have been adequate to attract competent counsel." *Id.* at 1673. "[T]he burden of proving that an enhancement is necessary must be borne by the fee applicant." *Id. Perdue* undercuts the plaintiffs' citation to *Harman* for the proposition that multiples ranging from one to four are frequently awarded. *See* Fee Motion at 14 (citing *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 975 (7th Cir. 1991)). *Perdue*'s limitation on

---

[14] As one court described the unsuitability of lodestar, "Class Counsel has requested for itself an uncontested cash award based on lodestar, rather than the value of the class recovery, with only a modest discount from the claimed lodestar amount. In other words, the class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case outright." *Sobel*, 2011 U.S. Dist. LEXIS 68984, at *44.

enhancements was made in the context of interpreting 42 U.S.C. § 1988's language of "reasonable" fee awards, but has equal application to "reasonable" fee awards in class actions made under Fed. R. Civ. P. 23(h).[15]

In short, it would be improper to permit any multiplier greater than one.

## IV. The Incentive Awards Are Excessive.

The incentive awards of $15,000 for each of the two class representatives, *see* Fee Motion at 14, are excessive and shed light on whether 23(a)(4)'s requirement of adequacy of representation is satisfied. In *Murray v. GMAC Mortg. Corp.*, the court found the disproportionate incentive award of $3,000 proof that "the class device had been used to obtain leverage for one person's benefit." 434 F.3d 948, 952 (7th Cir. 2006). The Seventh Circuit contrasted the class relief ($1 per class member) with the $3,000 class representative award. *Id*; *see also Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 882 (7th Cir. 2000). This case is no different. The requested $15,000 incentive award is 3000 times more than the $5 drink coupon.

Plaintiffs argue that such incentive awards are proper because the class representative were deposed and one attended a meditation. *See* Fee Motion at 15. The minimal time spent by the class

---

[15] *See, e.g., Van Horn v. Nationwide Prop. & Cas. Ins. Co.,* 436 Fed. Appx. 496, 500 (6th Cir. 2011); *Gonzalez v. S. Wine & Spirits of Am., Inc.,* No. 11-cv-5849, 2012 U.S. Dist. LEXIS 46401, at *12-*16 (C.D. Cal. Mar. 29, 2012) (citing *Perdue* and denying enhancement multiplier of 1.5); *Weeks v. Kellogg Co.,* No. 09-cv-8102, 2011 U.S. Dist. LEXIS 155472, at *129-*135 & n.157 (C.D. Cal. Nov. 23, 2011) (citing *Perdue* and finding "little basis for an application of a multiplier" when calculating lodestar cross-check); *cf. also In re Pet Food Prods. Liab. Litig.,* 629 F.3d 333, 361 (3d Cir. 2010) (Weis, J. concurring/dissenting) (referring to *Perdue* as an "analogous statutory fee-shifting case.").

Plaintiffs do not ascribe any value to the injunctive relief, *see* Settlement (Dkt. 103) at 11-12, in calculating their benefit to the class, *see id.* This $0 figure is the correct valuation. The class representatives' fiduciary duty is to the class, rather than to future Southwest customers. "The fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries." *Synfuel,* 463 F.3d at 654.

representatives do not justify a disproportionately excessive award.[16] The requested incentive awards should be rejected and counsel against the fairness of the settlement.

## V.     The Court Should Not Infer Settlement Approval from a Low Number of Objectors, Especially Because the Parties Have Artificially Reduced the Number of Objections.

Any given class action settlement, no matter how much it betrays the interests of the class, will produce only a small percentage of objectors. The predominating response will always be apathy because objectors without counsel must expend significant resources on an enterprise that will create little direct benefit for themselves. *See Vought*, 2012 U.S. Dist. LEXIS 143595, at *60 (citing, *inter alia*, a 1996 FJC survey that found between 42% and 64% of settlements engendered no filings by objectors). Silence is simply *not* consent. *GMC Engine Interchange*, 594 F.2d at 1137 ("Acquiescence to a bad deal is something quite different than affirmative support."). "[S]ilence is a rational response to any proposed settlement even if that settlement is inadequate." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 73 (2007).

Without *pro bono* counsel to look out for the interests of the class, filing an objection is economically irrational for any individual.[17] Moreover, "where notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp.*, 834 F.2d at 680-81. The Court should draw no inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors. *Vought*, 2012 U.S. Dist. LEXIS 143595, at *60-*61.

Yet more conducive to apathetic inaction the parties have elected a process of objecting and opting out which is "unnecessarily onerous". *Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-

---

[16] *See Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 410 (7th Cir. 2000) (affirming district court's refusal to award incentive award where plaintiff had been deposed but did not otherwise "devote an inordinate amount of time").

[17] To compound the problem, this settlement's needlessly taxes the right to retain counsel by demanding that objectors' counsel disclose all objections they have prosecuted since the beginning of 2008 and identify any accompanying decisions. *See* Preliminary Approval Order, Dkt. 89, ¶ 18.

DGK, 2012 U.S. Dist. LEXIS 147148, at *16 (W.D. Mo. Oct. 12, 2012) (denying settlement in part based on parties' failure to allow class members to opt out via email alone). The requirement that objectors print and post multiple copies of their objection/exclusion is both expensive and outdated in 2012.[18] "One hallmark of a reasonable settlement agreement is that it makes participation as easy as possible, whether class members wish to make a claim, opt out, or object." *McClintic v. Lithia Motors*, No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846, at *17 (W.D. Wash. Jan. 12, 2012) (critiquing equivalent processes and ultimately rejecting settlement).

Preferring a more costly, inefficient alternative over seamless electronic processes can only give rise to the inference that the parties wished to undermine the autonomous decisions of class members.[19] It has been known for at least a half-decade that "the ease and cost-efficiency of such direct internet submissions increases the likelihood of absent class member participation." Robert H. Klonoff, *Making Class Actions Work: The Untapped Potential of the Internet,* 69 U. Pitt. L. Rev. 727, 766 n. 251 (2008). Indeed, personal notice was distributed solely via internet, yet absent class members' responses cannot be made in the same medium. Class counsel is not licensed to consign objectors or opt-outs to second class status.[20]

---

[18] *See Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672, at *8-*9 (N.D. Cal. Nov. 15, 2012) ("[T]he parties have made the procedures for filing objections unduly burdensome. There is no reason to require … the objectors to mail their objections to three different locations.").

[19] Other settlements permit the relatively efficient (indeed, close to costless) method of transmitting objections by a single electronic submission; *see e.g., In re Motor Fuel Temperature Sales Practices Litig.*, No 07-md-01840-KHV-JPO, Order (Dkt. No. 3019), at 2 (D. Kan. Nov. 10, 2011) ("If Costco plans to proceed with email notification, it must allow class members to opt out of the class and object to the settlement electronically"). Where electronic modes of opting-out and objecting are available, the "vast majority" of participating class members will use those avenues. *Motor Fuel Temperature*, 2012 U.S. Dist. LEXIS 57981, at *76 (D. Kan. Apr. 24, 2012); *id.* at *74 n.13 (nearly three times more people opted-out electronically than by mail).

[20] The right of objection is further burdened by the Settlement's requirement that any class member that objects may be required to sit for deposition prior to the fairness hearing; this is improper. *See Freebird, Inc. v. Merit Energy Co.,* No. 10-1154-KHV, 2012 U.S. Dist. LEXIS 173075 (D. Kan. Dec. 6, 2012) (striking various proposed burdens on right of objection: *inter alia*, the requirement objectors to list dates when they are available for deposition).

---

Together, these hurdles create doubt as to whether the settlement appropriately respects class members' Fed. R. Civ. P. 23 rights to object to the settlement and opt-out from the class certification. Not only do they constitute a reason to reject the settlement in this case, *see e.g., Galloway*, 2012 U.S. Dist. LEXIS 147148, at *16, they provide an added reason to discredit any argument that the lack of objectors signals the class members' approval of the settlement.

## CONCLUSION

The Court should deny approval. Even if the Court were to approve the settlement, it should defer awarding fees until the actual number of redeemed coupons is known, and then scale the Rule 23(h) award to reflect proportionality with the benefit actually realized by the class.

Dated: April 10, 2013.

/s/ Melissa A. Holyoak
Melissa A. Holyoak, (DC Bar No. 487759)
Center for Class Action Fairness
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (573) 823-5377
Email: melissaholyoak@gmail.com

*Attorney for Gregory Markow*

**Certificate of Service**

The undersigned certifies he electronically filed the foregoing Objection and associated Declaration of Gregory Markow via the ECF system for the Northern District of Illinois, thus effecting service on all attorneys registered for electronic filing. Additionally he caused to be served via UPS overnight shipment a copy of this Objection and associated Declaration of Gregory Markow upon the following:

| | |
|---|---|
| Joseph J. Siprut<br>Aleksandra M.S. Vold<br>SIPRUT PC<br>17 North State Street<br>Suite 1600<br>Chicago, Illinois 60602 | H. Thomas Wells, Jr.<br>Maynard Cooper & Gale, P.C.<br>1901 Sixth Avenue North<br>2400 Regions/Harbert Plaza<br>Birmingham, Alabama 35203 |
| Hon. Matthew F. Kennelly<br>United States District Court for the Northern District of Illinois, Eastern Division<br>Everett McKinley Dirksen United States Courthouse<br>Chambers 2188<br>219 South Dearborn Street<br>Chicago, IL 60604 | |

Dated: April 10, 2013.

/s/ Melissa A. Holyoak