IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: Southwest Airlines Voucher Litigation | ) ) ) ) | No. 11-CV-8176<br><br>Hon. Matthew F. Kennelly |

## OBJECTION TO CLASS ACTION SETTLEMENT BY JONATHAN E. FORTMAN & NOTICE OF INTENTION TO APPEAR

COMES NOW, Jonathan E. Fortman of 250 Catherine Street, Florissant, Missouri 63031, e-mail: jef@fortmanlaw.com, who intends to appear pro se at the fairness hearing on May 21, 2013, and attaches hereto his documentation evidencing his standing as a class member (EXHIBIT A, attached hereto) and hereby files his Objection to Class Action Settlement by and through his counsel of record and in support thereof sets forth the following:

### Introduction:

The essence of this proposed settlement involves this court approving a settlement involving payment of 3 Million Dollars in attorneys' fees to class counsel, and relief to the class members consisting of the reissuance of drink vouchers, or in-kind compensation, to be redeemed for beverages by class members on Southwest Airlines flights, for those class members who complete and submit a claim form, and then take another flight with Southwest.

A district court may approve a settlement only if it is "fair, reasonable and adequate" *Synfuel Technologies v. Dhl Express (USA), 463 F.3d 646, 652 (7th Cir. 2006); Fed. R. Civ. P. 23(e)(1)(C); Williams v. Rohm, 658 F.3d 629, 634 (7th Cir., 2011)*. Although the standard applied by the appellate court is whether the trial court abused its discretion in approving a proposed settlement, "we insist that district courts exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Synfuel Technoligies, 463 F.3d at 652 citing Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 279 (7th Cir. 2002)*. Historically, the court of appeals has "gone so far as to characterize the [trial]

1

court's role as akin to the high duty of care that the law requires of fiduciaries." *Id.* ;*Williams, 658 F.3d at 634.*

A district court "cannot make an informed judgment about the fairness of a proposed class settlement without assessing the likelihood and value to the class of the case's possible outcomes. *Williams, 658 F.3d at 634, citing Synfuel Technologies, 463 F.3d at 653.* A district court "must take special care in performing this assessment when the proposed settlement evinces certain warning signs" including settlement bias toward in-kind compensation. *Id.*

The settlement, as proposed by the parties is not fair, reasonable or adequate and must be denied at this time, subject to approval at a later time if Class Counsel and the Defendant adopt the changes proposed by Objector Fortman, as set forth below. Moreover, as a matter of law, the settlement should be denied if it only results in the recovery of in-kind compensation, as proposed by the parties.

**I.   In order for this settlement to be considered fair and reasonable, Class members should receive drink vouchers without requiring them to fill out and submit a claim form.**

Ordinarily, a coupon settlement is viewed as a rarity, the proverbial Spotted Owl among other species of settlement, and considered unique when discovered or presented to a court by the parties. *Managing Class Action Litigation: A Pocket Guide for Judges*, Barbara J. Rothstein & Thomas Willging, 3rd ed., 2010, p. 18 (referred to herein as "Pocket Guide")("Coupon settlements were rare even before the passage of CAFA."). Courts typically seek information from the parties as to whether the coupons are transferrable, can be discounted or converted to cash, "compare favorably with bargains generally available to a frugal shopper" and whether the coupons are likely to be redeemed by class members. *Id.*

Here, the "replacement vouchers" issued by the Defendant are in fact transferrable (Amended Stipulation of Settlement, Doc #88, DD. p. 6, referred to herein as "Settlement Agreement" or "Stlmt Agrmt"). However, the vouchers cannot be converted to cash- at least no reference is made to such

2

occurrence in the parties Settlement Agreement. It would appear that reissuance of the very same vouchers that were the subject matter of this litigation "compare favorably with bargains available to a frugal shopper. And, to be fair, it could also be argued that anyone flying anything other than "Coach" on Southwest Airlines is not a frugal shopper in any event- making the dispensation of coupons irrelevant to frugal shoppers.

However, the remaining element is damaging to Class Counsels' proposed settlement, in that by the very mechanisms utilized during the claims process, they are making it less likely that the coupons will be redeemed by class members. As a consequence, this Court should not approve the settlement until this issue is addressed in a manner designed to maximize the ability of the class members to redeem the offered drink vouchers. After all, the Plaintiffs alleged that Defendant has issued "at least hundreds of thousands of Vouchers" (Amended Complaint, Doc #23, p. 5, par. 14). Since Defendant knows who they were issued to, it is simply a matter of reissuance of the vouchers, making filing a claim unnecessary and redundant.

The parties encourage all persons to submit claim forms "even if you are unsure whether you are a Class Member" (Long Form Notice, 5. "How do I know if I am part of the Settlement?"). However, the Defendant has records that show the number of drink coupons previously dispensed to class members. Moreover, the parties have provided the Settlement Administrator of the names and e-mail addresses of all class members (Stlmt Agrmt, Doc #88, p.15-16, V. A and B). And the Settlement Administrator has veto authority, or the ability to audit the claims made to ensure that the drink vouchers claimed by class members correspond to the vouchers originally dispensed during the time period in question, according to the Settlement Agreement. Since the Settlement Administrator already has all the information necessary to issue a drink voucher, why delay the relief by requiring an affirmative statement from the class members that they want one or more drink vouchers that they were issued previously? Fairness dictates expediency of issuance of the relief with the least restrictive

3

means of establishing entitlement to the benefit of class participation.

Since possession of the original drink coupon is not required (Long Form Notice, 7. "How many Replacement Drink Vouchers will I receive?"), the Settlement Administrator has nothing more to do than simply issue drink vouchers to the persons identified on the list provided to it by the parties. This could easily be effectuated by e-mail, making the likelihood of redemption more likely and higher than forcing class members to guess at the number of vouchers they are entitled to under the proposed settlement conditions. Indeed, subjecting the class members to critical thinking about how many drink vouchers they received between November 8, 2007 through August 1, 2010 is just unrealistic to establish accuracy from the class members (Proposed Order, Doc 88-4, 4.d, p.6). The parties have already caused notice of the proposed settlement to be issued by publication, notifying the class members of their participation in the settlement and its benefits (Stlmt Agrmt, Doc #88, p. 16, V.B.2). Just give class members the drink vouchers.

Instead of forcing class members to speculate, and even underreport the number of drink vouchers they received six (6) years ago, this Court should require the parties to simply permit the settlement administrator to issue drink vouchers to all eligible class members by e-mail. For those class members who do not have a current e-mail address, or do not utilize e-mail, this Court should order that the parties permit the Settlement Administrator to issue drink vouchers by mail without requiring submission of a claim form. According to the Pocket Guide, "First, consider whether a claims process is necessary at all. The defendant may already have the data it needs to automatically pay the claims of at least a portion of class members who do not opt out." (*Pocket Guide*, p. 30, G. Claims Processes and Response Handling). Here, the parties have all the information available to begin issuing drink vouchers, and should initiate such process as soon as practicable.

Another option is to extend the claims period providing the class members with an opportunity to receive the drink vouchers, while giving those class members who are not in the updated database of

the Settlement Administrator the opportunity to make contact and provide updated e-mail and address information to ensure receipt of the drink vouchers.

**II.    The Drink Vouchers constitute "in-kind compensation" and as a matter of law require the denial of the proposed settlement, unless the parties agree that the class members can redeem their drink vouchers for cash.**

In the 7th Circuit, a "coupon settlement" is rejected where "in kind compensation" is proposed as the relief provided to class members. *Synfuel Technologies v. Dhl Express (USA), 463 F.3d 646, 654 (7th Cir., 2006)*. In *Synfuel*, the court of appeals rejected a settlement where the class members were to receive pre-paid Letter Express envelopes instead of cash, with the court determining that the proposed settlement only benefited those class members who would continue to utilize Defendant's services and that the fairness of the settlement "must be evaluated primarily based on how it compensates class members for these past injuries." *Id.* *("Our confidence in the fairness of the settlement is further undermined by the agreement's bias toward compensating class members with pre-paid Letter Express envelopes instead of cash.")*. Class Counsel reports that this proposed settlement will impact at "least 2,492,625 class members." (Doc #103, p. 11, "C. Class Counsel Performed Substantial Work on Behalf of the Class"). That equates with many, many unused coupons. Otherwise, everyone needs to take a Southwest Airlines flight to realize the benefit.

In this case, the parties should agree to provide class members with the cash value of the drink voucher, at the option of the class member, instead of simply reissuing the drink vouchers that were the subject of this litigation as recommended above. Class members would be provided with additional notice on the parties website, and by publication that the drink voucher received can be redeemed for cash at any Southwest Airlines location.

Indeed, the underlying relief sought by Plaintiffs was not for additional drink coupons, but " . . . damages and, where applicable, treble, multiple, disgorgement, or other damages-with interest . . ."

(Amended Complaint, Doc #23 p. 13, VIII. Request for Relief). Under the holding of *Synfuel Technologies*, this court should deny the proposed settlement, particularly since Plaintiffs' sought damages and now offer coupons to the class as "relief."

Compensation in kind "is worth less than cash of the same nominal value since, as is typical with coupons, some percentage of the pre-paid envelopes claimed by class members will never be used and, as a result with not constitute a cost to Airborne [Defendant]. *Synfuel Technologies*, 463 F.3d at 654, citing *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001).

The modern view is for courts to view coupon based settlements with skepticism, as the reality is that most consumers will not redeem the coupons that are issued, making the relief obtained worthless to the consumer. See Christopher R. Leslie, *"The Need to Study Coupon Settlements in Class Action Litigation"*, 18 GEO. J. Legal Ethics 1395, 1396-97 (2005) (Identifying three problems with coupon settlements: 1) it is doubtful that they "provide meaningful compensation to most class members"; 2) they often "fail to disgorge ill-gotten gains from the defendant; and 3) they may force class members "to do future business with the defendant.") accord, *Synfuel Technologies*, 463 F.3d at 653.

Indeed, without offering cash refunds to class members, this settlement only provides a benefit to class members who fly with Southwest Airlines at some future time, forcing or requiring the class members to "do future business with the defendant." Geoffrey P. Miller & Lori Singer, *"Nonpecuniary Class Action Settlements,"* 60 Law & Contemp. Probs, 97, 108 (1997) (noting that for many consumers "the right to receive a discount [or a coupon] will be worthless.") accord, *Synfuel Technologies*, 463 F.3d at 653. A coupon settlement may benefit certain groups of the class more than others. *In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768 (3rd Cir. 1995). Here, the only class members that will benefit are those class members that actually take another Southwest Airlines flight. Those class members who choose to fly with a different carrier do not utilize the benefit.

Without the parties acknowledging that class members should have the alternative of converting their drink vouchers to cash, they should in turn have their proposed settlement denied until such issue is properly addressed with this Court.

**III. This Court should refrain from entering an award of attorneys' fees until such time as the Court is apprised of the number of class members who will redeem such drink vouchers, and tie the attorney's fees awarded to the actual number of drink vouchers redeemed.**

In addition, CAFA requires this Court to scrutinize the proposed coupon settlement "and restricts the use of unredeemed coupons in calculating fees for class counsel. *Pocket Guide, p. 18 ("It is important to discern whether attorney fees are being calculated using the face value of the coupons instead of the value of coupons actually redeemed.")*. The Pocket Guide strongly suggests that trial courts ". . . hold back the portion of any attorney fee awards that is linked with coupons, discounts, or other nonmonetary benefits until after the redemption period has ended and the value of the benefits can be established by calculating class members' actual use." (*Pocket Guide, p. 34, A. Evaluating monetary and nonmonetary results achieved*).

And the parties have already created an infrastructure that makes judicial review of the claims process an easy task to promote, and monitor. Here, the parties have already agreed that "The Settlement Administrator shall also provide reports and other information to the Court as the Court may require."(Stlmt Agrmt, Doc #88, VI. B., p. 17). This Court and the parties, should require the Settlement Administrator to disclose how many class members were notified by e-mail and provided with voucher(s), and how many class members were notified by mail and provided with vouchers. This mechanism is already in place, and little effort is necessary to provide the transparency necessary to demonstrate to the Court the relief provided to the class under these conditions ("Should the Court request, the Parties, in conjunction with the Settlement Administrator, shall submit timely report to the Court summarizing the work performed by the Settlement Administrator, including a report of the

7

number of Replacement Vouchers claimed by Class Members"-Stlmt Agrmt, Doc #88 VI. B.1, p. 17-18; a) and b)).

With this process in place, the parties can simply wait to calculate the value of the attorney's fees, based upon the number of coupons redeemed. And if the parties simply agree to distribute the drink vouchers without requiring submission of the claim form, the process will be expedited and likely result in an increase number of claimants redeeming the voucher, making justification for a higher award of attorneys' fees likely. According to the Pocket Guide, "Determining the precise value to the class of the rare beneficial coupon settlement, though, calls for hard data on class members' redemption of the coupons (*Pocket Guide, p. 18, Hot Button Indicators- 1.Coupons*).

Given such a backdrop to class counsels' fee application, this Court should either insist that the parties agree that the vouchers can be redeemed for cash upon issuance, or advise class counsel that their fee application will not be heard until the class members redemption data for the drink vouchers is provided to this Court.

Nevertheless, Class Counsel argues that the fee requested (and unopposed) is modest, in comparison to the benefit allegedly bestowed upon the class of somewhere between 29 to 58 Million Dollars in unredeemed drink voucher coupons (Mtn for Attorneys Fees, Doc # 103, p. 6). Class Counsel will attempt to avoid denial of their fee award by arguing that the attorneys fees do not diminish the recovery received by the class members (Doc #103, p. 11 "The Fee Award is Separate and Apart from the Class Relief"). However, what is ignored or avoided by class counsel is any discussion or analysis in their fee application that the 3 Million Dollars sought as attorneys' fees has any relationship to the actual number of drink voucher coupons that would or are anticipated to be redeemed. In fact, no discussion is entertained by Class Counsel concerning the percentage of class members who will redeem the drink coupons, once they are issued to the class members (Doc #103).

However, the redemption of the drink vouchers is the cornerstone of any basis for awarding

8

attorney's fees. Or as the 3rd Circuit has stated, "Given our skepticism of the settlement's value... we are much less sanguine that the $9,500,000 fee actually constitutes an acceptable percentage of the class recovery. On the current record, we are constrained to reject that conclusion. At the very least, the district court... needs to make some reasonable assessment of the settlement's value and determine the precise percentage represented by the attorneys' fees. The problem, however, is not simple, for arguably, any settlement based on the award of certificates would provide too speculative a value on which to base a fee award." *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 822 (3rd Cir. 1995).

This Court should not approve an award of attorneys' fees until this Court can confidently calculate the number of drink vouchers redeemed and class counsel can demonstrate that such amount entitles them to an award of 3 Million Dollars.

**IV. This proposed settlement should be denied because the Release entered into between the parties completely eviscerates all claims that could possibly be raised by class members, including those claims having nothing to do with any dispute involving drink vouchers, and such Release violates Objector's due process rights as well as the class members.**

The release language is too broad, and has class members releasing "both known and unknown and suspected and unsuspected claims and causes of action, and are aware that they may hereafter discover legal or equitable claims or remedies or injuries or damages presently unknown, or <u>facts in addition to or different from those which they now know or believe to be true with respect to the allegations and subject matters in the complaint or other filings in the action.</u>" (Stlmt Agrmt, Doc #88, IX. A.4, p. 25). This contemplates the release of all conceivable claims that a class member might have against Southwest, including personal injury claims or other claims unrelated to drink vouchers/coupons. This overreaching, over sweeping approach is summed up best by the parties with the additional language: "Nevertheless, it is the intention of Plaintiffs and the Class Members to fully, finally and forever settle and release all such matters, and all claims and causes of action relating

thereto, which exist, hereafter may exist, or might have existed (<u>whether or not previously or currently asserted in the Action</u>). *Id.*

A release of claims without consideration results in a settlement that is not fair, reasonable or adequate, and is a settlement that a trial court cannot approve. *Reynolds v. Beneficial Natl. Bank, et al., 288 F.3d 277, 282-284 (7th Cir., 2002)*. Here, Southwest class members are "forever" releasing claims and causes of action including "facts in addition to" the allegations raised in the Amended Complaint. When members of a class are forced to release claims against the defendant that were never pursued by class counsel, it suggests a windfall of the part of class counsel. *Drennen v. PNC Bank Nat'l Ass'n (In re Cmty. Bank of Northern Virginia)*, 622 F.3d 275 at 285 (3rd Cir., 2010) referring to *In re Community Bank of N. Va.*, 418 F.3d 277 at 307-08 (3d Cir., 2005). "Failure to pursue such claims may suggest that class counsel abdicated their duty to the class in favor of the enormous class-action fee offered by defendants." *Id.* This Court should not approve this settlement, "In light of the broad release provision, which released the claims of the class members and left them with little or no relief, we determine that the certification of a mandatory class was violative of the class member's due process rights and that the consent decree was inadequate and fundamentally unfair. *Molski v. Gleich, 318 F.3d 937 at 942 (9th Cir., 2003)*.

Colorably, class members are waiving a cause of action for personal injury- particulary if the injury involved consumption of alcohol aboard a Southwest flight. No consideration is provided for the relinquishing of such additional causes of action, or claims, and as matter of law this Court cannot approve this proposed settlement with the current language that has been agreed upon between the parties.

## Conclusion:

With particular changes and improvements made to the proposed settlement, as discussed above and herein, this Court should approve the settlement for the class, and ultimately award Class Counsel

10

attorneys' fees. It is undisputed that the relief offered in this case was only one claim away from being denied in Defendant's Motion to Dismiss, and that the parties wish to see settlement occur. However, without the necessary changes discussed above, this proposed settlement will ultimately fail.

WHEREFORE, Objector Jonathan E. Fortman prays that this Court enter its Order with the following:

1) Requiring the parties to distribute drink vouchers to all class members for whom the parties have contact information by way of e-mail and Regular U.S. Mail, so that class members are not required to submit claims in order to receive benefits from the settlement;

2) Extend the claims period in order to allow all class members to receive their drink vouchers, and to provide an opportunity for those class members who did not receive their drink vouchers to request such from the Settlement Administrator;

3) Require the parties to allow the class members to redeem their drink vouchers with Southwest Airlines for Five Dollars ($5.00) within six (6) months of receipt of their drink voucher, by presenting same at any Southwest Airlines ticket counter;

4) Refrain from entertaining any award of attorneys' fees until the Settlement Administrator provides this Court with information concerning the number of drink vouchers redeemed, and base the attorney's fee award on the number of drink vouchers redeemed for cash or used by class members, with the attorney's receiving a percentage based on the total redemptions for all class members;

5) Require the parties to revise the Release language as it applies to class members releasing claims and causes of action against Defendant to be specific only to the factual allegations raised in the Plaintiffs' Amended Complaint, so as to make such release specific in nature and not overly broad in scope;

6) Any other relief this Court deems necessary within the premises.

*/s/ Jonathan E. Fortman*
Jonathan E. Fortman, Esq.

/s/ Steve A. Miller
Steve A. Miller (ILND Bar No. 8758)
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com


John C. Kress (53396MO)
The Kress Law Firm, LLC
4247 S. Grand Blvd
St. Louis, MO 63111
Ph.#: (314) 631-3883
Fax: (314) 332-1534
Email: jckress@thekresslawfirm.com

Maureen Connors (0074094OH)
6625 Pearl Road
Parma Heights, OH 44130
Phone: (216) 640-9860
Fax: (216) 504-4049
Email: maureenconnors@maureenconnorslaw.com

Attorneys for Objector Jonathan E. Fortman

# CERTIFICATE OF SERVICE

On this 11th day of April, 2013 this document and its exhibits were filed with the Clerk of Court and were deposited in the United States Mail, postage prepaid addressed to Joseph J. Siprut, Aleksandra M.S. Vold, H. Thomas Wells, Jr., Lorrie L. Hargrove, Mitesh Shah, Gregg McCormick:

| Clerk of Court<br>Northern District of Illinois,<br>Eastern Division<br>Everett McKinley Dirksen<br>United States Courthouse<br>219 South Dearborn Street<br>Chicago, Illinois 60604 | Joseph J. Siprut<br>Aleksandra M.S. Vold<br>SIPRUT PC<br>17 North State Street<br>Suite 1600<br>Chicago, Illinois 60602 | H. Thomas Wells, Jr.<br>Lorrie L. Hargrove<br>Mitesh Shah<br>Gregg McCormick<br>Maynard Cooper & Gale, P.C.<br>2400 Regions/Harbert Plaza<br>1901 Sixth Avenue North<br>Birmingham, Alabama 35203 |

                                            <u>s/Steve A. Miller</u>
                                            Steve A. Miller



EXHIBIT A

Subject: Southwest Airlines Drink Voucher Settlement
From: "Epiq Class Action & Claims Solutions, Inc." <notice@SouthwestVoucherSettlement.com>
Date: Fri, Jan 11, 2013 7:45 am
To: fortmanlaw@sbcglobal.net

*In Re Southwest Airlines Voucher Litigation, No. 11-CV-8176*

Legal Notice

# Did you receive a Southwest Airlines drink coupon through the purchase of a Business Select ticket prior to August 1, 2010, and never redeem it?

## If yes, a legal settlement provides a Replacement Drink Voucher, entitling you to a free drink aboard a Southwest flight, for every such coupon you did not redeem.

*A court authorized this notice. This is not a solicitation from a lawyer.*

A settlement has been proposed in a class action lawsuit about drink coupons received by customers of Southwest Airlines in connection with their purchase of Business Select tickets. The settlements will provide Replacement Drink Vouchers to Entitled Class Members.

The United States District Court for the Northern District of Illinois will have a hearing to decide whether to give final approval to the settlement so that Replacement Drink Vouchers can be distributed. The people in the Class may submit Claim Forms to request Replacement Drink Vouchers, may exclude themselves from the settlement, may object to the settlement, or may ask to speak at the hearing. Get a Detailed Notice by calling toll free the number below, or by visiting the website below.

**Who's included?** Southwest's records indicate that you may be a member of the Settlement Class. The Class includes anyone who received a drink coupon from Southwest prior to August 1, 2010, through the purchase of a Business Select ticket, but did not redeem the drink coupon. The Class does not include those who only obtained drink coupons through the Southwest Rapid Rewards program or as a result of being a member of the Southwest Rapid Rewards program.

**Who is sued?** Southwest Airlines Co. is the company sued.

**What does the settlement provide?** The settlement provides one Replacement Drink Voucher for every drink coupon received by a Southwest customer prior to August 1, 2010, through the purchase of a Business Select ticket, but never redeemed, subject to audit by Southwest. The Settlement also provides injunctive relief. The Settlement Agreement, available at www.SouthwestVoucherSettlement.com or by calling 1-888-288-2153, has the details about the proposed settlement.

**How do you ask for Replacement drink vouchers?** You must submit a Claim Form. You can file a Claim online by clicking this online claim link, or you may call 1-888-288-2153 to request a paper Claim Form be mailed to you. You can mail, fax, e-mail, or submit your Claim Form online. If you mail it, it must be post-marked by September 2, 2013 to the address on the Claim Form. If you submit it any other way, it must be submitted to the Settlement Administrator by midnight on September 2, 2013.

**Your other options.** If you don't want Class Relief from this settlement, and you don't want to be legally bound by it, you must exclude yourself by April 11, 2013 or you won't be able to sue, or continue to sue, Southwest about the claims in this case. If you ask to be excluded, you can't get Class Relief from this settlement. If you stay in the settlement, you may object to it by April 11, 2013. The detailed written notice available on the website below explains how to exclude yourself or object. You can also call the number below to hear about how to exclude yourself or object.

The Court will hold a hearing in this case, called *In Re Southwest Airlines Voucher Litigation*, No. 11-CV-8176, on May 21, 2013 to consider whether to approve the settlement and a request by the lawyers for fees, costs and expenses. You will not pay the lawyers representing the Class; they will be paid by Southwest. Class Counsel will be requesting attorneys' fees of up to $7,000,000. Southwest will not object to a fee of $1,750,000. If the Settlement is approved, Southwest will be released from all liability for the claims. The Settlement Agreement, located on the website below, explains this fully. You or your own lawyer may ask to appear and speak at the hearing, at your own cost, but you don't have to. For more information call toll free or visit www.SouthwestVoucherSettlement.com.

SOURCE: United States District Court for the Northern District of Illinois