**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| *In re Southwest Airlines Voucher Litigation* | ) ) ) ) | No. 11-CV-8176<br><br>Hon. Matthew Kennelly |

**PLAINTIFFS' COMBINED MOTION FOR FINAL APPROVAL
OF CLASS SETTLEMENT, AND RESPONSE TO OBJECTIONS AND COMMENTS**

Submitted by:

Joseph J. Siprut
*jsiprut@siprut.com*
Aleksandra M. S. Vold
*avold@siprut.com*
Greg M. Barbakoff
*gbarbakoff@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.948.9196
www.siprut.com

*Attorneys for Plaintiffs and the
Settlement Class*

**TABLE OF CONTENTS**

I.      INTRODUCTION...........................................................................................1

II.    PROCEDURAL HISTORY ...........................................................................2

III.   THE SETTLEMENT ....................................................................................4

          A.  Replacement Vouchers .................................................................4

          B.  Injunctive Relief..........................................................................5

          C.  Incentive Award to Class Representative .....................................5

          D.  Attorneys' Fees and Costs ...........................................................5

IV.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL THE REQUIREMENTS OF RULE 23 ..............................................6

          A.  Certification of the Proposed Settlement Class ...........................6

               1.   Numerosity – Federal Rule of Civil Procedure 23(a)......................................7
               2.   Commonality/Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)..................................................................7
               3.   Typicality – Federal Rule of Civil Procedure 23(a)(3) ...................................9
               4.   Adequacy of Representation–Federal Rule of Civil Procedure 23(a)(4) .......10
               5.   Superiority – Federal Rule of Civil Procedure 23(b)(3)................................11

V.    THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE FINAL APPROVAL ..............................................................................................11

          A.  Strength of the Case Measured Against the Settlement ........................................13

          B.  The Complexity, Length, and Expense of Continued Litigation ..........................16

           C.  The Amount of Opposition to the Settlement.......................................................16

           D.  The Presence of Collusion In Gaining a Settlement ............................................17

           E.  The Stage of the Proceedings and the Amount of Discovery Completed..............18

VI.   THE COURT APPROVED NOTICE PROGRAM SATIFIES DUE PROCESS ............20

VII.  RESPONSE TO OBJECTIONS AND COMMENTS ....................................................22

               1.   The low number of objections and opt-outs demonstrates that the Class has overwhelmingly accepted the settlement, and does not convey a "false positive" ................................................................................23

2.  Philosophical objections to the class action mechanism are not valid objections .................................................................................................................25

3.  The drink vouchers at issue in this litigation were not free, which is precisely why this case was meritorious .................................................................................26

4.  The Settlement occurred after discovery was essentially completed.....................27

5.  Plaintiffs' Motion for Attorneys' Fees was filed one week before the deadline for objections .........................................................................................................27

6.  The Class release is properly limited to claims asserted in *this* litigation .............28

7.  The replacement drink vouchers provided by this Settlement constitute meaningful (and appropriate) relief .......................................................................28

8.  The Class can and should be certified for settlement purposes .............................29

9.  No claims are time-barred......................................................................................30

10. The claims-made process was not only necessary here, but also in the best interests of Class members....................................................................................31

11. The parties' good-faith attempts to reach agreement on attorneys' fees is not a factor militating against settlement .......................................................................32

12. The negotiated incentive awards for the Class Representatives are appropriate and fair. ................................................................................................................33

13. This Settlement is not a coupon settlement under CAFA ......................................33

    a.  The Few Cases That Have Addressed This Scenario Support Plaintiffs' Position. ...................................................................................................36

        i.  "Gift certificate" litigation under the CARD Act............................36

        ii. Other Cases In Which Class Members Received In-Kind Relief When The Lawsuit Itself Related To The Same In-Kind Products or Services.................................................................................................37

14. No forced purchase is required here *that did not already exist*. .........................40

15. The value of the settlement was properly calculated based on the benefits made available ................................................................................................................40

16. The use of a lodestar multiplier to arrive at the parties' negotiated fee is appropriate .............................................................................................................42

# TABLE OF AUTHORITIES

## UNITED STATES SUPREME COURT CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591, 613 (1997) ...............................................................6, 29, 30

*Carson v. American Brands, Inc.*,
450 U.S. 79 (1981) ........................................................................12

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .......................................................................32

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011)....................................................................8

## UNITED STATES CIRCUIT COURT OF APPEALS CASES

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ........................................................11, 17

*Becherer v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*,
193 F.3d 415 (6th Cir. 1999) .........................................................23

*Butler v. Sears, Roebuck & Co.*,
2012 WL 5476831 (7th Cir. Nov. 13, 2012) ..................................8

*Churchill Village, L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .........................................................24

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) .......................................................14

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) ........................................................12, 13, 16

*General Elec. Capital Corp. v. Lease Resolution Corp.*,
128 F.3d 1074 (7th Cir. 1997) .......................................................12

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) .........................................................42

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir. 2002) .......................................................30

*In re Corrugated Container Antitrust Litigation*,
643 F.2d 195 (5th Cir. 2010) .........................................................19

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ...................................................................33

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ........................................................... *passim*

*Mars Steel v. Continental Ill. Nat'l Bank & Trust*,
834 F.2d 677 (7th Cir. 1987) ...................................................................17

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007) ....................................................................41

*Patterson v. Gen. Motors Corp.*,
631 F.2d 476 (7th Cir. 1980) .....................................................................8

*Rodriguez v. West Pub. Corp.*,
563 F.3d 948, 967 (9th Cir. 2009) ...........................................................24

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ....................................................................8

*Stern v. Gambello*,
2012 WL 1744453 (9th Cir. May 17, 2012) .............................................41

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F. 3d 646 (7th Cir. 2006) ...........................................................13, 40

*Williams v. MGM-Pathe Communications Co.*,
129 F.3d 1026 (9th Cir.1997) .............................................................32, 41

## UNITED STATES DISTRICT COURT CASES

*Bert v. AK Steel Corp.*,
2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ..........................................18

*Browning v. Yahoo! Inc.*,
2007 WL 4105971 (N.D. Cal. 2007) ...................................................24, 39

*Cannon v. Texas Gulf Sulphur Co.*,
55 F.R.D. 308 (S.D.N.Y. 1969) ...............................................................14

*Chakejian v. Equifax Info. Servs., LLC*,
275 F.R.D. 201 (E.D. Pa. 2011) ..............................................................33

*Domonoske v. Bank of Am., N.A.*,
790 F.Supp. 2d 466 (W.D. Va. 2011) .......................................................25

*Farrell v. Opentable, Inc.*,
2012 WL 1379661 (N.D. Cal. Jan. 30, 2012) ...........................................................37

*Fletcher v. ZLB Behring LLC*,
245 F.R.D. 328 (N.D. Ill. 2006)..................................................................................8

*Fleury v. Richemont N. Am., Inc.*,
2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) ......................................................33, 41

*Gomez v. Ill. State Bd. of Educ.*,
117 F.R.D. 394 (N.D. Ill. 1987)................................................................................10

*Grimsley v. Southwest Airlines Co.*,
No. 2:11-cv-3420-LSC (N.D. Ala.) .............................................................................2

*Hinman v. M and M Rental Ctr., Inc.*,
545 F. Supp. 2d 802 (N.D. Ill. 2008) .......................................................................10

*Hispanics United of DuPage Cty. V. Vill. Of Addison, Ill.*,
988 F. Supp. 1130 (N.D. Ill. 1997) ..........................................................................12

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ...................................................24, 25, 27, 30

*In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation*,
2011 WL 1790603 (W.D. Missouri, May 10, 2011) ..................................................38

*In re Cendant Corp. Secs. Litig.*,
109 F. Supp. 2d 235 (D.N.J. 2000) ..........................................................................14

*In re: Educational Testing Service Praxis Principles of Learning and Teaching, Grades 7–12*,
2006 WL 3332829 (E.D. La. Nov. 15, 2006) ...........................................................31

*In re Grand Theft Auto Video Game Consumer Litig.*,
251 F.R.D. 139 (S.D.N.Y.2008) ...............................................................................29

*In re Groupon, Inc., Marketing And Sales Practices Litigation*,
Case No. 11-md-2238 (S.D. Cal.) ......................................................................36, 37

*In re HP Power Plug and Graphic Card Litig.*,
2008 WL 2697192 (N.D. Cal. July 8, 2008) ............................................................38

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
280 F.R.D. 364 (N.D. Ill. 2011) .........................................................................28, 41

*In re Linerboard Antitrust Litig.*,
2004 WL 1221350 (E.D. Pa. June 2, 2004) ........................................................42

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ........................................................17

*In re Neopharm, Inc. Securities Litigation*,
225 F.R.D. 563 (N.D. Ill. 2004)........................................................9

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
106 F. Supp. 2d 721 (D. N.J. 2000) ........................................................32

*In re RJR Nabisco, Inc. Secs. Litig.*,
1992 WL 210138 (S.D.N.Y. Aug. 24, 1992)........................................................14

*In re TD Ameritrade Acc't Holder Litig.*,
2011 WL 4079226 (N.D. Cal. Sep. 13, 2011) ........................................................24

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ........................................................22

*Lipuma v. Am. Express Co.*,
406 F. Supp. 2d 1298 (S.D. Fla. 2005) ........................................................24

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
671 F. Supp. 819 (D. Mass. 1987) ........................................................32

*Manners v. Am. Gen. Life Ins. Co.*,
1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) ........................................................32

*Maxwell v. Arrow Fin. Servs., LLC*,
2004 WL 719278 (N.D. Ill. March 31, 2004)........................................................7

*McKinnie v. JP Morgan Chase Bank, N.A.*,
678 F. Supp. 2d 806 (E.D. Wis. 2009) ........................................................29, 41, 42

*Milliron v. T–Mobile*,
2009 WL 3345762 (D.N.J. Sep. 10, 2009) ........................................................31

*O'Brien v. Brain Research Labs*,
2012 WL 3242365 (D.N.J. Aug. 9, 2012) ........................................................25

*Olden v. LaFarge Corp.*,
472 F. Supp. 2d 922 (E.D. Mich. 2007) ........................................................23

*Pope v. Harvard Banchares, Inc.*,
240 F.R.D. 383 (N.D. Ill. 2006)..................................................................................7

*Radmanovich v. Combined Ins. Co. of Am.*,
216 F.R.D. 424 (N.D. Ill. 2003)..................................................................................9

*Scholes v. Stone, McGuire, & Benjamin*,
143 F.R.D. 181 (N.D. Ill. 1992)..................................................................................8

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................19, 31

*Smith v. Nike Retail Servs., Inc.*,
234 F.R.D. 648 (N.D. Ill. 2006)..................................................................................7

*Steinberg v. Nationwide Mut. Ins. Co.*,
224 F.R.D. 67 (E.D.N.Y.2004) .................................................................................30

*Subedi v. Merch.*,
2010 WL 1978693 (N.D. Ill. May 17, 2010) ...........................................................30

*Whitten v. ARS Nat'l Servs. Inc.*,
2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) ............................................................8

## STATUTES AND FEDERAL RULES

Fed. R. Civ. P. 23 ............................................................................................. *passim*

## MISCELLANEOUS

Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS
(4th ed. 2001). ............................................................................................................7

Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS
(4th ed. 2002) .............................................................................................................7

Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS
(3d ed. 1992) ............................................................................................................40

*Manual for Complex Litigation*
(4th ed. 2004) ..........................................................................................................20

Pursuant to Fed. R. Civ. P. 23, Plaintiffs Adam J. Levitt ("Levitt") and Herbert C. Malone ("Malone") (collectively "Plaintiffs"), by their counsel, respectfully submit the following as their Combined Motion for Final Approval of Proposed Class Settlement, and Reponses to Objections and Comments.  For reasons detailed below, Plaintiffs respectfully request that the Court enter an Order granting final approval of the Settlement as fair, reasonable, and adequate.

## I.  INTRODUCTION

This case is based on the allegation that Class Members purchased drink vouchers with no expiration dates, and that Southwest denied them the benefit of that bargain. Class Counsel has secured an incredibly strong and hard-fought settlement with Southwest that provides Class Members with the opportunity to receive replacement drink vouchers for *every* unredeemed drink voucher they purchased before Southwest began refusing to honor them, *plus* additional, meaningful, injunctive relief. In short, the settlement framework here gives every Class Member the opportunity to recover the *very thing* that Southwest took from them, at the rate of one hundred cents on the dollar.  Thus, a *100% recovery* was achieved for the Class.

The Settlement reached in this case – preliminarily approved by this Court on December 5, 2012 – should be granted Final Approval. After extensive notice was given to 2,492,625 Class Members in accordance with the Settlement Agreement (attached as Exhibit 1 hereto) and the Preliminary Approval Order, only 13 Class Members objected[1] to the Settlement (.0005% of the Class), and only 73 Class Members requested to be excluded from the Settlement (.002% of the

---

[1] The following individuals filed objections or comments: Gregory D. Psoinos (Docket No. 91); Michael E. Tigar (Docket No. 92); Eric Timmons (Docket No. 93); John S. Stevens (Docket No. 94); William James Campbell (Docket No. 95); Richard Durante (Docket No. 96); Courtney Moriarta (Docket No. 102); Gregory Markow (Docket No. 105); Jonathan E. Fortman (Docket No. 107); and Alison Paul (Docket No. 109). Counsel for the Parties also received a letter from Dennis J. Coyne and a joint objection from Dennis D. Gibson and Gleith E. Cozby.  The Coyne letter is attached hereto as Exhibit 2 and the Gibson/Cozby objection is attached hereto as Exhibit 3. Pursuant to the Court's April 16, 2013 Order, Plaintiffs will respond to all objections received below.

Class). As such, since the Class has overwhelmingly approved the Settlement after being provided notice, and since the Settlement is demonstrably an outstanding result that meets or exceeds the requisite standards, this Settlement should now receive Final Approval.

## II.    PROCEDURAL HISTORY

This Action was originally filed on November 16, 2011, alleging that by unilaterally cancelling drink vouchers issued as part of the higher-priced Business Select tickets, Southwest breached its contracts with its customers. (Docket No. 1.) Plaintiffs brought the case as a class action for breach of contract; unjust enrichment; and violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2. (*Id.*)

On December 21, 2011, Plaintiffs filed an Amended Complaint in this Action, narrowing the proposed class to: "All persons who reside in the United States and who procured unredeemed Southwest Airline Vouchers with the purchase of one or more Business Select tickets from Southwest" (Docket No. 23, p. 5), and adding a claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-1 (*Id.*, p. 11). Southwest moved to stay this Action based on the pendency of another lawsuit filed against Southwest in Alabama, also relating to Vouchers. *Grimsley v. Southwest Airlines Co.*, No. 2:11-cv-3420-LSC, (N.D. Ala.). (Docket No. 11.) Unlike the present case, however (which pertains to the Southwest Business Select program), the *Grimsley* action pertained to Southwest's Rapid Rewards ("frequent flyer") program. Southwest also moved to dismiss certain counts of the Complaint, contending that Plaintiffs' claims were preempted by the Airline Deregulation Act. (Docket No. 14.)

On March 5, 2012, the Court denied Southwest's motion to stay, and granted, in part, Southwest's motion to dismiss, dismissing all claims with prejudice except for the breach of contract claim. (Docket No. 46.) This ruling made the prosecution of Plaintiffs' claims against

Southwest significantly more challenging on the merits. Plaintiffs also filed a Motion to Strike Southwest's Affirmative Defenses on January 25, 2012. (Docket No. 30.) The Court granted Plaintiffs' Motion to Strike all but one of Southwest's affirmative defenses on January 31, 2012. (Docket No. 32.)

As discovery commenced, the Parties negotiated the terms of an extensive Protective Order. (Docket No. 57.) Over the course of the next several months, Plaintiffs were each deposed – Levitt in Chicago and Malone in Philadelphia. Five Southwest employees were also deposed, with four depositions taking place in Dallas and one taking place in Denver. In addition, the Parties each propounded and responded to Interrogatories and Requests for Documents, and produced and reviewed thousands of pages of documents.

After fact discovery was substantially completed, the Parties began discussing in earnest the possibility of settlement. After weeks of back-and-forth discussions between themselves, the Parties engaged in two full days of arm's length – and often spirited – mediation sessions over the course of two weeks with the Mediator, Judge Wayne Anderson (Ret.), in Chicago, Illinois. Judge Andersen is a former federal judge on the United States District Court for the Northern District of Illinois.

In addition to these in-person sessions, the Parties also engaged in numerous telephonic and written communications over the course of two months with the Mediator and between themselves, including submitting comprehensive letter briefs to the Mediator on specific areas of impasse. Throughout the mediation process, Southwest continued to deny any wrongdoing. Notwithstanding that fact, Plaintiffs and Southwest were eventually able to reach a settlement in principle on class-wide relief.

The Parties filed their Joint Motion for Preliminary Approval of Class Action Settlement on December 3, 3012. (Docket No. 83.) On December 5, 2012, this Court granted preliminary approval of this Settlement. (Docket Nos. 86, 89.) At that time, there was no agreement on attorneys' fees. The Parties continued negotiations over the next month on the amount of attorneys' fees and expenses, however, and were able to resolve that issue in January of this year. (Docket No. 90.)

## III.   THE SETTLEMENT

This Action was originally filed on November 16, 2011. In the year that followed, the Parties actively litigated this case, engaging in extensive motion practice; oral and written discovery; and, eventually, two all-day mediation sessions. After reaching agreement on the material terms of the class-wide settlement structure, the Parties then spent several more months with the mediator – via letters and phone conferences – negotiating the attorneys' fees issue.  In all, the Parties spent thousands of hours over the course of the last year and a half structuring the most fair, adequate, and reasonable settlement possible.

The proposed settlement provides the following:

### A.    Replacement Vouchers

Each Entitled Class Member[2] has been provided the opportunity to elect to receive a one Replacement Voucher for *each* and *every* Eligible Drink Voucher the Entitled Class Member received prior to August 1, 2010, in connection with the purchase of a Business Select ticket or otherwise, that was not redeemed by the Entitled Class Member. There is *no limit or cap on the number* of Replacement Vouchers per Entitled Class Member. For example, over 500 class members have requested between 26-50 Replacement Vouchers, which Southwest intends to

---

[2] All defined terms in this brief are intended to have the definitions assigned to them in the Settlement Agreement.

honor. The Settlement thus allows Entitled Class Members to recover *one hundred cents on the dollar* – a complete and total recovery. What is more, the Eligible Vouchers are freely transferable such that Eligible Class Members who do not intend to fly Southwest in the year following their receipt of the Replacement Drink Vouchers can sell their vouchers for cash.

### B. Injunctive Relief

In addition to allowing Entitled Class Members the ability to recover *all* of their unredeemed Vouchers, the Settlement also provides for meaningful injunctive relief. With respect to all Vouchers issued to Business Select customers after the date of settlement ("Post-Settlement Vouchers"), Southwest has agreed to implement and/or maintain the following business practices:

a) If Southwest includes expiration dates on the Post-Settlement Vouchers, Southwest agrees to honor the expiration dates on those Vouchers and neither retroactively invalidate them nor shorten the expiration period.

b) If Southwest restricts or limits use of the Post-Settlement Vouchers to the day of the flight for which the ticket was purchased, then Southwest agrees to include express, conspicuous language printed on the Post-Settlement Drink Voucher, stating that the Post-Settlement Drink Voucher may only be redeemed on the day of the flight, or that it is valid only on a specific date.

c) If Southwest fails to include expiration dates on the Post-Settlement Drink Voucher, then the Post-Settlement Vouchers may be redeemed on a Southwest flight at any point in time.

### C. Incentive Award to Class Representative

Subject to Court approval, Southwest has agreed not to oppose Plaintiffs' request for an incentive award of $15,000 to each Plaintiff in recognition of Plaintiffs' contributions to the Class, the time they spent assisting with the prosecution of this case, and the risk they incurred in commencing the action, both financial and otherwise.

### D. Attorneys' Fees and Costs

Subject to Court approval, Southwest has agreed not to oppose Plaintiffs' request for fees and costs of $3.03 million (total) to Class Counsel.[3] These benefits are paid directly by Southwest and do not reduce or dilute the Class benefits in any way.

## IV. THE SETTLEMENT CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL THE REQUIREMENTS OF RULE 23

### A. Certification of the Proposed Settlement Class

To certify a class under Rule 23, the Court must find that the proposed class meets the elements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2) or (3). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). "Settlement is relevant to class certification" and is "a factor in the calculus." *Id.* at 619, 622. Indeed, the Supreme Court "has expressly approved the use of the class settlement device." *Id.* at 618. Plaintiffs seek conditional certification of the Settlement Class under Rule 23(b)(3), their appointment as Class Representatives solely for the purposes of the Settlement, and appointment of their counsel as Class Counsel solely for the purposes of the Settlement.

The Plaintiff requests that the Court, for the purposes of settlement, certify a Settlement Class defined as:

> All Southwest customers who purchased an Eligible Drink Voucher through the purchase of a Business Select ticket or otherwise, during the time period before August 1, 2010, but who did not redeem the Eligible Drink Voucher.
>
> The Class does not include Southwest customers who obtained drink vouchers or drink coupons through the Southwest Rapid Rewards program or as a result of being a member of the Southwest Rapid Rewards program, unless those customers separately purchased, but did not redeem, Eligible Drink Vouchers through the purchase of a Business Select ticket or otherwise.

---

[3] Plaintiff previously submitted a Motion For Attorneys' Fees, Costs, Expenses, and Incentive Award on April 4, 2013, (Docket No. 103), which substantiated Plaintiffs' Counsel's fee request in detail.

As discussed further below, the proposed Settlement Class meets each of the requirements of Rules 23(a) and (b), and therefore, certification is appropriate.

1.    **Numerosity — Federal Rule of Civil Procedure 23(a).**

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement there is no specific number required, nor is a plaintiff required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). *See also* 3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2001). Instead, courts are permitted "to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, 2004 WL 719278, at *2 (N.D. Ill. March 31, 2004). Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *Pope v. Harvard Banchares, Inc.*, 240 F.R.D. 383, 387 (N.D. Ill. 2006).

In this case, as noted above, over 2.4 million individuals were affected by Southwest's policy change concerning the Vouchers. Accordingly, the Class satisfies the numerosity requirement. *See* NEWBERG ON CLASS ACTIONS § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands. . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

2.    **Commonality/Predominance — Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**

The commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts recognize that there may be factual differences between class members, but "factual variations among class members' claims" do not themselves "defeat

the certification of a class." *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980),

*cert. denied*, 451 U.S. 914 (1980); *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir. 1992),

*cert. denied*, 506 U.S. 1051 (1993). In fact, the threshold for commonality is not high. *Scholes v.*

*Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). Rather, commonality exists

if a common nucleus of operative fact exists, even if as to one question of law or fact. *Whitten v.*

*ARS Nat'l Servs. Inc.*, 2001 WL 1143238, *3 (N.D. Ill. Sept. 27, 2001) (commonality is often

found where "defendants have engaged in standardized conduct toward the members of the

proposed class."). *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) (stating that

"commonality requires that the claims of the class simply "depend upon a common contention . .

. of such a nature that it is capable of class-wide resolution—which means that determination of

its truth or falsity will resolve an issue that is central to the validity of each one of the claims in

one stroke.")

As alleged in Plaintiffs' Complaint, all Settlement Class members share common

questions of fact and law that predominate over issues affecting only individual Settlement Class

members. Those common factual and legal issues for the Settlement Class include (a) whether a

valid and enforceable contract existed as between Southwest and its Business Select customers

with regard to the Vouchers; (b) whether Southwest breached its agreements with Settlement

Class members; and (c) the value of the Vouchers. Accordingly, the commonality requirement is

met.

Additionally, Rule 23(b)(3) provides that a class action may be maintained where the

questions of law and fact common to members of the proposed class predominate over any

questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring*

*LLC*, 245 F.R.D. 328, 331-32 (N.D. Ill. 2006). "Predominance is a question of efficiency." *Butler*

*v. Sears, Roebuck & Co.*, 2012 WL 5476831, at *2 (7th Cir. Nov. 13, 2012). "A class action is the more efficient procedure for determining liability and damages in a case such as this, involving a defect that may have imposed costs on tens of thousands of consumers yet not a cost to any one of them large enough to justify the expense of an individual suit." *Id.* In this case, common questions predominate for the Class because Southwest's unlawful conduct is *identical* with regard to all members of the proposed Settlement Class. Thus, the predominance requirement is satisfied because liability and damages would have been decided predominantly, if not entirely, based on common evidence of Southwest's conduct.

### 3.     Typicality — Federal Rule of Civil Procedure 23(a)(3).

Rule 23 also requires that a plaintiff's claims be typical of other class members' claims. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if the plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a finding of typicality. *Id.* "Typicality does not mean identical, and the typicality requirement is liberally construed." *In re Neopharm, Inc. Securities Litigation*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) (citation omitted).

Here, Plaintiffs and the other Settlement Class members were all Business Select flyers, and have alleged that Southwest's unilateral cancellation (and retroactive invalidation) of their Vouchers was a breach of contract, which damaged Plaintiffs and the other Settlement Class members in the amount of $5 per unused Drink Voucher. Moreover, there are no defenses that

pertain to Plaintiffs that would not also pertain to the other Settlement Class members. Accordingly, Plaintiffs' claims are typical of the other Settlement Class members' claims.

### 4. Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, class representatives must establish that: (i) their claims are not in conflict with those of the proposed class, (ii) they have sufficient interests in the outcome of the case, and (iii) they are represented by experienced, competent counsel. *Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008). Furthermore, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Here, Plaintiffs' interests are consonant with the interests of the other Settlement Class members – obtaining relief from Southwest for its unilateral breach of the Parties contracts, and ensuring that Southwest does not continue such conduct in the future. Plaintiffs have no interests antagonistic to the interests of the other Settlement Class members. (*See* Declaration of Joseph J. Siprut ("Siprut Decl."), attached hereto as Exhibit 4, ¶ 20.) Moreover, Plaintiffs' counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have significant experience in consumer class actions involving similar issues, scope, and complexity. (*Id.*, ¶19.) Accordingly, both Plaintiffs and their counsel have adequately represented the Settlement Class.

5.      **Superiority — Federal Rule of Civil Procedure 23(b)(3).**

In addition to satisfying Rule 23(a), a plaintiff seeking certification must satisfy one of the provisions of Rule 23(b). Rule 23(b)(3) provides that matters pertinent to a finding of superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

The present class action is superior to other available methods for the fair and efficient adjudication of Plaintiffs' and the other Settlement Class members' claims. The burden and expense of individual prosecution of the litigation necessitated by Southwest's actions makes a class action superior to other available methods of resolution. Thus, absent a class action, it would be difficult, if not impossible, for individual Settlement Class members to obtain effective relief.

In sum, the Settlement Class meets the requirements of Rule 23(a) and 23(b)(3) and should be certified.

## V.      **THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE FINAL APPROVAL.**

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996); *Armstrong v. Bd. of Sch. Dirs. Of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). Courts look upon the settlement of lawsuits with favor because such settlements promote "the interests of litigants

by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by making it unnecessary to devote public resources to disputes that the parties themselves can resolve with a mutually agreeable outcome." *Hispanics United of DuPage Cty. V. Vill. Of Addison, Ill.*, 988 F.Supp. 1130, 1149 (N.D. Ill. 1997). Indeed, compromise is particularly appropriate in complex class action cases. *See id.*

In determining whether a district court should exercise its discretion to approve a class settlement as "fair," the Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement," *Isby*, 75 F.3d at 1198-99 (*citing E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985)), and has identified several factors for analyzing whether a class action settlement should be given final approval including: (1) the strength of the plaintiffs' case on the merits measured against the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; and (5) the stage of the proceedings and the amount of discovery completed. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also, e.g., Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*, 235 F.Supp. 2d 816, 818 (N.D. Ill. 2002). In weighing these factors, the district court should "recognize[] that the first factor, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby*, 75 F.3d at 1199.

The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986); *Isby*, 75 F.3d

at 1196-97. Instead, a court's inquiry should be "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196.

Likewise, the Seventh Circuit has urged district courts to be mindful that "[t]he essence of settlement is compromise," so "the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *Hiram Walker*, 768 F.2d at 889. Indeed, a district court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Analysis of all these factors weighs in favor of finally approving the Settlement.

### A. Strength of the Case Measured Against the Settlement

The "most important factor relevant to the fairness of a class action settlement" is the "strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

Plaintiffs assert that Southwest breached its contract with its Business Select customers by refusing to accept (and retroactively invalidating) Vouchers that did not show a printed expiration date, or that were not used on the date of the ticketed travel. Plaintiffs contend that the $5 value of the Vouchers was included in the purchase price of their Business Select tickets. Plaintiffs thus allege that each Business Select customer's purchase of airfare tickets constituted a contract, supported by bargained-for consideration, which included a Voucher with no expiration date. For that reason, Plaintiffs allege that when Southwest decided not to honor those Business Select Vouchers, Class Members were denied the benefit of their bargain with Southwest.

Class Counsel and Plaintiffs believe they have a strong case that Southwest's conduct constituted a breach of its contracts with its customers.[4] Plaintiffs believe that through discovery and their independent investigation, they would be able to establish at trial that Southwest's actions were unlawful.

While Plaintiffs believe in the strength of their case, they must, however, realistically acknowledge several factors which counsel acceptance of this Settlement. Southwest denies liability and contends that it was never Southwest's intention to allow consumers to use Business Select Vouchers with no date restrictions or expirations. Rather, Southwest's informal practice of allowing consumers to redeem Vouchers after the date of ticketed travel was an accommodation. Southwest further asserts that any class certification motion would be denied and that Plaintiffs will not be able to demonstrate typicality, ascertainability, or superiority. Clearly, one of the factors to be considered as to the fairness of a class action settlement is a defendant's willingness and ability to mount just such a vigorous defense.

While Plaintiffs strongly believe that they could overcome these defenses, they cannot responsibly ignore the risk that this Court or a reviewing court might not accept all of their arguments. Additionally, there are other risks and uncertainties relating to liability and proof of compensable damages on a class-wide basis. These litigation risks, coupled with the substantial

---

[4] When analyzing a settlement, a court should take counsels' and the parties' views into account. *In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class.") (citation and internal quotation marks omitted); *In re RJR Nabisco, Inc. Secs. Litig.*, Nos. MDL No. 818 (MBM), 88 Civ. 7905 (MBM), 1992 WL 210138, at *4, (S.D.N.Y. Aug. 24, 1992) (court "should give deference, when considering the fairness of the proposed settlement, to the judgment of experienced class counsel"); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (holding that in analyzing a class settlement, a trial court may rely on the judgment of experienced counsel and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"). Also significant is the fact that Michaels and its counsel support this Settlement. *Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308, 316 (S.D.N.Y. 1969) (the Court may consider the views of all involved counsel when deciding whether to approve a settlement).

material benefits the Settlement will garner for Settlement Class Members, weigh in favor of final approval of the Settlement. While Plaintiffs believe in the strength of their liability case, they must realistically recognize that a finding of no liability is possible.

Also, the sheer amount of time it will take to litigate the case to conclusion weighs in favor of accepting the Settlement now. Under this Settlement, the Settlement Class will realize substantial and immediate benefits once the Settlement is approved. As explained above, the Settlement allows Settlement Class Members to be made completely whole by receiving replacements – on a full-value, one-to-one basis – for the very Vouchers that are at issue in this case. Importantly, Eligible Class Members receive these Replacement Vouchers without any decrease in value or additional conditions, and are not limited as to how many Replacement Vouchers they can request and receive.[5] The Settlement also allows Settlement Class Members to sell their Replacement Vouchers if they want cash or to gift or otherwise transfer their Replacement Vouchers, should they so desire. Thus, Settlement Class Members will not only receive a tangible benefit from the proposed relief; they will recover, in full, the very thing taken from them by Southwest.

Some objectors have myopically argued that the millions of dollars in benefits conferred from the Settlement is not enough. But a settlement will not be rejected simply because it does not provide a complete victory to the plaintiffs (assuming that "complete victory" could be defined within the context of this litigation). *See Hiram Walker,* 768 F.2d at 889. While it might be possible that, if the case were litigated to a conclusion, some Class members would be able, at some unknown point in the future, to obtain a greater recovery through individual proceedings, it is also possible they could get less or nothing at all. In fact, it is highly unlikely that Plaintiffs

---

[5] The Replacement Vouchers will take the form of the vouchers typically used by Southwest as part of its Rapid Rewards program, and will expire one year after issuance.

would be able to obtain a better outcome in this case even after a trial on the merits. Moreover, that recovery would be years in the future, at significantly greater expense to the Class. There is a significant risk that the Class would receive less or nothing at all if litigation proceeded to the bitter end.

This first factor – which the Seventh Circuit has reiterated is "the most important" one, *Isby*, 75 F.3d at 1199; *Hiram Walker*, 768 F.2d at 889 – weighs strongly in favor of approving the Settlement because the putative class would receive substantial benefits despite Southwest's colorable defenses. A comparison of the many obstacles to success on the merits in this class action against the monetary and other benefits contemplated by the Settlement Agreement supports the conclusion that this Settlement is fair, reasonable and adequate.

### B. The complexity, length, and expense of continued litigation

Due to the nature of Plaintiffs' case, trial will require an examination of economic and marketing experts – presented by both Parties – as well as an examination of Plaintiffs and a number of Southwest's current and former employees. In addition, Southwest intends to assert a number of affirmative defenses that it contends bar Plaintiffs' claims in whole or in part. The uncertainty as to whether these affirmative defenses apply in this case creates substantial risk for both sides. Plaintiffs and proposed Class Counsel also recognize that the expense, duration, and complexity of protracted litigation would be substantial, and require further briefing on numerous substantive issues, evidentiary hearings, and further discovery and the gathering of evidence and witnesses.

### C. The amount of opposition to the Settlement

Since this Court granted preliminary approval of the Settlement on December 5, 2012, only 13 individuals objected to the Settlement and only 73 individuals opted out. The Settlement Administrator successfully sent individual notice to 2,468,646 Class members. (Declaration of

Cameron R. Azari (the "Azari Decl."), attached hereto as Exhibit 5, ¶¶10-12.) Thus, using the number of class members as a metric, there has been almost no opposition to the settlement. *See In re AT& T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F.Supp.2d 935, 961 (N.D. Ill. 2011) ("[I]t is illuminative that only a tiny fraction of the Class Members saw fit to opt out or to object."); *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that "99.9% of class members have neither opted out nor filed objections. . . is strong circumstantial evidence in favor of the settlements"), *aff'd*, 267 F.3d 743 (7th Cir. 2001). Altogether, opposition to the Settlement came from less than .003% of the Class. Moreover, as discussed in detail below, none of the objections filed present a persuasive argument on why this Settlement should not receive final approval. Thus, this factor weighs strongly in favor of final approval.

### D.  The lack of collusion in reaching a Settlement

Courts generally presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion in the absence of evidence to the contrary. *See Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681-82 (7th Cir. 1987); *Armstrong*, 616 F.2d at 325. This presumption is applicable here. The Settlement was reached only after two private mediation sessions followed by continued, protracted and often spirited arm's-length negotiation by experienced counsel. (*See generally* Declaration of Hon. Wayne Anderson (Ret.) ("Anderson Decl."), attached hereto as Exhibit 6; Siprut Decl., ¶¶12-13.) This Settlement is not the result of collusion between the parties to compromise the rights of absent class members. To the contrary, notwithstanding the many impediments to recovery by the Class, Plaintiffs and Southwest have reached a settlement that results in all Settlement Class Members getting certain, immediate and meaningful benefits.

Negotiations began after Plaintiffs' First Amended Complaint had largely survived a vigorously contested motion to dismiss and motion to stay, and only after substantial oral and written discovery had been completed. (Siprut Decl., ¶¶10-12.) As noted above, the settlement negotiations were difficult and protracted, started only after certain legal issues were clarified by the ruling on the motion to dismiss, and extended over approximately five months, during which time the Parties utilized the assistance of an experienced and respected mediator, the Hon. Wayne Anderson (Ret.).[6]

Moreover, no discussion of attorneys' fees or costs or compensation to Plaintiffs occurred prior to the agreement between Southwest and Plaintiffs on substantive portions of the Agreement related to the benefits the Settlement would confer on the Settlement Class. (Anderson Decl., ¶6; Siprut Decl., ¶17.) The first discussion of these fees took place on August 27, 2012, in the presence of the independent mediator, and only after the substantive terms of the Agreement had been worked out. (Anderson Decl., ¶6.)

Over the course of the next three months, the parties continued to negotiate, with the assistance of Judge Anderson, via telephone calls and written submission. (*Id.*, ¶18.) The $3 million fee agreement was reached as a result of considerable compromise on both sides, and not as a result of any agreement of the total number of Vouchers Class members could claim. The Settlement is thus not the product of collusion in any way, as the Court has already ruled. This factor weighs in favor of final approval.

### E. The Stage of the Proceedings and the Amount of Discovery Completed

The last factor to be considered by the Court is the stage of the proceedings and the amount of discovery completed. "This factor is relevant because it determines 'how fully the

---

[6] *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.") (citations omitted).

district court and counsel are able to evaluate the merits of plaintiffs' claims.'" *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2001) (internal citations omitted).

By virtue of extensive oral and written discovery, Plaintiffs believe they possess the evidence needed to establish their *prima facie* case and defeat Southwest's defenses. Southwest has provided Plaintiff with information relating to Southwest's marketing practices, policies concerning the issuance (and subsequent revocation) of Vouchers, internal valuation of the Vouchers, and empirical data concerning the number of Vouchers in circulation. Plaintiffs have also supplied Southwest with testimonial and documentary evidence supporting their contentions in the Complaint. As such, counsel for each party has sufficient information to assess the strengths, weaknesses, and likely expense of taking this case to trial.

While the parties have exchanged extensive information and taken multiple depositions to evaluate the strength of Plaintiffs' contentions (and Southwest's defenses), the amount of discovery taken is not a prerequisite to a class action settlement. Courts have noted that, "the label of 'discovery' [either formal or informal] is not what matters. Instead, the pertinent inquiry is what facts and information have been provided." *Schulte*, 805 F. Supp. 2d at 587 (internal citation omitted). *See also in re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 2010) ("It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted.") (emphasis omitted). Here, information more than sufficient to make a reasonable and informed decision has been procured, meaning that there was a reasonable, informed basis to evaluate the Settlement.

Class Counsel conducted a detailed investigation into the facts and law relating to the matters alleged in the Complaint. (Siprut Decl., ¶6.) In addition, Plaintiffs' claims survived a

hard-fought motion to dismiss, which helped the Parties to evaluate the relative merit of their claims and defenses. (*Id.*, ¶8.) For the next eight months, the Parties participated in extensive oral and written discovery. (*Id.*, ¶9.) Starting in August 2012, Plaintiffs and Class Counsel conducted intensive arm's-length negotiations with Southwest through mediation, numerous telephonic conferences and the exchange of numerous written proposals. (*Id.*, ¶¶11-13.) Through Class Counsel, Plaintiffs also conducted informal discovery concerning the size of the Class, which allowed them to set an estimated value on the monetary benefit to be received by the Settlement Class. *See* MANUAL FOR COMPLEX LITIGATION (Fourth), § 11.423 (2004) (noting that informal discovery is a recognized method of minimizing the cost, delay and burden associated with formal discovery). Therefore, actual litigation – rather than the mere threat of litigation – informed the settlement negotiations. Thus, this factor weighs in favor of final approval.

## VI.    THE COURT-APPROVED NOTICE PROGRAM SATISFIES DUE PROCESS

The Parties effectuated class notice in a reasonable manner that was calculated to reach as many Class Members as possible who would be bound by the Settlement. In this case, individual notice to Settlement Class Members was effectuated for 99.9% of the Class, and website and publication notice was further available for the remaining .1%. Given the success of the individual notice, the notice plan approved by the Court on December 5, 2012 (Docket No. 86) provided the best notice practicable to apprise the Settlement Class of the pendency of this Lawsuit, afforded them an opportunity to opt out of or present any objections to this Settlement, and complied fully with due process, as already found in the Preliminary Approval Order. *Id.*

Southwest and its retained Claims Administrator – Epiq Systems, Inc. – provided the Class with Notice of the proposed settlement by the following methods, previously approved by the Court:

• **Internet Posting**. On January 10, 2013, the Claims Administrator set up an Internet website (the "Website") and posted the relevant documents, including but not limited to, all applicable deadlines; the Class Notices; instructions on how to submit Claims online or by mail or facsimile; FAQs and answers; orders of the Court pertaining to the Settlement; the Settlement Agreement and all supporting exhibits; a toll-free telephone number and addresses to contact the Settlement Administrator by e-mail and mail; the Preliminary Approval Order; and the Notice of Parties' Agreement on Attorneys' Fees. (Azari Decl., ¶16.) The Website was designed and constructed to accept electronic Claim Form submission. (*Id.*)

• **Individual Notice.** From January 11-14, 2013 the Settlement Administrator sent, via email, the Class Email Notice to each person named on the List of Potential Class Members. (Azari Decl., ¶10.) In total, 2,243,330 initial e-mails were sent.[7] (*Id.*) Southwest supplied a List of Potential Class Members to the Settlement Administrator, which included the Settlement Class Member's name and the e-mail address that the Settlement Class Member previously provided to Southwest. (*Id.*, ¶9.) The Class E-mail Notice informed Settlement Class Members of the Settlement, that a Claim Form is available on the website, and of the Class Benefits available. (*Id.*, ¶10.)

For potential Class Members whom: (1) no e-mail address was provided, (2) an invalid e-mail address was provided, or (3) the Class E-mail Notice was undeliverable via the e-mail address provided, the Settlement Administrator sent those Class members a Summary Postcard Notice via United States Postal Service first-class mail, if a physical address was available. (*Id.*, ¶ 11.) As of April 26, 2013, the Settlement Administrator mailed 249,756 Summary Postcard

---

[7] The Settlement Notice Plan provided a procedure for the Class E-mail Notice and other follow-up notice, as necessary. For example, if an e-mail to a Settlement Class Member was returned undeliverable, the Settlement Administrator attempted to send notice to that Settlement Class Member by First Class U.S. Mail, if the mailing address was known to Southwest.

Notices to Class Members for whom a valid physical address was available. (*Id.*) Only 23,979 of those mailings were undeliverable. (*Id.*, ¶ 12.) Thus, over 99% of the Class received individual notice.

- **Publication Notice.** On January 28, 20132013, the Settlement Administrator began Publication Notice. (*Id.*, ¶15.) The Publication Notice ran in the national edition of the USA Today, which has a circulation of 1,628,526. (*Id.*)

Accordingly, the form and method of notice given to class members satisfies all the legal requirements of Rule 23, as well as the constitutional due process requirements.

## VII. RESPONSE TO OBJECTIONS AND COMMENTS

Out of 2,492,625 Class members, only 13 have asserted objections to the Settlement. As an initial matter, however, with the exception of Markow and Fortman, none of the objectors have complied with the disclosure requirements for filing an objection, and therefore these objections should be disregarded per this Court's order. *See* Preliminary Approval Order, Docket No. 89, ¶19 ("No person shall be heard and no paper or brief submitted by any objector shall be received or considered by the Court unless such person has filed with the Clerk of Court and timely mailed to Settlement Class Counsel and Defendant's Counsel, as provided above, the concise written statement of objections as described above."). On this basis alone, those objections should be disregarded because they are not properly before the Court. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL 3:07-MD-1827 SI, 2011 WL 7575004, at *3 (N.D. Cal. Dec. 27, 2011) (holding that failing to follow proper procedures for lodging objection is grounds for court "refus[ing] to consider the objection.").

Similarly, one objector also opted out of the Class,[8] which deprives him of standing to object. Because such individuals have opted out of the Settlement Class, they cannot also object. *See* Fed. R. Civ. P. 23(e)(4) (only "class member[s] may object to a proposed settlement"); *see also Olden v. LaFarge Corp.,* 472 F. Supp. 2d 922 (E.D. Mich. 2007) ("opting out of a settlement and choosing to object . . . are mutually exclusive options: if one actually opts out, she has no standing to object to the settlement as she will not be bound by it.") (*citing Becherer v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 193 F.3d 415, 426 (6th Cir. 1999)).

Another objector apparently filed a claim and has sought benefits provided by the Settlement,[9] which is self-defeating, to say the least. Three objectors never properly filed their objection, and instead simply sent copies of their objection to counsel of record.[10] And finally, another objector did not bother to make a single independent argument, and instead simply incorporated all other arguments made by other objectors as the basis for his objection.[11]

Despite these infirmities, each of the objections (and "comments") to the Settlement are addressed on the merits below. Because the arguments asserted in the various objections overlap with or repeat one another, we have distilled each of the separate points raised in each of the objections (but without repeating them), in each instance noting in a footnote which objector asserted that particular argument.

1. **The low number of objections and opt-outs demonstrates that the Class has overwhelmingly accepted the settlement, and does not convey a "false positive."**

Out of 2,492,625 Class members, only 13 have asserted objections to the Settlement. One objector claims that the low level of opposition does not necessarily demonstrate the Class has

---

[8] Objection of John S. Stevens (Docket No. 94).
[9] Objection of Daniel Sibley (Docket No. 116).
[10] Objection of Dennis J. Coyne (unfiled, attached hereto as Exhibit 2); Objection of Gleith E. Cozby and Dennis D. Gibson (unfiled, attached hereto as Exhibit 3).
[11] Objection of Alison Paul (Docket No. 110).

reacted favorably to the settlement, because there are costs to objecting that serve as a purported roadblock.[12] This is simply not the law.

Courts have repeatedly held that such an "infinitesimal" amount of opposition *is* a factor strongly favoring approval of the Settlement. *See Lipuma v. Am. Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005) (explaining that 1,159 opt-outs and 41 objections out of approximately nine-million notices sent supports approval); *accord Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (explaining that "court ha[s] discretion to find a favorable reaction . . . among class members" where there were "only fifty-four submitted objections" out of 376,301 class members receiving notification); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of class action settlement with 45 objections from a 90,000 person class); *In re TD Ameritrade Acc't Holder Litig.*, 2011 WL 4079226, at *7 (N.D. Cal. 2011) (finding that reaction of class was "positive" where there were "only 23 [objections] and less than 200 [opt-outs]" out of six million class members receiving notice); *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *12 (N.D. Cal. 2007) (139 objections out of 14 million or "1 objector for every 100,720 class members" is a "low" rate "even compared to objection rates in similar class action settlements.").

And while some Objectors claim that the process for objecting here was somehow onerous because the Objectors had to make various disclosures (which were mostly ignored by the objectors anyway) and potentially subject themselves to discovery, those protests are similarly infirm.[13] Courts have repeatedly held not only that objectors are properly subject to discovery, but that advising Class members (properly) of this prospect is not objectionable. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F.Supp.2d 935, 970 (N.D. Ill.

---

[12] Objection of Gregory Markow (Docket No. 105).
[13] Objection of Daniel Sibley (Docket No. 116); Objection of Gregory Markow (Docket No. 105).

2011) (Objectors "object to the statement in the class notice that objectors may be subject to depositions. They do not explain why this feature of the class notice is objectionable. . . . Apprising objectors of their legal rights and obligations is entirely proper, even if such notification has a marginal deterrent effect.").

## 2. Philosophical objections to the class action mechanism are not valid objections.

Several Objectors also express general disapproval of the relief, the attorneys' fees, the lawsuit, or class actions in general.[14] These types of "philosophical" objections are inevitable in large class actions and thus aren't considered to "impugn the adequacy of the settlement itself." Put simply, reform of the Federal Rules of Civil Procedure and this country's long history of supporting class actions is not before the Court. *See, e.g.*, *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d at 982 (rejecting similar objections and granting final approval). *See also Domonoske v. Bank of Am., N.A.*, 790 F.Supp.2d 466, 474 (W.D. Va. 2011) (in class of three-million, "most of the 59 objections show a philosophical disagreement with class action litigation, a general disagreement with this litigation in particular, or dissatisfaction with class counsel's requested attorney's fees"); *accord O'Brien v. Brain Research Labs, LLC*, 2012 WL 3242365, at *25 (D.N.J. Aug. 9, 2012) (discounting statement which "embodies the objector's personal views about class action litigation generally [specifically that the 'only group that makes a large profit are the lawyers representing the plaintiff groups'] and is not addressed to the specifics of this settlement").

These Objectors also muse that the costs of this Settlement will also be passed on to Southwest's customers (*i.e.*, to Class Members). But their concern is equally true of each and every settlement that secures any award against a corporate defendant, whether it be in a class

---

[14] Objection of Richard Durante (Docket No. 96); Objection of William James Campbell (Docket No. 95); Objection of John S. Stevens (Docket No. 94); Objection of Lisa Kristel (Docket No. 97); Objection of Dennis J. Coyne (unfiled, attached hereto as Exhibit 2).

action or governmental action. That concern is not unique to this Settlement, and does not call into question its fairness. Furthermore, their concern is not even a realistic one, as market conditions keep prices in check, and – as Southwest itself has stated in its papers – this settlement will have no material effect on prices or rates.

Finally, Objector Michael Tigar's objections include a series of arguments that appear dedicated to advancing some sort of political or ideological agenda, and have nothing to do with anything properly before the Court.[15] Tigar claims that Southwest's policy of "offering free booze may violate public policy in some states," and that the Settlement is not in the interests of Class members because it encourages alcohol consumption (and some people shouldn't drink). This is entirely irrelevant.

> **3.    The drink vouchers at issue in this litigation were *not* free, which is precisely why this case was meritorious.**

Several Objectors also claim that the drink vouchers at issue in this litigation were "free," or entitled consumers to "free" drinks, and that this lawsuit is purportedly frivolous.[16] As explained above, these arguments are not proper objections in the first place. But they also miss the point. The drinks vouchers issued by Southwest to Business Select customers ***were not free***. That is the point. Consumers paid for the vouchers through the price of their ticket (at a premium), and were entitled to the benefit of the bargain – which means vouchers with no expiration.

---

[15] Objection of Michael E. Tigar (Docket No. 92).

[16] Objection of Richard Durante (Docket No. 96); Objection of Courtney Moriarta (Docket No. 102); Objection of Gregory D. Psoinos (Docket No. 91); Objection of David Eric Timmons (Docket No. 93); Objection of Lisa Kristel (Docket No. 97); Objection of Dennis J. Coyne (unfiled, attached hereto as Exhibit 2).

Another Objector seems to claim that Plaintiffs' case is too weak to ever prevail and (as we understand it) this somehow militates against approval of the Settlement.[17] Not only is this wrong for the reasons explained above, but if Plaintiffs' case were as weak as this Objector seems to believe, that would *support* settlement, not undermine it, because Class members' recovery is even more impressive when measured against alternative recoveries.

### 4. The Settlement occurred after discovery was essentially completed.

One Objector complains that almost no discovery had occurred by the time of the Settlement, which militates against its approval.[18] Not so. As our Motion for Preliminary Approval (Docket No. 85) and subsequent Motion for Attorneys' Fees (Docket No. 103) detailed, the Settlement was reached only after discovery was nearly *completed* – which included thousands of pages of documents and written discovery, and several months of depositions.

### 5. Plaintiffs' Motion for Attorneys' Fees was filed one week before the deadline for objections.

The same Objector also claims that Plaintiffs' fee petition was not filed until after the deadline for objections.[19] While it is true that his objection was filed (by his choice) before the deadline for Plaintiffs to submit their Motion for Attorneys' Fees, the deadline for objections did not lapse until one week after the Motion for Attorneys' Fees was filed. Of course, this was no accident, as this was structure was carefully assembled (and approved by the Court) at the preliminary approval stage. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d at 969 ("The Court required Class Members to file objections by February 2, 2011, and Class Counsel to file its application for Class Representatives' fees, attorneys' fees, costs, and expenses by January 26, 2011. Class Counsel in fact filed its motion for approval of attorneys'

---

[17] Objection of Daniel Sibley (Docket No. 116).
[18] Objection of Daniel Sibley (Docket No. 116).
[19] Objection of Daniel Sibley (Docket No. 116).

fees, costs, and expenses, and for approval of incentive awards on January 26, 2011. Objectors are therefore incorrect that Class Counsel did not file an attorney-fee application prior to the objection deadline.").

**6.      The Class release is properly limited to claims asserted in *this* litigation.**

One Objector argues that the Class release included in the Settlement is too broad, because it would purportedly waive and release all claims against Southwest of any kind.[20] Of course, this is not a correct reading of the release. The release bars any claims that were or could have been the subject of *this litigation*, which is consistent with any specific (as opposed to general) release.[21]

**7.      The replacement drink vouchers provided by this Settlement constitute meaningful (and appropriate) relief.**

Several Class Members complain that the Settlement provides replacement drink vouchers instead of cash. This objection fails on a number of levels.[22] First, drink vouchers are the very thing that Class Members were wrongfully deprived of, which is the whole point of the case. Replacing (in full, no less) the very thing that was taken from Class Members through a settlement is not only not objectionable; it is ideal. *See also In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 375-76 (N.D. Ill. 2011) ("The stated value of the unredeemed coupons in this case is $3.99 per coupon, and the settlement provides

---

[20] Objection of Jonathan E. Fortman (Docket No. 107).

[21] *See* Settlement Agreement (Docket No 88, §IX.A.1) ("In return for the consideration provided in the Agreement, Plaintiffs and Releasors shall release, acquit and forever discharge the Releasees from the Released Claims, including but not limited to any and all past, present, and future causes of action, claims, damages (including but not limited to compensatory damages and punitive damages), or any other damages, awards, equitable, legal and administrative relief, interest, demands or rights that are *based upon, related to, or connected with, directly or indirectly, in whole or in part (1) the Released Claims; or (2) the allegations, facts, subjects or issues that were, could have been, may be or could be set forth or raised in the Action*.") (emphasis added).

[22] Objection of Daniel Sibley (Docket No. 116); Objection of Jonathan E. Fortman (Docket No. 107).

that Settlement Class members submitting Original Coupons will receive that amount. Settlements in which "claiming class members will be made whole" have been found "eminently reasonable." (citing *McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F.Supp.2d 806, 811–12 (E.D. Wis. 2009)).

Moreover, the standard for approval is not whether some alternative scenario (such as litigating the case for the next two years through trial and appeal) could possibly result in a greater recovery – "the essence of a settlement is compromise." *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996). And, as explained above, Southwest had serious defenses on the merits that it consistently asserted throughout this case. Against this standard, the Settlement easily surpasses the requisite standards for approval.

### 8.    The Class can and should be certified for settlement purposes.

Certain Objectors also claim that certification for settlement purposes is inappropriate here because no class could be certified on a contested basis.[23] These objections fail. It is true that "[s]ettlement does not relieve the Court of its duty to perform a robust analysis of the plaintiffs' predominance showing." *In re Grand Theft Auto Video Game Consumer Litig.,* 251 F.R.D. 139, 156 (S.D.N.Y.2008). The Supreme Court has made clear, however, that "settlement is a factor in the calculus" of whether "certification is proper." *Amchem,* 521 U.S. at 623.

Although some of the Objectors claim (without development) that conflicts of laws preclude certification, that argument also fails. For one, the predicate claim here is for breach of contract. Classes involving breach of contract claims arising out of a form contract (as here) are frequently certified. Courts have found that "claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract

---

[23] Objection of Daniel Sibley (Docket No. 116); Objection of Michael E. Tigar (Docket No. 92).

cases are routinely certified as such." *Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67, 74 (E.D.N.Y.2004) (collecting authorities); *see also Subedi v. Merch.,* 2010 WL 1978693, *6 (N.D. Ill. May 17, 2010) ("Plaintiffs claim that Defendants engaged in standardized conduct that violated specified laws, and the class will therefore be cohesive").

Even if the laws of all 50 states were pled and at issue, which they are not, the result would not change. The impediment to a contested class certification posed by application of innumerable state laws is one of *manageability,* see *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1018 (7th Cir. 2002) ("[b]ecause these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable"), which is not a concern in certification of a settlement-only class.

The Supreme Court has explicitly stated that a District Court need not look into manageability when certifying a class for settlement purposes: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem,* 521 U.S. at 620. This manageability problem is not present when certifying a class for settlement purposes, even if differing state laws are at issue (which they are not). *In re AT & T Mobility Wireless Data Services Sales Tax Litig.,* 789 F.Supp.2d at 974 ("The fact that the claims also implicate the laws of different states does not defeat predominance for the purpose of certifying a settlement class.").

### 9. No claims are time-barred.

One objection[24] claims that some Class Members' claims are time-barred, while others are not, and this purportedly creates an intra-Class conflict. There are no time-barred claims,

---

[24] Objection of Gleith E. Cozby and Dennis D. Gibson (unfiled, attached hereto as Exhibit 3).

since the statute of limitations for contract claims exceeds the time period within which Southwest administered the Business Select program.

**10.    The claims-made process was not only necessary here, but also in the best interests of Class members.**

Several Objectors also complain about the requirement that they submit claims to receive settlement benefits, and instead contend all Class Members should have received replacement vouchers directly.[25] This was not possible. As we explained in our Motion for Preliminary Approval, Southwest tracked how many vouchers were issued, but not how many were *redeemed* – and certainly not how many were redeemed by each particular Class Member.

The Settlement framework here allows Class Members to submit claims for all the vouchers they paid for but never redeemed. In any other framework, such as simply mailing one voucher to everyone, Class members (at least those who were entitled to more than one) would have done *worse* under this framework.

In all events, "there is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment." *Schulte,* 805 F. Supp. 2d at 593-94. *See also Milliron v. T–Mobile,* 2009 WL 3345762, *6 (D.N.J.2009) ("The Court finds it perfectly appropriate to require Class Members to submit certain information proving they are entitled to collect the relief awarded in this case"); 3 NEWBERG ON CLASS ACTIONS § 8:45 (4th ed.) (settlements employing proof of claim requirement are "commonly employed" in consumer fraud cases).

And finally, it must be noted that the direct distribution of settlement benefits is no cakewalk. *See, e.g., In re: Educational Testing Service Praxis Principles of Learning and Teaching, Grades 7–12,* 2006 WL 3332829, at *2 (E.D. La. Nov. 15, 2006) (overruling objection

---

[25] Objection of Daniel Sibley (Docket No. 116); Objection of Jonathan E. Fortman (Docket No. 107).

that a "claims process for the expedited payments was unnecessary because the names and addresses of [class members] are known" and checks could therefore be mailed directly to class members; finding that claims process prevents checks from being mailed to unverified and old addresses and thereby reduces undeliverable mail and fraudulently cashed checks).

### 11. The parties' good-faith attempts to reach agreement on attorneys' fees is not a factor militating against settlement.

Two Objectors take issue with the parties' ultimate agreement on the amount of attorneys' fees to be paid by Southwest, which they characterize as a "clear sailing" agreement.[26] Actually, the exact opposite is true: courts strongly encourage negotiated fee awards in class action settlements. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of the fee."). Negotiated fee awards should be given particular deference where, as here, a neutral mediator, Hon. Wayne Andersen (Ret), helped the parties reach the negotiated fee, the fee negotiations did not take place until after the settlement for the class was negotiated, and the fees will not reduce the benefits to the class.  *See Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 106 F. Supp. 2d 721, n.1 (D. N.J. 2000); *Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, *28 (M.D. Tenn 1999); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass 1987).

---

[26] Objection of Gleith E. Cozby and Dennis D. Gibson (unfiled, attached hereto as Exhibit 3); Objection of Gregory Markow (Docket No. 105). Markow also argues that the "reverter" of attorneys' fees to Southwest is an additional red flag, but this is misleading. This is not a situation in which the attorneys' fees are paid out of a class fund (and thus, out of the class members' benefits), and the reverter provision directs that any court-ordered reduction in fees be paid directly back to the defendants (rather than the common fund). Here, because the fees are not paid out of the Class benefits in the first place, the "reverter" of any unawarded attorneys' fees does not diminish the class benefit.

### 12. The negotiated incentive awards for the Class Representatives are appropriate and fair.

Two Objectors take issue with the amount of the $15,000 incentive awards Southwest has agreed to pay each Plaintiff, and contend that they are disproportionate to the Class relief in this case.[27] While it is true that the vouchers in this case only had a value of $5 each, that should not mitigate the incentive award. *See Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 220–21 (E.D. Pa. 2011) (approving $15,000 incentive award for each named plaintiff when statutory damages were capped at $1,000 per person).

The purpose of the incentive award is to "incentivize" class representatives to bear the burden and risk of filing suit and assisting with the prosecution of a class action. The Seventh Circuit has approved incentive awards as often necessary to induce plaintiffs to become class representatives. *In re Synthroid Mktg. Litig.*, 264 F.3d at 722. Given the expenditure of time and attention each Class Representative expended in this case, $15,000 is not excessive, especially given that Southwest has agreed to pay these amounts.

### 13. This Settlement is not a coupon settlement under CAFA.

This is not a "coupon settlement" within the meaning of CAFA,[28] and the provisions on awarding attorneys' fees in actual coupon settlements do not apply here. "While CAFA does not expressly define what a coupon is, the legislative history suggests that a coupon is a ***discount*** on ***another*** product or service offered by the defendant in the lawsuit." *Fleury v. Richemont N. Am., Inc.*, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008) (emphasis added). There are two key words in this definition, each of which is emphasized above.

---

[27] Objection of Michael E. Tigar (Docket No. 92); Objection of Gregory Markow (Docket No. 105).

[28] Objection of Gregory Markow (Docket No. 105).

First and foremost, the Settlement does not provide coupons for the purchase of *other* products and services, as an actual coupon settlement would. Rather, the settlement gives back to Class Members the very thing that Southwest took from them through the wrongful conduct alleged in the Complaint. Just because the claims involved Southwest's wrongful refusal to honor coupons in the first place does not make the settlement a "coupon settlement" within the meaning of CAFA.

This point is especially clear when put in the context of CAFA and the goals that CAFA was intended to advance. CAFA's legislative history provides that the section on coupon settlements (and the attorneys' fees awarded in coupon settlements) is aimed at situations where "Class Members often receive little or no benefit from class actions, and are sometimes harmed, such as where counsel are awarded large fees, while leaving Class Members with coupons or other awards of little or no value." The Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (Feb. 18, 2005) § 2.[29] *See also* Declaration of Georgene M. Vairo ("Vairo Decl."), attached hereto as Exhibit 7, ¶¶11-12.

In other words, the point and purpose of CAFA's coupon settlement provision is to prevent coercion between counsel for the class, on the one hand, and defendants on the other, in situations where defendants receive a class-wide release in exchange for something of little or no value, or which actually benefits the defendants. *Id.* This is not the case here. Class Members are receiving replacement drink vouchers under the settlement because that is what they had *before* Southwest stopped accepting them. Indeed, by providing this relief to Settlement Class Members, the settlement makes them whole – thus demonstrably distinguishing this case from any of the "coupon settlement" cases.

---

[29] The "coupon settlement" section of CAFA is set forth at Exhibit 8 hereto. CAFA's legislative history is attached as Exhibit 9 hereto.

This point is further demonstrated when considering the list of specific objectionable "coupon settlement" examples set forth in CAFA's legislative history. Below are some of the examples listed in the applicable Senate Report, which were taken to be pre-CAFA examples of coupon settlements.[30] In reviewing this list, it becomes readily apparent that *none* of the examples in the Senate Report share any similarities with the settlement here, because each of them involves a situation in which class members' claims were released in exchange for coupons on products or services *other than* the underlying products or services at issue in the lawsuit:

- Southwestern Bell Mobile Systems, Inc. allegedly failed to disclose that it rounded up customer calls to the next minute. Class Members received $15 vouchers toward Cellular One products. (*See* The Class Action Fairness Act of 2005, Pub. L. No. 109-14 (Feb. 14, 2005), at pp. 19, 20.)

- Coca-Cola allegedly added sweeteners to apple juice. Class Members received 50-cent coupons toward the purchase of apple juice. (*Id.* at 20.)

- Packard Bell was sued for alleged product defects. Class Members received a six-month extended service contract for which they were each required to pay $25. (*Id.*)

- Wireless phone service providers allegedly colluded to fix cellular phone prices. Consumers received coupons and discounts for phone service. (*Id.*)

- Discount stores allegedly overstated the value of software bundles that came with computers. Consumers received coupons worth the lesser of a 7% or $25 discount off the future purchases of products from defendants' stores. (*Id.*)

Moreover, the replacement drink vouchers provided by this settlement do not give Settlement Class Members a *discount* on products or services; rather, each voucher can be redeemed by Settlement Class Members for one alcoholic beverage – which was the exact situation before Southwest began refusing to honor the vouchers.

---

[30] Each of the coupon settlement examples from CAFA's legislative history is attached hereto as Exhibit 10. Like the specific examples discussed above, none of them involve the situation presented by this settlement.

### a. The Few Cases That Have Addressed This Scenario Support Plaintiffs' Position.

The bulk of the post-CAFA jurisprudence addressing coupon settlements analyzes whether to approve a coupon settlement, or what attorneys' fees should be awarded in a coupon settlement, while accepting as a given that the settlement is, in fact, actually a coupon settlement. These cases are all beside the point. Other than CAFA's legislative history (which, as explained above, supports Plaintiffs' position here), the cases that are actually relevant to this issue are ones (as here) in which the underlying *claim* related to improper treatment of class members' coupons, and the class settlement restored or rehabilitated the value of *those same coupons*. Given the relatively short time period since CAFA was enacted, there is not a large amount of case law on this issue. Several decisions are on point, however – each of which supports Plaintiffs' position here in every conceivable way.

### i. "Gift certificate" litigation under the CARD Act.

The closest parallel to this case is the line of cases related to improper or premature expiration of gift certificates under the Credit Card Accountability Responsibility and Disclosure ("CARD") Act, as it is incorporated into the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq*. The CARD Act provides that gift certificates may not expire less than five years after they are issued. *Id.* At least two CARD Act cases have been filed under the theory that the defendants sold gift certificates with expiration dates shorter than five years, which plaintiffs alleged violated the CARD Act.

In *In re: Groupon, Inc., Marketing And Sales Practices Litig*, rejecting the objector's argument that the settlement there was a coupon settlement under CAFA, the court held: "While CAFA does not expressly define what a coupon is, the legislative history suggests that a coupon is a *discount* on another product or service offered by the defendant in the lawsuit." Browne has

not shown the settlement vouchers being offered in this case fall within that definition. Accordingly, Browne's objection to the settlement vouchers is overruled." *In re: Groupon, Inc., Marketing And Sales Practices Litigation*, Case No. 11-md-2238 (S.D. Cal.), Docket No. 97, at 9-10 (attached hereto as Exhibit 11).[31]

Similarly, the plaintiffs in *Farrell v. Opentable, Inc.*, filed suit against Opentable based on the same theory of liability. As with the *Groupon* settlement, the parties' settlement in *Opentable* allowed class members to use their "Spotlight deals" (Opentable's coupons) for at least five years. *See Farrell v. Opentable, Inc.*, 2012 WL 1379661, *3 (N.D. Cal. Jan. 30, 2012). The settlement was approved by the Court without any finding that the settlement was a "coupon settlement." *Id.* Although the final approval order does not expressly address the issue, no one – not the defendant, not the court, not any objector – even *suggested* the settlement was a coupon settlement under CAFA. *Id.* And with good reason – the settlement gave back to class members the very thing that was taken from them. It just so happened that the underlying product was a coupon.

### ii. Other Cases In Which Class Members Received In-Kind Relief When The Lawsuit Itself Related To The Same In-Kind Products or Services.

Although the CARD Act cases are the closest to this case, several other cases involving in-kind or coupon relief – detailed below – also demonstrate that the settlement here is not a coupon settlement.

*In re HP Power Plug and Graphic Card Litigation* involved claims related to defective graphics cards and power plugs manufactured by the defendant. The parties' settlement provided

---

[31] While the *Groupon* settlement included a cash component as well as an in-kind or coupon component, that is irrelevant because the objector challenged the coupon component of the settlement, and the court's holding was not contained to the cash of the settlement. The court's opinion is attached here as Exhibit 11. The court ultimately rejected the settlement because of concerns pertaining specifically (and solely) to the allotted *cy pres* distributions, but that issue is irrelevant here.

that class members whose cards or plugs had not yet been repaired could get new ones, and those who had already incurred out-of-pocket costs for the repairs could be reimbursed. Coupons for the purchase of other products were also offered as alternatives. 2008 WL 2697192, at *1 (N.D. Cal. July 8, 2008). In ruling on class counsel's motion for fees, the court held that the "coupons provided as part of the settlement are incidental to the main relief of the repair of the affected graphics card or power plug. The court agrees that the main value of the settlement is the provision of a repair option, not the provision of a coupon . . . ." *Id.* at *2.

Although the underlying product in the *HP Power Plug* case did not involve coupons, the court's analysis is directly applicable here. In both this case and in *HP Power Plug*, the settlement allows customers to receive replacement products (in-kind relief) to cure the problem caused by the original ones. It would defy logic to say that *HP* was a coupon settlement because technically class members received "coupons" or vouchers for new replacement products. And while the settlement also contained a cash option for class members who had already paid to replace their products, that is irrelevant, because the court did not cabin class counsel's fee request to the cash portion of the settlement or suggest that *any* portion of the settlement was a "coupon settlement" under CAFA.

*In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation* involved claims that "sippy cups" manufactured by the defendants were defective. The settlement agreement provided different tiers of relief depending on circumstances particular to the class members. The first tier class members had the option of receiving cash or vouchers for the purchase of other products manufactured by the defendants, and the remaining tiers provided vouchers at varying levels of value. 2011 WL 1790603, *2 (W.D. Missouri, May 10, 2011).

Various objectors contended that the settlement was a coupon settlement under CAFA. The court rejected this argument, stating that "the vouchers provided in this case are unique in that they do not necessarily require the class members' expend money of their own in order to realize the benefits of the settlement." *Id.* at *4. In holding that the settlement was not a coupon settlement, the court also considered that the coupons were transferable ("theoretically making them convertible to cash"), and could be used on a variety of products.[32]

*Browning v. Yahoo, Inc.* is also on point. In that case, plaintiffs brought claims under the Credit Repair Reporting Act alleging wrongful conduct by Yahoo concerning its credit repair product. The settlement agreement included no cash component, and instead offered class members the choice of "a free Experian credit score (retail value of $5.00 at the time of settlement) or two months of free credit monitoring (retail value of $9.95 per month at the time of the settlement)." 2007 WL 4105971, at *2-4 (N.D. Cal. Nov. 16, 2007).

Objectors contended that the settlement was a coupon settlement under CAFA. The court, rejecting that argument, held that:

> the in-kind relief offered in this case is not a 'coupon settlement' because it does not require Class Members to spend money in order to realize the settlement benefit. Further, the objectors cite no controlling authority requiring an in-kind benefit to be transferable. Transferability is typically offered in order to avoid the criticism that the Class Members must spend money to obtain a benefit, which is not the case here. The question is not whether a better benefit could theoretically be provided, but whether the settlement is 'fair, adequate and free from collusion.'

*Id.* at *5 (internal citations omitted).

The *HP*, *Bisphenol*, and *Yahoo* cases demonstrate conclusively that this Settlement cannot be regarded as a coupon settlement. *HP* involved in-kind relief to replace the underlying

---

[32] While the settlement structure included a cash component for one tier of claimants, the court did not hold that the non-cash tiers would be considered coupon settlements, and class counsel's fees were not awarded based on a "coupon settlement" methodology.

product at issue – just as the coupons here do. *Bisphenol* involved in-kind relief to replace *different* products at issue – and the court *still* held that the settlement was not a coupon settlement, after noting that the class members did not have to spend money to get benefits and the coupons were transferable. That is also true here – each coupon can be redeemed for one alcoholic beverage (not just a percentage off some item), and the coupons are transferable. And, in *Yahoo*, the in-kind relief was not *even* transferable, and yet the court still rejected any notion that the settlement was a coupon settlement.

Because this case is clearly not a coupon settlement, the attorneys' fee award should not be constrained by CAFA.

**14.     No forced purchase is required here *that did not already exist*.**

Objector Markow also discusses the Seventh Circuit's opinion in *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F. 3d 646, 654 (7th Cir. 2006). Markow correctly notes that the Seventh Circuit stated that a class action settlement which provided class members with up to four pre-paid Airborne shipping envelopes was not a "coupon" case, because the envelopes "represent an entire product, not just a discount on a proposed purchase." Markow claims the case is distinguishable because the settlement here involves a "forced purchase." But as explained above, the "forced purchase" was true *to begin with* and was always inherent to the use of Southwest drink coupons; it is not a condition created by the settlement. (Vairo Decl. at ¶15.)

**15.     The value of the settlement was properly calculated based on the benefits made available.**

Contrary to the position of several objectors,[33] the value of this settlement is established by the benefit made available to the Class, not the number of claims made. *See, e.g*., *Boeing*, 444 U.S. at 480; 2 Newberg On Class Actions § 1.18 (3d Ed.1992) ("[I]t is now settled that class

---

[33] Objection of Daniel Sibley (Docket No. 116); Objection of Gregory Markow (Docket No. 105).

counsel may seek a fee award based on the total potential benefit to the class, rather than being limited by the total amount of claims actually exercised by class members.")

Courts in this District, and elsewhere, have continued to follow this maxim. *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*, 280 F.R.D. 364, 380 (N.D. Il. 2010); *McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 815 (E.D. Wis. 2009) (relying on *Boeing* in awarding 33 percent of the available fund; a fee award that exceeded the amount actually claimed and noting that this was justified because "the settlement amount was available to the entire class"). *See also Williams v. MGM-Pathe Communications Co.,* 129 F. 3d 1026, 1027 (9th Cir. 1997) (reversing district court award of 33% of the claimed fund ($3,300) and awarding attorneys' fees of 33 percent of the available fund ($1.5 million)). *See also Stern v. Gambello,* 2012 WL 1744453 at *1 (9th Cir. May 17, 2012) ("nor was it error to consider, in cross-checking the fees against the recovery, the potential recovery rather than the claims actually made"); *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423 (2d Cir. 2007) (finding district court abused its discretion by calculating fees based strictly on the actual recovery and expressly rejecting the idea that basing the award on the available benefit would create a windfall for class counsel).

Although CAFA requires that in a coupon settlement, fees based on a percentage of the settlement must be based on claims made rather than the percentage available, this assumes that the settlement is, in fact, a coupon settlement within the meaning of CAFA – which it is not. Moreover, CAFA authorizes courts to justify a fee award based on the lodestar methodology, which does not require data on claims made. *See Fleury v. Richemont North America, Inc.*, 2008 WL 4680033, *5 (N.D. Cal. Oct. 21, 2008).

**16.    The use of a lodestar multiplier to arrive at the parties' negotiated fee is appropriate.**

The use of a lodestar multiplier is not prohibited here.[34] The opposite is true – *even if* this Court determines that the Settlement is a coupon settlement, the Court need only apply a modest multiplier to arrive at the parties' negotiated fee. "[A] straight hourly calculation does not properly account for the result achieved by counsel."*McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 816 (E.D. Wis. 2009).

When applying a multiplier to the base lodestar amount, courts should also consider the risk plaintiff's counsel assumes in recovering nothing. *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 975–76 (7th Cir.1991) (remanding case for recalculation of attorneys' fees because the trial court failed to award a risk multiplier) Typical multipliers awarded in comparable class action litigation average around 4, but are often much higher. *In re Linerboard Antitrust Litig.,* No. 98–5055, 2004 WL 1221350, at *14 (E.D.Pa. Jun. 2, 2004) (recognizing that from 2001 to 2003, the average multiplier approved in common fund cases was 4.35).[35]

WHEREFORE, for these reasons, Plaintiffs request the Court approve the Settlement.

Dated: May 9, 2013

Respectfully submitted,

ADAM LEVITT and HERBERT C. MALONE, individually and on behalf of all others similarly situated

By: _____
  One of the Attorneys for Plaintiffs
  And the Settlement Class

---

[34] Objection of Gregory Markow (Docket No. 105).

[35] Objector Markow's reliance on fee-shifting civil rights cases under Section 1983 are unavailing. Those cases do not disturb the general principle that in a class action settlement, the use of a multiplier is appropriate (and required) to recognize and incentivize risk, and the realities of the contingent marketplace.

Joseph J. Siprut
*jsiprut@siprut.com*
Aleksandra M. S. Vold
*avold@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
**SIPRUT** PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.948.9196
www.siprut.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiffs' Combined Motion for Final Approval of Class Action Settlement, and Response to Objections and Comments** was filed this 9th day of May, 2013, via the electronic filing system of the United States District Court for the Northern District of Illinois, which will automatically serve all counsel of record.

_____

Joseph J. Siprut

4827-0937-8835, v. 2

-44-