# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| *In re Southwest Airlines Voucher Litigation* | ) ) ) ) | No. 11-CV-8176<br><br>Hon. Matthew Kennelly |

### AFFIDAVIT OF JOSEPH J. SIPRUT

I, Joseph J. Siprut, declare:

1. I am over the age of eighteen and am fully competent to make this declaration. I make this declaration based upon personal knowledge unless otherwise indicated.

2. I am admitted to practice in the State of Illinois and in the United States District Court for the Northern District of Illinois, and other federal district courts. I am one of the attorneys for Plaintiffs and the Settlement Class. I make this declaration in support of Plaintiffs' Combined Motion for Final Approval of Class Action Settlement, and Response to Objections and Comments. If called as a witness, I would and could testify to the following:

3. I am the managing partner of the law firm of Siprut PC (herein "Siprut PC" or "Class Counsel"). I have personally been involved in the entirety of the prosecution of this class action lawsuit (the "Action").

4. The operative complaint alleges that Defendant Southwest Airlines Co. ("Southwest") breached its contracts with its Business Select customers by refusing to accept (and retroactively invalidating) drink vouchers ("Vouchers") that did not show a printed expiration date, or that were not used on the date of the ticketed travel.

5. Plaintiffs further allege that the $5 value of the Vouchers was included in the purchase price of Business Select tickets, and, thus, each Business Select customer's purchase of

-1-

Southwest Business Select airplane tickets constituted a contract, supported by bargained-for consideration, which included a Voucher with no expiration date.

6. For that reason, Plaintiffs allege that when Southwest decided not to honor (and retroactively invalidate) those Vouchers, Settlement Class members were denied the benefit of their bargain with Southwest. As a result of Southwest's conduct, and after my firm conducted a detailed investigation into the facts and law relating to the matters alleged in the complaint, my firm filed this case on November 16, 2011, alleging breach of contract, among other claims. We filed Plaintiffs' Amended Complaint on December 20, 2011.

7. Southwest filed a Motion to Dismiss (Docket No. 14) and Motion to Stay (Docket No. 11) on December 9, 2011. In the meantime, Southwest also filed its Answer and Affirmative Defenses to the Amended Complaint on January 4, 2012. (Docket No. 25.) Thereafter, on January 25, 2012, Plaintiffs filed a Motion to Strike all of Southwest's affirmative defenses. (Docket No. 30.) The Court granted the motion as to all but one affirmative defense. (Docket No. 32.)

8. After full briefing, the Court granted Southwest's Motion to Dismiss in part – leaving only the breach of contract claim – and denied the Motion to Stay in its entirety. (Docket No. 46.) This decision helped the Parties to evaluate the relative merit of their claims and defenses.

9. On February 13, 2012, after learning that Southwest flight attendants were confiscating Drink Vouchers from potential Class members, Plaintiffs moved for a Protective Order to stop the destruction of the Drink Vouchers. (Docket No. 36.) As a result of that Motion, the Court ordered that Southwest was thereafter prohibited from arguing that Business

Select passengers were required to physically possess their Drink Vouchers to be a part of the eventual class.

10. Following the Fed. R. Civ. P. 26(f) conference in this Action, the Parties propounded and responded to interrogatories and requests for documents. Between the Parties, thousands of documents were exchanged and reviewed. I deposed five Southwest employees – four in Dallas and one in Denver. Southwest also deposed both Plaintiffs. This discovery enabled the Parties to obtain a common understanding of the facts underlying Plaintiffs' claims and Southwest's defenses.

11. After discussing settlement informally, at arm's-length, over the course of several months, the Parties agreed to engage a mediator to assist in the resolution of the case.

12. On August 27, 2012, I, along with my colleague, Aleksandra M.S. Vold, and one of the class representatives met with Southwest's lead and local counsel in Chicago, Illinois for formal mediation with retired federal judge Wayne Anderson. After a full day of arm's-length negotiations facilitated by Judge Anderson, the Parties made significant progress toward agreeing on settlement terms. We were able to agree on class-wide relief, but did not agree as to attorneys' fees.

13. On September 17, 2012, the Parties reconvened the mediation in Chicago with Judge Anderson. After another full day of arm's-length negotiations, the Parties were able to reach an agreement on all material terms of the class-wide relief, which was formalized in a signed Memorandum of Understanding.

14. At all times during settlement negotiations, Plaintiffs insisted that class members need not produce physical Vouchers in order to obtain replacements due to the fact that Southwest flight attendants had confiscated many passengers' Vouchers following the

commencement of this Action. Plaintiffs further insisted that injunctive relief would also be necessary to prevent Southwest from acting in a similar manner in the future.

15. Based on information established during discovery and also based on informal information exchanged for settlement purposes, it was established that Southwest launched its Business Select program in October 2007, and stopped honoring the Vouchers with no expiration date on August 1, 2010. Southwest's records also indicate that during that roughly three-year time period, Southwest sold 11.6 million Business Select tickets – and, thus, 11.6 million Vouchers.

16. Southwest failed to track exactly how many of those Vouchers were redeemed. However, Southwest's empirical and statistical modeling suggests that no more than half, or 50%, of the Vouchers were redeemed. Thus, as of August 1, 2010, a minimum of 5.8 million Vouchers had not been redeemed by Settlement Class Members. Each Voucher is valued at $5 – the price of a premium or alcoholic beverage on a Southwest flight *without* a Voucher. This means that the Settlement provides for a minimum $29 million worth of direct benefits to the Settlement Class. If the 50% redemption variable is not considered, and the amount of unredeemed Vouchers in circulation is higher than what Southwest claims, the value of the Settlement would be as high as $58 million.

17. The Parties did not discuss or negotiate the amount of attorneys' fees to be paid by Southwest as part of any potential settlement at *any* time until the material terms of the class-wide settlement structure had been established. At that point – and only at that point – the Parties began negotiating the amount of attorneys' fees to be paid by Southwest.

18. In fact, it took an additional three months after the September mediation for the Parties to reach an agreement on fees, a process that was assisted by Judge Anderson through calls and written submissions.

19. I have substantial experience in complex business litigation and class actions. My Firm, Siprut PC, substantially concentrates its practice in the prosecution of class actions. My Firm's resume is attached hereto as Exhibit A.

20. Throughout this litigation, my Firm has diligently prosecuted this matter, dedicating substantial resources to the investigation and litigations of the claims at issue, and has successfully negotiated the settlement of this matter to the benefit of the proposed Settlement Class. Neither my firm nor Plaintiffs have any interests antagonistic to the interests of the other Settlement Class members.

21. Plaintiffs and Class Counsel believe that the claims asserted against Southwest in this litigation have merit. However, Plaintiffs and Class Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the litigation against Southwest through trial and appeals. Plaintiffs and Class Counsel have also taken into account the uncertainty and risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation. This litigation involves complex class issues, which would involve protracted and risky litigation if not settled. Moreover, in the event of any judgment against Southwest, an appeal could postpone any recovery for several years.

22. The Settlement Agreement, and the terms thereof, were reached after rigorous advocacy and extensive negotiations, in which I participated directly. Plaintiffs and Class Counsel believe that the terms set forth in the Settlement Agreement confer substantial benefits

-6-

upon the proposed Settlement Class, and is a fair, reasonable, and adequate resolution of the Class's claims against Southwest. As such, the Settlement is entitled to a Final Order and Judgment.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

Executed on May 7, 2012 at Chicago, Illinois.

_____
Joseph J. Siprut

4832-5675-9827, v. 1

# EXHIBIT A

# SIPRUT PC FIRM RESUME

Siprut PC is a commercial litigation firm based in Chicago, with additional offices in San Diego and Boston. The firm focuses its practice exclusively on litigation and pre-litigation counseling, encompassing a wide variety of areas and issues. The firm's primary practice groups broadly include plaintiffs' class action litigation (with a particular emphasis on consumer law issues) and complex business litigation, including particularly *qui tam* and whistleblower litigation; professional malpractice litigation; intellectual property and patent litigation; and employment practices.

Siprut PC and its attorneys have successfully procured judgments or settlements in scores of cases in state and federal courts across the country, many of which have received extensive media coverage.

## CLASS ACTION AND CONSUMER LITIGATION

Siprut PC prosecutes class actions across a wide variety of industries. The firm and its attorneys have been appointed lead or co-lead counsel in nationwide class actions across the country:

- *Arrington, et al. v. National Collegiate Athletic Association* (Case No. 11-cv-06356, N.D. Ill.): Appointed co-lead interim class counsel in a nationwide class action against the NCAA on behalf of current and former collegiate athletes.

- *Foos v. Ann, Inc.* (Case No. 11-cv-02794-L-MDD, S.D. Cal.): Appointed lead counsel in class action on behalf of California consumers for violations of the Song-Beverly Act. Settlement valued at $2,323,500.

- *In re Barnes & Noble Pin Pad Litigation* (Case No. 12-cv-8617, N.D. Ill.): Appointed co-lead counsel in nationwide class action relating to a security breach exposing the personal information of hundreds of thousands of consumers nationwide.

- *In re Southwest Airlines Voucher Litigation* (Case No. 11-cv-8176, N.D. Ill.): Appointed lead counsel in nationwide class action relating to Southwest's unilateral cancellation of drink vouchers paid for by business select travelers. Settlement valued up to $58 Million preliminarily approved.

- *Goodman v. Casting360, LLC* (Case No. 12-cv-09851, N.D. Ill.): Appointed lead counsel in nationwide class action for violations of the federal Telephone Consumer Protection Act.

- *Kruse, et al. v. Citigroup, Inc*. (Case No. 11-cv-01003-AG-AN, C.D. CA): Appointed lead counsel in a nationwide class action against Citigroup for a massive data breach exposing the personal information of hundreds of thousands of consumers nationwide.

Additional representative class actions that the firm is currently prosecuting as lead counsel include:

- *Banakus v. United Continental Holdings, et al.* (Case No. 12-cv-06244, N.D. Ill.): Nationwide class action pertaining to United's unilateral, retroactive devaluation of the benefits earned by premier members.

- *Lamb v. Bitech, Inc.* (Case No. 3:11-cv-05583-EDL, N.D. CA): Class action on behalf of California consumers for violations of the Song-Beverly Act. Settlement valued at $1,150,000.

- *Bellville v. Ford Motor Co.* (Case No. 3:13-cv-06529, S.D. W. Va.): Nationwide class action relating to "sudden acceleration" in certain Ford vehicles.

- *Worix v. MedAssets, Inc.* (Case No. 11-cv-08088, N.D. Ill.): Nationwide class action relating to the theft of an unencrypted laptop containing the PII of 82,000 patients from three different hospital systems across the nation.

- *Freas v. RCN Corp.* (Case No. 12-cv-04265, N.D. Ill.): Nationwide class action lawsuit arising out of RCN's indefinite and undisclosed retention of former customers' sensitive personal information, in violation of federal telecommunications laws as well as state consumer privacy laws

- *Astor Professional Search, LLC v. MegaPath, Inc.* (Case No. 12-cv-02313, N.D. Ill.): Nationwide class action related to MegaPath's failure to alert customers of e-mail deliverability problems.

- *Garavito v. Suntrust Mortgage, et al.* (Case No. 11-cv-06056, N.D. IL): Nationwide class action relating to Suntrust's home loan modification practices.

- *Heiman v. Bank of America, NA, and BAC Home Loans Servicing, LP* (Case No. 11-cv-04285, N.D. IL): Nationwide class action relating to Bank of America's home loan modification practices.

- *Freeza et al v. Google, Inc.* (Case No. 12-cv-00237-RMW, N.D. Cal.): Nationwide consumer privacy and breach-of-contract class-action lawsuit relating to deceptive terms of promotional offer for "Google Tags" advertising service, as well as Google's indefinite and unlawful retention of customer credit-card information after cancellation of Tags service

- *Hodges v. Apple Inc.* (Case No. 3:13-cv-01128-EMC, N.D. CA): Nationwide class action relating to product defects in MacBook Pro computers.

**BUSINESS AND COMMERCIAL LITIGATION**

Siprut PC handles complex commercial and business litigation matters in Illinois and throughout the United States, including claims involving:

- Breach of contract
- Partnership disputes
- Real estate and lease disputes
- Class action defense
- Copyright litigation
- Trademark litigation
- Patent litigation
- Business fraud
- Unfair trade practices
- Theft of trade secrets

## ATTORNEYS

**JOSEPH SIPRUT** is the founder and managing partner of Siprut PC. His practice encompasses a wide spectrum of litigation, with an emphasis on challenging cases against powerful, well-funded adversaries. He has been appointed lead or co-lead class counsel in some of the largest and most complex class actions in the country, and has substantial first-chair experience in all aspects of litigation, including trial, arbitration, and mediation. He has appeared in dozens of publications and television and radio broadcasts worldwide, including CBS Radio, NPR, ESPN, Bloomberg Law, Law360, the Chicago Tribune, and more. He has been deemed by the media as the "Friend of the Frequent Fliers" for his successful litigation crusades against the airline industry on behalf of airline customers. He was named as a "Rising Star" by SuperLawyers five consecutive years.

Mr. Siprut is an Adjunct Professor at Northwestern University School of Law, where he teaches in the Trial Advocacy program. He is a frequent author and speaker, having published over 25 articles in the nation's leading law reviews and legal journals on topics including the right of privacy, copyright litigation, and contract doctrine, as well as litigation strategy and tactics. He was appointed as a member of the Illinois ARDC Hearing Board, and is also a member of the Advisory Board for the Fair Contracts Project, an initiative focused on counteracting the implications of fine print in standard form consumer contracts.

Prior to founding Siprut PC, Mr. Siprut spent his career practicing at some of the top corporate litigation firms in the country. Mr. Siprut previously chaired the Litigation Committee of the ABA Young Lawyers Division, and has been recognized by the Law in Public Service Committee of the ABA as a TIPS Honor Roll recipient for his dedication to pro bono work.

Mr. Siprut is a graduate of Northwestern University School of Law, where he served as the Managing Editor of the Northwestern Law Review and was selected to represent

Northwestern in national competition as a member of its National Moot Court team. He was also awarded the Institute for Humane Studies Fellowship, a national fellowship competition for law and graduate study.

He is admitted to practice in Illinois, the United States District Court for the Northern District of Illinois (including its Trial Bar), the Seventh Circuit Court of Appeals, and the United States Supreme Court. For over five years, Mr. Siprut served as an arbitrator in the Cook County Arbitration Program. Mr. Siprut is also a pro bono attorney with Lawyers for the Creative Arts.

*   *   *

**ALEKSANDRA M.S. VOLD** is an attorney at Siprut PC. Her practice encompasses a wide spectrum of litigation with an emphasis on intellectual property and consumer class actions. Aleksandra is an Adjunct Professor at Columbia College of Chicago, where she teaches Entertainment Law. She has also served as a panelist on the subject of fashion and intellectual property protection, has consulted for the Adler School of Professional Psychology on the topic of cross examination of forensic psychologists, and has coached John Marshall mock trial teams. She was also named a Rising Star by Super Lawyers in 2013.

Aleksandra is a graduate of The John Marshall Law School, where she served as a staff editor of the John Marshall Review of Intellectual Property Law, in which she was also published. She was selected to represent John Marshall in a number of regional and national trial advocacy competitions, winning the nation's largest criminal mock trial competition in 2009. Aleksandra earned the CALI Award for Excellence in Protection Intellectual Property in a Global/Digital Environment. She also served as a member of the Trial Advocacy Executive Board and was the secretary of John Marshall's Decalogue Society for two years. Aleksandra is admitted to practice in Illinois and the United States District Court for the Northern District of Illinois.

*   *   *

**GREGG BARBAKOFF** is an attorney at Siprut PC. His practice encompasses a wide spectrum of litigation with an emphasis on commercial litigation and consumer class actions. Gregg serves on the Board of Directors for the American Constitution Society, a progressive legal organization dedicated to the core Constitutional values of civil liberties, open access to justice, and the rule of law.

Gregg is a graduate of the Chicago-Kent College of Law, where he served as an editor of the Seventh Circuit Review, in which he was also published. During law school, he was selected as a Member of the Chicago-Kent Moot Court Honor Society, where he won the award for Best Overall Oralist at the Appellate Lawyers Association Moot Court Competition. Gregg was selected for the Class of 1976 Honors Scholarship while attending Chicago-Kent. Gregg graduated from Chicago-Kent *magna cum laude*, and was recently inducted into the Order of the Coif. Gregg is admitted to practice in Illinois and in the United States District Court for the Northern District of Illinois.

\* \* \*

**TYLER ZANDERS** is an attorney at Siprut PC. His practice focuses on business litigation, with an emphasis on business torts and consumer fraud issues. Tyler graduated from Northwestern University and Temple University Beasley School of Law, which he attended as a Beasley Scholar. While at Temple, he participated in the Integrated Trial Advocacy program, and was an editor of the Temple Political & Civil Rights Law Review. He served his legal internships at prosecutors' offices in Philadelphia and Chicago, working in special prosecutions in both cities. Tyler is admitted to practice in Illinois and the United States District Court for the Northern District of Illinois.

\* \* \*

**PETER CARLSON** is an attorney at Siprut PC. His practice is focused principally on class action litigation, with an emphasis on consumer protection, data and privacy, and technology issues. Peter is a graduate of The John Marshall Law School, where he served on the editorial board of The John Marshall Journal of Computer and Information Law. He obtained a B.S. from California State University Northridge, where he majored in business administration. Peter is also a veteran of the United States Marine Corps. Peter is admitted to practice in Illinois and the United States District Court for the Northern District of Illinois.

\* \* \*

**TODD C. ATKINS** is Of Counsel at Siprut PC, and heads the Firm's California office. His litigation practice encompasses class actions, real estate and securities matters – representing both brokers and plaintiffs. Todd is also a trained and experienced mediator, and received his certification from the National Conflict Resolution Center.

Todd is a graduate of the University of San Diego, School of Law. He is admitted to practice in California, the District of Columbia, and the United States District Court for the Southern District of California, and is also a licensed real estate broker

\* \* \*

**ALEXANDER SHAPOVAL** is Of Counsel at Siprut PC, and heads the Firm's Boston office. His practice encompasses all manner of civil litigation, including class actions and personal injury litigation. Alexander is an experienced trial lawyer, with substantial first-chair jury trial experience.

Alexander is a graduate of the Massachusetts School of Law. He is admitted to practice in Massachusetts and the United States District Court for the District of Massachusetts.

4846-8826-3443, v. 1