# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| *In re Southwest Airlines Voucher Litigation* | ) ) ) ) ) | No. 11-CV-8176<br><br>Hon. Matthew Kennelly |

**DECLARATION OF CAMERON R. AZARI, ESQ.**

I, Cameron R. Azari, declare and state as follows:

1. I am over the age of eighteen and am fully competent to make this declaration. I make this declaration based upon personal knowledge unless otherwise indicated.

2. I am the Director of Epiq Legal Noticing, a firm that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans. I have been court-recognized as a class action notice expert, and I am familiar with, or have been directly responsible, for many complex class action notice programs, involving all aspects of notice dissemination. My business address is 10300 SW Allen Boulevard, Beaverton, OR 97005. My personal CV is included as **Attachment 1**.

3. Epiq Legal Noticing is a division of Epiq Systems ("Epiq"), a firm with more than 20 years of experience in claims processing and settlement administration. Epiq's class action case administration services include coordination of all notice requirements, design of notice programs, establishment of fulfillment services, receipt and processing of opt-outs, coordination with the United States Postal Service, claims database management, claim adjudication, funds management, and distribution services. Epiq works with the settling parties, the Court, and the class members in a neutral facilitation role, taking the negotiated terms of a settlement and implementing settlement administration services.

4. In the Settlement in this case, Epiq's administrative responsibilities include the following:

      i. Assume the role of Settlement Administrator;

      ii. Create the Settlement Notice Plan;

     iii. Assist Southwest Airlines in implementing the Settlement Notice Plan in accordance with the Settlement Agreement, the Preliminary Approval Order, and the Settlement Notice Plan;

     iv. Perform Publication Notice, Class E-mail and First Class Mail Notice in compliance with the Settlement Agreement, the Preliminary Approval Order, and the Settlement Notice Plan;

     v. Obtain a post office box for receiving Claim Forms, Exclusion Requests, and other correspondence about the proposed Settlement;

     vi. Obtain the domain of the Settlement website and design and maintain the website in accordance with the Court's order;

     vii. Establish a toll-free telephone support line;

     viii. Design and program systems for the claims database;

     ix. Receive and log Exclusion Requests; and

     x. Receive and process claims.

5. On December 10, 2012, the Court preliminarily approved the Settlement Notice Plan (the "Notice Plan" or "Plan"), finding that, "[T]he Settlement Notice Plan, the Class E-mail Notice, the Class Notice Package, the postcard notice, and the Publication Notice to Class Members meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all potential members of the Settlement Class. The Court further finds that the notices are written in plain English and are readily understandable by Class Members. In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of federal law (including Fed. R. Civ. P. 23) and the United States Constitution, and any other applicable law." (Case 1:11-cv-08176, Document 89 at 5-6, Filed 12/10/12).

6. This Declaration details the steps taken to implement the Notice Plan, including why I believe it was effective in delivering notice to the Class in accordance with Rule 23 and due

process. It will also provide a detailed account of the administration activity through April 26, 2013.

7. As detailed below, in my opinion, the Notice Plan as implemented meets the best practicable and plain language requirements of Federal Rule of Civil Procedure Rule 23(c)(2). The individual notice component of the Notice Plan alone reached approximately 99% of Class Members based on conservative calculations that qualified notice experts must make and provided sufficient frequency of notice exposure, consistent with well-accepted class action notice planning guidelines.

## NOTICE PLAN IMPLEMENTATION

8. According to the Settlement Agreement, the Settlement Class is defined as: "all Southwest customers who purchased an Eligible Drink Voucher, through the purchase of a Business Select ticket or otherwise, during the time period before August 1, 2010, but who did not redeem the Eligible Drink Voucher," and who did not timely opt-out of the Class. "The Class does not include Southwest customers who obtained drink vouchers or drink coupons through the Southwest Rapid Rewards [P]rogram or as a result of being a member of the Southwest Rapid Rewards Program, unless those customers separately purchased, but did not redeem, Eligible Drink Vouchers through the purchase of a Business Select ticket or otherwise."

### Individual Notice

9. Pursuant to the Settlement Agreement, Southwest Airlines compiled a List of Potential Class Members, containing name and e-mail address.

10. Since an e-mail address or addresses were available for the vast majority of Class Members, Class E-mail Notice was sent to the list of potential Settlement Class Members for whom e-mail addresses were available. Starting January 11, 2013, and continuing through Monday, January 14, 2013, Epiq sent the Class E-Mail Notice to 2,243,330 unique e-mail addresses. The Class E-mail Notice contained a link to the Settlement website where the Long

Form Notice, Claim Forms and detailed Settlement information is available. The Class E-mail Notice is included as **Attachment 2**.

11. For potential Class Members whom: (1) no e-mail address was provided, (2) an invalid e-mail address was provided, or (3) the Class E-mail Notice was undeliverable via the e-mail address provided, a 4.25" x 5.5" Summary Postcard Notice printed on 110 lb. white cardstock was sent via United States Postal Service first-class mail, if a physical address was available. Prior to mailing, all available postal mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS"), which contains records of all reported permanent moves for the past four years. In addition, the addresses were certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code and verified through the Delivery Point Validation ("DPV") to verify the accuracy of the addresses. This address updating process is standard for the industry and for the majority of promotional mailings that occur today. As of April 26, 2013, Epiq has mailed 249,756 Summary Postcard Notices to potential Class Members for whom a valid physical address was available. A copy of the Summary Postcard Notice is included as **Attachment 3**.

12. The return address on the Summary Postcard Notice is a post office box maintained by Epiq. Summary Postcard Notices returned as undeliverable were re-mailed to any new address available through postal service information, for example, to the address provided by the postal service on returned pieces for which the automatic forwarding order has expired, but which is still during the period in which the postal service returns the piece with the address indicated. As of April 26, 2013, Epiq has re-mailed 461 Summary Postcard Notices to addresses that were corrected through the USPS, NCOA, and claimant requests. As of April 26, 2013, only 23,979 mailings remain as undeliverable. Class E-mail Notice and Summary Postcard Notice are estimated to have reached 99% of the Class Members.

### Incoming Mail

13. Epiq established the address PO Box 4109, Portland, OR 97208-4109 for receipt of Claim Forms, exclusion requests, and other correspondence. Mail received at the post office box is collected and processed daily.

### Long Form Notice and Claim Form

14. The Long Form Notice and Claim Form are available for download on the Settlement website, and by request on the recorded telephone line established for this Settlement. As of April 26, 2013, Epiq has mailed over one hundred Long Form Notices and Claim Forms and has received hundreds of paper Claim Forms.

### Print Publication Notice

15. On January 28, 2013, the Publication Notice appeared once in the national edition of *USA Today,* which has a circulation of 1,627,526. The Publication Notice is included as **Attachment 4**. A copy of the tear sheet of the notice as published is included as **Attachment 5**.

### Settlement Website

16. On January 10, 2013, the website www.SouthwestVoucherSettlement.com went live for this Settlement. By logging onto the website Class Members are able to obtain additional information and documents about the Settlement, including the Preliminary Approval Order, Settlement Agreement, Long Form Notice, Claim Form and any other document the Court or the Parties direct be made available. The website includes a list of Frequently Asked Questions and a listing of important dates in the Settlement process. The Settlement website is configured to allow Class Members to file claims online. The website address was displayed prominently in all notice documents.

17. As of April 26, 2013, there have been 47,485 website visitor sessions in which 213,404 website pages were viewed, which equates to just over 4.4 pages per visitor session.

**Telephone Support**

18. On January 10, 2013, the toll-free number 1-888-288-2153 established and hosted by Epiq, became operational. By calling this number, potential Settlement Class Members can listen to additional information and request a Long Form Notice and Claim Form. The toll-free number connects callers with a VRU recorded message, providing a brief summary of the proposed settlement, the option to select one of several more detailed recorded messages addressing frequently asked questions, and the option to request a copy of the Long Form Notice and Claim Form. The toll-free line and recorded information is available 24 hours a day, seven days a week. As of April 26, 2013, the toll-free line has received 454 calls representing 729 minutes of use.

**Exclusions and Objections**

19. All forms of Notice provided to Class Members provided a deadline of April 11, 2013, for Class Members to exclude themselves from the Settlement by submitting a timely and complete request for exclusion. As of April 26, 2013, Epiq has received 88 requests for exclusion, 73 of which are timely and valid. A list of those Class Members who submitted a timely and valid request for exclusion is attached as **Attachment 6**.

20. All forms of Notice provided to Class Members provided a deadline of April 11, 2013, for Class members to object to the Settlement. Epiq's staff has reviewed the objections filed as of April 26, 2013. To my knowledge only one objection mentions notice: *Notice of Objection to the Settlement* ("Sibley Objection") (Docket Entry 116). The Sibley Objection asserts, "Failure to advise class members in the notice of the deposition requirement in the settlement agreement renders the notice provision insufficient." Sibley Objection, at 3. The Sibley Objection fails to provide any supporting authority or expert declaration.

21. There are no requirements as part of Federal Rule of Civil Procedure 23 that such information must be included in a notice. The notices refer to the Settlement website for additional information and the Settlement Agreement is posted on the website on the Important

Documents page. That process of obtaining information clearly worked here because the objector presumably found the Settlement Agreement on the Settlement website – exactly how the process should work. As well, the Court has already reviewed the notice contents for the Settlement. In its Preliminary Approval Order of December 10, 2012, the Court found that the notices "meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all potential members of the Settlement Class." In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of federal law (including Fed. R. Civ. P. 23) and the United States Constitution, and any other applicable law." (Case 1:11-cv-08176, Document 89 at 5-6, Filed 12/10/12).

## CONCLUSIONS

22. ***Objectives were met.*** The primary objective of this settlement notice effort was to effectively reach the greatest practicable number of Settlement Class Members with a "noticeable" Notice of the settlement, and provide them with every reasonable opportunity to understand that their legal rights were affected, including the right to be heard, to object or to exclude themselves if they so chose. These efforts were successful.

23. ***The Notice reached Settlement Class Members effectively.*** Our calculations indicate that the Summary Notice reached approximately 99% of the Settlement Class. Many courts have accepted and understood, based on evidence we provided, that a 75 or 80 percent reach is more than adequate under the circumstances of analogous cases. Here we were able to far exceed that achievement. This "reach" indicates that the mailed and media notice efforts were highly successful in providing direct notice to Settlement Class Members.

24. The Settlement Agreement called for the Publication Notice to be run twice in *USA Today*. One insertion was inadvertently omitted. This is no way shape or form affected the adequacy of the notice effort because the individual notice effort alone reached an estimated 99%

of Class Members, which indicates that the individual notice was highly successful in providing notice to Class Members.

25. In preparing the Notices, we employed communication methods that are well established in our field, and eschewed the idea of producing old-fashioned, case-captioned, lengthy, legalistic notice documents.

26. We have provided evidence that the notice effort sufficiently reached the majority of Settlement Class Members, and we have prepared notice documents that adequately informed them of the class action, properly described their rights, and clearly conformed to the high standards for modern notice programs. In designing our notice programs, we truly desire to adequately inform the class, and my colleagues and I designed and implemented a program that effectively accomplished this.

27. In my expert opinion, the Notice Program comported with Federal Rule of Civil Procedure 23, due process, and also the guidance for effective notice articulated in the FJC's *Manual for Complex Litigation, 4th Edition.*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated, May 6, 2013.

    /s/    Cameron R. Azari, Esq.

4815-3696-3347, v. 1