**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| *In re Southwest Airlines Voucher Litigation* | )<br>)<br>)<br>) | No. 11-CV-8176<br><br>Hon. Matthew Kennelly |

**PLAINTIFFS' REPLY
IN FURTHER SUPPORT OF MOTION FOR ATTORNEYS' FEES**

Submitted by:

Joseph J. Siprut
*jsiprut@siprut.com*
Aleksandra M. S. Vold
*avold@siprut.com*
Greg M. Barbakoff
*gbarbakoff@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.948.9196
www.siprut.com

*Attorneys for Plaintiffs and the Settlement Class*

**TABLE OF CONTENTS**

SUMMARY OF PROCEDURAL CONTEXT ...................................................................................2

ARGUMENT ..................................................................................................................................3

    I.   The Settlement Here Is Not A Coupon Settlement Under CAFA ...........................3

    II.  The Court May Utilize A Lodestar-Multiplier Method Regardless Of Whether This Settlement Is a CAFA Coupon Settlement .......................................................5

        1.  The Case Law Belies Markow's Position ............................................................7

        2.  The "Cross-Check" Required By The Lodestar Calculation Is Measured by the Common Benefit Created By the Settlement. .......................................................10

CONCLUSION ..............................................................................................................................12

**TABLE OF AUTHORITIES**

**UNITED STATES SUPREME COURT CASES**

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ..................................................................................................5, 10, 11

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Blessing v. Sirius XM Radio*,
2012 WL 6684572 (2d Cir. Dec. 20, 2012) ......................................................................8

*In re Baby Products Antitrust Lit.*,
708 F.3d 163 (3d Cir. 2013) ............................................................................................12

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ...........................................................................................11

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007) ............................................................................................10

*Reynolds v. Beneficial Nat. Bank*,
288 F.3d 277 (7th Cir. 2002) ...........................................................................................11

*Stern v. Gambello*,
2012 WL 1744453 (9th Cir. May 17, 2012) .............................................................10, 12

*Williams v. MGM-Pathe Communications Co.*,
129 F.3d 1026 (9th Cir.1997) ..........................................................................................11

**UNITED STATES DISTRICT COURT CASES**

*Fleury v. Richemont N. Am., Inc.*,
2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) .................................................................4, 8

*In re HP Power Plug and Graphic Card Litig.*,
2008 WL 2697192 (N.D. Cal. July 8, 2008) ....................................................................9

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
280 F.R.D. 364 (N.D. Ill. 2011) ......................................................................................10

*McKinnie v. JP Morgan Chase Bank, N.A.*,
678 F. Supp. 2d 806 (E.D. Wis. 2009) .........................................................................5, 10

*Perez v. Asurion Corp.*,
2007 WL 2591180 (S.D. Fla. 2007) .................................................................................8

*Radosti v. Envision EM!, LLC*,
760 F. Supp. 3d 73 (D.D.C. 2011) ..................................................................................8

*Silberblatt v. Morgan Stanley*,
524 F. Supp. 2d 425 (S.D.N.Y. 2007) ..............................................................................9

*Thul v. OneWest Bank, FSB*,
No. 12 C 6380, 2013 WL 212926 (N.D. Ill. Jan. 18, 2013) ...........................................8

**STATUTES AND FEDERAL RULES**

28 U.S.C.A. § 1712 ...................................................................................................5, 6, 8

28 U.S.C. § 1927 ...................................................................................................................8

ABA Model Rule of Professional Conduct 3.3 ...................................................................8

District of Columbia Rule of Professional Conduct 3.3 .....................................................8

Fed. R. Civ. P. 11 ...............................................................................................................8

Fed. R. Civ. P. 23............................................................................................................. *passim*

Illinois Rule of Professional Conduct 3.3 ...........................................................................8

**MISCELLANEOUS**

Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS
(4th ed. 2002) ..................................................................................................................10

Objector Markow's Response to Southwest's brief on Attorneys' Fees (Docket No. 120), is incorrect on a number of levels. As an initial matter, this Class Settlement is *not* a coupon settlement within the meaning of CAFA. The underlying issue in this case was Southwest's wrongful revocation of drink vouchers with no expiration date, and the settlement restores the very thing Class members were deprived of – with no cap or limit on claims. Because the Settlement is not a coupon settlement within the meaning of CAFA, the Court can approve the agreed-upon attorneys' fees based on the "percentage of benefit" method – the presumptive methodology in the Seventh Circuit – given that the agreed-upon fee payment is only 10.3% of the common benefit created for the Class by the Settlement. And while Markow also contends that the Court must award fees based on the number of *claims*, that would be true only if the Settlement were actually a CAFA coupon settlement (which it is not).

As Plaintiffs (and Southwest) have explained in the parties' previous filings, however, the Court does not even need to reach the issue of whether this Settlement is a CAFA coupon settlement. That is because a court may still award fees (or here, approve fees that the defendant has already agreed to pay) in a CAFA coupon settlement based on the lodestar-multiplier methodology. And because Plaintiffs' base lodestar is $1.14 million, a modest multiplier of 2.63 – well within the presumptive multiplier ranges of the Seventh Circuit – is all that is required here in order to reach the parties' agreed fee payment.

In an attempt to avoid this conclusion, Markow makes the incredible argument that *if* the Settlement is deemed to be a CAFA coupon settlement, the Court is not empowered to use the lodestar methodology in assessing fees *at all*. Rather, says Markow, the Court is constrained to consider only the number of actual claims made pursuant to the Settlement and must award fees based on a percentage of claims made. This argument is demonstrably false: it contravenes

CAFA's plain text, CAFA's legislative history, and the numerous court decisions that have addressed this exact issue and rejected Markow's argument (which Markow fails to acknowledge, let alone distinguish). Markow's Objection should be overruled.

## SUMMARY OF PROCEDURAL CONTEXT

Plaintiffs filed their Motion for Attorneys' Fees, Costs, and Incentive Awards on April 4, 2013. (Docket No. 103) In that Motion, Plaintiffs sought the Court's approval for an award of $3.0 million in attorneys' fees, plus up to $15,000 for the reimbursement of costs and expenses.[1] As Plaintiffs explained, the parties agreed on these figures after months of negotiation on that issue alone (and *only* after the terms of the Class relief were established) with the active assistance and involvement of the parties' neutral mediator, Hon. Wayne Andersen. Plaintiffs also explained in that motion that the agreed-upon fees represented only 10.3% of the $29 million[2] common benefit created by the Settlement, and also required application of a 2.63 lodestar multiplier based on the time records submitted with the Motion ($1,140,270 in base lodestar for the seventeen month period since the case was first filed).

Objector Markow filed his Objection to the Settlement and to Class Counsel's request for attorneys' fees on April 10, 2013. (Docket No. 105.) Meanwhile, Southwest filed its Response to Plaintiffs' Motion for Attorneys' Fees on April 15, 2013. (Docket No. 113.) In its Response, Southwest reiterated the position it took during fee negotiations, which is that the Settlement is a

---

[1] Plaintiffs also requested the Court's approval for the payment of $15,000 in incentive awards to each of the two class representatives. Southwest has agreed to pay these amounts. Markow's Objection (Docket No. 105) takes issue with the incentive awards, but Plaintiffs responded to Markow's specific arguments on the incentive awards in Plaintiffs' Combined Motion for Final Approval and Responses to Objections. (Docket No. 125.) Because Markow does not make any arguments about the incentive awards in his Response to Southwest's brief on Attorneys' Fees – which is the subject of this Reply – we will not address that issue again in this brief.

[2] As the Motion for Attorneys' Fees also explained, the $29 million figure is a *minimum* valuation of the common benefit. Based on the number of vouchers in circulation, $58 million worth of vouchers were originally issued to the Class. Southwest's modeling suggests that as many as half of the vouchers were originally redeemed, which means the minimum value of the settlement is $29 million.

coupon settlement under CAFA. Nonetheless, Southwest reaffirmed that it had agreed to pay the $3.0 million in fees as a result of compromise and risk management (which was equally true for Plaintiffs), and also because the Court would only need to apply a modest multiplier of 2.63 to reach the agreed amount, which makes the negotiated fees equally appropriate whether the settlement is a CAFA coupon settlement or not.

Plaintiffs subsequently filed their Combined Motion for Final Approval of Class Settlement and Responses to Objections on May 7, 2013. (Docket No. 122.)[3] In that filing, Plaintiffs responded directly to Markow's Objection (among the other objections). That same day, however (pursuant to the Court's Order of April 23, 2013, Docket No. 119), Markow filed a brief in response to Southwest's response on attorneys' fees. (Docket No. 120.) Markow contends that this Court cannot use the lodestar-multiplier methodology to approve fees, if the Court determines that the Settlement is a CAFA coupon settlement. On May 13, 2013, Southwest filed its Reply brief, countering Markow's arguments on this score. (Docket No. 126.)

Finally (and again pursuant to the Court's April 23 Order), Plaintiffs now separately file their own Reply to Markow's response brief.

## ARGUMENT

### I. The Settlement Here Is Not A Coupon Settlement Under CAFA.

The predicate for Markow's argument is that this Settlement is, in fact, a coupon settlement under CAFA. That is wrong. This is not a "coupon settlement" within the meaning of CAFA.[4]

---

[3] Plaintiffs' Motion was originally filed as an exhibit to Plaintiffs' Motion for Leave to File an Oversized Brief, *Instanter*. The brief was later refiled (with leave of Court) with the accompanying exhibits on May 9, 2012. (Docket No. 125.)

[4] Southwest has taken the position (as it did during fee negotiations) that this Settlement is a coupon settlement under CAFA. Plaintiffs disagree with that position. Plaintiffs agree, however, with the balance of Southwest's response to Markow, including particularly the point that this Court may utilize

-3-

As Plaintiffs detailed in their Motion for Final Approval and Responses to Objections (Docket No. 125), although CAFA does not expressly define what a coupon is, "the legislative history suggests that a coupon is a ***discount*** on ***another*** product or service offered by the defendant in the lawsuit." *Fleury v. Richemont N. Am., Inc.*, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008) (emphasis added). The Settlement does not provide coupons for the purchase of *other* products and services, as an actual coupon settlement would. Rather, the settlement gives back to Class Members the very thing that Southwest took from them through the wrongful conduct alleged in the Complaint. Just because the claims involved Southwest's wrongful refusal to honor coupons in the first place does not make the settlement a "coupon settlement" within the meaning of CAFA.

Plaintiffs previously submitted a Declaration from Professor Georgene Vairo, a nationally recognized scholar and expert on CAFA, in support of this point. As Professor Vairo's Declaration details, and as Plaintiffs demonstrated at length in their prior filing on this issue[5] (Docket No. 125, pp. 33-40), the purpose of CAFA's coupon settlement provision is to prevent coercion between counsel for the class, on the one hand, and defendants on the other, in situations where defendants receive a class-wide release in exchange for something of little or no value, or which actually benefits the defendants. This is not the case here. Class Members are receiving replacement drink vouchers under the settlement because that is what they had *before* Southwest stopped accepting them. By providing this relief to Settlement Class Members, the

---

the lodestar-multiplier methodology to approve the agreed fees *regardless* of whether this Settlement is a CAFA coupon settlement. This point is discussed in more detail below.

[5] Because Plaintiffs briefed this issue extensively in their prior filing, we will not burden the Court by repeating all of the same arguments again here. Plaintiffs incorporate by reference their Motion for Final Approval and Responses to Objections, and particularly the discussion at pages 33-40.

-4-

settlement makes them whole – thus demonstrably distinguishing this case from any of the "coupon settlement" cases.

As even Markow must concede, *if* the Settlement is not characterized as a CAFA coupon settlement, then Markow's argument that the court must value the Settlement based on the number of claims made (as opposed to the common benefit created by the settlement) simply doesn't apply.[6] *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) (stating that the right of absentee class members "to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel."); *McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 815 (E.D. Wis. 2009) (relying on *Boeing* in awarding 33 percent of the available fund; a fee award that exceeded the amount actually claimed and noting that this was justified because "the settlement amount was available to the entire class").

**II. The Court May Utilize A Lodestar-Multiplier Method Regardless Of Whether This Settlement Is a CAFA Coupon Settlement.**

CAFA's text is clear. "**If** a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C.A. § 1712(a) (emphasis added). But if the "portion of the recovery of the coupons" method is **not** utilized to justify the fee application, then fees "shall be based upon the amount of time class counsel reasonably expended working on the action." 28 U.S.C.A. § 1712(b)(1). And, lest there be any doubt: "Nothing **in this subsection** shall be

---

[6] Plaintiffs also comprehensively addressed this point in their Motion for Final Approval and Responses to Objections (Docket Nos. 125), so the same arguments (and citations to authorities) will not be repeated again here. Plaintiffs incorporate that discussion by reference. (*See* Docket No. 125, pp. 33-40.)

construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees." 28 U.S.C.A. § 1712(b)(2) (emphasis added).

Read together, the meaning is clear: *if* a fee application in an actual CAFA coupon settlement is based on the value of the settlement, the value must be based on claims made, not the benefit created. And, to the extent that same fee application is alternatively based on the lodestar-multiplier method, "[n]othing in this subsection shall be construed to prohibit application" of that method.

If that were not clear enough, CAFA's legislative history – which Markow ignores – makes the point even clearer:

> 1712(a) states that in class action settlements in which it is proposed that an attorney fee award be based solely on the purported value of the coupons awarded to class members, the fee award should be based on the demonstrated value of coupons actually redeemed by the class members. Thus, if a settlement agreement promises the issuance of $5 million in coupons to the putative class members, but only 1/5 of potential class members actually redeem the coupons at issue, then the lawyer's contingency fee should be based on a recovery of $1 million–not a recovery of $5 million.
>
> In some cases, the proponents of a class settlement involving coupons may decline to propose that attorney's fees be based on the value of the coupon-based relief provided by the settlement. Instead, the **settlement proponents may propose that counsel fees be based upon the amount of time class counsel reasonably expended working on the action. Section 1712(b) confirms the appropriateness of determining attorneys' fees on this basis in connection with a settlement based in part on coupon relief. As is stated on its face, nothing in this section should be construed to prohibit using the "lodestar with multiplier" method of calculating attorney's fees.** By the same token, nothing in this section expands the authorization for the use of a multiplier; a multiplier may be used only to the extent authorized by existing law.

S. Rep. No. 109-14, at 30-31 (2005) (emphasis added).

Faced with this plain text and plain meaning, Markow misreads the language of the statute to support his incorrect argument. Markow says that the lodestar methodology is only

permissible if the "primary" class relief provided by the settlement is not coupons, and the "coupons need not serve as the basis for the attorneys' fees requested." (Markow Resp. at 5.) This makes no sense. If the primary class relief is not coupons, then the settlement (or at least the "primary" portion of it) is not a CAFA coupon settlement in the first place – which means *none of the CAFA coupon restrictions would apply anyway*. Section 1712(b) – "nothing prohibits the lodestar with multiplier method" – only makes sense, and only has a purpose in the statute, precisely **because** it applies to settlements (and accompanying fee applications) that are subject to CAFA.

Markow also claims that rejecting his proffered construction would lead to "absurd results," such as a situation where class counsel "spends ten years" running up lodestar calculations, culminating in a settlement in which class members are provided only with coupons "for a penny off their next purchase." (Markow Resp. at 6.) The answer, of course, is that existing law supplies adequate mechanisms to deal with this exactly this type of issue. For one, if a proposed settlement provides poor and inadequate relief to Class members, then a court should not (and need not) approve the settlement under Rule 23 in the first place. And if a court sees fit to grant preliminary (and final) approval to a settlement but nevertheless determines that class counsel's requested fee award is undeserved, the court has the discretion and power under existing law to deny or reduce the fee request. The only thing "absurd" here is Markow's hypothetical.

### 1. The Case Law Belies Markow's Position.

Given all this, it is unsurprising that all the cases that have addressed this exact issue have reached the same conclusion: the Court may utilize the lodestar-multiplier method in assessing Class Counsel's fees *even if* this Settlement were deemed to be a CAFA coupon settlement. Or,

put another way, the Court does not need to decide whether this Settlement is a CAFA coupon settlement in order to approve Plaintiffs' fee request.

Markow does not even mention these cases, let alone attempt to distinguish them:[7]

- *Blessing v. Sirius XM Radio*, 2012 WL 6684572, at *2 (2d Cir. Dec.20, 2012) ("Even assuming that the coupon provisions of CAFA were applicable, the district court's approval of the proposed settlement and the attorneys' fee award was appropriate. . . . The district court approved the fee award after determining it was reasonable under the lodestar method, which reflects 'the amount of time class counsel reasonably expended working on the action,' and is therefore consistent with CAFA. § 1712(b), (c)(2).").

- *Fleury v. Richemont North America, Inc.*, 2008 WL 3287154, *3 (N.D. Cal. 2008) (plaintiff argued that the Settlement was not a CAFA coupon settlement, and the Court applied the lodestar-multiplier methodology without reaching the issue: "The Court therefore applies the lodestar method. Its decision to do so is not inconsistent with CAFA. CAFA allows for use of the lodestar method.").

- *Perez v. Asurion Corp.*, 2007 WL 2591180 at *2 (S.D. Fla. 2007) ("CAFA gives the Court the discretion to award fees using the lodestar method. CAFA also provides that the Court may award a multiplier of the lodestar to enhance the fee award under the appropriate circumstances. See 28 U.S.C. § 1712(b)(2).").

- *Radosti v. Envision EM!, LLC*, 760 F. Supp. 3d 73, 77-78 (D.D.C. 2011) ("Section 1712 provides that where the value of redeemed coupons is not used to determine the fee award, 'any attorney's fee award shall be based upon the amount of time class counsel reasonably expensed working on the action.' 28 U.S.C. § 1712(b)(l). The statute explicitly contemplates application of the lodestar method with a multiplier.")

---

[7] Markow's failure to acknowledge these authorities arguably violates Markow's counsel's duty of candor to this Court. *See Thul v. OneWest Bank, FSB*, No. 12 C 6380, 2013 WL 212926, **2-3 (N.D. Ill. Jan. 18, 2013) (Kennelly, J.) (issuing rule to show cause order based on counsel's failure to disclose binding authority within the Seventh Circuit, and stating: "Their failure to do so almost certainly ran afoul of their obligation of candor under ABA Model Rule of Professional Conduct 3.3(a)(2) and the corresponding District of Columbia (D.C. RPC 3.3(a)(3)) and Illinois rules (Ill. RPC 3.3(a)(2)), and it likely amounted to conduct sanctionable under Federal Rule of Civil Procedure 11(b)(2) and 28 U.S.C. § 1927.").

Although the additional authorities that Markow chose not to bring to this Court's attention are outside this Circuit and thus not binding authority, it is still inappropriate for Markow to take a position that is flatly (and repeatedly) contradicted by numerous court decisions (no matter what Circuit those cases are from) without even acknowledging this contrary authority. Nor can Markow's counsel claim ignorance or good faith error: Markow's counsel, the Center for Class Action Fairness, represented an objector in *Blessing*, one of the very cases Markow decided to conceal from this Court.

Markow cites to language from *In re HP Power Plug and Graphic Card Litigation*, 2008 WL 2697192, at *1 (N.D. Cal. July 8, 2008), in support of his argument.[8] In that case, the court held that "the **main value** of the settlement is the provision of a repair option, not the provision of a coupon and finds using "a lodestar with a multiplier method" to be appropriate for determining attorney's fees for plaintiffs' counsel in this case." (Markow Resp. at 4; emphasis by Markow, not the Court.) On this basis, Markow *infers* that the *HP* court made some sort of determination that lodestar could be utilized only because the court *first* determined that CAFA's coupon restrictions did not apply to the fee request. But Markow is simply putting words in the court's mouth. The court's holding does not remotely support the conclusion Markow races to, which is that "Subsection 1712(b)'s lodestar method is reserved for those settlements where the primary class relief is not coupons and the coupons need not serve as the basis for the attorneys' fees requested." (Markow Resp. at 5.) And even if the case did stand for that proposition, it would be contrary to the plain text and meaning of CAFA, and all of the other cases cited above (which speak directly to this issue).[9]

---

[8] As an initial matter, as Plaintiffs explained in their Motion for Final Approval, *HP Power Plug* supports Plaintiffs' argument that the Settlement here is not a CAFA coupon settlement in the first place. The parties' settlement in *HP* provided that class members with defective graphics cards and power plugs could get new ones, and those who had already incurred out-of-pocket costs for the repairs could be reimbursed. Coupons for the purchase of other products were also offered as alternatives. 2008 WL 2697192, at *1. In ruling on class counsel's motion for fees, the court held that the "coupons provided as part of the settlement are incidental to the main relief of the repair of the affected graphics card or power plug. The court agrees that the main value of the settlement is the provision of a repair option, not the provision of a coupon . . . ." *Id.* at *2. Just as this Settlement gives back to Class members the very thing that was taken from them, the *HP Power Plug* the settlement allowed customers to receive replacement products (in-kind relief) to cure the underlying problem caused by the original ones. Neither settlement is a CAFA coupon settlement.

[9] Markow also cites *Silberblatt v. Morgan Stanley,* 524 F. Supp. 2d 425, 432 (S.D.N.Y. 2007) for the proposition that CAFA "permits the use of 'a lodestar with a multiplier method' in awarding fees where injunctive relief is obtained." (Markow Resp. at 4.) That is true but irrelevant to Markow's argument. That CAFA allows fees to be based on the value of an injunction does not mean that the lodestar methodology is inapplicable. That is simply not what the statute says.

-9-

### 2. The "Cross-Check" Required By The Lodestar Calculation Is Measured By The Common Benefit Created By The Settlement.

Markow also claims that a "cross-check" against the value of the settlement militates against use of the multiplier, because the value of the settlement must be based on actual claims made rather than the benefit created by the settlement. That argument, of course, is directly contrary to the law.

Courts in this Circuit and elsewhere have consistently reaffirmed the maxim set forth by the Supreme Court in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980), that the right of class members "to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." *See generally* 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 14:6, p. 570 (4th ed. 2002) (stating that *Boeing* settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed). *See also Stern v. Gambello,* 2012 WL 1744453 at *1 (9th Cir. May 17, 2012) ("nor was it error to consider, in cross-checking the fees against the recovery, the potential recovery rather than the claims actually made"); *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423 (2d Cir. 2007) (finding district court abused its discretion by calculating fees based strictly on the actual recovery and expressly rejecting the idea that basing the award on the available benefit would create a windfall for class counsel); *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*, 280 F.R.D. 364, 380 (N.D. Il. 2010); *McKinnie*

---

What is more, the injunctive relief established by the Settlement *further* bolsters the appropriateness of the fee request here – and for purposes of the lodestar-multiplier methodology, the "cross-check" of the lodestar multiplier against the value of the Settlement, including the value created by the injunctive relief, further confirms the appropriateness of the modest multiplier requested here.

*v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 815 (E.D. Wis. 2009) (relying on *Boeing* in awarding 33 percent of the available fund; a fee award that exceeded the amount actually claimed and noting that this was justified because "the settlement amount was available to the entire class"); *Williams v. MGM-Pathe Communications Co.,* 129 F. 3d 1026, 1027 (9th Cir. 1997) (reversing district court award of 33% of the claimed fund ($3,300) and awarding attorneys' fees of 33 percent of the available fund ($1.5 million).

Nor does this conclusion vary *even if* this Settlement is regarded as a CAFA coupon settlement (which clearly it is not). The cases cited above in Section II.A, which apply the lodestar-multiplier methodology to CAFA coupon settlements, did not consider claims made (as opposed to common benefit) for purposes of the cross-check, or otherwise state such a requirement. That is not the law.

Markow's cited cases do nothing to advance his position. *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277 (7th Cir. 2002), has nothing to do with fees. The Seventh Circuit reversed the district court's approval of a class settlement based on the determination that the district court did not properly assess the Rule 23 factors for settlement approval. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), does not state a general maxim that a cross-check against the value driven by the settlement must be based on claims made rather than benefit created. The settlement there did nothing more than require the defendant to post some safety warnings, allocated $100,000 to *cy pres*, and allocated $800,000 to class counsel. The Ninth Circuit reversed after holding that "the district court made (1) no explicit calculation of a reasonable lodestar amount; (2) no comparison between the settlement's attorneys' fees award and the benefit to the class or degree of success in the litigation; and (3) no comparison between the lodestar amount and a reasonable percentage award." *Id.* at 943. And, as explained above, the

Ninth Circuit has since reaffirmed (after *Bluetooth* was decided) that "in cross-checking the fees against the recovery, the potential recovery rather than the claims actually made" should be considered. *Stern v. Gambello,* 2012 WL 1744453 at *1 (9th Cir. May 17, 2012).

Finally, Markow badly misstates the holding of *In re Baby Products Antitrust Lit.*, 708 F.3d 163 (3d Cir. 2013). The Third Circuit vacated the district court's order awarding fees and costs "because it is based on a settlement that is no longer in effect and may be altered on remand." *Id.* at 177. The court also stated that "we need not (and do not) resolve whether the awarded fees were reasonable." *Id.* The court then proceeded to consider an objector's argument "that the Court should not consider the *cy pres* award as a class benefit for purposes of calculating attorneys' fees," but did not decide the issue. That issue also has nothing to do with this case.

## CONCLUSION

For the reasons set forth above, and for the reasons set forth in Plaintiffs' Motion for Attorneys' Fees (Docket No. 103), and Plaintiffs' Motion for Final Approval of Settlement (Docket No. 125) Plaintiffs request that the Court award attorneys' fees and expenses in the amounts requested by Plaintiffs, and for such further relief as the Court deems appropriate.

Dated: May 14, 2013

Respectfully submitted,

ADAM LEVITT and HERBERT C. MALONE, individually and on behalf of all others similarly situated

By: _____
One of the Attorneys for Plaintiffs
And the Settlement Class

Joseph J. Siprut
*jsiprut@siprut.com*
Aleksandra M. S. Vold
*avold@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
**S**IPRUT **PC**
17 North State Street, Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.948.9196

-14-

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiffs' Reply in Further Support of Motion for Attorneys' Fees** was filed this 14th day of May, 2013, via the electronic filing system of the United States District Court for the Northern District of Illinois, which will automatically serve all counsel of record.

Joseph J. Siprut

4836-1976-9108, v. 1