

UNITED STATES DISTRICT COURT
NORTHEASTERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE SOUTHWEST AIRLINES VOUCHER LITIGATION | Case No. 11-CV-8176 |
| DENNIS D. GIBSON & GLEITH E. COZBY | OBJECTION TO PROPOSED SETTLEMENT AND OPPOSITION TO MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS |
| Objectors. | Hon. Matthew Kennelly |

**FILED APR 15 2013 THOMAS G. BRUTON CLERK, U.S. DISTRICT COURT**

**RECEIVED APR 15 2013**

**JUDGE MATTHEW F. KENNELLY UNITED STATES DISTRICT COURT**

OBJECTION OF CLASS MEMBERS DENNIS D GIBSON AND GLEITH E. COZBY
TO THE PROPOSED SETTLEMENT

Dennis D. Gibson's mailing address is 6322 Desco Drive, Dallas, Texas 75225; His telephone number is 214-728-0730. His email address is gibson@bridgemarkns.com. Gleith E. Cozby's mailing address is 7402 Marquette, Dallas, Texas 75225; Her telephone number is 214-577-5436. Her email address is gleithcozby@yahoo.com.

## CLASS MEMBERSHIP

On multiple occasions prior to August 1, 2010, Dennis Gibson and Gleith Cozby flew Business Select on Southwest Airlines. During most of these flights, Dennis Gibson and Gleith Cozby did not use drink coupons. Thus, Gibson and Cozby qualify as class members with the right to object the fee request and this settlement.

## SETTLEMENT IS NOT FAIR

The burden of proving the fairness of a proposed class action settlement is always on its proponents, without the benefit of any presumption to aid in meeting this burden. See Newburg & Conte, 1 Newburg on Class Actions § 11.42, at 11-94 (3d ed. 1993) (citing, inter alia, *In re*

*General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106 (7th Cir.), cert. denied, 444 U.S. 870 (1979)). See also *Gautreax v. Pierce*, 690 F.2d 616, 630-31 (7th Cir. 1982); *Blanchard v. Edgemark Financial Corp.*, 175 F.R.D. 293, 300 (N.D. Ill.1997).

The Court, meanwhile, has an independent duty to closely scrutinize class settlements to safeguard the rights of absent class members. See *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir), cert. denied, 423 U.S. 864 (1975). In *Amchem Products, Inc. v. Windsor*, 117 S. Ct. 2231 (1997), the Supreme Court held that the rights of absent class members must be "the dominant concern" of the Court, especially in the settlement context.

Class action settlements require a higher level of scrutiny than ordinary cases because there always exists a potential conflict of interest between the class and class counsel. See *Mars Steel v. Continental Ill. Nat. Bank & Trust*, 834 F.2d 677, 681-2 (7th Cir. 1987). Indeed, one of the key dangers inherent in class action settlements is that class counsel may accept a lower recovery for the class in exchange for larger attorneys' fees. See Richard A. Posner, *An Economic Analysis of Law* 570 (4th ed. 1992) ("the absence of a real client impairs the incentive of the lawyer for the class ... [the lawyer] will be tempted to offer to settle with the defendant for a small judgment and a large legal fee"). Because the risk of collusive settlements is much greater in class actions than in ordinary litigation, it is "imperative" that a trial judge conduct a "careful inquiry" into the fairness of a proposed class settlement. *Mars Steel* 834 F. 2d 682. "The primary purpose of a fairness hearing is to protect class members ... whose rights may not have been given due regard by the negotiating parties." *Ficalora v. Lockheed Calif. Co.*, 751 F.2d 995, 996 (9th Cir. 1985).

In *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), the Supreme Court noted that one factor counseling against certification of the settlement class was the fact that certain claimants

"had more valuable claims...[,] the consequence being a[n]. . . instance of disparate interests." Id. at 857. Thus, the Supreme Court held in Ortiz that when class members have claims of varying strength or merit, it is an abuse of discretion to approve a settlement that treats them all the same. Id. See also, Paul D. Carrington & Derek P. Apanovitch, The Constitutional Limits of Judicial Rulemaking: The Illegitimacy of Mass-Tort Settlements Negotiated under Federal Rule 23, 39 Ariz. L. Rev. 461, 471 (1997) ("The modification of rights from those that can be enforced at trial to those that will be measured by weak conjecture [at settlement] effects a transfer of wealth from class members with clearly meritorious claims to those whose claims are more dubious. The wealth transfer is most apparent when the court-approved settlement treats diverse class members as if their claims were of equal worth.").

These intra-class allocation concerns are not lessened by the ability of a class member to opt out of the class. As a practical matter, the opportunity to opt out means little to class members who, like the Appellants, have small claims that would not be independently viable. *In re Relafen Antitrust Litig.*, 221 F.R.D. at 286. The opportunity to opt out does not rescue a settlement that is otherwise unfair in its allocation.

In this case, some class members' are time barred. The allocation of the settlement is not fair, reasonable or adequate.

## THE ATTORNEYS' FEES REQUESTED DO NOT FOLLOW THE MANDATES OF THE CLASS ACTION FAIRNESS ACT

At the fee determination stage, "the district judge must protect the class's interest by acting as a fiduciary for the class." *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 307 (3d Cir. 2005).

There is a much greater conflict of interest between the members of the class and the class lawyers than there is between an individual client and his lawyer. The class members are

interested in relief for the class but the lawyers are interested in their fees, and the class members' stakes in the litigation are too small to motivate them to supervise the lawyers in an effort to make sure that the lawyers will act in their best interests.

Section 1712 of the Class Action Fairness Act provides that "If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed."

This coupon settlement provides that upon successful submission of a claim form, class members will receive a "drink voucher entitling a Southwest Customer to one free drink during a Southwest flight." The settlement coupon expires one year after issuance. Class counsel's $3 million fee request, however, treats the settlement coupons as cash without regard for the number of drink coupons that will actually be redeemed. This is a violation of the plain language of the statute.

Class counsel here argues that the $3 million request is proper because it is 10% of the $29 million common benefit achieved by the settlement. Southwest, however, is only issuing coupons to those who successfully substitute a claim form. To redeem the coupon, the claimant must actually use the settlement coupon on a Southwest flight prior to the one-year expiration date. In basing the fee request on $29 million in coupons, class counsel assumes both a 100% claims rate and a 100% redemption rate of the settlement coupons. Settling parties use coupons to inflate the apparent value of the proposed settlement by claiming the coupons' nominal value is the actual value to the class members. See Geoffrey P. Miller & Lori S. Singer, Nonpecuniary Class Action Settlements, 60 L & CONTEMP. PROBS. 97, 108 (1997). Class counsel's inflated valuation of the settlement violates CAFA.

### B. Class Counsel's Fee Request Is Impermissibly Disproportionate to Class Recovery and Renders the Settlement Unfair.

If CAFA's requirement that the attorney-fee award be based on redeemed coupons is ignored, class counsel would receive 'a disproportionate distribution of the settlement." *In re Bluetooth Headset Prod.Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). In performing the *Bluetooth*, disproportionality analysis, courts should compare the fees and the value of the funds actually available, rather than the amount potentially available. [T]he actual benefit provided to the class is an important consideration when determining attorneys fees. *Baby Prods*, 708 F.3d 163, 2013 U.S. App. LEXIS 3379, *35,

The other two *Bluetooth* red flags for unfairness arc also present: a clear-sailing agreement and reversion to the defendant of unawarded attorneys' fees. 654 F3d at 948-49. The combination of all three demonstrates the settlement's unfairness: class counsel has negotiated $3 million in cash for itself, segregated from class recovery. It has negotiated protection from scrutiny on the fee award from Southwest. And if the fee award is reduced, the excess is returned to Southwest, rather than the class—even though Southwest was willing to pay the full $3 million to resolve the litigation. The only reason to have a reversion to Southwest instead of the class is to attempt to protect an excessive fee award from scrutiny, and deter challenges to the fee award. The $3 million should be considered part of a constructive common fund, and the fact that it is shielded from the class is inherently unfair. *Id*.

The valuation of the coupons at the face value, rather than the redemption value, is egregious because coupon redemption rates are low: The vast majority of class members will not make claims on the fund.

Indeed, numerous factors will negatively affect the redemption of the drink coupons here. The drink coupons one-year expiration date will likely decrease redemption because redemption rates of coupons decrease as a function of expiration date. The coupons low $5 face value, will affect redemption as coupons with lower face values are less likely to the redeemed. Finally, because claimants must purchase an expensive plane ticket in order to use the $5 drink coupon, redemption will likely be decreased See *Synfuel*, 463 F.3d at 654 (noting that in-kind/coupon compensation "requires the claimant to return to the Defendant to do business with bit, something at least some class members likely would prefer not to do.")

"Because redemption rates have a direct and potentially devastating impact on the actual value received by the class, such lack of evidence prevents any reasoned assessment of the settlements actual value to the class." *Sobel*, 2011 U.S. Dist. LEXIS 68984, at *36; *Synfuel*, 463 F.3d at 653-54 (requiring this assessment). For example, assuming a generous 10% claim-and-redemption rate of the drink coupons, the amount actually redeemed would be $2,900,000, which is *less* than class counsels $3 million fee request. Not only is awarding fees based on redeemed coupons required by CAFA, it will ensure that a fee award will be appropriately proportionate to the actual class benefit.

## CONCLUSION

The Court should deny approval. Even if the Court were to approve the settlement, it should defer awarding fees until the actual number of redeemed coupons is known, and then scale the Rule 23(h) award to reflect proportionality with the benefit actually realized by the class.

## CERTIFICATE OF SERVICE

The undersigned certifies Gibson and Cozby filed the foregoing Objection via the ECF system for the Northern District of Illinois, thus effecting service on all attorneys registered for electronic filing. Additionally, the following were served via CMRRR:

Hon. Matthew F. Kennelly
UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
Everett McKinley Dirksen United States Courthouse
Chambers 2188
219 South Dearborn Street
Chicago, Illinois 60604

Joseph J. Siprut
Aleksandra M.S. Vold
SIPRUT PC
17 North State Street, Suite 1600
Chicago, Illinois 60602

H. Thomas Wells, Jr.
MAYNARD COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203


Dated: April 11, 2013

_____          _____
DENNIS D. GIBSON                              GLEITH E. COZBY