**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: SOUTHWEST AIRLINES | ) | Case No. 11 C 8176 |
| VOUCHER LITIGATION | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

In November 2011, Adam Levitt and Herbert Malone filed suit against Southwest

Airlines Co. on behalf of a class of similarly situated Southwest customers.  They filed

the case in federal court pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. §

1332(d)(2).  Levitt and Malone alleged that Southwest committed a breach of contract,

was unjustly enriched, and violated various state consumer protection laws when, on

August 1, 2010, it stopped honoring drink vouchers that it had given to travelers who

purchased premium-priced "Business Select" tickets.  These vouchers were

redeemable on any Southwest flight for an alcoholic drink that would otherwise cost five

dollars.  Plaintiffs alleged that the drink vouchers had no expiration date at the time

Southwest issued them.

After a significant period of contested litigation, the parties engaged in mediation,

conducted by Wayne Andersen, a highly respected retired judge of this court.  The

parties agreed to a class-wide settlement of plaintiffs' claims, including a process for

class members to obtain replacement drink vouchers and injunctive relief regarding

future voucher programs.  The parties initially agreed that plaintiffs' counsel would

submit a petition for fees to the Court for adjudication.  Southwest later agreed not to

oppose a fee petition in the amount of $3 million. The Court preliminarily approved the settlement in December 2012 and approved a program of individual notice to potential class members, combined with publication notice.

Plaintiffs have moved for final approval of the proposed class settlement, which includes incentive awards for Levitt and Malone. Plaintiffs' counsel have also petitioned for an award of attorney's fees and costs. A number of class members have objected to the settlement or to the proposed fee award. For the reasons stated below, the Court grants final approval of the settlement agreement, including the proposed incentive awards for the class representatives. The Court will issue a separate decision concerning the petition for attorney's fees and costs.

**Background**

As indicated above, plaintiffs filed this suit in November 2011. In January 2012, the Court granted plaintiffs' motion to strike all but one of Southwest's affirmative defenses. Two months later, in March 2012, the Court granted Southwest's motion to dismiss as to three of plaintiffs' four claims. This left standing only plaintiffs' breach of contract claim.

The parties then engaged in discovery. Both sides served and responded to interrogatories and requests for production of documents. Southwest took the depositions of Levitt and Malone, and plaintiffs' counsel took the depositions of various Southwest employees.

The parties then entered into settlement negotiations. They engaged in a two-day mediation session with retired Judge Wayne Andersen and reached an agreement to settle the claims of the plaintiff class. The proposed settlement defines the

settlement class as including all Southwest customers who purchased a drink voucher through the purchase of a Business Select ticket before August 1, 2010 but did not redeem the voucher. The settlement allows each class member to submit a proof of claim form and supporting documentation in order to receive one replacement drink voucher for each unredeemed drink voucher. Each replacement voucher expires one year after its date of issuance.

In addition to compensating class members directly, the settlement includes provisions that amount to injunctive relief against Southwest. Specifically, the agreement includes the following requirements. First, if Southwest issues any drink vouchers following the settlement that do not include an expiration date, it must honor those vouchers on any Southwest flight at any time. This would essentially prevent Southwest from repeating what it is alleged to have done with the vouchers at issue in this case. Second, Southwest must honor the expiration dates printed on post-settlement drink vouchers and may not retroactively invalidate them. Third, if Southwest issues drink vouchers and limits their use to the date of the flight for which the ticket was issued, it must include conspicuous language on post-settlement drink vouchers stating this.

Finally, the proposed settlement of the class members' claims includes an agreement by Southwest to pay incentive awards of $15,000 each to the two named plaintiffs, Levitt and Malone.

After negotiating the proposed settlement of the class members' claims, plaintiffs and Southwest separately negotiated regarding attorney's fees for class counsel, again with the assistance of retired Judge Andersen. It is undisputed that there was no

negotiation regarding attorney's fees until after the parties had reached agreement on settlement of the class members' claims. By the time of the Court's preliminary approval of the settlement, plaintiffs and Southwest had reached an agreement that, subject to court approval, Southwest would pay class counsel fees of no less than $1.75 million and no more than $7 million and would reimburse counsel's costs and expenses up to $30,000. The notice of the proposed settlement that was sent to class members referenced this agreement.

Following the Court's preliminary approval of the settlement, the parties continued their negotiations regarding attorney's fees, again with the assistance of Judge Andersen. Southwest ultimately agreed not to oppose a fee request of up to $3,000,000 plus out of pocket expenses of up to $30,000.

The parties have now moved for final approval of the settlement. Plaintiffs have filed a separate motion seeking $3 million in attorney's fees, $30,000 in costs, and the proposed $15,000 incentive awards for the two named plaintiffs. Various class members have submitted objections. The Court held a fairness hearing on May 21, 2013.

## Discussion

As indicated earlier, the Court considers in this decision the fairness of the settlement of the class members' claims as well as the proposed incentive awards for the class representatives. The Court will address separately the proposed award of attorney's fees and costs.

### A. The objections

The notice to the class set a deadline for submission of objections. Timely

objections were submitted by Gregory Psoinos, Michael Tigar, Eric Timmons, John

Stevens, William Campbell, Richard Durante, Lisa Kristel, Courtney Moriarta, Dennis

Coyne, Gregory Markow, Jonathan Fortman, Alison Paul, Daniel Sibley, and Dennis

Gibson and Gleith Cozby (jointly). Several other apparent objections were sent to one

or more of the attorneys, but these did not meet the preliminary approval order's

requirements for objections. In addition, certain of the objectors – Stevens, Durante,

and Kristel – have opted out of the settlement. Thus they lack standing to object to its

approval. The Court has nonetheless considered the points made by all of those who

submitted objections.

**B.      Certification of the proposed settlement class**

The proposed settlement class is defined as follows:

> All Southwest Customers who purchased an Eligible Drink Voucher
> through the purchase of a Business Select ticket or otherwise, during the
> time period before August 1, 2010, but who did not redeem the Eligible
> Drink Voucher.

> The Settlement Class does not include Southwest customers who
> obtained drink vouchers or drink coupons through the Southwest Rapid
> Rewards program or as a result of being a member of the Southwest
> Rapid Rewards program, unless those customers separately purchased,
> but did not redeem, Eligible Drink Vouchers through the purchase of a
> Business Select ticket or otherwise.

The first question is whether the class meets the requirements for class

certification set forth in Federal Rule of Civil Procedure 23. A court may certify a class if

the party seeking certification meets all the requirements of Rule 23(a) and the

requirements of Rule 23(b)(1), (2), or (3). *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513

(7th Cir. 2006). Rule 23(a) requires the party seeking certification to demonstrate that

the members of the class are so numerous that joinder of all of them is impracticable

(numerosity); there are questions of law or fact common to the proposed class (commonality); the class representative's claims are typical of the claims of the class (typicality); and the representative will fairly and adequately represent the interests of the class (adequacy of representation).  Fed. R. Civ. P. 23(a)(1)–(4).  Rule 23(b) sets forth four circumstances under which a class action may be maintained.  In this case, the parties rely on Rule 23(b)(3), which permits class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members" and class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### 1.      Rule 23(a) requirements

It is undisputed that the proposed class meets the numerosity requirement.  Over two million individuals were affected by Southwest's decision to stop honoring the vouchers.

The Court addresses the other three Rule 23(a) factors together because they are interrelated.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. at 591, 626 n. 20 (1997) ("The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'").  In addition, certain objectors oppose the proposed settlement on grounds that implicate each of these requirements.

Rule 23(a)'s commonality requirement "requires the plaintiff to demonstrate that

the class members 'have suffered the same injury' . . . ."  *Wal-Mart Stores, Inc. v.*

*Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

147, 157 (1982)).  "Their claims must depend on a common contention" that "must be of

such a nature that it is capable of classwide resolution – which means that

determination of its truth or falsity will resolve an issue that is central to the validity of

each one of the claims in one stroke."  *Id.*

      A named plaintiff satisfies the typicality requirement when his claim and those of

the class members have a common legal theory, even if there are some factual

variations.  *Oshana*, 472 F.3d at 514.  To put it another way, "[a] plaintiff's claim is

typical if it arises from the same event or practice or course of conduct that gives rise to

the claims of other class members and his or her claims are based on the same legal

theory."  *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983).

      Finally, the adequacy of representation requirement involves two inquiries:  the

plaintiffs' attorney must be qualified, experienced, and capable of conducting the

litigation (this is undisputed in the present case), and the named plaintiffs must not have

interests antagonistic to those of the class.  *See, e.g., Rosario v. Livaditis*, 963 F.2d

1013, 1018 (7th Cir. 1992).  This requirement is intended to "uncover conflicts of interest

between the named parties and the class they seek to represent."  *Amchem Prods.*, 521

U.S. at 625.

      The claims of the proposed class satisfy these requirements.  Each class

member suffered the same injury, namely, the loss of the ability to use the drink

vouchers.  The claims of all of the class members depend on a key common question,

specifically, whether Southwest's decision to stop honoring the drink vouchers amounts

to a breach of contract. All class members' claims arise from the same alleged conduct – Southwest's decision to no longer honor the drink vouchers – and they are based on the exact same breach of contract theory. There is no serious contention that the legal theory would vary based on the class members' different states of residence or other individual factors.

Class member Michael Tigar, an attorney and law professor, has objected to certification of the settlement class and to approval of the settlement agreement on the ground that the class fails to meet certain of the requirements of Rule 23.[1] Specifically, Tigar argues that because the drink vouchers are less valuable to some class members than others and have no value to some class members, there is insufficient cohesiveness among the members of the class.

Tigar's arguments lack merit. It is beyond question that the claims of each and every class member are based on the same facts: the terms under which Southwest issued the drink vouchers, and its decision to no longer honor them. It is likewise beyond question that the claims of each and every class member share key common questions, namely whether Southwest's actions amounted to a breach of contract and, if so, what remedy is appropriate. Levitt and Malone no doubt have a higher level of interest in obtaining relief than all or the overwhelming majority of the other class members. This, however, is undoubtedly true of the named plaintiffs in virtually every class action. It is not a basis to say that the class representatives' claims are atypical or that they are less than adequate representatives.

---

[1] Other objectors make reference to Rule 23's requirements, but Tigar's objections are the most developed. The Court has considered all of the objections in addressing the requirements of Rule 23.

The core of Tigar's argument seems to be that class treatment of the claims is inappropriate because different class members attach different values to the lost drink vouchers:  some likely considered the vouchers an important component of the "Business Select" package; some likely viewed it as less important, but still a factor worth something; and others likely had no intention of ever using the vouchers and participated in the Business Select program for other reasons.  Tigar's premise cannot plausibly be disputed; of course different class members would value the vouchers differently.  But Tigar has cited no authority, nor is the Court aware of any, supporting the proposition that commonality, typicality, or adequacy of representation is lacking simply because some class members may subjectively attach different values to what they lost due to a breach of contract of which they all were victims.  Tigar likewise cites no authority for the proposition that the amount of damages awarded in an action for breach of a contract that involves the transfer of an item that has an ascertainable dollar value would vary based on the suing party's subjective view of what the voucher was worth to him.

The Court also notes that because the core of the settlement involves returning to the class members exactly what they lost – a drink voucher – variations in how class members might value the voucher is an insignificant factor.  Specifically, those who valued the voucher highly will use it, those who attached no value to it will not use it, and others may or may not do so.  Because each class member who submits a claim will be returned to essentially the position he was in prior to Southwest's decision not to honor the vouchers, the fact that some might have considered the voucher to be a

worthless piece of paper has no real impact on the Rule 23(a) analysis.[2]  As Southwest's counsel have aptly put it, "A Class Member who does not drink of course receives no value from the Settlement personally (except for the ability to donate drink coupons to someone else), but neither did such a Class Member lose any value in his unredeemed drink coupons, since he never intended to use them."  Submission of Southwest Airlines (dkt. no. 121) at 27-28.

One objector, Gregory Markow, argues that the class representatives do not meet Rule 23's adequacy of representation requirement.  Markow bases this objection on the proposed incentive awards, and in particular on the disparity between the amounts the two class representatives would receive as compared to other class members, and as compared to their actual damages.  Markow argues that the incentive awards "deprive[ ] the representatives of any incentive to ensure an equitable settlement."  *See* Markow's Not. of Pertinent Authority (dkt. no. 138) at 2.

Markow's argument might make sense if the proposed settlement provided the class members with nothing or with illusory benefits as compared with their own likely damages.  That was the situation in the cases on which Markow principally relies.  In *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006), the proposed settlement provided class members with $1, as compared with the potential for statutory damages of $100 to $1,000 per person, while providing $3,000 to the class representative.  In *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th

---

[2] Those particular plaintiffs presumably will not use the vouchers, and they will be no worse off than they were before.  And no hypothetical plaintiff who considered the original voucher worthless could, under Tigar's theory, legitimately complain about not getting money from the settlement as opposed to a voucher, because (following that theory) that particular hypothetical plaintiff lost nothing of value and thus would not be entitled to recover money.

Cir. 2000), the 200,000 class members were to get nothing, and the class representative was to receive $2,000. And in *In re Dry Max Pampers Litig.*, ___ F.3d ___, No. 11-4156, 2013 WL 3957060 (6th Cir. Aug. 2, 2013), the class members were offered what the court called "nothing but illusory injunctive relief," whereas the class representatives were offered $1,000 per child who had used the product. The same is not true here. As the Court has stated, the settlement in this case offers the class members exactly what they lost, namely drink vouchers. Thus although the proposed incentive payments *theoretically* might have given Levitt and Malone a disincentive to negotiate an adequate settlement for class members, that is not how it actually worked out. To put it in simple terms, there is not so much as a hint of a sell-out. Indeed, Markow does not identify in his objection any way in which the benefit to the class members could or should be improved, other than a complaint about the time limit for submitting claims.

The Court will address separately the particular amount of the proposed incentive awards. For present purposes, however, the record does not support Markow's contention that the awards undermine the adequacy of the class representatives. The Court finds that Levitt and Malone are adequate class representatives and that class counsel are adequate legal counsel for the class.

For the reasons stated above, the Court overrules the objectors' arguments and finds that plaintiffs have satisfied all of the requirements of Rule 23(a).

### 2.    Rule 23(b) requirements

Plaintiffs request certification of the proposed class under Rule 23(b)(3), which requires a showing that the common questions "predominate over any questions

affecting only individual members" and that a class action is "superior to other available method for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy," with the purpose being to determine whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. The factors considered include the class members' interest in prosecuting separate actions; the extent and nature of any other litigation over the controversy; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and any likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D). The last of these factors diminishes in importance when the request is for settlement-only class certification. *Amchem Prods.*, 521 U.S. at 620.

Each of these factors favors certification of the proposed class. There is no other pending litigation, and any given plaintiff's individual stake in the outcome is so small that separate suits are impracticable. When Rule 23(b)(3) was adopted, its drafters "had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prods.*, 521 U.S. at 617 (internal quotation marks omitted). Concentrating the claims into a single forum is the only realistic way of vindicating the class members' rights.

For these reasons, the Court concludes that the proposed class meets the requirements for certification under Rule 23(b)(3).

**B.    Approval of proposed settlement**

A court may approve a class action settlement only upon a finding that the

settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  This requires

consideration of a number of factors, including:  (1) the strength of the plaintiff's case

compared to the amount of defendants' settlement offer; (2) the complexity, length, and

expense of continued litigation; (3) the amount of opposition to the settlement; (4) the

presence of collusion in gaining a settlement; (5) the stage of the proceedings and the

amount of discovery completed.  *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463

F.3d 646, 653 (7th Cir. 2006).  The "most important factor" is the first – the relative

strength of plaintiffs' case on the merits balanced against the amount offered in the

settlement."  *Id.*

### 1.    Strength of plaintiffs' case as compared to settlement offer

In considering the strength of plaintiffs' case, legal uncertainties at the time of

settlement favor approval.  *See id.* ("In conducting this analysis, the district court should

begin by quantifying the net expected value of continued litigation to the class.")

(internal quotation marks omitted).  Plaintiffs' claims seem relatively clear-cut, but there

are some uncertainties.  In particular, Southwest has contended that it never intended to

allow holders of the vouchers to redeem them indefinitely.  Thus there is arguably some

potential uncertainty regarding the terms of the contract on which plaintiffs' claims are

based.  The Court is constrained to say, however, that this would not appear to have

been a terribly high hurdle for plaintiffs to clear.

The key factor in this particular case is that the proposed settlement calls for a

full-value, one-to-one reimbursement of drink vouchers for class members and allows

class members to sell or otherwise transfer the new vouchers should they desire.

Though the replacement vouchers will have a limited duration, that duration is

13

sufficiently long to permit the vast majority of class members to redeem the vouchers if they wish to do so, or to sell them or give them away if they do not want to use them or lack the opportunity to do so.  In short, even if plaintiffs faced few uncertainties in proving their claims, the fact that they get back almost exactly what they lost weighs heavily in favor of approval of the proposed settlement.

### 2.      Complexity, length, and expense of future litigation

If the Court approves the settlement agreement, this case will, of course, come to an end, and the class members will realize both immediate and future benefits as a result.  Were the Court to deny approval, however, protracted litigation would ensue. Among other things, a battle over class certification would be a virtual certainty with no guaranteed outcome – given that manageability concerns, which drop out of the balance when a settlement-only class is proposed, would come back into consideration. The Court finds that this factor supports approval of the proposed settlement.

### 3.      Amount of opposition

The settlement administrator in this case sent individual notices to 2,468,646 class members.  Of that number, only thirteen individuals have objected to the settlement and only seventy-three have opted out.  In total, that amounts to less than 0.01%.  Such a low level of opposition supports the reasonableness of the settlement. *See, e.g., In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that more than "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlement"). The Court does not find persuasive objector Markow's argument that the terms set forth in the class notice made it unreasonably difficult to assert a proper objection.

### 4. Absence of collusion

There is no hint of collusion in connection with the proposed settlement. The parties litigated this case vigorously before entering into settlement discussions. And they reached a settlement only after engaging in two full-day mediation sessions. The mediator, retired judge Wayne Andersen, reports that these sessions were contentious and that attorney's fees were not discussed at any time during negotiations over the terms of relief to class members. *See* Decl. of Hon. Wayne Andersen (Ret.), Dkt. Entry 125-6. Indeed, the parties' first discussion of fees took place in Judge Andersen's presence only after they had agreed to the terms of settlement for class members. The Court is thus satisfied that the settlement procedure was entirely devoid of collusion. This factor weighs in favor of approving the settlement.

### 5. Stage of proceedings and amount of discovery completed

The last factor that the Seventh Circuit considers relevant is the stage of the proceedings and the amount of discovery completed. This factor is relevant because it determines "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980).

Plaintiffs filed this case in 2011. After filing, the parties litigated defendants' motion to dismiss and plaintiffs' motion to strike certain affirmative defenses. In the months that followed, both parties served and responded to written discovery requests and conducted a number of depositions. And as indicated above, the parties engaged in intensive negotiations through mediation, including the exchange of multiple written settlement proposals. As a result, the parties and this Court are well positioned to

assess the strength of this case and the merits of plaintiffs' claims.

### 6.    Objections to the settlement

As indicated earlier, thirteen class members have submitted objections in which they argue that the Court should not approve the proposed settlement.  The Court has addressed some of the objectors' points in discussing the factors outlined by the Seventh Circuit for approval of a proposed class settlement.  The Court addresses here the remaining salient points made by the objectors, except for those concerning the fees requested by plaintiffs' counsel, which the Court will address in a separate order.

### a.    Meaningful and appropriate relief

Several objectors contend that a settlement is appropriate only if it provides cash recovery and that this proposed settlement is therefore unreasonable.  Though there has been considerable and justified criticism of coupon-based settlements, the fact is that there is no ban on or presumption against settlements that provide in-kind compensation.  Indeed, the provisions of CAFA, which the Court addresses later in this decision, contemplate that coupon-based settlements will continue.  *See* 28 U.S.C. §1712(e) ("In a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members.").  As the Ninth Circuit recently stated, "[t]he legislative history of CAFA makes clear that Congress did 'not intend to forbid all non-cash settlements.'  Indeed, coupon or other in-kind settlements may be particularly appropriate in situations "where they provide real benefits to consumer class members." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 n.4 (9th Cir. 2013) (quoting S. Rep.

No 109–14 at 31).

In this case, the injury to the class members consists of the loss of the ability to use a drink voucher. They will regain exactly that via the settlement. Thus this case is not like those in which a coupon is substituted for a pecuniary loss. Finally, the Court notes that a number of the arguments by objectors fail to recognize that a settlement, being a product of compromise, typically offers less than a full recovery. *See EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).

The Court acknowledges that coupon-based settlements pose problems that are not present in most cash-based settlements. As the Seventh Circuit has noted, coupon settlements have been criticized because "(1) it is doubtful that they provide meaningful compensation to most class members; (2) they often fail to disgorge ill-gotten gains from the defendant; and (3) they may force class members to do future business with the defendant." *Synfuel Techs.*, 463 F.3d at 653 (internal quotation marks omitted) (citing Christopher R. Leslie, "The Need To Study Coupon Settlements in Class Action Litigation," 18 Geo. J. Legal Ethics 1395, 1396-97 (2005)). The Court has considered these issues carefully in assessing the proposed settlement. But as noted earlier, this settlement differs from many coupon-based settlements in the sense that the underlying loss itself involved a voucher; the settlement does not substitute a coupon for a pecuniary loss. In addition, because the settlement involves a return of a drink voucher virtually indistinguishable from the one that the class members lost, it fully disgorges any ill-gotten gains. And finally, the problem of forcing class members to do future business with the defendant has far less force in this case than in others. The class members consist of persons who held drink vouchers but had not yet used them. To

use those vouchers, they would have had to fly again on Southwest.  Thus the proposed settlement does not require any further business relationship between the plaintiffs and the defendant other than what they otherwise would have had to engage in to be able to receive the benefit of their drink vouchers.  The Court concludes that the settlement is fair, reasonable, and adequate even though it involves in-kind compensation.

### b.    Requirement of claim form

A number of objectors contend that the settlement is unreasonable because it requires them to submit a claim in order to receive settlement benefits.  "[T]here is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment."  *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 593 (N.D. Ill. 2011).  *See also Milliron v. T-Mobile*, No. 08-4149 (JLL), 2009 WL 3345762, at *6 (D.N.J. 2009) ("[T]he Court finds it perfectly appropriate to require Class members to submit certain information proving that they are entitled to collect the relief awarded in this case.").  Further, a claim form is reasonable and appropriate, because although Southwest tracked the number of vouchers issued, it did not track how many were redeemed.  In addition, class members can make a claim online at little or no expense and can either submit or simply affirm the number of unredeemed vouchers they had. Thus the claims process imposes only a minimal burden that does not detract from the otherwise reasonable terms of the settlement.

### c.    General objections to class actions

A final group of objectors express general disapproval of the case and with class action lawsuits in general.  The Court agrees fully with the comments of its colleague

Judge Amy St. Eve in rejecting a similar argument:

> [T]he law recognizes class actions as a legitimate part of the U.S. litigation system. The Supreme Court has made this clear on several occasions. *See, e.g., General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982) (explaining that, in appropriate cases, "the class action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"); *Deposit Guaranty Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."). In addition, Federal Rule of Civil Procedure 23 provides for the use of such a procedure.

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 982 (N.D. Ill. 2011). *See also, e.g., Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."), *quoted in Amchem Prods.*, 521 U.S. at 617.

The Court respects the opinions of those objecting class members who do not think that this lawsuit should have been filed, are opposed to class actions generally, or who take a dim view of lawyers who file class actions. Some of the adverse comments, however, suggest that the existence of the lawsuit, and its settlement, somehow demean the courts and our legal system. The Court respectfully disagrees. It is worth keeping in mind the events that gave rise to this lawsuit. Business Select travelers paid more for their tickets in return for certain enhancements, one of which was the drink vouchers. Plaintiffs' complaint quotes Southwest's chief executive officer as saying that

the airline had decided to stop honoring the vouchers because there were too many outstanding and this had the potential to affect the airline's bottom line. In short, plaintiffs alleged that Southwest openly reneged on its contracts with its Business Select travelers because it had decided, after the fact, that it had made a bad deal. Thus the lawsuit seeks to enforce a bedrock principle underlying our economic system, namely that parties to a contract should live up to their promises. The Court respectfully suggests that a lawsuit that calls upon a contracting party to honor its contractual promise – a pillar of the rule of law in a market economy like ours – does not deserve the scorn that some of the objectors have heaped upon it.

### 7. Conclusion

After consideration of the relevant factors, the Court finds that the proposed the settlement is fair, reasonable, and adequate. The Court therefore grants the parties' joint motion for final approval of the settlement.

### C. Proposed incentive awards

Plaintiff also ask the Court to approve incentive awards of $15,000 for each of the two named plaintiffs. "Incentive awards are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001). This is unquestionably such a case. The value of an individual Business Select drink voucher is minimal. No individual plaintiff would have lost enough on his or her own to justify filing suit, absent some additional incentive.

In deciding whether an incentive award is proper, and if so, in what amount, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount

of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

The record reflects that Levitt and Malone have been active participants in the litigation, expending significant amounts of their time to benefit the class. Class counsel report, and it is uncontradicted, that Levitt and Malone have been involved in this case since its inception. Both assisted with written discovery, both of them prepared for and sat for depositions, and both consulted with class counsel on a regular basis. Levitt also participated in one of the mediation sessions with Judge Andersen. The class benefitted from their efforts; there is a solid basis to believe that discovery improved the prospects for a favorable settlement.

Awards of $15,000 for each plaintiff are well within the ranges that are typically awarded in comparable cases. *See, e.g.*, *Cook*, 142 F.3d at 1015 (affirming $25,000 incentive award where named plaintiff reasonably feared workplace retaliation); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 430 (2d Cir. 2007) (approving incentive awards of $25,000 to named plaintiffs whose depositions were taken); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 768 (S.D.W.Va. 2009) (awarding $15,000 even though class counsel provided no evidence that any of the class representatives had their depositions taken); *In re M.L. Stern Overtime Litig.*, No. 07cv118 BTM (JMA), 2009 WL 3272872 (S.D. Cal. 2009) (approving $15,000 incentive award). The Court has, earlier in this decision, considered and rejected objector Markow's contention that there is too great a disparity between the proposed incentive awards and the benefits the settlement provides to class members.

Having considered the relevant factors, the Court finds that the requested

incentive awards of $15,000 are reasonable.

## Conclusion

For the foregoing reasons, the Court grants final approval of the settlement [docket no. 88] and the incentive award portion of the motion for attorney's fees, costs, and incentive awards [docket no. 103].

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  August 26, 2013