**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

In re: SOUTHWEST AIRLINES     )     Case No. 11 C 8176
VOUCHER LITIGATION     )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Court previously approved a class-wide settlement in this action. *See In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013). This decision concerns plaintiffs' petition for an award of attorney's fees and costs. Familiarity with the settlement approval decision is assumed.

### Background

The plaintiffs, Adam Levitt and Herbert Malone, sued Southwest Airlines Co. on behalf of a class of similarly situated Southwest customers. Their lawsuit concerned drink vouchers that Southwest had provided to travelers who purchased premium-priced "Business Select" tickets. Each voucher was good for a single alcoholic drink that would cost $5 if paid for in cash. The vouchers did not have an expiration date. On August 1, 2010, Southwest stopped honoring the vouchers. In their complaint, plaintiffs quoted Southwest's chief executive officer as saying that the airline had decided to stop honoring the vouchers because there were too many outstanding and this had the potential to affect the airline's bottom line. In other words, plaintiffs essentially alleged that Southwest had reneged on its contracts with its Business Select customers because it had decided, after the fact, that it had made a bad deal.

Plaintiffs filed this suit in federal court pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). They alleged in their complaint that Southwest committed a breach of contract, was unjustly enriched, and violated various state consumer protection laws. In March 2012, the Court granted Southwest's motion to dismiss as to three of plaintiffs' four claims. This left standing only plaintiffs' breach of contract claim.

The parties then engaged in discovery. Both sides served and responded to interrogatories and requests for production of documents. Southwest took the depositions of Levitt and Malone, and plaintiffs' counsel took the depositions of various Southwest employees.

The parties then entered into settlement negotiations. They engaged in a two-day mediation session with retired Judge Wayne Andersen and reached an agreement to settle the claims of the plaintiff class. As indicated earlier, the Court recently approved the settlement. It defines the settlement class as including all Southwest customers who purchased a drink voucher through the purchase of a Business Select ticket before August 1, 2010 but did not redeem the voucher. The settlement allows each class member to submit a proof of claim form and supporting documentation in order to receive one replacement drink voucher for each unredeemed drink voucher. Each replacement voucher expires one year after its date of issuance.

In addition to compensating class members directly, the settlement includes provisions that amount to injunctive relief against Southwest. Specifically, the settlement includes the following requirements. First, if Southwest issues any drink vouchers following the settlement that do not include an expiration date, it must honor

those vouchers on any Southwest flight at any time. This would essentially prevent Southwest from repeating what it is alleged to have done with the vouchers at issue in this case. Second, Southwest must honor the expiration dates printed on post-settlement drink vouchers and may not retroactively invalidate them. Third, if Southwest issues drink vouchers and limits their use to the date of the flight for which the ticket was issued, it must include conspicuous language on the vouchers stating this.

Finally, the settlement of the class members' claims includes payment by Southwest of $15,000 incentive awards to the two named plaintiffs, Levitt and Malone.

After negotiating the proposed settlement of the class members' claims, plaintiffs and Southwest separately negotiated regarding attorney's fees for class counsel, again with the assistance of retired Judge Andersen. It is undisputed that there was no negotiation regarding attorney's fees until after the parties had reached agreement on settlement of the class members' claims. By the time of the Court's preliminary approval of the settlement, plaintiffs and Southwest had reached an agreement that, subject to court approval, Southwest would pay class counsel fees of no less than $1,750,000 and no more than $7,000,000 and would reimburse counsel's costs and expenses up to $30,000. The notice of the proposed settlement that was sent to class members referenced this agreement.

Following the Court's preliminary approval of the settlement, the parties continued their negotiations regarding attorney's fees, again with the assistance of Judge Andersen. Southwest ultimately agreed not to oppose a fee request of up to $3,000,000 plus out of pocket expenses of up to $30,000. Plaintiffs' counsel have now petitioned for an award of fees and expenses in those amounts.

**Discussion**

Plaintiffs' counsel justify their requested fee award by its relationship to the overall value of the settlement. They say that each replacement voucher is worth five dollars, the price of a premium or alcoholic beverage on a Southwest flight for a passenger who does not have a voucher. Analysis conducted by Southwest suggests that no more than half of the vouchers that it originally distributed were redeemed. Using this fifty percent figure, at least 5,800,000 vouchers were not redeemed. This would make the face value of the replacement vouchers at least $29,000,000.

Plaintiffs' counsel cite the Seventh Circuit's endorsement of the percentage-of-recovery method as the best way to calculate attorney's fees in a class action. *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund, in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis.") (citations omitted). Valued this way, the proposed fee award would be just a little over ten percent of the claimed value of the settlement. This, plaintiffs argue, is well below the benchmark of twenty-five percent suggested in the *Gaskill* decision for settlements that involve multimillion dollar amounts. *See id.*

Plaintiffs' counsel also argue that the proposed award is appropriate if one uses the so-called "lodestar" method of multiplying a reasonable hourly rate for the lawyers' services by the number of hours reasonably expended, *see, e.g., Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010), and then applying a multiplier. Plaintiffs' lead counsel Joseph Siprut has submitted an affidavit that provides the following breakdown

4

of time and proposed hourly rates:

- <u>Joseph Siprut</u>:  928 hours at $585 per hour

- <u>James McClintick</u>:  551.9 hours at $325 per hour

- <u>Aleksandra Vold</u>:  1005.7 hours at $325 per hour

- <u>Gregg Barbakoff</u>:  388.4 hours at $225 per hour

- <u>Kristina Pearson</u>:  25.2 hours at $150 per hour

These figures total 2,899.2 hours.  This includes 222 hours that Siprut estimated would be spent after submission of the fee petition to prosecute the case to its conclusion.

Based on these figures, the base lodestar figure, calculated as proposed by plaintiffs' counsel, is $1,140,270.  A risk multiplier of 2.63, plaintiffs' counsel argue, would result in the requested $3 million award.  They contend that this would be within the range of risk multipliers approved in this circuit.  *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991) ("Multipliers anywhere between one and four have been approved.") (citation omitted).

A number of those who have objected to the settlement contend that the requested attorney's fee award is disproportionate to the value of the benefits the settlement provides to class members.  None of them address the attorneys' hours or proposed hourly rates in detail.

Certain objectors contend that that the drink vouchers offered in the proposed settlement amount to "coupons."  As a result, they contend, any award of attorney's fees is subject to CAFA's provisions applicable to class action settlements that "provide for a recovery of coupons."  *See* 28 U.S.C. § 1712(a)-(c).

1.    **Whether CAFA's "coupon" provisions apply**

The first question is whether the proposed settlement "provide[s] for a recovery of
coupons" within the meaning of CAFA.  "While CAFA does not expressly define what a
coupon is, the legislative history suggests that a coupon is a discount on another
product or service offered by the defendant in the lawsuit."  *Fleury v. Richemont North
America, Inc.*, No. C-05-4525, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008).
Courts have also indicated that a key characteristic of a coupon is that it "force[s] future
business with the defendant."  *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463
F.3d 646, 654 (7th Cir. 2005); *see also Yeagley v. Wells Fargo & Co.*, No. C-05-3403,
2008 WL 171083, at *8 (N.D. Cal. Jan. 18, 2008) (noting that the settlement benefit of a
free credit report "is unlike a coupon in that it does not require a class member to do
business with [defendant] and entitles the class member to a whole product . . . rather
than merely a discount.").

The proposed settlement provides class members with a drink voucher
redeemable for a free alcoholic drink on any Southwest flight, as a replacement for any
unredeemed voucher.  To redeem a replacement voucher, a class member will be
required to fly on a Southwest flight.  In some situations, class members may have
existing reservations for flights on which they can redeem the replacement vouchers.  It
is likely, however, that in many or most situations, a class member will have to purchase
a new ticket in order to use a replacement voucher.  Either way, use of the replacement
voucher provided by the settlement requires the recipient to do business with Southwest
again. [1]  For these reasons, the Court concludes that the replacement vouchers are

---

[1] In its decision approving the proposed settlement, the Court said that this factor did not
counsel against approval of the settlement of the claims of the class, because holders of the

"coupons" within the meaning of CAFA.

The Court acknowledges, as it noted in addressing the question of settlement approval, that this settlement differs from most other coupon-based settlements. Here the class members are getting back exactly what they had before, an unexpired drink voucher. Thus the settlement, unlike most coupon-type settlements, does not involve substituting a coupon for some other pecuniary loss. CAFA, however, does not distinguish between settlements in which a coupon is provided to compensate for a lost coupon and those in which a coupon is provided to compensate for some other loss. Rather, the statute treats all settlements involving coupons in the same way. Given the plain language of the statute, the Court concludes that the replacement voucher aspect of the settlement involves "a recovery of coupons" within the meaning of CAFA. Thus CAFA's attorney's fee provisions relating to coupon settlements apply.

## 2.     Application of CAFA, 28 U.S.C. § 1712

As indicated earlier, certain objectors argue that because the settlement is a coupon settlement, CAFA, specifically, 28 U.S.C. § 1712(a), requires any attorney's fee award to be based on the value of the coupons redeemed. These objectors therefore contend that an attorney's fee award at this point is premature and that any award of fees must await the conclusion of the period for redeeming the replacement drink vouchers.

The Court agrees with the objectors that CAFA's attorney's fee provisions preclude an attorney's fee award based on the value of the unredeemed replacement

_____

original vouchers who had not used them would have been required to fly again to redeem them. In other words, they are no worse off than they would have been had Southwest continued to honor the original vouchers. This, however, does not alter the essential character of the replacement vouchers as coupons.

coupons. The Court also concludes, however, that contrary to the objectors' contentions, CAFA permits the use of the lodestar method to determine class counsel's fees.

Section 1712 states, in pertinent part:

**(a) Contingent fees in coupon settlements**.— If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

**(b) Other attorney's fee awards in coupon settlements**.—

> **(1) In general**.— If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.

> **(2) Court approval**.— Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. Nothing in this subsection shall be construed to prohibit application of a lodestar with multiplier method of determining attorney's fees.

**(c) Attorney's fee awards calculated on a mixed basis in coupon settlements**.— If a proposed settlement in a class action provides for an award of coupons to class members and also provides equitable relief, including injunctive relief—

> **(1)** that portion of the attorney's fee to be paid to class counsel that is based upon a portion of recovery of the coupons shall be calculated in accordance with subsection (a); and

> **(2)** that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of coupons shall be calculated in accordance with subsection (b).

*Id.* § 1712(a)-(c).

Section 1712 is constructed in a somewhat unwieldy way. This is likely the

result, at least in part, of the fact that (as the Ninth Circuit has noted) CAFA "'resulted from years of intense lobbying . . . partisan wrangling, and, following two successful filibusters, fragile compromises.'"  *In re: HP Inkjet Printer Litig.*, 716 F.3d 1173, 1181 (9th Cir. 2013) (quoting Stephen B. Burbank, "The Class Action Fairness Act of 2005 in Historical Context:  A Preliminary View," 156 U. Pa. L. Rev. 1439, 1441 (2008)).

Unwieldiness aside, subsection 1712(a) makes it clear that it is inappropriate to base a fee award in a coupon settlement case on the *un*redeemed value of the coupons.  It says that if the settlement, as in this case, provides for a recovery of coupons, the portion of any fee award attributable to the coupon award "shall be based on the value to class members of the coupons that are redeemed."

By its literal terms, however, subsection 1712(b) authorizes a lodestar-based fee award in a case like this one.  That provision contains three clauses.  The first makes it clear that subsection 1712(b) applies here:  the class settlement in this case "provides for a recovery of coupons to class members."  The second clause permits a fee award to be based on something other than the value of the coupons:  "a portion of the recovery of the coupons is not used to determine the attorney's fee."  The third clause authorizes use of the lodestar method:  when clauses one and two apply, the fee award "shall be based upon the amount of time class counsel reasonably expended working on the action."

The thrust of the objectors' position, however, is that *any* fee award in this case is "attributable to the award of coupons" within the meaning of subsection 1712(a).  The objectors therefore argue that under that subsection, the only appropriate basis for a fee award is the value of those coupons that actually end up getting redeemed by class

9

members.

This was the position adopted by the panel majority in *In re HP Inkjet Printer Litigation.* The majority in that case concluded that whenever a class settlement involves only coupons, "the fees award cannot be 'attributable to' anything but the coupons." *In re HP Inkjet Printer Litig.*, 716 F.3d at 1182. The majority said that although one could argue that a fee award in such a case is "attributable to the work of class counsel," that argument would be mistaken:

> Attorney's fees are *never* "attributable to" an attorney's work on the action. They are "attributable to" the relief obtained for the class. An attorney who works incredibly hard, but obtains nothing for the class, is not entitled to fees calculated by any method. For although class counsel's hard work on an action is presumably a necessary condition to obtaining attorney's fees, it is never a sufficient condition. Plaintiffs['] attorneys don't get paid simply for working; they get paid for obtaining results. Because it is the class relief that is *both* a necessary and a sufficient condition to an award of attorney's fees, it follows that an attorney's fees award can only be "attributable to," or the consequence of, class relief, not the attorney's hard work.

*Id.* (citation omitted).

This Court respectfully disagrees. The Court believes that in this passage, the Ninth Circuit majority conflated two distinct issues – entitlement to fees, and the amount of a fee award. Entitlement to fees is dependent on, and thus attributable to, the lawyer's success – whether the attorney won or lost. But although the amount of the award may be affected by the degree of the attorney's success, in the ordinary case it cannot be said to be "attributable to" the attorney's success. Rather, success is one factor – but only one – in determining the amount of a fee award. In the usual "lodestar" case, the amount of the award is, in fact, attributable to the attorney's work. As the Supreme Court indicated in its seminal decision on fee awards, *Hensley v. Eckerhart*,

461 U.S. 424 (1983), success is a condition precedent to recovery of a fee, but the amount of the fee is not attributable to success or even the degree of success.  Rather, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *id.* at 433 – in other words, the work counsel did.  The figure that results from this calculation may be adjusted based on a number of factors, including the degree of success.  *Id.* at 434.  But that does not mean that the fee award is "attributable" to the attorney's success.  Rather, it is attributable to the work the attorney performed and the value reasonably ascribed to that work.  And even in a case in which the fee is based on a percentage of the recovery, the amount of the fee award is not "attributable to" the attorney's success; rather, it is attributable to the amount of the recovery and the appropriate contingency percentage.  In short, this Court respectfully suggests that the Ninth Circuit majority's reading of subsection 1712(a) is based on an incorrect interpretation of that provision's use of the term "attributable to."

The Ninth Circuit majority further determined that subsection 1712(b) applies only when a class settlement involves "mixed" relief – both coupons and non-coupon relief. *Id.* at 1183.  It concluded that "a district court may award lodestar fees under subsection (b)(1) but only where the settlement is based 'in part' on coupon relief."  *Id.* at 1184. The majority appears to have concluded that under subsection 1712(b), a court may award a lodestar-type fee only on the non-coupon part of a mixed settlement but must base a fee on the coupon part of such a settlement exclusively on the redeemed value of the coupons.  *Id.* at 1183.

As the Court has indicated, it does not agree with this limitation on subsection

1712(b). The Court believes that the Ninth Circuit majority read that provision contrary to its plain language. The "attributable to" language used in subsection 1712(a) does not appear in 1712(b). Rather, the statute says, in a straightforward way, that if a portion (percentage) of the coupon recovery is not used to determine the attorney's fee, the lodestar method shall be used. The Court does not see how this can appropriately be read as *precluding* a lodestar-type award in a coupon settlement case.

To the extent there is an ambiguity in section 1712, it is resolved by the overall structure of the statute and the various subsections' titles. *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) ("[S]tatutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute.") (internal quotation marks omitted). The three subsections are entitled, respectively, "Contingent fees in coupon settlements," "Other attorney's fee awards in coupon settlements," and "Attorney's fee awards calculated on a mixed basis in coupon settlements." These titles indicate that the three provisions are constructed as parallel methodologies that are available as alternatives when a class settlement involves recovery of coupons. If the plaintiff proposes a fee award based on a percentage of the value of the coupons, the award, under subsection 1712(a), may be based only on the value of the coupons actually redeemed. The term "contingent fee" in the heading of subsection 1712(a) supports this interpretation, as such fees are generally calculated as a *percentage* of the clients' recovery. In short, subsection 1712(a)'s purpose and effect is to preclude basing an attorney's fees on a percentage of the face (i.e. unredeemed) value of coupons.

But the plaintiff is not limited to a coupon-value-based fee award; under

12

subsection 1712(b), the plaintiff may seek a lodestar-based fee.  As with subsection

1712(a), the heading of subsection 1712(b) also refers without limitation to fees

awarded "*in* coupon settlements."  Comparison of the two titles thus supports a reading

of the two subsections as alternative methodologies for determining fee awards in

coupon settlement cases.  Further, subsection (b)(1) includes the exact same language

used in the introduction of subsection 1712(a):  "If a proposed settlement in a class

action provides for a recovery of coupons to class members . . . ."  The use of this

parallel phrasing further indicates that subsections (a) and (b) describe alternative

methodologies.

Finally, under subsection 1712(c), in cases involving both coupon and equitable

relief, both methods of fee calculation may, but need not, be used.  This is made clear

by the language in each subparagraph that refers to "*that portion of the attorney's fee*"

calculated as either "based upon a portion of the recovery" or "not based upon a portion

of the recovery."  *Id.* § 1712(c)(1)-(2) (emphasis added).  The statute thus creates the

option of calculating an attorney's fee award in a mixed relief case via the lodestar

method, as a purely contingent fee, or as a combination of the two.  In short, mixed

relief does not compel mixed calculation.

CAFA's legislative history confirms the Court's reading of the attorney's fee

provisions.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 567 (2005)

(noting that where a statute is ambiguous, a court "should look to other interpretive

tools" including legislative history).  The 2005 Senate Report states, in relevant part:

> . . . Section 1712(a) states that in class action settlements in which it is
> *proposed* that an attorney fee award be based solely on the purported
> value of the coupons awarded to class members, the fee award should be
> based on the demonstrated value of coupons actually redeemed by the

class members. . . .

> In some cases, the *proponents of a class settlement* involving coupons *may decline to propose* that attorney's fees be based on the value of the coupon-based relief provided by the settlement. Instead, the *settlement proponents may propose that class counsel fees be based upon the amount of time class counsel reasonably expended* working on the action. *Section 1712(b) confirms the appropriateness of determining attorneys' fees on this basis* in connection with a settlement based in part on coupon relief. As is stated on its face, nothing in this section should be construed to prohibit using the "lodestar with multiplier" method of calculating attorney's fees. .

S. Rep. No. 109-14 at 30 (2005) (emphasis added). Thus by highlighting the settlement proponents' choice in proposing what to base fees upon, the report makes clear that subsection 1712(a) governs only *how* attorney's fees based on the percentage of recovery must be calculated, not *whether* a percentage of recovery method must be used.

Judge Berzon, the dissenting judge in *In re HP Inkjet Printer Litigation*, read section 1712 the same way as this Court does. Specifically, Judge Berzon concluded that

> CAFA allows the use of a lodestar to calculate attorney's fees on the basis of hours reasonably expended on the class action as a whole, rather than as a percentage of the value of the class recovery. That permission applies whether the relief obtained for the class involves, in whole or in part, coupons, or whether it does not. The limit CAFA imposes with regard to cases in which there is coupon recovery is a limit on the district court's method of calculating percentage-of-recovery fees, should it choose that approach. [Section] 1712(a) regulates *how* a percentage-of-recovery fee should be calculated, if that method is used to award attorney's fees for a coupon settlement; it does not dictate *whether* a percentage-of-recovery method must be used. Subsections 1712(b) and (c), in turn, provide that a lodestar method may be used either as an alternative to, or in combination with, a percentage-of-recovery calculation.

*In re HP Inkjet Printer Litig.*, 716 F.3d at 1187-88 (Berzon, J., dissenting). This Court agrees.

The Court adds that its reading of section 1712 is consistent with Congress's evident purpose of preventing excessive fee awards based on the largely illusory value of unredeemed coupons.  As Judge Berzon put it in her dissent in *In re HP Inkjet Printer Litigation*, the reading of the statute that this Court adopts "makes perfect sense in the context of the concerns that motivated § 1712 – namely, the potential for huge fees through a percentage approach, where the percentage was of all coupons that *could* be redeemed, even though few were."  *Id.* at 1196 (Berzon, J., dissenting) (citing S. Rep. No. 109-14, at 30).  The Court notes that under the lodestar method, the degree of success is an appropriate consideration in determining whether and how to adjust the lodestar figure.  *See Hensley*, 461 U.S. at 434.  In a case like this one, the actual value to class members of the coupons provided via settlement remains an important consideration in a fee award under subsection 1712(b), even though that value is determinative of the fee award as objectors urge.

With the exception of *In re HP Inkjet Printer Litigation*, courts addressing CAFA's attorney's fees provisions have, like this Court, found that the statute allows for the calculation of fees in a coupon settlement using the lodestar-multiplier method.  *See, e.g., Blessing v. Sirius XM Radio*, 507 Fed. Appx. 1, 4 (2d Cir. 2012) ("Even assuming that the coupon provisions of CAFA were applicable, the district court's approval of the proposed settlement and the attorneys' fee award was appropriate. . . . The district court approved the fee award after determining it was reasonable under the lodestar method . . . and is therefore consistent with CAFA."); *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 77-78 (D.D.C. 2011) ("The statute explicitly contemplates application of the lodestar method with a multiplier, but it does not explicitly require that approach.");

*Perez v. Asurion Corp.*, No. 06-20734, 2007 WL 2591180, at *2 (S.D. Fla. Aug. 8, 2007)

("CAFA gives the Court the discretion to award fees using the lodestar method.").

For these reasons, the Court rejects plaintiffs' contention that it may make a fee

award based on a percentage of the overall value of the coupons provided via the

settlement, but agrees with plaintiffs' contention that it may use the lodestar method to

determine an appropriate fee.

**3.     Application of the lodestar method**

Under the lodestar method, the Court begins by multiplying the number of hours

that class counsel reasonably worked by a reasonable hourly rate.  *See, e.g.,*

*Gastineau*, 592 F.3d at 748.  The fee petitioner carries the burden of persuasion on

these issues.  *See Hensley*, 461 U.S. at 437 ("the fee applicant bears the burden of

establishing entitlement to an award and documenting the appropriate hours expended

and hourly rates").

No party or objector has offered any challenge to the reasonableness of any of

the time claimed by counsel.  On the face of the fee petition, the hours claimed do not

appear to be excessive.  The Court has no point of reference from which it can fairly

challenge counsel's claim that the time they spent on the case was reasonable.

No party or objector has made an objection to these proposed hourly rates.

Here, however, the Court has other readily available data that it may use as a check on

the rates sought by plaintiffs' counsel.

The Court begins its discussion of hourly rates with the applicable standards.  A

reasonable hourly rate is "one that is derived from the market rate for the services

rendered."  *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011)

(internal quotation marks omitted). The focus is "the prevailing market rate for lawyers engaged in the type of litigation in which the fee is being sought." *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996) (emphasis omitted). *See also Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999). If the attorney has an actual billing rate that he or she typically charges and obtains for similar litigation, that is presumptively his hourly rate. *Pickett*, 664 F.3d at 640. In some situations, however, the attorney does not have an established market rate, for example, because he or she typically uses contingent fee arrangements or relies on statutory fee awards. That is the case here. In such a case, a court should rely on the "next best evidence" of the attorney's market rate, namely "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Id.* (internal quotation marks omitted).

As indicated earlier, plaintiffs seek hourly rates of $585 per hour for Joseph Siprut; $325 per hour for James McClintick and Aleksandra Vold; $225 per hour for Gregg Barbakoff; and $150 per hour for paralegal Kristina Pearson. *See* Siprut Affid. ¶¶ 13 & 15-18. Siprut's affidavit does not describe his level of experience, thus leaving it to the Court to do its own research. Siprut's LinkedIn profile – at least the publicly available version, the only version to which the Court has access – indicates that he is a 2003 graduate of Northwestern Law School. *See* http://www.linkedin.com/in/jsiprut (last viewed Sept. 26, 2013). This would mean that during the period when this lawsuit was prosecuted, Siprut had been an attorney for eight to ten years. The same profile indicates that Siprut has had his own law firm since 2011, and his biography on his law firm's web site indicates that prior to that time, he practiced law at "corporate litigation

firms." *See* http://www.siprut.com/attorneybiographies_js.html (last viewed Sept. 26, 2013). Siprut's affidavit describes McClintick as "an attorney with seven years of experience," Vold as "a third-year attorney," Barbakoff as "a second-year attorney," and Pearson as a "third-year legal assistant." Siprut Aff. ¶¶ 15-18.

The support offered by plaintiffs' counsel for the hourly rates they seek is rather scanty, to say the least. Lead attorney Joseph Siprut states in his affidavit that he and the other attorneys for plaintiffs "bill" at the rates requested. *See* Siprut Aff. (dkt. no. 103-1) ¶¶ 13 & 15-18. He offers nothing to indicate, however, that the attorneys have charged and obtained these rates for similar litigation, or indeed for any litigation. The only other support that Siprut offers is an excerpt from the results of relatively recent surveys of large law firm billing rates, published by the National Law Journal and the Wall Street Journal. Plaintiffs offer no support, however, for the proposition that these rates involve similar work done in similar cases. In fact, the contrary is likely true. That aside, it would be difficult to reach a reasonable conclusion that the hourly rate charged by a 1,000-lawyer firm representing primarily large corporate clients who voluntarily choose to pay its rates is a fair point of comparison for the reasonable hourly rates for attorneys at a seven-lawyer firm that handles primarily class action and other consumer-related litigation on a contingent-fee basis.

Given the absence of support for the hourly rates plaintiffs request, the Court has consulted published fee awards in other cases. *See, e.g., Schlacher v. Law Ofcs. of Phillip J. Roche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009) (citing *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d at 738, 743 (7th Cir. 2003) (if attorney does not provide evidence of her billing rate for comparable work, district court may look to evidence of

what other attorneys in the community charge for that work); *see generally Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999) (when plaintiff does not meet its burden of proving counsel's market rate, district court is entitled to make its own determination of reasonable hourly rate).

In particular, the Court has reviewed fee awards approved for the law firm of Edelman, Combs, Latturner & Goodwin, a Chicago law firm that has a long-established practice in the same field as Siprut, PC, the firm representing the plaintiff class in this case. Here are some examples. In *Jablonski v. Riverwalk Holdings, Ltd.*, No. 11 C 840, 2012 WL 3043687, at *1 (N.D. Ill. July 12, 2012), Judge Blanche Manning approved rates of $400 per hour for work done in 2011 by attorneys Daniel Edelman, Catherine Combs, and James Latturner, who had, respectively, thirty-six, thirty-six, and fifty years of practice experience. *Id.* at *1. In 2009, in the case of *In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2009 WL 4799954, at *20 (N.D. Ill. Dec. 9, 2009), Judge Robert Gettleman appears to have okayed a $550 rate for attorney Edelman. That same year, in *Jones v. Ameriquest Mortg. Co.*, No. 05 C 432, 2009 WL 631617, at *4 (N.D. Ill. Mar. 10, 2009), Judge David Coar approved rates of $465 per hour for partners Latturner, Combs, and Tara Goodwin, and a rate of $250 per hour for an associate who was six or seven years out of law school during the relevant period. In 2008, Judge Sam Der-Yeghiayan approved rates of $450 per hour for partners at the Edelman firm and $210 per hour for the same associate. *See Hamm v. Ameriquest Mortg. Co.*, 549 F. Supp. 2d 1018, 1022 (N.D. Ill. 2008).

Just this week, the Court considered a fee award (a very modest one) in a case brought by the Edelman firm in which it obtained a default judgment. That firm

submitted a very comprehensive affidavit by its lead partner, Daniel Edelman,

supporting the following hourly rates claimed for each of its partners and associates:

- $550 for partners Edelman (thirty-seven years of experience), Combs

(thirty-seven years), and Latturner (fifty-one years);

- $505 for partner Goodwin (twenty-two years);

- $445 for partners Michelle Teggelaar (sixteen years), Francis Greene

(thirteen years), and Julie Clark (thirteen years);

- $400 for partner Heather Kolbus (eleven years);

- $355 for partner Thomas Soule (ten years);

- $230 to $290 for associates; and

- $100 to $125 for paralegals.

*See Quazi v. Lizetty and Assoc. Grp. LLC*, Case No. 13 C 4512, dkt. no. 19-5 (affid. of

Daniel Edelman).

This Court's own experience in dealing with fee awards (mostly agreed-upon

awards) in consumer cases is generally consistent with a range bracketed on the higher

end by the hourly rates proposed for lawyers from the Edelman firm in the *Quazi* case

and, at the lower end, with the awards approved by Judges Der-Yeghiayan, Coar, and

Gettleman in the cases cited earlier.[2]  The latter are, at this point, several years old,

indicating that they may not actually represent appropriate current rates.  One way or

another, however, this data strongly suggests that the rates proposed by plaintiffs in the

present case significantly exceed the market rate – at least absent further support,

which plaintiffs have not offered.

---

[2] This conclusion, of course, does not preclude Siprut from seeking higher hourly rates in other
cases, assuming he provides support for such rates that passes judicial muster.

The Court also notes, in further support, that it recently dealt extensively with the issue of appropriate hourly rates in a civil rights / wrongful conviction case, *Jimenez v. City of Chicago*, Case No. 09 C 8081. Although there are differences between how civil rights cases and consumer cases are litigated, the rates the Court considered and approved in that case nonetheless provide a point of comparison that is far more relevant than the large-corporate-firm fees that Siprut cites in his affidavit. In *Jimenez*, the Court approved an hourly rate of $495 for Jon Loevy, who had nineteen years of experience, "an impressive record of success in plaintiff's civil rights litigation," and skills that "put him in the top tier of civil trial attorneys in the Chicago area." *Jimenez v. City of Chicago*, No. 09 C 8081, 2012 WL 5512266, at *2 (N.D. Ill. Nov. 14, 2012). In that same case, the Court approved hourly rates of $300 for an attorney with eight years of experience in the field and $275 for two attorneys with seven years of experience; $250 for an attorney with five years of experience, $225 for attorneys with four years of experience; and $175 for an attorney less than a year out of law school. *Id.* at *3-4.

In sum, the data that plaintiffs have offered and that the Court has reviewed do not support the rates that plaintiffs' attorneys seek. In particular, there is no basis on the current record to find that Siprut's market rate is the same as or close to the market rates of attorneys at the Edelman firm who have many years more experience than he does. Based on the data reviewed, the Court finds that the appropriate hourly rate for attorney Siprut, the lead attorney on the case with eight to ten years of experience during the relevant period, is $425 per hour. The Court further finds that the appropriate rates for attorneys McClintick (seven years), Vold (three years), and Barbakoff (two years) are $275, $225, and $200, respectively. Finally, the Court approves a rate of

21

$125 per hour for paralegal Pearson.

Based on these findings, the lodestar amount totals $888,137.50, calculated as follows:

- Siprut:  $394,400 (928 hours at $425 per hour)

- McClintick: $151,772.50 (551.9 hours at $275 per hour)

- Vold:  $251,425 (1005.7 hours at $250 per hour)

- Barbakoff:  $87,390 (388.4 hours at $225 per hour)

- Pearson:  $3,150 (25.2 hours at $125 per hour)

 A court can adjust the lodestar based on, among other things, twelve factors described in *Hensley*.  *Id.* at 434 n. 9. The twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 430 n. 3.  "However, 'many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'"  *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir.2009) (quoting *Hensley*, 461 U.S. at 434 n. 9).  In the Court's view, the key factors arguably  not subsumed in the lodestar calculation in the present case are "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation," *Gastineau*, 592 F.3d at 748 (internal quotation marks omitted), and the fact that fees were contingent on the outcome of the case.

The legal and factual issues involved in the case were not particularly complex.

Following dismissal of all but one of plaintiffs' claims, the only remaining claim was a

breach of contract claim. This claim was rather straightforward both factually and

legally. On the other hand, the case advanced, in the Court's view, a significant public

interest. As the Court described it in its decision approving the proposed settlement,

plaintiffs' suit sought "to enforce a bedrock principle underlying our economic system,

namely that parties to a contract should live up to their promises." *In re Southwest

Airlines Voucher Litig.*, 2013 WL 4510197, at *10.

The degree of success is a matter of dispute between plaintiffs and the objectors.

As the Court has previously concluded, the settlement returned to the class members

almost exactly what they lost, namely drink vouchers.[3] In this regard, plaintiffs achieved

a significant degree of success.

The actual value of what counsel obtained for the class, however, is

unquestionably far less than the aggregate face value of the replacement vouchers.

First, not all of the class members would have placed a significant value on the original

vouchers when they received them. As the Court stated in its settlement approval

decision, "some likely considered the vouchers an important component of the

"Business Select" package; some likely viewed it as less important, but still a factor

worth something; and others likely had no intention of ever using the vouchers and

participated in the Business Select program for other reasons." *Id.* at *5. Those who

placed little value on the original voucher may have gotten back what they lost, but its

value to them is negligible. It is unlikely that most of these class members will even go

---

[3] The only real difference is that the vouchers provided in the settlement have a one-year
expiration date. As the Court has previously discussed, however, this is not a particularly
significant limitation under the circumstances.

to the trouble of submitting a claim. Second, there is a very good chance that some of those who considered the original voucher valuable but did not get to use it before Southwest stopped honoring the original vouchers will be unable to use the replacement vouchers because they do not fly on Southwest often enough. Third, the odds are relatively strong that many of the original voucher recipients who placed the highest value on the vouchers had already used them prior to their revocation by Southwest. Thus it is likely that the "average" class member is among those who placed a lesser value on the voucher to begin with. All of this suggests that it is unlikely that a particularly high percentage of the vouchers actually will be used, or even claimed.

The Court cannot quantify these factors, but it would be difficult to dispute their accuracy. These factors did not counsel against approving the settlement, for the reasons the Court discussed in its decision on that subject. But they do affect one's view of the degree of success. If nothing else, it is relatively clear that the actual value of the settlement to class members does not begin to approach the $29,000,000 that plaintiffs propose.

Plaintiffs' counsel seek a multiplier of 2.63. This is a rather artificial figure, evidently chosen because, based on the lodestar counsel initially proposed, it would result in the requested $3,000,000 fee award. The Court concludes, for the reasons described below, that this would be an excessive multiplier under the circumstances.

Plaintiffs' counsel contend that they faced a significant risk of loss when they filed the case, making a risk multiplier appropriate. The Seventh Circuit has stated that a court "must award a multiplier when attorney's fees are contingent upon the outcome of the case (*i.e.*, there is the possibility that the attorney will not receive any fee)." *Cook v.*

*Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998)). The choice of a particular multiplier is a matter of discretion and requires "'a retroactive calculation of the probability of success as measured at the beginning of the litigation.'" *Id.* (quoting *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988). The Seventh Circuit has suggested "that a multiplier of 2 may be a sensible ceiling." *Id.* The overall standard, however, is still "whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999) (internal quotation marks omitted).

In the Court's view, counsel did not face all that significant a risk of defeat on the named plaintiffs' claims. The existence of a contract was a relatively straightforward proposition, and significant evidence of a material breach appears to have been largely a matter of public record. The two named plaintiffs' claims, however, were not worth all that much and likely would not have warranted prosecution absent the possibility of certification of a class. And there plaintiffs' counsel did face a real risk, specifically a risk of non-certification, likely based on manageability issues among others. Had Southwest successfully contested class certification, the case would have ended not with a bang, but a whimper. Thus counsel's success in obtaining an agreed-upon class settlement overcame a significant risk of defeat for the class as a whole.

When one takes all of these factors into account – relative lack of complexity; a success whose actual value was modest; the vindication of a public interest; and the risk of an effective defeat if class certification were denied – the Court believes that a multiplier significantly less than the figure plaintiffs propose, and less than the suggested ceiling of 2.0, is appropriate. The Court will award a multiplier of 1.5. When

applied to the lodestar figure of $888,137.50, this yields attorney's fees totaling $1,332,206.25.

## D.    Costs

Federal Rule of Civil Procedure 23(h) allows a court approving a class settlement to "award reasonable . . . nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The settlement agreement in this case provides that Southwest shall pay class counsel "costs and expenses not to exceed $30,000."  Dkt. No. 88 at 24.  Counsel have accounted, however, for only $18,522.32.  This figure is composed of $350 in filing fees; $1,208.20 in computer-assisted research; $566.05 in postage, messenger, service, and express delivery fees; $3,800.13 in transcript costs, $3,171.24 for travel and related expenses, $114.20 in printing, photocopying, and binding; and $9,312.50 in mediation fees.  Though class counsel has not provided further detail of these expenses, the Court sees no basis to disallow them; they are reasonable given the scope and complexity of the litigation.  The remainder of class counsel's requested expenses, however, are entirely unaccounted for; plaintiffs have not shown that anything above $18,522.32 was actually disbursed.  Thus there is no basis to award the higher amount requested.  The Court therefore awards class counsel expenses in the amount of $18,522.32.

## Conclusion

For the reasons stated above, the Court grants plaintiffs' petition for attorney's fees in part and awards plaintiffs' counsel attorney's fees in the amount of

$1,332,206.25 and expenses in the amount of $18,522.32.


Date:  October 3, 2013                        _____
                                              MATTHEW F. KENNELLY
                                              United States District Judge