**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| *In re Southwest Airlines Voucher* | ) | No. 11-CV-8176 |
| *Litigation* | ) | |
| | ) | Hon. Matthew Kennelly |
| | ) | |

# PLAINTIFFS' MOTION TO ALTER OR AMEND FINAL JUDGMENT <u>PURSUANT TO FED. R. CIV. P. 59(e)</u>

<u>Submitted by:</u>

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
**SIPRUT** PC
17 North State Street, Suite 1600
Chicago, Illinois 60602
312-236-0000
Fax: 312-948-9196
<u>www.siprut.com</u>

*Settlement Class Counsel*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

PROCEDURAL HISTORY .....................................................................................................2

      Settlement Terms ............................................................................................................2

      Plaintiff's Request for Approval of Agreed-Upon Attorneys' Fees ..............................3

      Objections to Requested Attorney's Fees .....................................................................4

      The Court's October 3, 2013 Order Regarding Attorney's Fees ...................................5

ARGUMENT ...........................................................................................................................6

      I.    The Court Failed to Give Sufficient Deference to the Parties'
           Agreed-Upon Fees ...........................................................................................7

      II.   The Court Was Not Permitted To Consider Its Own Evidence Of
           Market Rates Without First Providing Plaintiffs With Notice And
           An Opportunity to Respond ............................................................................9

           A. Siprut PC Has Received Its Requested Rates From Paying
              Clients Within The Past Year ...................................................................12

           B. Numerous Courts Have Approved Siprut PC's Hourly Rates
              —The Exact Hourly Rates Requested Here ..............................................12

           C. Siprut PC's Rates Are Consistent With The Rates Of
              Attorneys At Comparable Consumer Class Action Firms ........................14

      III. In Light Of Objector Markow's Appeal, The Court Should
           Add 500 "Anticipated" Hours of Work to Class Counsel's Lodestar ..................19

CONCLUSION........................................................................................................................19

TABLE OF EXHIBITS ...........................................................................................................21

# TABLE OF AUTHORITIES

## UNITED STATES SUPREME COURT CASES

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .................................................................................................7

*White v. New Hampshire Dep't of Emp't Sec.*,
455 U.S. 445 (1982) ...............................................................................................6

## UNITED STATES CIRCUIT COURT OF APPEALS CASES

*Caisse Nationale de Credit Agricole v. CBE Indus., Inc.*,
90 F.3d 1264 (7th Cir. 1996) ..................................................................................6

*Gusman v. Unisys Corp.*,
986 F.2d 1146 (7th Cir. 1993) ..............................................................................16

*In re HP Inkjet Printer Litig.*,
716 F.3d 1173 (9th Cir. 2013) ................................................................................5

*Jaffee v. Redmond*,
142 F.3d 409 (7th Cir. 1998) ................................................................................10

*Mathur v. Bd. of Trs. Of S. Ill. Univ.*,
317 F.3d 738 (7th Cir. 2003) ..........................................................................10, 15

*Oto v. Metro. Life Ins. Co.*,
224 F.3d 601 (7th Cir. 2000) ..................................................................................6

*Pickett v. Sheridan Health Care Ctr.*,
664 F.3d 632 (7th Cir. 2011) ......................................................................9, 10, 12

*Schlacher v. Law Offices. Of Phillip J. Roche & Assocs., P.C.*,
574 F.3d 852 (7th Cir. 2009) ..........................................................................10, 11

*Spegon v. Catholic Bishop of Chicago*,
175 F.3d 544, 557 (7th Cir. 1999)…………………………………………………….13

*Spellan v. Bd. of Educ. for Dist. 111*,
59 F.3d 642 (7th Cir. 1995) ..................................................................................10

*Uphoff v. Elegant Bath, Ltd.*,
176 F.3d 399 (7th Cir. 1999) ..........................................................................10, 11

**UNITED STATES DISTRICT COURT CASES**

*Blackwell v. Kalinowski*,
No. 08 C 7257, 2012 WL 469962 (N.D. Ill. Feb. 14, 2012)........................................................16

*Foos v. Ann, Inc.*,
No. 11 CV 2794, 2013 WL 5352969 (S.D. Cal. Sept. 24, 2013) .......................................1, 12

*Goodman v. Casting360, LLC*,
No. 12 cv 09851 (N.D. Ill. March 6, 2013) .................................................................13

*Hamm v. Ameriquest Mortg. Co.*,
549 F. Supp. 2d 1018, 1022 (N.D. Ill. 2008) ...............................................................6

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) ...........................................7

*In Re: Imprelis Herbicide Marketing, Sales Practices, & Products Liability Litig.*,
Case No. 2:11-md-2284-GP MDL No. 2284 (E.D. Pa.)......................................12, 13, 14

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
MDL 2103 1:09-cv-7960 (N.D. Ill.) .........................................................................13

*In re Michaels Stores Pin PaD Litig.*,
No. 1:1-cv-03350 (N.D. Ill.) ....................................................................................14

*In re Netflix Privacy Litig.*,
No. 11 cv 00379, 2013 WL 1120801 (N.D. Cal. March 18, 2013), .............................13

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
106 F. Supp. 2d 721 (D. N.J. 2000) .......................................................................8

*In re Southwest Airlines Voucher Litigation*,
2013 WL 4510197, at *7 .........................................................................................2

*In re Trans Union Corp. Privacy Litig.*,
No. 00 C 4729, 2009 WL 4799954 (N.D. Ill. Dec. 9, 2009) .......................................6

*Jablonski v. Riverwalk Holdings, Ltd.*,
No. 11 C 840, 2012 WL 3043687 (N.D. Ill. July 23, 2012);.......................................6

*Jiminez v. City of Chicago*,
No. 09 C 8081, 2012 WL 5512266 (N.D. Ill. Nov. 14, 2012);....................................6

*Jones v. Ameriquest Mortg. Co.*,
No. 05 C 432, 2009 WL 631617 (N.D. Ill. Mar. 10, 2009) ........................................6

*Manners v. Am. Gen. Life Ins. Co.*,
1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) .........................................................................7

*Miller v. Red Bull N.A., Inc.*,
12-cv-04961 (N.D. Ill.) ...............................................................................................................13

*Quazi v. Lizetty & Assoc. Grp. LLC*,
Case No. 13 C 4512, dkt. No. 19-5 (N.D. Ill.) ..............................................................................6

*Rossi v. Proctor & Gamble Co.*,
No. 11-7238, 2013 WL 5523098 (D.N.J. Oct. 3, 2013) ................................................................7

*Snell v. Allianz Life Ins. Co. of North Am.*,
No. Civ. 97-2784, 2000 WL 1336640 (D. Minn. Sept. 8, 2000) ....................................................7

## STATUTES AND FEDERAL RULES

28 U.S.C. § 1712(a) ......................................................................................................................4

18 U.S.C. § 2710 ........................................................................................................................12

Fed. R. Civ. P. 59(e) ...........................................................................................................1, 6, 8

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 59(e), Plaintiffs respectfully request that the Court modify two aspects of its October 3, 2013 Order regarding Plaintiffs' request for attorneys' fees: Class Counsel's hourly rates and its calculation of Class Counsel's lodestar time.[1]

First, Plaintiffs respectfully submit that the Court failed to apply a sufficiently deferential standard to the agreed-upon fees in the matter. As described at length in previous submissions to the Court, Class Counsel's requested award of fees and costs in this matter was (1) negotiated only *after* the material terms of the settlement had been agreed upon, (2) *agreed* upon by Southwest after extensive negotiations with Judge Wayne Andersen (ret.), a neutral mediator, and (3) to be paid *separate* and apart from the class relief, with no reduction in class benefits.[2] Moreover, no one – no objector and not Southwest – objected to Class Counsel's proposed hourly rates. Under these circumstances, the agreed-upon fee award was owed substantial deference, even if the result is not the same as the Court would have arrived at in a vacuum—*i.e.*, if the parties had not reached an agreement on fees.

Second, the Court ran afoul of binding Seventh Circuit precedent by its *sua sponte* reliance on evidence outside the record to determine Class Counsel's market rates, without providing Plaintiffs with notice or an opportunity to respond. The evidence on which the Court relied – specifically, Mr. Siprut's LinkedIn profile and fee awards from other cases involving

---

[1] Although Plaintiffs disagree with the Court's conclusion that the settlement vouchers in this matter are "coupons" under CAFA, Plaintiffs are not asking the Court to revisit that issue under Fed. R. Civ. P. 59(e). The exclusion of this issue from the instant motion, however, is not intended as a waiver for appeal or any other purpose. To the contrary, Plaintiffs continue to maintain that the settlement vouchers are *not* CAFA coupons, and that therefore the "benefit" to the class is the total value of all settlement vouchers available (as opposed to merely those that are redeemed). *See, e.g., Foos v. Ann, Inc.*, No. 11 CV 2794, 2013 WL 5352969, at *2 (S.D. Cal. Sept. 24, 2013) (distinguishing between a "voucher," which provides for free merchandise, and a "coupon," which provides for a discount on merchandise). The same is true for the Court's decision to utilize a multiplier of only 1.5.

[2] *See* Decl. of Hon. Wayne Andersen (ret.), at Ex. A; Pls' Combined Mot. for Final Approval of Class Settlement, and Resp. to Obj. and Comments at ¶¶ 6-10, at Ex. B.

other claims and other law firms with different practice specialties – was far less persuasive than the evidence that Plaintiffs could have provided and *did* in fact provide. Indeed, had Plaintiffs been given an opportunity to respond, they would have directed the Court's attention to several firms that, like Class Counsel, specialize in class action consumer litigation and charge rates comparable to (or more than) Siprut PC. Plaintiffs also would have highlighted Class Counsel's firm resume (attached as an exhibit to the motion for fees), which provides a much more detailed and relevant description of Class Counsel's practice than does Mr. Siprut's LinkedIn profile.

Third, Plaintiffs ask the court to add 500 "anticipated" hours of work to Class Counsel's lodestar in light of Objector Markow's appeal, which was filed on September 24, 2013. At the time of Plaintiffs' fee petition, Plaintiff could not have anticipated the subsequent appeal by one of the objectors to the settlement, and, therefore, Plaintiff did not rely on those anticipated hours in Plaintiffs' lodestar calculations. But now that we know such appeals have been filed, Counsel will be forced to expend the time necessary to complete the appellate process. That time should be included in the lodestar calculations.

## PROCEDURAL HISTORY

### Settlement Terms

In 2011, Plaintiffs sued Defendant Southwest Airlines Co. when it stopped honoring drink vouchers that it had given to travelers who purchased premium-priced "Business Select" tickets. On May 9, 2013, 2013, after protracted motion practice, discovery, and settlement negotiations, Plaintiffs moved for final approval of the parties' settlement agreement. Pursuant to that settlement, class members got back "almost exactly what they lost": a full-value, one-to-one reimbursement of drink vouchers, *plus* the right to sell or otherwise transfer the new vouchers should they desire. *In re Southwest Airlines Voucher Litigation,* 2013 WL 4510197*,* at *7.

***Plaintiffs' Request for Approval of Agreed-Upon Attorneys' Fees***

On April 4, 2013, Plaintiffs also sought the Court's approval of a $3 million fee award, $30,000 in costs, and $15,000 incentive awards to the two named plaintiffs in this matter. The amount of the requested fee award, which was agreed to by Southwest, was arrived at through extensive negotiations led by Judge Wayne Andersen (ret.), a neutral mediator. Moreover, the fees were negotiated only *after* class relief had already been determined and did not in any way reduce class benefits.

In support of their fee motion, Plaintiffs submitted an affidavit from Joseph J. Siprut, managing partner of Siprut PC. Among other things, Mr. Siprut's affidavit detailed Class Counsel's work on this matter, the billing rate for each lawyer or professional at Siprut PC who performed work on the matter, as well as the published billing rates of national firms with offices in Chicago. Mr. Siprut's affidavit and exhibits thereto established that the firm had already spent 2,677.2 hours prosecuting the case and that he anticipated that the attorneys at his firm would spend an additional 222 hours prosecuting the case to its conclusion; these "anticipated" hours included 95 hours responding to objectors, 95 hours drafting a Motion for Final Approval, and 32 hours preparing for and attending a preliminary and final hearing. (*See* Aff. Of J. Siprut, April 4, 2013, at Ex. C.) The affidavit also included a firm resume, which included further detail regarding the attorneys' qualifications and experience, as well as Siprut PC's extensive experience as lead or co-lead counsel in numerous nationwide consumer class actions. (*Id.* at Ex. C.)

In their motion, Plaintiffs argued that their requested $3 million in fees could be supported under both a percentage of recovery method or a lodestar approach. (*See* Pls' Mot. for Attorneys' Fees, Costs, and Incentive Awards at 10-14, at Ex. D.) Under the percentage of

recovery approach, the requested fees represented just 10.3% of the $29 million common benefit provided to the class.[3] Under a lodestar approach, assuming a base lodestar of $1,140,270,[4] a multiplier of 2.63 would justify a $3 million fee, as well.

***Objections to Requested Attorneys' Fees***

Some objectors to the settlement argued that the drink vouchers were actually "coupons" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712, and that any award of attorneys' fees was thus limited by CAFA's provisions applicable to coupon settlements. According to the objectors, these provisions were significant in two respects. First, they argued, any "percentage recovery" calculation of attorneys' fees must be based on the value of settlement vouchers actually *redeemed* by class members (as opposed to the $29 million worth of settlement vouchers *available*, as Plaintiffs had argued). *See* 28 U.S.C. § 1712(a) ("If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed."). Second, the objectors argued that because the primary benefit conferred upon class members was a coupon, CAFA prohibited the court from utilizing a lodestar calculation to determine a reasonable attorney's

---

[3] The $29 million benefit was arrived at by multiplying the number of vouchers available (5.8 million) by the value of each voucher ($5).

[4] The $1,140,270 lodestar was calculated by multiplying the Class Counsel's hourly billing rates by the number of hours worked and the number of additional hours anticipated through the end of the litigation. Specifically, as of the date of the fee motion, Mr. Siprut had worked 852 hours, with an additional 76 hours anticipated, at a rate of $585/hour; Mr. McClintock had worked 511.9 hours, with an additional 40 hours anticipated, at a rate of $325/hour; Aleksandra Vold had worked 899.7 hours, with an additional 106 hours anticipated, at a rate of $325/hour; Gregg Barbakoff had worked 388.4 hours at a rate of $225/hour; and Kristina Pearson billed 25.2 hours at a rate of $150/hour.

fee.[5] Significantly, *no one* -- no objector and not Southwest -- challenged Class Counsel's proposed hourly rates.

On May 14, 2013, Plaintiffs filed an additional Reply in Support of their Motion for Attorneys' Fees, refuting the objectors' characterization of the settlement as a CAFA coupon settlement and arguing that any percentage of recovery calculation was thus not limited to the value of redeemed vouchers.[6] Moreover, Plaintiffs argued, even assuming strictly *arguendo* that the settlement was properly characterized as a CAFA coupon settlement, the court was still permitted to use a lodestar calculation, which easily supported Plaintiffs' $3 million fee request.

### The Court's October 3, 2013 Order Regarding Attorneys' Fees

On September 24, 2013, after the Court had granted final approval to the Settlement, Objector Markow filed a notice of appeal. (*See* Notice of Appeal, Docket No. 145 (N.D. Ill. Sept. 24, 2013).) On October 3, 2013, the Court awarded $1,332,206.25 in fees and $18,522.32 in expenses.[7] Although the Court concluded that the vouchers were CAFA coupons, it agreed with Plaintiffs and Southwest that it could nonetheless apply a lodestar approach to determine a reasonable fee. *See* Oct. 3, 2013 Order at 10-13 ("respectfully disagree[ing]" with *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013), and concluding that "under subsection 1712(b), the plaintiff may seek a lodestar-based fee"). In determining the reasonable fee, however, although the Court accepted Plaintiffs' 2,899.2 hours of billed time, the Court cut the lodestar multiplier

---

[5] Although Southwest maintained that the drink vouchers were "coupons" under CAFA, it nonetheless endorsed using a lodestar approach, with a multiplier of 2.63, to calculate attorneys' fees in this matter, and reaffirmed its agreement to pay up to $3.0 million in fees. (*See* Def's Resp. to Pls' Mot. for Attorneys' Fees, April 15, 2013, at Ex. E.)

[6] Plaintiffs had previously addressed this issue at length in their Combined Mot. for Final Approval of Class Settlement, and Response to Objections and Comments, filed on May 9, 2013.

[7] The Court separately granted Plaintiffs' request for $15,000 incentive awards for each of the two named plaintiffs in this matter. (*See* Memorandum Op. and Order at 22, Aug. 26, 2013, at Ex. F).

from 2.63 to 1.5 and drastically reduced Class Counsel's hourly rates.[8] In determining these alternative rates, the Court *sua sponte* relied on the following: (1) Mr. Sipurt's LinkedIn profile; (2) submissions and published fee awards in a civil rights case, *Jiminez v. City of Chicago*, No. 09 C 8081, 2012 WL 5512266, at *2 (N.D. Ill. Nov. 14, 2012); and (3) five cases involving the law firm of Edelman, Combs, Latturner & Goodwin, another Chicago-based law firm.[9] The Court did not give the parties an opportunity to respond to this additional evidence—gathered by the court *sua sponte*—prior to its ruling, however.

On October 10, 2013, the Court entered final judgment in this matter.

<u>**ARGUMENT**</u>

Fed. R. Civ. P. 59(e) empowers a district court to reconsider and "rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982). Rule 59(e) motions serve two functions: to present newly discovered evidence, and to correct manifest errors of law or fact. *Caisse Nationale de Credit Agricole v. CBE Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). A "manifest error" is defined as the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).

---

[8] The Court reduced Class Counsel's "requested" hourly rates as follows: for Mr. Siprut, $585/hour to $425/hour; for Mr. McClintock, $325/hour to $275/hour; for Ms. Vold, $325/hour to $250; and for Ms. Pearson, $150/hour to $125/hour. The Court did not reduce Mr. Barbakoff's requested hourly rate of $225/hour.

[9] *Quazi v. Lizetty & Assoc. Grp. LLC*, Case No. 13 C 4512, dkt. No. 19-5 (N.D. Ill.); *Jablonski v. Riverwalk Holdings, Ltd.*, No. 11 C 840, 2012 WL 3043687 (N.D. Ill. July 23, 2012); *In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2009 WL 4799954 (N.D. Ill. Dec. 9, 2009); *Jones v. Ameriquest Mortg. Co.*, No. 05 C 432, 2009 WL 631617 (N.D. Ill. Mar. 10, 2009); and *Hamm v. Ameriquest Mortg. Co.*, 549 F. Supp. 2d 1018, 1022 (N.D. Ill. 2008).

## I. The Court Failed To Give Sufficient Deference To the Parties' Agreed-Upon Fees.

As discussed at length in Plaintiffs' fee petition, the proposed fee in this matter will not reduce the benefits to the class and was negotiated by a neutral mediator and agreed to by the parties only *after* all other settlement terms were determined. Under those circumstances, it is well-settled that the proposed fees are entitled to heightened deference as a matter of law. *See, e.g.*, *Rossi v. Proctor & Gamble Co.*, No. 11-7238, 2013 WL 5523098, at *9 (D.N.J. Oct. 3, 2013) ("[C]ourts routinely approve agreed-upon attorneys' fees awards paid by the defendant, rather than the class members, especially where that amount is independent of the benefit obtained for the class."); *Snell v. Allianz Life Ins. Co. of North Am.*, No. Civ. 97-2784, 2000 WL 1336640, at *19 (D. Minn. Sept. 8, 2000) ("Our acceptance of the fee request is facilitated by the fact that the fee amount was independently negotiated by the settling parties, and comes from a source that does not impact upon the total settlement fund that is available to the class."); *Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 WL 33581944, at *28 (M.D. Tenn. Aug. 11, 1999) (negotiated fee in class action entitled to "great weight" where attorneys' fees negotiations were conducted at arm's length, after agreement on all settlement terms); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992) (where there is arm's length negotiation with neutral mediator and no evidence of self-dealing or conflict of interest, "the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated by the adversarial parties in the litigation.").

This requirement of heightened deference implicitly recognizes that fee agreements should be encouraged as a matter of public policy. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of

course, litigants will settle the amount of the fee."). Indeed, as another district court observed in *In re Prudential Ins. Co. of America Sales Practices Litig.*, 106 F. Supp. 2d 721, 722 n.1 (D.N.J. 2000):

> Here, Class Counsel presumably sought more than [the agreed upon fee] in their fee negotiations with Prudential, and presumably agreed to [the fee] as a compromise, in order to achieve an agreement that Class Counsel hoped, under the circumstances, would be respected. If such agreements are likely to be subject to further reduction by the Court notwithstanding the absence of any collusion or opportunity for collusion, and notwithstanding the absence of any impact on the class recovery, then future plaintiffs' counsel will have little incentive to make such agreements.

As in *In re Prudential*, there is no question that the agreed upon fee award requested by Plaintiffs in this case was the product of intense negotiation and compromise by both parties, without the slightest hint of collusion. (*See* Memorandum Opinion and Order at 3, Oct. 3, 2013, at Ex. G.) ("Following the Court's preliminary approval of the settlement, the parties continued their negotiations regarding attorney's fees.") Accordingly, Plaintiffs' fee request was entitled to substantial deference. The Court's failure to accord *any* deference constitutes manifest error under Fed. R. Civ. P. 59(e).

To be clear, while Plaintiffs respectfully submit that certain of the Court's conclusions were wrong, that is beside the point. The point is that if the parties have reached an agreement on fees (particularly where, as here, the agreement is reached after the resolution of class benefits and with no effect on class benefits whatsoever), the Court must start with the presumption that the fees should be approved unless they are completely unreasonable—*even if it is not the number the Court would have arrived at independently*. Given the modest lodestar multiplier necessary to reach the agreed upon fees, that standard (a finding that the fees are completely unreasonable) cannot possibly be met here.

-8-

The ultimate effect of the Court's order is to take $1.7 million away from Plaintiffs' counsel and put it back directly into the pocket of Southwest, despite the fact that Southwest (the wrongdoer) has already *agreed* to pay it. This serves no benefit—it does nothing but penalize Class Counsel despite two years of work, significant risk, and a successful result for millions of class members.

**II. The Court Was Not Permitted To Consider Its Own Evidence Of Market Rates Without First Providing Plaintiffs With Notice And An Opportunity To Respond.**

Seventh Circuit precedent prohibits a district court from relying *sua sponte* on evidence outside the record to determine a "reasonable" rate for Class Counsel, unless Class Counsel is first provided with notice and an opportunity to respond. As explained more fully below, the Court's failure to recognize this controlling precedent constitutes manifest error under Rule 59 and merits reconsideration of Class Counsel's fee award.

In *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632 (7th Cir. 2011), a case involving fee-shifting, the Seventh Circuit held that a district court abused its discretion by relying *sua sponte* on independent evidence to adjust the hourly rate awarded to lead counsel. In that case, lead counsel was requesting an hourly fee of $592.50, which was not contested by the defendant, but the district court nonetheless determined that a $400 hourly fee would "amply" compensate him. *Id.* at 638. In making that determination, the district court *sua sponte* relied on the Consumer Price Index ("CPI") and the Laffey Matrix, a chart of hourly rates for attorneys and paralegals in the Washington, D.C. area that was prepared by the United States Attorney's Office for the District of Columbia to be used in fee-shifting cases. *Id.* at 649. The district court did not give the parties an opportunity to respond to this additional evidence, however. *Id.*

On appeal, the Seventh Circuit held that the district court was obligated to provide notice and an opportunity to respond to the additional evidence on which the court ultimately relied

when reducing the fee award -- even though the plaintiff had the opportunity to support the requested fee award through briefs and exhibits in the first instance. *Id.* at 652-53. For example, the *Pickett* court noted that, had the plaintiff been given notice of this additional evidence, he might have persuasively argued "for the use of different years as guideposts" or "for the use of a different award as a starting point" with respect to the CPI index, *Id.* at 649, or contested the value of the Laffey Matrix in general and as applied to him. *Id.* at 650. The Court continued:

> Here, plaintiff presented substantial evidence to support the requested fee award. If the district court found this evidence to be unpersuasive and therefore intended to rely on an independent basis for the hourly rate, then the district court should have given the parties an opportunity to respond. The parties had no notice that they should address the CPI or the Laffey Matrix in their briefing, and the caselaw within this Circuit would not have put them on constructive notice…. [W]e hold that the court did err by relying on these measures without giving plaintiff an opportunity to respond.

*Id.* at 650-51. *See also Mathur v. Bd. of Trs. Of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) (district court requested "supplemental briefs and affidavits specifically addressing the appellants' hourly rates."); *Jaffee v. Redmond*, 142 F.3d 409, 416 n.2 (7th Cir. 1998) ("When a court raises independent concerns about a fee petition, we have recognized that the court should afford the plaintiffs an opportunity to address its concerns"); *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 646 (7th Cir. 1995) ("[I]f… an independent investigation leads the district court to question certain aspects of the petition that have not been questioned previously by the opposing party, the party submitting the petition ought to have the opportunity to address the concerns of the district court before a final ruling is made on the matter.").

*Schlacher v. Law Offices. Of Phillip J. Roche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009), and *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999), cited by the Court in its October 3, 2013 Order in support of its reliance on published fee awards in other cases (*see* Memorandum Opinion and Order at 18-19, Oct. 3, 2013, at Ex. G), are not to the

contrary. In *Uphoff*, the Seventh Circuit affirmed the district court's reliance on a fee award from another court in this district involving the *exact same type of claim* (FSLA) and *the same attorneys*. *Id.* Moreover, in *Uphoff*, the other fee award had been raised by the defendant, and thus the plaintiff had ample opportunity to respond. Here, in contrast, the Court *sua sponte* relied upon fee petitions involving *other law firms* and *other claims*, with no notice or opportunity to respond. (*See* Memorandum Opinion and Order at 18-19, Oct. 3, 2013, at Ex. G.)

Similarly, in *Schlacher*, 574 F.3d at 858, the court reduced the hourly billing rates of two senior attorneys to that of a more junior attorney who specialized in the claims involved in that case. Significantly, the district court did not rely on fee petitions involving other firms in other cases, but rather used the proposed market rate for one of the plaintiff's attorneys *in that case*. *Id.* Moreover, the court expressly determined that the higher rates for the two more senior attorneys "overstated their value" for that case, and that it was thus proper to use the more junior attorney's billing rate. *Id.* No such determination was made in the instant case, however. Nor should it be.

Finally, in sharp contrast to *Uphoff* and *Schlacher*, here there were absolutely no objections raised to Class Counsel's rates by *anyone*, including the objectors and Southwest. Given the dearth of objections to Class Counsel's proffered hourly rates, Plaintiffs were entitled to notice and an opportunity to respond before the Court *sua sponte* relied upon the fee petitions in *Jablonski, In re Trans Union, Jones, Hamm*, and *Jiminez*. Had Plaintiffs known that the Court planned to invoke these fee petitions to determine Class Counsel's market rate, they would have argued that: (1) in the past year, Siprut PC has received the exact hourly rates requested here from paying clients; (2) numerous other courts, including one in this District, have also approved Siprut PC's exact hourly rate requested here; and (3) other attorneys with similar practice

specialties have rates that are similar to (and mostly greater than) Siprut PC. Each of these points is discussed further below.

**A. Siprut PC Has Received Its Requested Rates From Paying Clients Within The Past Year.**

As the Seventh Circuit has noted, courts "presume that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Pickett*, 664 F.3d at 640. Here, had the Court given Plaintiffs an opportunity to respond to the *Jablonski, In re Trans Union, Jones, Hamm*, and *Jiminez* fee petitions, Plaintiffs would have easily demonstrated that Siprut PC has received its requested rates from paying clients.

For example, Richard Ehrenreich, principal owner and managing partner of Schaumburg Professional Baseball, LLC and Grand Slam Sports and Entertainment, LLC, has retained Mr. Siprut within the past year at a rate of $585/hour and paid that rate to him. (*See* Decl. of Richard Ehrenreich at ¶¶ 2-4, Nov. 6, 2013, at Ex. H.) Similarly, Thomas Finnegan, Vice President of Thillens, Inc. ("Thillens"), a regional company that provides armored car services throughout Illinois and Wisconsin, has paid Mr. Siprut to represent Thillens at a rate of $585/hour. (*See* Decl. of Thomas Finnegan at ¶¶ 2-3, Nov. 6, 2013, at Ex. I.)

These are just two of several examples. Should the Court want additional evidence that Siprut PC has received its requested rates (and specifically, the rate of $585 for Mr. Siprut), Class Counsel will gladly provide additional declarations.

**B. Numerous Courts Have Approved Siprut PC's Hourly Rates—The Exact Hourly Rates Requested Here.**

According to the Seventh Circuit, after evidence of fee-paying clients (which has already been established here), evidence of previous fee awards is the "next best evidence" of an attorney's market rate. *Pickett*, 664 F.3d at 640 (emphasis added). Again, Plaintiffs can point to

several other cases in which courts, including one in this District, approved Class Counsel's requested rates in consumer class action cases.

For example, in *Goodman v. Casting360, LLC*, No. 12 cv 09851 (N.D. Ill. March 6, 2013), a class action involving claims under the Telephone Consumer Protection Act ("TCPA"), another court in this district approved $585/hour for Mr. Siprut. Similarly, in *Foos v. Ann, Inc.*, which involved allegations that the defendant unlawfully obtained and retained consumers' zip code information, the court approved $585/hour for Mr. Siprut and $325/hour for Ms. Vold, after finding Class Counsel "displayed skill" in prosecuting claims on behalf of the Class. *See* Order Granting Plaintiff's Motion for Attorneys' Fees at 7, *Foos v. Ann, Inc.*, No. 11 cv 02794, 2013 WL 5352969 (S.D. Cal. Sept. 24, 2013), at Ex. J.

*In re Netflix Privacy Litig.*, No. 11 cv 00379, 2013 WL 1120801 (N.D. Cal. March 18, 2013), is also instructive. In that case, which involved allegations that the defendant had unlawfully retained and disclosed plaintiffs' personally identifiable information in violation of the Video Privacy Act, 18 U.S.C. § 2710, the court approved $550/hour for Mr. Siprut (the requested rate in that earlier-filed case) and $325/hour for Ms. Vold. And, just this past August, the court in *In Re: Imprelis Herbicide Marketing, Sales Practices, & Products Liability Litig.*, an MDL case relating to damage caused by a herbicide called Imprelis, awarded a rate of $585/hour for Mr. Siprut. (*See* Order and Siprut Declaration, *In Re: Imprelis Herbicide Marketing, Sales Practices, & Products Liability Litig.*, Case No. 2:11-md-2284-GP MDL No. 2284 (E.D. Pa. Oct. 17, 2013), at Ex. K, L.)

Because "evidence of fee awards from prior similar cases is relevant to a district court's determination of a reasonable hourly rate and cannot be ignored out-of-hand," *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 557 (7th Cir. 1999.), Plaintiffs were entitled to have

the Court consider these other awards. Indeed, there is no question that the fee awards that Siprut PC has received in other consumer litigation matters are more relevant to its market rates than fee petitions involving other random firms and other claims, which is what the Court relied on. Had Plaintiffs simply been given notice that the Court planned to rely on these other fee petitions, they could have easily directed the Court to the above-cited authorities.

### C. Siprut PC's Rates Are Consistent With The Rates Of Attorneys At Comparable Consumer Class Action Firms.

The Court's only articulated basis for reducing Siprut PC's rates was that certain plaintiffs' attorneys from the Edelman firm and the *Jiminez* case, who have nothing to do with this case, had more years of experience but charged the same or less than Class Counsel in their cases. (*See* Memorandum Opinion and Order at 20-22, Oct. 3, 2013, at Ex. G.) The fee petitions for the Edelman firm and the *Jiminez* case, however, are inapposite. The Edelman fee petitions, for example, primarily involved claims under the Truth in Lending Act and Fair Credit Reporting Act. In contrast, Class Counsel's core practice – in this case, as well as others – is class action consumer litigation involving defeated contract expectations, violations of privacy, fraud, and deceptive and/or unfair business practices.

Instead of using the Edelman firm's debt collection cases as a basis for comparison, the Court should have considered fee petitions in consumer class action suits more similar to the instant litigation. An examination of these more analogous cases confirms that numerous courts presiding over consumer class action cases have approved of hourly rates that are comparable to (or exceed) Siprut PC's rates. Some recent representative examples include the following:

| Firm name | Case Name and No. | Range of Rates Approved | |
|---|---|---|---|
| | | Associates | Partners |
| Edelson McGuire LLC | *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practice Litig.*[10] MDL 2103 1:09-cv-7960 (N.D. Ill.) | $295 | $450-$600 |
| Edelson McGuire LLC | *Miller v. Red Bull N. Am., Inc.*[11] 12-cv-04961 (N.D. Ill.) | $215-$425 | $550-$675 |
| Edelson McGuire LLC | *In re Netflix Privacy Litig.*[12] 5:11-cv-00379-EJD (N.D. Cal.) | $250-$395 | $500-$630 |
| Neblett, Beard & Arsenault | *In re Imprelis Herbicide Marketing, Sales Practices & Products Liability Litig.*[13] MDL No. 2284 2:11-MD-02284_GP (E.D. Pa.) | $450-$595 | $750 |
| Wolf Haldenstein Adler Freeman & Herz LLP | *In re Imprelis Herbicide Marketing, Sales Practices & Products Liability Litig.*[14] MDL No. 2284 2:11-MD-02284_GP (E.D. Pa.) | $355-$445 | $505-$890 |
| Wolf Haldenstein Adler Freeman & Herz LLP | *In re Michaels Stores Pin Pad Litig.*[15] No. 1:1 -cv-03350 (N.D. Ill.) | $395 | $505-$890 |
| Faruqi & Faruqi, LLP | *In re Michaels Stores Pin Pad Litig.*[16] No. 1:1 -cv-03350 (N.D. Ill.) | $375-$535 | $650-$850 |

---

[10] Decl. of M. McMorrow at ¶ 19, at Ex. M; Order at 9, Dec. 6, 2011, at Ex. N.

[11] Decl. of J. Edelson at ¶ 22, at Ex. O; Order, Aug. 12, 2013, at Ex P.

[12] See Decl. of J. Edleson at ¶ 69, at Ex. Q, ; Order, Mar. 18, 2013, at Ex. R.

[13] Decl. of R. Arsenault, at Ex. S; Order, Oct. 17, 2013, at Ex. K.

[14] Decl. of F. Isquith , at Ex. T; Order, Oct. 17, 2013, at Ex. K

[15] Decl. of F. Isquith, at Ex. U; Order, Apr. 17, 2013, at Ex. V.

[16] Decl. of A. Vizzolo at ¶ 9, at Ex. W; Order, Apr. 17, 2013, at Ex. V.

Nor should the Court have focused so narrowly on the number of years that Siprut PC's attorneys had been practicing, as compared to attorneys at the Edelman firm and in the *Jiminez* case. Although the number of years of practice may be a factor in determining an hourly rate, it should not be the sole consideration. As the Seventh Circuit has explained, the market recognizes not only *quantity* of practice, but also *quality* of practice:

> Lawyers do not come from cookie cutters. Some are fast studies and others require extra preparation. Some are more nimble on their feet and apt to achieve better results at trial. Some have deeper insight and in a few hours may find ways to prevail (or to curtail costly discovery) that will elude their colleagues. Clients are willing to pay more, per hour, for these better lawyers…. Markets recognize these truths; judges must too.

*Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir. 1993). *See also Mathur*, 317 F.3d at 743-44 ("It is well-settled that "[w]hen a local attorney has market rates that are higher than the local average, '[a] judge who departs from this presumptive rate must have some reason other than the ability to identify a different average rate in the community'") (quoting *Gusman,* 986 F.2d at 1151); *Blackwell v. Kalinowski*, No. 08 C 7257, 2012 WL 469962, at *5 (N.D. Ill. Feb. 14, 2012) ("[I]n our lodestar analysis, we not only look to the year an attorney graduated from law school; instead, we also look at the rates of attorneys of similar abilities and experience and… the attorneys' *credentials* to determine a reasonable hourly rate.") (Emphasis in original; internal quotation omitted.) This point is bolstered given that Mr. Siprut, *in fact*, commands $585 hourly in the open market from paying clients. (*See supra* Section II.A.)

With this standard in mind, there is no question that Siprut PC's requested fees are reasonable. Since its founding in 2010, Siprut PC has obtained millions of dollars for its clients and the firm has been repeatedly appointed lead or co-lead counsel in multiple nationwide class

actions. (*Id.* at 1-3.)[17] Additionally, one of Mr. Siprut's leadership appointments is co-lead counsel in a class action against the NCAA for concussions and head injuries, one of the most complex and important class actions in the United States. Mr. Siprut was named a "Super Lawyer" for Class Action Litigation in 2013, an honor given to no more than 5% of the lawyers in the State of Illinois. (*See* Siprut PC Firm Resume at 3, at Ex. X.)

Mr. Siprut also holds an *AV Preeminent* rating by Martindale Hubble, the highest possible peer review rating. (*Id.*) Mr. Siprut was selected for membership in the *Multi-Million Dollar Advocates* forum, one of the most prestigious groups of trial lawyers in the United States. Membership in that group is limited to attorneys who have won million and multi-million dollar verdicts and settlements, and fewer than 1% of U.S. lawyers are members. (*Id.*) And, Mr. Siprut is also an Adjunct Professor at Northwestern University School of Law. These qualifications demonstrate that the requested rate of $585 is not above market – which is why other courts have consistently approved that rate.

Significantly, Plaintiffs can also point to several consumer class action attorneys who, like Mr. Siprut, have fewer years of experience than Mr. Edelman or Mr. Loevy (in the *Jiminez* case), but nonetheless command a higher rate. For example, Gene Stonebarger, a 2000 graduate of the University of San Diego School of Law, founded his own consumer class action law firm, Stonebarger Law, APC, in 2010. (*See* Declaration of Gene Stonebarger at ¶ 3, *Amelia Foos v. Ann, Inc.*, Case No. 3:11-cv-2794-L-MDD (S.D. Cal. Jan. 7, 2013), at Ex. Y.) Like Siprut PC, Stonebarger Law has served as Lead or Co-Lead Class Counsel in numerous class actions throughout the country. (*Id.* at ¶ 5.) In a recent declaration filed in another case, Mr. Stonebarger

---

[17] All of this information was detailed and supplied in Plaintiffs' previously submitted Motion for Attorneys' Fees, Costs, and Incentive Awards. (*See* Pls' Mot. for Attorneys' Fees, Costs, and Incentive Awards, at Ex. D.)

stated that his hourly rate of $650/hour was approved in at least nine cases during 2012, and his mid-level associates' rate of $500/hour was approved in five of those cases. (*Id.* at ¶¶ 7-8.) Similarly, Jay Edelson, managing partner of Edelson LLC in Chicago, Illinois, commands rates of up to $675 per hour, while his partner, Rafey Balabanian, with seven years of experience, commands $550 per hour. (*See* Declaration of Jay Edelson at ¶ 22, *Miller v. Red Bull N. Am., Inc.*, Case No. 12-cv-04961 (N.D. Ill. June 14, 2013), at Ex. O.)

As illustrated in the chart below, the aforementioned data demonstrate that Siprut PC's requested rates are in fact *lower* than the relevant market for consumer class action litigation:

**Siprut PC's Requested Hourly Rates v. Peer Firms' Hourly Rates**
**(from selected representative cases)**



Simply put, the Court's failure to provide Plaintiffs with notice and an opportunity to respond to the aforementioned fee petitions constitutes manifest error. The Court should thus reconsider the lodestar calculation set forth in its October 3, 2013 Order and either (1) allow additional briefing and/or argument with respect to Siprut PC's hourly rates, or (2) set Class

Counsel's hourly rates as follows: $585/hour for Mr. Siprut; $325/hour for Mr. McClintick; $325/hour for Ms. Vold; and $150/hour for Ms. Pearson.

### III. In Light Of Objector Markow's Appeal, The Court Should Add 500 "Anticipated" Hours Of Work To Class Counsel's Lodestar.

In addition to the concerns raised herein relating to the Court's determination of Class Counsel's hourly rate, Plaintiffs further submit that the filing of Objector Markow's appeal constitutes "new evidence" that requires further modification of the Court's lodestar calculation.

In its October 3, 2013 Order, the Court allowed 222 "anticipated" hours relating to Plaintiffs' continued prosecution of this case through final judgment. At that time, Plaintiffs did not anticipate an appeal and thus did not include any "anticipated" hours relating to an appeal. On September 24, 2013, however, Objector Markow appealed the Court's final approval of settlement to the Seventh Circuit. Considering the complicated issues that will be raised on appeal, Class Counsel conservatively estimates that it will spend approximately 500 hours litigating Objector Markow's appeal.

To account for this new factual development, Plaintiffs request that the Court add an additional 500 "anticipated" hours to their base lodestar at Class Counsel's requested rates and requested multiplier. Because Southwest has already set aside $3 million expressly for the purpose of compensating Class Counsel—and because the effect of the Court's prior order is simply to take money away from Class Counsel and give it back to Southwest, who agreed to pay it—these additional fees will not reduce the class benefit or otherwise prejudice Southwest.

### CONCLUSION

WHEREFORE, for these reasons, Plaintiffs request that the Court alter or amend its October 3, 2013 Memorandum Opinion and Order.

Dated: November 7, 2013

Respectfully submitted,

ADAM LEVITT and HERBERT C. MALONE, individually and on behalf of all others similarly situated

By: _____
   One of the Attorneys for Plaintiffs
   And the Settlement Class

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
**SIPRUT** PC
17 North State Street, Suite 1600
Chicago, Illinois 60602
312-236-0000
Fax: 312-948-9196
www.siprut.com

## <u>TABLE OF EXHIBITS</u>

Ex. A        Declaration of Hon. Wayne Anderson (Ret.) ……………………………...3 Pages

Ex. B        Plaintiffs' Combined Motion for Final Approval of Class Settlement
and Response to Objections and Comments ……………………………...52 Pages

Ex C        Affidavit of Joseph J. Siprut ……………………………………………...18 Pages

Ex. D        Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Awards…….22 Pages

Ex. E        Defendant Southwest Airline Co.'s Response to Plaintiffs' Motion for
Attorneys' Fees, Costs and Incentive Awards ……………………………..5 Pages

Ex. F        August 26, 2013 Memorandum Opinion and Order……..……………….22 Pages

Ex. G        October 3, 2013 Memorandum Opinion and Order ………………....…27 Pages

Ex. H        Declaration of Richard Ehrenreich…………………………………........1 Pages

Ex. I        Declaration of Thomas Finnegan……………………...………………...1 Pages

Ex. J        Order Granting Plaintiff's Motion for Attorneys' Fees
*Foos v. Ann Inc.*, No. 11 CV 2794, 2013 WL 5352969
(S.D. Cal. Sept. 24, 2013)……………………………………………..8 Pages

Ex. K        October 17, 2013 Order, *In Re: Imprelis Herbicide
Mktg. Sales Practices and Prod. Liab. Litig.,* Case
No. 2:11-md-2284-GP MDL No. 2284 (E.D. Pa.) ………………………5 Pages

Ex. L        Declaration in Support of Motion for Attorneys'
Feesand Reimbursement of Expenses, *In Re:
Imprelis Herbicide Mktg. Sales Practices and
Prod. Liab. Litig.,* Case No.
2:11-md-2284-GP MDL No. 2284 (E.D. Pa.) ……………………....…….6 Pages

Ex. M        Declaration of Michael J. McMorrow, *In Re: Kentucky
Grilled Chicken Coupon Mktg. &Sales Practices Litig.,*
MDL 2103 1:09-cv-7960 (N.D.Ill.)…………...……..……………..8 Pages

Ex. N        Final Judgement Order, *In Re: Kentucky Grilled Chicken
Coupon Mktg. & Sales Practices Litig.,* MDL 2103
1:09-cv-7960 (N.D. Ill.) …………………………...……...……………11 Pages

Ex. O        Declaration of Jay Edelson, *Miller v. Red Bull N. Am., Inc.,*
12-cv-04961 (N.D.Ill.) …………….....…..…………………………6 Pages

Ex. P        Final Judgment Order, *Miller v. Red Bull N. Am., Inc.*,
             12-cv-04961 (N.D.Ill.) ………………………….…………...…...…10 Pages

Ex. Q        Declaration of Jay Edelson in Support of Plaintiffs'
             Motion for  Final Approval of Settlement and Award
             of Attorneys' Fees, Expenses and Incentive Awards,
             *In re Netflix Privacy Litig.*, No 11 cv 00379, 2013 WL 1120801
             (N.D. Cal. Oct. 31, 2012) …………………………………………20 Pages

Ex. R        Order Granting Final Approval of Class Action Settlement;
             Approval of Cy Pres Awards; Award of Attorneys' Fees and
             Expenses and Incentive Award, *In re Netflix Privacy Litig.*,
             No 11 cv 00379, 2013 WL 1120801 (N.D. Cal. Oct. 31, 2012) ………....23 Pages

Ex. S        Declaration in Support of Motion for Attorneys' Fees and
             Reimbursement of Expenses, *In Re: Imprelis Herbicide
             Mktg. Sales Practices and Prod. Liab. Litig.*, Case No.
             2:11-md-2284-GP MDL No. 2284 (E.D. Pa.) ………..……...……………5 Pages

Ex. T        Declaration of Fred T. Isquith in Support of an Award of
             Attorney's Fees and Costs, and Award of Incentive Fees
             to Named Plaintiffs, *In Re: Imprelis Herbicide Mktg. Sales
             Practices and Prod. Liab. Litig.*, Case No. 2:11-md-2284-GP
             MDL No. 2284 (E.D. Pa.) …………………………………...………7 Pages

Ex. U        Declaration of Fred T. Isquith in Support of an Award of
             Attorney's Fees and Costs, and Award of Incentive Fees to
             Named Plaintiffs, *In Re: Michaels Stores Pin Pad Litig.*,
             No. 1:1-cv-03350 (N.D. Ill) …………………………………...………6 Pages

Ex. V        Order Approving Settlement, *In Re: Michaels Stores
             Pin Pad Litig.*,No. 1:1-cv-03350 (N.D. Ill). ………………….…...……….8 Pages

Ex. W        Declaration of Antonio Vozzolo in Support of Final Settlement
             Approval Award of Attorney's Fees and Costs, and Award of
             Incentive Fees to Named Plaintiffs, *In Re: Michaels Stores Pin Pad
             Litig.*,No. 1:1-cv-03350 (N.D. Ill)……………………….…………….…..4 Pages

Ex. X        Siprut PC Firm Resume…………………………………………….5 Pages

Ex. Y        Declaration of Gene Stonebarger, *Foos v. Ann Inc.*,
             No. 11 CV 2794, 2013 WL 5352969 (S.D. Cal.
             Sept. 24, 2013)……………………………………………………...6 Pages

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **PLAINTIFFS' MOTION TO ALTER OR AMEND FINAL JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e)** was filed this 7th day of November, 2013, via the electronic filing system of the United States District Court for the Northern District of Illinois, which will automatically serve all counsel of record.

_____

Joseph J. Siprut

4835-7964-7510, v. 1

-23-