**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| *In re Southwest Airlines Voucher Litigation* | ) ) ) ) | No. 11-CV-8176 <br><br> Hon. Matthew Kennelly |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO ALTER
OR AMEND FINAL JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e)**

Marlow's three objections to Plaintiffs' Rule 59 motion fail.

**First**, Markow says that the Court should not give heightened deference to the parties' agreed upon fee. Rather, says Markow, the Court should give *less* deference ("careful scrutiny") to the agreed-upon fee, precisely *because* it was agreed. If Markow's position were correct, then the parties to a class action settlement would never have any reason or incentive to try and negotiate fees (i.e., reach a peaceful and voluntary resolution). Not ever. Rather, since any agreement on fees would immediately be disregarded (and on Markow's view, cause *greater* scrutiny), fee negotiations would be pointless, and settling parties would simply submit the issue to the courts. That means dueling positions, more litigation, and more work for the courts.

That is exactly backwards. As the United States Supreme Court teaches – and as common sense and the realities of practice suggest – the goal is to encourage and incentivize litigants to resolve their disputes. *All* of them. In the case of parties settling a class action dispute, that means fees should be negotiated and, ideally, resolved by agreement. Otherwise, the court and the parties are burdened with a "second major litigation."[1]

---

[1] *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee.").

None of this requires a court to abdicate its duty to review a class action settlement and reject the settlement (in part or in its entirety) if it is unfit for approval. Fees (along with the balance of the settlement) must be reviewed by the court. But as with the underlying settlement terms themselves, the agreement of the parties must be given deference. If not, then the parties have no reason to try and negotiate a voluntary resolution. If the court is simply going to reach a result in a vacuum, then there is no point trying to negotiate anything.

And, respectfully, the Court's order on attorneys' fees in the present case illustrates this point precisely. After (and *only* after) the parties reached a settlement framework for the class-wide relief, the parties began negotiating attorneys' fees. The value of the settlement (as contemplated by the settlement framework) ranged from $29 million, at a minimum, to $58 million.[2] And the law of the Seventh Circuit allows Class Counsel to recover fees based on a percentage of the *benefit* created by the settlement framework. Thus, given the value of the settlement, both sides recognized that there was a wide range of possible outcomes on any contested fee dispute. This reality was recognized in the initial floor/ceiling arrangement derived by the parties, where fees were bracketed at $1.7 million and $7 million at the high end (which represents 24% of the common benefit).

That disparity represented enormous risk for both sides. And that is why the parties literally spent several *months* mediating the fees issue with Judge Wayne Andersen. We attempted to reach an agreement on this issue so that risk would be managed for both sides, fairness and equity could be achieved, and – not least of all – the Court would be spared the burden of refereeing and deciding yet another piece of contested litigation. If the parties knew then that the Court would simply blow by the parties' agreement and reach a result

---

[2] These calculations were supplied previously to the Court and thus will not be repeated here.

independently, then we would not have bothered to negotiate fees in the first place. There would be no point.

And respectfully, that is why the Court should enter an order pursuant to Rule 59 awarding the full $3 million in fees that Southwest agreed to pay. Whether that is the exact number the Court would have derived in a contested setting is not the issue. Any other approach would destroy any incentive to negotiate fees, which is both contrary to the law of this Circuit and, in practice, disastrous.

Here again, however, none of this is to suggest that a court *must* accept an agreed upon fee simply because the parties agreed to it. That is not the law either, and that principle is not required by Class Counsel's position here. But as we explained in our initial Motion for Attorneys' Fees, the agreed upon fee of $3 million is easily supported and justified by both the percentage of the common benefit and lodestar methodologies.[3] Given that, if the Court were nevertheless to disregard the parties' agreed resolution (and pay no deference to it), then the principle emerging from the Court's holding is that negotiating fees is pointless. That is not the law of this Circuit, and it creates all the wrong incentives.[4]

**Second**, Markow claims that the Court was permitted to take note of various other published fee awards in analyzing Class Counsel's hourly rates. That is true, but irrelevant. The Court is at liberty to consider whatever sources the Court deems appropriate. Class Counsel's

---

[3] This data was supplied in Plaintiffs' Motion for Attorneys' Fees.

[4] *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), cited by Markow, is not to the contrary. In that case, the settlement did nothing more than require the defendant to post some safety warnings, allocated $100,000 to cy pres, and allocated $800,000 to class counsel. The Ninth Circuit reversed after holding that "the district court made (1) no explicit calculation of a reasonable lodestar amount; (2) no comparison between the settlement's attorneys' fees award and the benefit to the class or degree of success in the litigation; and (3) no comparison between the lodestar amount and a reasonable percentage award." Id. at 943. And the Ninth Circuit has since reaffirmed (after Bluetooth was decided) that "in cross-checking the fees against the recovery, the potential recovery rather than the claims actually made" should be considered. *Stern v. Gambello*, 2012 WL 1744453 at *1 (9th Cir. May 17, 2012).

point – which is not negated, or even addressed, by Markow's cited authorities – is that before the Court *sua sponte* turned to data outside the record on an issue (Class Counsel's hourly fees) that was not raised or contested by anyone, Class Counsel should at least be given an opportunity to respond. And had Class Counsel been given that opportunity here, we would have been able to easily demonstrate to the Court that Siprut's hourly rates are market-driven and entirely justified (as since demonstrated in Class Counsel's Rule 59 motion).

**Third**, Markow claims that Class Counsel cannot be compensated for any future work on appeal, because it does not benefit the Class. As an initial matter, Markow is demonstrably incorrect to say that this point is not based on new evidence. The fact of the matter is that when Class Counsel filed the Motion for Attorneys' Fees and supplied lodestar data to the Court, no objections (and no appeals) had been filed. So, we had no reason to believe such time would be required to steer the settlement to its conclusion, and that time was not included in the calculations. Now that Markow has pursued an appeal, the landscape has changed.

Markow also claims that Class Counsel cannot be paid for work that does not benefit the Class. That argument lies poorly in Markow's mouth, since the imminent battle at the Seventh Circuit will require Class Counsel to defend and save the settlement from Markow himself! Nor can Markow credibly argue that any specific work or lodestar time tied to attorneys' fees, per se, must be carved out of lodestar calculations.[5] That is not the law.

---

[5] Markow also attacks a straw man when he claims that Class Counsel seeks to recover for "future work," and cites cases for the argument that future time cannot be recovered. The future work at issue is part of *this settlement* and *this case*. It is "future" only in the sense that the timing of the Attorneys' Fees motion requires Class Counsel to set forth the likely (rather than actual) time necessary to bring the settlement to completion.

**CONCLUSION**

For the reasons set forth above and in Plaintiffs' opening brief, Plaintiffs request that the Court alter or amend its October 3, 2013 Memorandum Opinion and Order.

Dated: December 3, 2013

Respectfully submitted,

ADAM LEVITT and HERBERT C. MALONE, individually and on behalf of all others similarly situated

By: _____
   One of the Attorneys for Plaintiffs
   And the Settlement Class

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
**SIPRUT PC**
17 North State Street, Suite 1600
Chicago, Illinois 60602
312-236-0000
Fax: 312-948-9196
www.siprut.com

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO ALTER OR AMEND FINAL JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e)** was filed this 3rd day of December, 2013, via the electronic filing system of the United States District Court for the Northern District of Illinois, which will automatically serve all counsel of record.

_____
Joseph J. Siprut

4839-3514-0887, v. 1