1    IN THE UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF ILLINOIS
2             EASTERN DIVISION

3

4    ADAM J. LEVITT, et al.,          )
                                      )
5                    Plaintiffs,      )   Docket No. 11 C 8176
                                      )
6              vs.                    )
                                      )
7    SOUTHWEST AIRLINES, CO.,         )   Chicago, Illinois
                                      )   November 20, 2013
8                    Defendant.       )   10:00 a.m.

9                    TRANSCRIPT OF PROCEEDINGS
10      BEFORE THE HONORABLE MATTHEW F. KENNELLY

11
     APPEARANCES:
12

13   For the Plaintiff:     SIPRUT PC
                            BY:  MR. JOSEPH J. SIPRUT
14                          17 North State Street
                            Suite 1600
15   .                      Chicago, Illinois  60602

16
     For the Defendant:     MAYNARD, COOPER & GALE, P.C.
17                          BY:  MR. H. THOMAS WELLS, JR.
                                 MR. MICHAEL W. DRUMKE
18                          2400 Regions Harbert Plaza
                            1901 Sixth Avenue North
19                          Birmingham, Alabama   35203

20                          CENTER FOR CLASS ACTION FAIRNESS
21                          BY:  MS. MELISSA HOLYOAK
                            1718 M Street, N.W.
22                          No. 236
                            Washington, D.C.   20036

23

24

25

1   WILLIAMS, MONTGOMERY & JOHN, LTD.
         BY:  MS. KIRSTIN B. IVES
2        233 South Wacker Drive
         Suite 6100
3        Chicago, Illinois   60606

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   LAURA M. BRENNAN - Official Court Reporter
          219 South Dearborn Street - Room 2102
24            Chicago, Illinois   60604
                  (312) 435-5785
25

1   (The following proceedings were had in open court:)

2   THE CLERK:  11 C 8176, Levitt v. Southwest Airlines,

3   Inc.

4   MR. SIPRUT:  Good morning, your Honor; Joe Siprut on

5   behalf of the class.

6   MR. WELLS:  Good morning, your Honor; Tommy Wells for

7   Southwest Airlines.

8   MR. DRUMKE:  Good morning, your Honor; Michael

9   Drumke, also on behalf of Southwest Airlines.

10  THE COURT:  I'm kind of surprised.  The motion that

11  is up today is the motion to intervene, right?

12  MR. WELLS:  That's correct, your Honor.

13  THE COURT:  Hang on a sec.  I just want to look at

14  something first.

15  (Brief interruption.)

16  THE COURT:  Ms. Holyoak noticed it up for today.

17  She's been here a bunch of times before.

18  All right, pause for a second.  I'm going to see if I

19  can get her on the phone.  She comes from out of town, right,

20  D.C., or something like that?

21  MR. WELLS:  She's from D.C., your Honor, but in the

22  reply, they have a local counsel.

23  THE COURT:  I'm going to call her first.  So let me

24  just get her phone number.  I mean, I suppose it's possible

25  that she thought that I would just rule on the papers, but I

1  actually had some questions.

2      (Brief interruption.)

3          THE COURT:  This is Judge Kennelly in Chicago.  You

4  are on a speaker phone in the courtroom where the case has

5  just been called, the Southwest Airlines case has just been

6  called, because you filed a notice saying that you were going

7  to be here today to present a motion.

8          MS. HOLYOAK:  I'm sorry.  Can you say that one more

9  time?  I didn't hear the last part.

10         THE COURT:  Yes.  Give me just a second so I have it

11  in front of me.

12         So, first of all, this is Judge Kennelly.  I'm

13  calling about the Southwest Airlines case.

14         MS. HOLYOAK:  Oh, okay.

15         THE COURT:  You are on a speaker phone in the

16  courtroom.  Mr. Siprut, Mr. Wells and Mr. Drumke are all

17  standing at the podium, and they are here, as am I, because

18  you filed a notice that I am looking at on my screen here that

19  says, "Please take notice that on Wednesday, November 20th,

20  2013, at 9:30 a.m., or as soon thereafter as counsel may be

21  heard, counsel shall appear before me here and present your

22  motion to intervene," and it's signed by you.

23         So how come you're not here?

24         MS. HOLYOAK:  My local counsel, Kirstin Ives, was

25  coming -- was appearing for me.  She sent me an email this

1　morning and said that she looked at the sheet outside and that

2　the motion was granted and the case would not be called.

3　　　　THE COURT:  That was the sheet from yesterday, if she

4　had looked carefully.  I don't know whether she was actually

5　over here this morning, but if she looked carefully, that was

6　the sheet from yesterday because there was a motion up

7　yesterday, I think some sort of a thing to supplement the

8　record or something like that.  And the reason that there

9　wasn't a new sheet out there for today is that my regular

10　courtroom deputy is ill and at home and the substitute

11　courtroom deputy that I have doesn't have a key to that thing.

12　　　　So you need to call your local counsel, get her on

13　her horse and get her over here, or we could just talk about

14　it right now, which would be probably preferable because I had

15　some questions, and you probably have more direct knowledge

16　about this than Ms. Ives does anyway although I could be wrong

17　about that.  That's just a guess.

18　　　　MS. HOLYOAK:  If you don't mind, I would like to

19　email her because Judge Zagel is actually supposed to call me

20　on a separate case that is called for 9:30.

21　　　　THE COURT:  Okay.

22　　　　MS. HOLYOAK:  So I'm emailing her right now.

23　　　　THE COURT:  I'm going to still ask you my question --

24　　　　MS. HOLYOAK:  Sure, go ahead.

25　　　　THE COURT:  -- since you're the person who signed

1    this thing.

2            MS. HOLYOAK:  Yes.

3            THE COURT:  The response to the motion that Mr. Wells

4    filed attached an exchange of emails which are between --

5    largely between Mr. Wells and somebody named Ted Frank.  Who

6    is he?

7            MS. HOLYOAK:  Yes.  Ted Frank is going to be the

8    counsel in the Seventh Circuit, and he is my co-counsel.

9            THE COURT:  Because I think --

10           MS. HOLYOAK:  We have worked together.

11           THE COURT:  I think I may need to have a little

12   conversation with Mr. Frank about civility.  So perhaps when

13   Ms. Ives comes over, I may just -- hopefully she will be able

14   to answer my other questions, but I may set this over to

15   another date and potentially ask Mr. Frank to come out and pay

16   me a visit along with the other folks in the case.

17           MS. HOLYOAK:  And have Mr. Frank appear, too?  Is

18   that what you would like?

19           THE COURT:  Yes.

20           MS. HOLYOAK:  Okay.

21           THE COURT:  I'm not positive of that.  It sort of

22   depends on what I find out when I'm talking here.

23           But, you know, the tenor of the emails that were

24   going back and forth between him and -- actually, not that

25   were going back and forth.  The tenor of his emails to

1    Southwest counsel I think can be fairly characterized as

2    attempts to bully people, and I was just sort of curious what

3    it was that led Mr. Frank to think that that's a good way to

4    practice law.

5          So get your local person over here.  I will just ask

6    Mr. Wells and the other folks to wait.  Hopefully she will get

7    over here quickly and we'll deal with it that way.

8          MS. HOLYOAK:  Okay.  I just sent her an email, and I

9    will call her right now.

10          THE COURT:  Okay, thanks.

11          All right, just have a seat.  When she gets here --

12    Lakisha, just come get me when she gets here.

13          MR. SIPRUT:  Thank you, your Honor.

14          MR. WELLS:  Thank you.

15          (Brief recess.)

16          THE CLERK:  11 C 8176, Levitt v. Southwest Airlines,

17    Inc.

18          MR. SIPRUT:  Good morning again, your Honor.  Joe

19    Siprut on behalf of the class.

20          MS. IVES:  Good morning, your Honor; Kirstin Ives on

21    behalf of Objector Markow.  I apologize for misreading the

22    call sheet outside.

23          THE COURT:  Just apologize to them.  I have to be

24    here anyway, and I don't get paid by the hour.  They more or

25    less do.

1      MS. IVES:  So I apologize to you folks.

2      THE COURT:  I don't need an apology.

3      Go ahead.

4      MR. WELLS:  Judge, Tommy Wells for Southwest

5  Airlines.

6      MR. DRUMKE:  And Michael Drumke as well, your Honor.

7      THE COURT:  I actually had --

8      Mr. Siprut, your position on the motion to intervene

9  is?

10     MR. SIPRUT:  No objection.

11     THE COURT:  Okay, fine.

12     I actually had a question or two about this.  So just

13  to kind of review what happened here, there was a preliminary

14  approval of a proposed settlement.  Notice went out to class

15  members.  I assume Mr. --

16     Is it pronounced Markow or Markow, does anybody know

17  for sure?  I'm going to say Markow, for want of a better

18  pronunciation.

19     Mr. Markow got notice.  An objection or, you know,

20  some briefs were filed objecting to certain things.  There was

21  pretty extensive briefing on it, if I recall correctly.  There

22  was a hearing in court, a hearing on the fairness of the

23  settlement and on objections, and things were said at that.

24  Arguments were made.  I think Ms. Holyoak talked, as did

25  another objector, a law professor.  I then made a ruling on

1    the underlying settlement.

2          I have to say, just as an aside, although I guess I

3    did not enter a judgment as such, my view of attorneys' fees

4    was always that they're collateral to the judgment, and I sort

5    of assumed that the settlement approval was what would count

6    as the final order under Section 1291 of Title 28, but I could

7    be wrong on that.

8          Anyway, I then made a later ruling on attorneys' fees

9    issue.  I think I have got the sequence right.  I then got a

10   motion saying, well, Judge, you never entered the judgment;

11   here, you know, will you please enter one.  I did that.

12         Notices of appeal had been filed by various people,

13   not by either the plaintiff class or by the defendant, but

14   by -- it's not just I think Mr. Markow, but there have been

15   one or two others.

16         MR. WELLS:  There are two other objectors that have

17   filed.

18         THE COURT:  Three altogether, yes.

19         MR. WELLS:  Your Honor, yes.

20         THE COURT:  And then I guess what happened -- I have

21   to say I had trouble getting into the Seventh Circuit's

22   docketing system yesterday, so I wasn't able to read it, and

23   so I'm sort of inferring this from what I have read here, that

24   somebody, I'm not sure who, in the jurisdictional statement,

25   or in maybe a response to a jurisdictional statement,

1    suggested or said that an objector can't do something -- and

2    I'm not sure what the something is, whether it's challenge a

3    settlement or whether it's simply appeal -- without having

4    first been given leave to intervene in the district court.

5    That is all by inference, though.

6           MR. WELLS:  That's essentially correct, your Honor.

7           Southwest, in the response to Markow's jurisdictional

8    statement, raised the issue under the Navigant Consulting

9    case, and the Seventh Circuit said, to appeal, to be a party

10   for purposes of appeal, you had to intervene.

11          THE COURT:  So it's about appealing.

12          MR. WELLS:  And it's about appealing.

13          THE COURT:  Okay.

14          MR. WELLS:  After that the Supreme Court decided that

15   Devlin case that was a mandatory class.

16          THE COURT:  The Devlin case, right.

17          And so then there is a question of how that affects

18   the Navigant --

19          MR. WELLS:  Correct, and there is no -- there is no

20   clear answer in the Seventh Circuit about whether an

21   intervention is needed or not, and so we raised it in the

22   jurisdiction --

23          THE COURT:  So my question is this, and this is

24   really the question I had.  I mean, I understand all of that.

25   And I read the cases that were cited in this exchange of

1   emails between Mr. Frank and Mr. Wells that I alluded to

2   earlier when I had Ms. Holyoak on the phone.  I honestly don't

3   think any of those cases answers the question that I'm about

4   to ask which is, okay, let's assume for purposes of discussion

5   that intervention is required.  Are you allowed to do it after

6   the fact?

7          And so part of my issue was -- I mean, let's say for

8   purposes of discussion that there's this procedural hurdle

9   that an intervenor has to clear in order to be able to appeal

10  and they don't attempt to clear it and arguably don't

11  acknowledge its existence before appealing.  Can they clean it

12  up after the fact?  Okay, that's the question that I had.  And

13  it's clearly not answered by the three cases that are cited by

14  Mr. Frank repeatedly in his emails:  Robert F. Booth Trust v.

15  Crowley, Flying J v. Van Hollen or Crawford v. Equifax Payment

16  Services.  And, really, that bears on, you know, my dealing on

17  this motion because it's not clear to me whether I should --

18         You know, we used to talk about, in ancient times,

19  nunc pro tunc rulings, and I think it was the Seventh -- I

20  think the Seventh Circuit was critical of me actually several

21  years ago for using that language in something, that you can't

22  retroactively fix things that didn't happen at the time.  And

23  that may be a bit of an overstatement of what they said, but

24  that's my question.

25         So it's really a question for you, Ms. Ives.

1    MS. IVES:  Your Honor, I think --

2    THE COURT:  You're going to say you don't know

3    because you didn't know, coming in here, that you were going

4    to have to answer that question, which would be a fair thing

5    to say, I might add.  It would be a fair thing to say.

6    MS. IVES:  I will give it a shot.

7    You know, based on the Seventh Circuit's opinions

8    that we did cite in the case, Crawford and its progeny, it

9    basically seemed that the Seventh Circuit's concern was to do

10   what is necessary to allow these objectors or intervenors to

11   take the appeal that they seek.

12   THE COURT:  But in none of those cases did the

13   intervenor wait in the way that Mr. Markow arguably waited

14   here to file the intervention.

15   In Crawford the class members actually filed a motion

16   to intervene before the deadline for objections to the

17   settlement when the case was still before the district court,

18   in other words, before there had been any approval.

19   In Flying J, which is the second of the two cases --

20   second of the three cases -- first of all, wasn't a class

21   action.  So there wasn't notice that had gone out.  It was a

22   nonparty who was impacted by an injunction.  They tried to

23   intervene after the judgment so they could appeal because it

24   looks like the defendant in the case, which was the attorney

25   general of Wisconsin, decided they didn't want to appeal.  And

1   this party which was impacted by the injunction, that was

2   really their first opportunity to do that, so they tried to

3   intervene at an early opportunity.

4          And in the Robert F. Booth Trust case, it was a

5   shareholder derivative action.  And, again, the motion to

6   intervene was made before the settlement approval was decided

7   on, and ultimately there was a decision not to approve it.

8          I notice Mr. Frank argued the appeal in that last

9   case --

10         MS. IVES:  Yes.

11         THE COURT:  -- which may be why he's so enamored of

12  citing it in his nasty emails, which I don't really regard as

13  the least bit funny, quite frankly.  I made some comments

14  about that earlier.

15         So I don't think any of those cases really answer

16  this question, and it may be that it's not that big of a deal,

17  but, you know, somebody is -- if this is an issue or not, I

18  mean, if you asked me, I think I would probably say that the

19  Supreme Court's decision in Devlin, you know, answered this

20  question, but I'm not the Seventh Circuit.  So that's an issue

21  for them.

22         MS. IVES:  Your Honor, one more comment.

23         THE COURT:  I'm in the middle of a sentence.

24         But, I mean, I guess my concern is:  Should I be

25  retroactively approving something that somebody could argue

1  was a prerequisite and, therefore, would be entitled to argue,

2  well, since you didn't jump through the hoop when you were

3  supposed to jump through the hoop in the first instance, the

4  hoop shouldn't be put back up there for you to jump through

5  again after the fact?  So that's my concern and that's my

6  question.

7          And then on the way to trying to figure that out, as

8  I was reading these emails, I will just sort of repeat in

9  shorthand form for you what I said to Ms. Holyoak when I had

10  her on the phone before.

11          Well, I will just use the word I did.  I mean, I

12  don't know whether sort of the tenor of the emails that

13  Mr. Frank sent to Southwest's attorneys, initially to

14  Mr. McCormick -- I guess Mr. Siprut was also on that, but then

15  later to Mr. Wells -- is the way he always communicates with

16  people.  "Shrill" is probably not the right word for it

17  because it's not particularly shrill.  "Bullying" is probably

18  more the right word for it, and I was just sort of curious as

19  to --

20          You know, one of the things that becomes clear to one

21  when one practices law for any length of time is that, as much

22  as you might think that your correspondence to another lawyer

23  is between you and your other lawyer, you never know when it's

24  going to sneak in under the door.  I think I wrote it pretty

25  much that way in an article that I wrote for Litigation

magazine about a dozen years ago. But it is certainly here at
this point, and legitimately. I mean, Mr. Wells --

Mr. Wells ought to have attached this for completely
different reasons than the ones I'm relying on here because it
essentially illustrated what the issue was. And I will say
that in attempting to get clarification on, you know, what the
nature of the intervention was, I think Mr. Wells was acting
completely 100 percent appropriately. And I guess --

You know, I'm somewhat hesitant to say this without
giving Mr. Frank a chance to defend himself, but in basically
all of the bluster that was occurring about, you know, your
argument is, quote, designed solely to run up your client's
bill and expenses, so "designed," that has a meaning. It
means that he's attributing that intent to Mr. Frank. It's a
completely baseless comment for Mr. Frank -- or attributing
that intent to Mr. Wells, rather, which is a completely
baseless comment for Mr. Frank to make. And I could go on
from there. It's just inappropriate. And I have decided, as
I'm sitting here, I want to talk to Mr. Wells about that.

So I'm going to enter and continue this motion. I'm
going to order -- not Mr. Wells, Mr. Frank. I keep confusing
you because you both have five-letter names.

MR. WELLS: Please don't confuse me.

THE COURT: Yes, understood.

So I'm going to enter and continue this motion to --

1   I don't want to do it next week because I don't want to make

2   people travel in and out of Chicago in the week of

3   Thanksgiving.  That would be cruel and unusual punishment.  So

4   I'm going to continue it to a period after that, and I'd like

5   to see Mr. Frank.  So I'm going to continue --

6          Let me just ask the lawyers here whether 9:30 on the

7   3rd of December, which is an otherwise pretty quiet day, would

8   be okay.  And I would set it for -- we'll put it down as 9:29,

9   which basically means you get called first because it comes up

10  on the list ahead of everybody else.

11         MR. SIPRUT:  This is December 3rd, your Honor?

12         THE COURT:  Tuesday, the 3rd of December.  Is that

13  doable?

14         MR. SIPRUT:  I am going to be in California for a

15  mediation on the 3rd.

16         THE COURT:  When are you back?

17         MR. SIPRUT:  I should be flying back that night.

18         THE COURT:  You would be back by the 5th.

19         Mr. Wells, could you do it on the 5th?

20         MR. WELLS:  I could do it on the 5th.

21         THE COURT:  Can you do it on the 5th, Mr. Siprut?

22         MR. WELLS:  Oh, I can't do it on the 5th, your Honor.

23  I have actually got to have arthroscopic knee surgery that

24  morning.

25         THE COURT:  Oh, I want to hit you before the

1    arthroscopic surgery.

2           MR. WELLS:  I want you to, too.

3           THE COURT:  I don't want to make you --

4           You have got to get back down to Birmingham, though.

5           MR. WELLS:  Yes, but it's --

6           THE COURT:  Unless it snows.

7           MR. WELLS:  Unless it snows.

8           THE COURT:  It's not going to snow, though.  I think

9    I will just say it's not going to snow.  I will enter an order

10    to that effect.

11           MR. SIPRUT:  Would it be possible --

12           THE COURT:  What if --

13           MR. SIPRUT:  -- on the 2nd?

14           THE COURT:  Yes, it would be possible to do it on the

15    2nd, sure.

16           What about you, Mr. Wells?

17           MR. WELLS:  Yes, sir.

18           THE COURT:  It's entered and continued to 9:29 in the

19    morning on the 2nd of December.  You will really be called at

20    9:30, but that just puts it on the list --

21           MR. WELLS:  Puts it on the top.

22           THE COURT:  -- so it's at the top of the list.  Okay.

23           MS. IVES:  Your Honor, if for some reason Mr. Frank

24    is unable to make that date?

25           THE COURT:  Then he is going to need -- he himself

1    will need to be here before that date with his motion in hand
2    telling me why.
3              MS. IVES:  Understood.
4              THE COURT:  Okay.  Otherwise rearrange his schedule.
5              MR. SIPRUT:  Thank you.
6              MR. WELLS:  Thank you, your Honor.
7              MS. IVES:  Thank you.
8         (Which were all the proceedings had in the above-entitled
9    cause on the day and date aforesaid.)
10
11
12
13
14                    C E R T I F I C A T E
15
16         I hereby certify that the foregoing is a true and
17    correct transcript of the above-entitled matter.
18
19
20   */s/ Laura M. Brennan*                    November 20, 2013
21
22   _____        _____
23   Laura M. Brennan
     Official Court Reporter                     Date
     Northern District of Illinois
24
25