**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| **In re: SOUTHWEST AIRLINES VOUCHER LITIGATION** | ) ) | **Case No. 11 C 8176** |
| --- | --- | --- |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The Court previously approved a class-wide settlement in this action. *See In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013). After plaintiffs moved for attorney's fees, costs, and incentive awards, the Court granted the motion in part, reducing plaintiffs' requested fee amount and awarding plaintiffs' counsel fees in the amount of $1,332,206.25 and $18,522.32 in expenses. *See In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 5497275 (N.D. Ill. Oct. 3, 2013). The Court thereafter entered final judgment. Plaintiffs' attorneys then filed a motion under Federal Rule of Civil Procedure 59(e) to alter or amend the final judgment. The Court held a hearing on the motion in June 2014. This decision concerns that motion. Familiarity with the Court's settlement approval and fee petition decisions is assumed. For the following reasons, the Court grants plaintiffs' motion and increases the fee award, but not to the extent plaintiffs seek.

**Background**

The plaintiffs in this case brought a class action lawsuit against Southwest Airlines over its decision to stop honoring drink vouchers it had provided to travelers who purchased premium-priced "Business Select tickets." The settlement permitted each class member to submit a proof of claim form and supporting documentation in

order to receive one replacement drink voucher for each unredeemed drink voucher. After consenting to the settlement, Southwest agreed after mediated negotiations not to oppose a fee request by plaintiffs of up to $3,000,000. Plaintiffs' counsel submitted a motion for fees in that amount. Counsel worked backward from that amount to propose two methods for calculating their fees to equal $3,000,000. First, counsel contended that the Court could award the $3,000,000 based on a percentage of the settlement—in this case, 10.3 percent of what counsel considered the minimum value of the settlement ($29 million). Secondly, under the lodestar method, counsel proposed hourly rates for the five individuals who worked on the case: $585 for Joseph Siprut, $325 for James McClintick, $325 for Aleksandra M.S. Vold, $225 for Gregg Barbakoff, and $150 for Kristina Pearson. Counsel said they worked 2899.2 hours on the case, a figure including 222 prospective hours "through the end of this litigation." Counsel then proposed a multiplier of 2.63, which brought the total to nearly $3,000,000. Pls.' Mot. For Attys.' Fees at 12–13.

Both before and after counsel submitted their motion for fees, several class members filed objections both to the settlement and to the agreed-upon fee maximum. Some objectors also argued that the Class Action Fairness Act (CAFA), 28 U.S.C. § 1712, governed the settlement, that the fee request was disproportionate to the class recovery, and that the Court should not award fees until it learned how many drink vouchers were redeemed as a result of the settlement. *See, e.g.*, Gregory Markow's Obj. to Class Settlement, docket no. 105; Obj. to Class Action Settlement by Jonathan E. Fortman & Notice of Intention to Appear, docket no. 107; Notice of Obj. to the Settlement (Daniel Sibley), docket no. 116.

The Court agreed with the objectors that CAFA applied to the attorney's fee award and precluded an award based on the value of unredeemed replacement coupons. But the Court also concluded that CAFA permits use of the lodestar method to determine class counsel's fees. In applying the lodestar method, the Court noted that "[t]he fee petitioner carries the burden of persuasion" on whether class counsel's submitted hourly rates are reasonable. *See In re Southwest*, 2013 WL 5497275, at *8 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010)).

Given that burden, the Court observed that although the claimed number of hours did not appear to be excessive, plaintiffs' counsel offered "rather scanty" evidence in support of the hourly rates they sought. *Id.* at *9. Counsel had submitted an affidavit stating their various rates but "offer[ed] nothing to indicate . . . that the attorneys have charged and obtained these rates for similar litigation, or indeed for any litigation." *Id.* Counsel had also presented a table of large law firms' billing rates, but "offer[ed] no support . . . for the proposition that these rates involve similar work done in similar cases. In fact, the contrary is likely true." *Id.*

Possessing little other evidence from plaintiffs' counsel tending to establish the propriety of the requested rates, the Court reviewed published fee awards from other cases, in particular those awarded to another Chicago firm with an established practice in consumer class action litigation. Judges had previously approved lower hourly rates than those requested in this case, for attorneys with, in some situations, significantly greater experience than plaintiffs' attorneys have. The Court also noted that lead attorney Siprut had not described his level of experience, prompting the Court to do

Internet research to ascertain the number of years he had practiced as an attorney.[1] The Court also drew on other cases over which it had presided and had adjudicated fee petitions and concluded that "the rates proposed by plaintiffs in the present case significantly exceed the market rate—at least absent further support, which plaintiffs have not offered." *Id.* at *10.

Using this data, the Court determined that the appropriate hourly rate for Siprut was $425, and it found rates of $275, $225, and $200 appropriate for the other, less-experienced plaintiffs' attorneys in the case. The Court also approved a $125 rate for counsel's paralegal. Given the number of hours the attorneys submitted, the Court calculated counsel's lodestar amount to be $888,137.50. The Court also rejected counsel's proposed multiplier of 2.63, awarding a multiplier of 1.5 for reasons described in detail in the Court's written ruling. Applying the multiplier to the lodestar, the Court awarded $1,332,206.25 in attorney's fees to plaintiffs' counsel.

In their motion asking the Court to reconsider the fee award, plaintiffs' counsel contend that the Court failed to give sufficient deference to the parties' settled-upon figure and that the Court should not have considered certain evidence without providing plaintiffs' counsel a chance to respond to it. After filing the motion to reconsider, plaintiffs' counsel filed additional evidence, including an expert report as well as detail on certain cases in which plaintiffs' attorneys had previously been paid the hourly rates

[1] Plaintiffs' counsel correctly point out that they did, in fact, provide a firm resume with their fee petition, a document the Court did not mention in its prior opinion. However, this document, which counsel provide again with their motion to reconsider, still does not list the information the Court was actually seeking—the number of years of experience of lead attorney Siprut. Counsel do not argue in their motion that the Court erroneously determined their levels of experience; thus it appears that the information that the Court cited from Siprut's LinkedIn profile regarding his number of years as an attorney was correct.

they seek here. In addition, counsel argue that the Court should add 500 more hours of work to the lodestar amount to compensate counsel for future work, given that an appeal of the settlement was filed in September 2013.

**Discussion**

Plaintiffs' attorneys have moved the Court to alter its judgment under Rule 59(e). To prevail on such a motion, "a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) (internal quotation marks omitted). The Seventh Circuit has defined "manifest error" as "the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation marks omitted). A Rule 59(e) motion "is not a fresh opportunity to present evidence that could have been presented earlier." *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 770 (7th Cir. 2013). In other words, Rule 59(e) "certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996).

**A. Hourly rate**

In their motion, plaintiffs argue that the Court in its prior decision did not accord sufficient deference to the requested fee amount, to which the parties had agreed after negotiations. Plaintiffs also argue that the Court's "*sua sponte* reliance on evidence outside the record" was improper "without providing Plaintiffs with notice or an opportunity to respond." Pls.' Mot. to Alter or Amend Final Judgment at 1. This

evidence, plaintiffs maintain, "was far less persuasive than the evidence that Plaintiffs could have provided and *did* in fact provide." *Id.* at 2.

Plaintiffs are incorrect that the Court is required to accord "heightened deference" to their proposed fees solely because Southwest agreed to them. Pls.' Mot. to Alter or Amend Final Judgment at 7. In the Seventh Circuit, "[i]t is the fee applicant's burden to establish his or her market rate; if the applicant fails, the district court may make its own rate determination." *Johnson v. GDF Inc.*, 668 F.3d 927, 933 (7th Cir. 2012); *see also In re Southwest*, 2013 WL 5497275, at *8. District courts are permitted to "adjust the amount up or down to take into account various factors regarding the litigation." *Mathur v. Bd. of Tr. Of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003). "A district court is certainly empowered to reduce a fee request sua sponte, and indeed it has an independent obligation to scrutinize the legitimacy of such a submission." *Jaffee v. Redmond*, 142 F.3d 409, 416 n.2 (7th Cir. 1998) (internal quotation marks omitted). Furthermore, when it comes to class actions, a court must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (collecting cases).

For the proposition that there is a "requirement of heightened deference" toward agreed-upon fee amounts, Pls.' Mot. to Alter or Amend Final Judgment at 7, plaintiffs cite four out-of-circuit district court cases. None of these cases states that courts are *required* to award agreed-upon fees, and even if they did, they are not binding on this Court. *See Rossi v. Proctor & Gamble Co.*, Civil Action No. 11-7238, 2013 WL 5523098, at *10 (D.N.J. Oct. 3, 2013); *Snell v. Allianz Life Ins. Co. of N. Am.*, No. Civ.

97-2784, 2000 WL 1336640, at *19 (D. Minn. Sept. 8, 2000); *Manners v. Am. Gen. Life Ins. Co.*, No. Civ.A. 3-98-0266, 1999 WL 33581944, at *28 (M.D. Tenn. Aug. 11, 1999); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992). Furthermore, it is difficult to agree with statements in plaintiffs' cases that a negotiated fee amount between class counsel and a defendant is a "market-set price" or "at arm's length." *See Rossi*, 2013 WL 5523098, at *10; *Manners*, 1999 WL 33581944, at *28. As the Court will discuss below, a settled-upon fee amount between a defendant and a class counsel who has already obtained a settlement for a class is not a market rate. The Court therefore disagrees with plaintiffs' argument that "the Court must start with the presumption that the fees should be approved unless they are completely unreasonable." Pls.' Mot. to Alter or Amend Judgment at 8. That is not the law, given the Seventh Circuit's description of the district courts' independent obligation to scrutinize proposed fee awards.

In support of their initial fee petition, plaintiffs submitted one affidavit attesting to their counsel's hourly rates, accompanied by three attachments. The Court previously noted that this evidence was "rather scanty," *In re Southwest*, 2013 WL 5497275, at *9, and thus the Court had little choice but to look to other evidence given plaintiffs' counsel's failure to meet their burden to support their requested rates. *See Johnson*, 658 F.3d at 933. To satisfy a plaintiff's burden of justifying a proposed rate, an attorney may not simply submit "self-serving affidavit[s]" to substantiate her market rate. Rather, the attorney is "required to present some evidence, other than [the attorney]'s affidavit, that the requested rates were the market rates for someone of [the attorney]'s experience." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 556 (7th Cir. 1999); *see*

*also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with" prevailing market rate).

However, plaintiffs have now filed with this court additional evidence in support of their requested hourly rates. This includes affidavits from lead attorney Siprut's clients about his hourly rates, documents from other cases he has settled, and settlement approvals and affidavits from cases and attorneys plaintiffs contend are similar. Plaintiffs have also submitted the declaration of Colin B. Weir, an economist who states that the hourly attorney rates plaintiffs' attorneys seek are market-based and similar to or lower than those of comparable firms.

Plaintiffs' attorneys contend that they would have offered this evidence if they had "known that the Court planned to invoke" the evidence it cited in its earlier opinion. Pls.' Mot. to Alter or Amend Final Judgment at 11. There is support for this argument. As the Seventh Circuit recently noted, "[a] district court may strike billing entries so long as the party requesting fees has an opportunity to respond to any objections." *Montanez v. Simon*, No. 13-1692, 2014 WL 2757472, at *6 (7th Cir. June 18, 2014). In *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 652 (7th Cir. 2011), the Seventh Circuit reversed a district court's reduction of a party's requested fee amount in part because the court "based its significant fee reduction on several rationales that plaintiff did not have the opportunity to respond to." The district court in *Pickett* approved a lower hourly rate than plaintiff's counsel requested based partly on its consideration of the Consumer Price Index and the Laffey Matrix but did not give plaintiff's counsel a chance to respond to use of these measures in calculating his hourly rate. "[E]ven

though the district court has the discretion to rely on these measures," the Seventh Circuit reasoned, "the district court should have given the parties the opportunity to debate the strengths and weaknesses of applying these measures in this particular case." *Id.* at 648. Because "[t]he parties had no notice that they should address the CPI or the Laffey Matrix in their briefing," "the court did err by relying on these measures without giving plaintiff an opportunity to respond." *Id.* at 651.

The Seventh Circuit has used this rationale in other fee cases as well. In *Spellan v. Bd. of Educ. for Dist. 11*, 59 F.3d 642, 646 (7th Cir. 1995), the court recognized both the burden of the party seeking fees to justify the amount requested and the district court's obligation to scrutinize the request. Nonetheless, the court reversed the district court's fee award decision, because the district court utilized independent judicial scrutiny of the record but failed to give plaintiff's counsel "an adequate opportunity to respond to the district court's critique of the submitted petition." *Id.* at 646. Specifically, the district court decided to award fees much lower than those plaintiffs requested, finding on its own investigation "that the plaintiffs had devoted themselves to unsuccessful pursuits and that there had been duplication of effort as well as other excessive billings." *Id.* at 642. The Seventh Circuit held that if a district court's own investigation leads it "to question certain aspects of the petition that have not been questioned previously by the opposing party, the party submitting the petition ought to have the opportunity to address the concerns of the district court before a final ruling is made on the matter." *Id.*

Plaintiff's counsel in this case did not initially support its fee petition with more than a "self-serving affidavit." *Spegon*, 175 F.3d at 556. Given the reasoning in *Pickett*

and *Spellan*, however, the Court likely should have given plaintiffs an opportunity to respond to the evidence the Court relied upon in its initial rejection of their requested hourly rate in their fee petition before making a final ruling. Although plaintiffs do not now present "new evidence" to justify granting their motion for reconsideration, in the sense that the evidence was not previously available, the Court "fail[ed] to recognize controlling precedent." *Oto*, 224 F.3d at 606. This omission provides sufficient reason to grant plaintiffs' motion to reconsider.

Having agreed to reconsider its prior ruling, the Court must now examine the evidence plaintiffs have provided with their reconsideration motion. As the Court discussed in its prior order on this fee petition, a reasonable hourly rate is "derived from the market rate." *Johnson*, 668 F.3d at 933. Also, "the district court's discretion in determining what is a reasonable attorney's fee applies to its determination of what constitutes a market." *Montanez*, 2014 WL 2757472, at *4 (internal alterations and quotation marks omitted).

The bulk of plaintiffs' evidence concerns plaintiffs' counsel's successful fee petitions in other cases, overwhelmingly in class action settlements. As plaintiffs note in their disclosures to the Court in connection with the hearing on this motion, many of these amounts were not formally opposed by defendants, because they were arrived at after negotiations. Plaintiffs' conclusion, along with that of Weir, their declarant, that these rates represent "market rates" is off the mark. The relationship between parties participating in a class action settlement is not akin to a litigant seeking counsel in the marketplace for legal services, where the litigant confronts a wide range of choices of attorney, and thus a range of potential fee arrangements. In contrast, the choices

available to a defendant in a class action settlement are severely limited. Opposing counsel represent the only party with whom it is possible to negotiate. The defendant can choose to pay plaintiffs' counsel their requested rate, attempt to negotiate with them over that rate, or else contest the matter before the court. The defendant certainly has no choice on whom it deals with and numerous incentives to pay its opponent's lawyer more than it otherwise might simply to buy peace. In a recent case, the Seventh Circuit affirmed a fee ruling by a judge who similarly discounted the probative value of hourly rates that were "were based on compromises between parties" and instead looked elsewhere for evidence of an actual market-based rate. *Montanez*, 2014 WL 2757472, at *5.

Also, the defendant's options to negotiate with plaintiff's counsel on their requested rate or contest the matter before the court require the defendant to incur additional and unwelcome attorney's fees for lawyers to work on the fee dispute. In sum, all of these scenarios suggest an element of duress or at least a gravely constricted set of choices. The Court therefore declines to consider plaintiffs' evidence of successful settlement fee petitions as evidence of plaintiffs' counsel's market rate.

That said, the Court agrees with plaintiffs that the hourly rates plaintiffs' counsel have actually collected from paying clients is significant evidence of market rates for their services. Plaintiffs state that they have actually collected the following paid hourly rates from clients in three cases in the years 2013 and 2014 for the following attorneys who worked on this matter: $585 for lead attorney Siprut, and $285 per hour for associate Gregg Barbakoff, for whom plaintiffs request a $225 hourly rate in their petition. The fact that clients have paid plaintiffs' counsel these rates for hourly work is

presumptive proof that these are market rates for these attorneys. *See Montanez*, 2014 WL 2757472, at *4 ("The best evidence of the market rate is the amount the attorney actually bills for similar work."). The Court therefore concludes that the above-mentioned rates are appropriate for use in plaintiffs' counsel's lodestar calculation for attorneys Siprut and Barbakoff.[2]

However, two of the attorneys who worked on this case, Aleksandra M. S. Vold and James McClintick, did not work on the cases in which plaintiffs' counsel received actual paid hourly rates. In Siprut's original affidavit, Vold is described as "a third-year attorney," with a requested hourly rate of $325, and McClintick is described as "an attorney with seven years of experience," also with a requested rate of $325. Affid. of Joseph J. Siprut ¶¶ 15–16 [docket no. 103-1]. Plaintiffs do not provide any explanation for why Vold, who from plaintiffs' filings has a similar if not identical level of experience to Barbakoff, warrants a rate $40 per hour higher than Barbakoff has previously received in an actual case with paying clients, and $100 more per hour than plaintiffs request for Barbakoff now. The Court concludes that an hourly rate of $285 for Vold is reasonable, considering that Barbakoff has billed for and received that rate in a prior case. As for attorney McClintick, who appears to have at least double the years of experience of Vold, the requested rate of $325 appears reasonable, especially

---

[2] Much or most of the work associated with this case occurred prior to the years in which Siprut and Barbakoff received paid hourly rates from clients (2011 and 2012 versus 2013 and 2014). However, it is appropriate to use an attorney's current hourly rate in calculating a lodestar amount. *See Mathur*, 317 F.3d at 744–45 ("We have allowed district courts to use either current rates or past rates with interest when calculating the lodestar amount, because either method provides 'an adjustment for delay in payment which is an appropriate factor in the determination of what constitutes a reasonable attorney's fee.'" (quoting *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989)) (internal alterations omitted)).

considering the fact that plaintiffs' counsel's firm has previously billed $450 per hour for Melanie K. Nelson, an attorney with thirteen years of experience.

The Court also notes that even after several submissions and affidavits related to this motion, that plaintiffs have not submitted support for the $150 hourly rate they request for their paralegal, Kristina Pearson. The Court therefore declines to disturb its earlier reduction of the hourly rate for Pearson from $150 to $125. *See In re Southwest*, 2013 WL 5497275, at *10.

The Court previously determined the number of hours plaintiffs' counsel requested in this case is reasonable. Based on these findings, the lodestar amount totals $1,099,412, calculated as follows:

- Siprut: $542,880 (928 hours at $585 per hour)
- McClintick: $179,367.50 (551.9 hours at $325 per hour)
- Vold: $286,624.50 (1005.7 hours at $285 per hour)
- Barbakoff: $87,390 (388.4 hours at $225 per hour)
- Pearson: $3150 (25.2 hours at $125 per hour)

**B. Multiplier**

As noted in the Court's prior order, plaintiffs sought a multiplier of their lodestar amount of 2.63. In its prior order on plaintiffs' fee petition, the Court awarded a multiplier of 1.5. The Court found that the 2.63 number was "excessive" and "artificial," considering that it was "evidently chosen because, based on the lodestar counsel initially proposed, it would result in the requested $3,000,000 fee award." *In re Southwest*, 2013 WL 5497275, at *12. The Court also considered the following factors in determining the multiplier: "relative lack of complexity; a success whose actual value

was modest; the vindication of a public interest; and the risk of an effective defeat if class certification were denied." *Id.*

In their motion to reconsider, plaintiffs stated that they disagreed with the Court's chosen multiplier, but "[we]re not asking the Court to revisit that issue under Fed. R. Civ. P. 59(e)." Pls.' Mot. to Alter or Amend Final Judgment at 1 n.1. However, at the June 2014 hearing on the motion, although plaintiffs did not discuss the multiplier directly, they urged the Court to accept the overall fee amount of $3,000,000. Even at their requested rates, it would be impossible to get to this number without a multiplier higher than the 1.5 the Court already awarded, which plaintiffs stated they were notchallenging. Plaintiffs appeared to be arguing at the hearing that the Court was required to defer to the $3,000,000 amount because the parties agreed to it after negotiation. Yet courts do not award overall amounts when deciding fee petitions on the basis of the lodestar method; they first determine whether an attorney's requested number of hours and hourly rate are appropriate, which together compose the elements of the lodestar calculation. Further, as noted above, the out-of-circuit district court cases plaintiffs cite for the notion that agreed-upon fee amounts require judicial deference do not discuss the courts' "independent obligation to scrutinize the legitimacy of such a submission." *Jaffee*, 142 F.3d at 416 n.2. Nor do they contemplate the fee petitioner's burden to produce satisfactory evidence supporting the requested rate. *Pickett*, 664 F.3d at 640.

In sum, the Court has already made a determination that a multiplier of 1.5 is proper in this case. Plaintiffs have not provided a basis to alter that determination.

Considering the multiplier of 1.5, the Court concludes that plaintiffs are entitled to

$1,649,118 ($1,099,412 multiplied by 1.5).

### C. Projected attorney time for appeal

Plaintiffs' counsel also argue that the Court should add an additional 500 hours to their lodestar calculation because class member Markow has appealed the settlement to the Seventh Circuit. Plaintiffs' counsel say that when the Court issued its October 2013 order on fees in this case, they "did not anticipate an appeal and thus did not include any 'anticipated' hours relating to an appeal." They now "conservatively estimate[ ]" that 500 more hours will be necessary to litigate the appeal, which should feature "complicated issues." Pls.' Mot. to Alter or Amend Final Judgment at 19. Plaintiffs' attorneys say that this appeal represents "new evidence" requiring the Court to modify its earlier judgment. *Id.*

Plaintiffs' counsel likely contend the appeal is "new evidence" under the standard for motions for reconsideration under Rule 59(e). They have no persuasive argument for why the prospect of an appeal—a fairly predictable event, after all, particularly when the matter was contested as this one was—should be considered "new evidence" that warrants reconsideration.

The Court therefore declines to alter its judgment to provide for projected appellate fees. If plaintiffs are successful on appeal, they are permitted to petition this Court for additional fees. The Seventh Circuit has in the past permitted parties to seek attorney's fees in the district court for a successful appeal. *See, e.g.*, *A. Bauer Mech., Inc. v. Joint Arbitration Bd.*, 562 F.3d 784, 793 n.3 (7th Cir. 2009) ("[T]he appellees may file an application in the district court, within 14 days of this judgment, for the reasonable fees, costs, and expenses incurred in this appeal."); *Cange v. Stotler & Co.*, 913 F.2d

1204, 1211 (7th Cir. 1990) (noting that district court's fee award "properly included compensation for work done on the first appeal"); *Bond v. Stanton*, 630 F.2d 1231, 1236 (7th Cir. 1980) (remanding case "for entry of an appropriate award of attorney's fees to plaintiffs for their appellate work on the merits and for their efforts in litigating the fee question"); *cf. Jannotta v. Subway Sandwich Shops, Inc.*, 225 F.3d 815, 819 (7th Cir. 2000) (holding it was not abuse of discretion for district court to deny fees to party for defense of appeal); *Bandura v. Orkin Exterminating Co., Inc.*, 865 F.2d 816, 823 (7th Cir. 1988) (awarding appellate attorney fees and remanding case to district judge "to determine the amount of work expended on this appeal").

**Conclusion**

For the foregoing reasons, the Court grants in part plaintiffs' motion to alter or amend [docket no. 173]. The Court's order of October 3, 2013 awarding plaintiffs' attorney's fees and expenses is amended to provide that plaintiffs' counsel are awarded attorney's fees in the amount of $1,649,118 and expenses in the amount of $18,522.32.

MATTHEW F. KENNELLY
United States District Judge

Date: June 20, 2014