```
                 IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
                            EASTERN DIVISION


ADAM J. LEVITT, et al.,        )
                               )
              Plaintiffs,      )   Docket No. 11 C 8176
                               )
         vs.                   )
                               )
SOUTHWEST AIRLINES, CO.,       )   Chicago, Illinois
                               )   December 2, 2013
              Defendant.       )   9:30 a.m.


                      TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE MATTHEW F. KENNELLY

APPEARANCES:

For the Plaintiff:      SIPRUT PC
                        BY:  MR. JOSEPH J. SIPRUT
                        17 North State Street
                        Suite 1600
                        Chicago, Illinois  60602

For the Defendant:      MAYNARD, COOPER & GALE, P.C.
                        BY:  MR. H. THOMAS WELLS, JR.
                        2400 Regions Harbert Plaza
                        1901 Sixth Avenue North
                        Birmingham, Alabama  35203


                        CENTER FOR CLASS ACTION FAIRNESS
                        BY:  MR. THEODORE H. FRANK
                        1718 M Street, N.W.
                        No. 236
                        Washington, D.C.  20036
```

```
 1                    WILLIAMS, MONTGOMERY & JOHN, LTD.
                           BY:  MS. KIRSTIN B. IVES
 2                         233 South Wacker Drive
                           Suite 6100
 3                         Chicago, Illinois   60606

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23      LAURA M. BRENNAN - Official Court Reporter
           219 South Dearborn Street - Room 2102
24                Chicago, Illinois  60604
                       (312) 435-5785
25
```

1	(The following proceedings were had in open court:)
2	THE CLERK: Case 11 C 8176, Levitt v. Southwest
3	Airlines.
4	MR. SIPRUT: Good morning, your Honor; Joe Siprut on
5	behalf of the class.
6	MR. WELLS: Good morning, your Honor; Tommy Wells for
7	Southwest Airlines.
8	MS. IVES: Good morning. Kirstin Ives, and I have
9	with me Ted Frank, on behalf of the objector Gregory Markow.
10	THE COURT: Hi, Mr. Frank. Thanks for coming.
11	So actually as I thought about this more, I wanted to
12	actually ask a couple of the questions that I think I asked
13	Ms. Ives the other day, or maybe it was Ms. Holyoak after we
14	got her on the phone, directly to you because, in your emails,
15	you seem so sure of yourself.
16	So I think I probably, just as a matter of opinion,
17	agree with the proposition that under Devlin, an
18	intervenor probably -- or a class member probably doesn't have
19	to do anything in order to be able to appeal. However, the
20	Seventh Circuit said otherwise a number of years ago, and so
21	the question is whether the Seventh Circuit's decision in this
22	slightly different context from Devlin is still good law. I
23	read the cases that you all cited in not just the emails that
24	you sent, but the briefs that were filed, and really none of
25	them I think addresses this situation.

1  So the situation here is that if you assume that the
2  old Seventh Circuit -- older Seventh Circuit case is still
3  good law and that there is this hurdle that a class member has
4  to jump over and clear in order to be able to appeal; that is,
5  move to intervene and successfully intervene, the question, it
6  seems to me, or at least a question, is if that was a
7  requirement and the class member didn't do it at the time and
8  then after the fact, after it's then called to their attention
9  later on, comes back and says, okay, now, I want to do it, are
10 you sort of allowed to clean it up after the fact, I guess?

11 And the three cases you cited, or that you and
12 Ms. Holyoak cited, are called Crawford, Flying J and Robert
13 Booth Trust.  In Crawford, the class members had moved to
14 intervene before the deadline for objections to the
15 settlement.  In other words, they filed a motion to intervene
16 in a timely fashion, not after the fact like here.

17 Booth, it's not really a class action.  It's sort of
18 like a class action.  It's a derivative suit.  A nonparty
19 shareholder moved to intervene, but it was made timely
20 before -- the motion to intervene was made before the
21 settlement approval was decided.

22 And Flying J wasn't even a class action at all.  It
23 was a nonparty to the case that was impacted by an injunction
24 who attempted to intervene after the judgment so they could
25 appeal.  So, in other words, they weren't even part of the

1  case, didn't have notice beforehand.  And then the actual
2  party declined to appeal.
3       So, to me, none of those cases really answer the
4  question that is up here.  And I guess my question is:  Why
5  are you so darned sure of yourself that you're flinging
6  around, you know, in your first email, if you don't agree to
7  what I say, I'm going to move to sanction you, and if the
8  district judge denies it, I'm going to appeal?
9       MR. FRANK:  Certainly, your Honor.
10      The question under Rule 24 is one of prejudice.  And
11 we disagree with the premise that we're after the fact.
12 Mr. Siprut moved for a Rule 59 reconsideration, and that
13 restarts the clock to appeal.
14      THE COURT:  It restarts the clock to appeal, but it
15 doesn't restart the clock to do something that you arguably,
16 if the old Seventh Circuit law is still good, should have done
17 months ago.
18      MR. FRANK:  We disagree that we had to do it months
19 ago.
20      THE COURT:  Okay.  You disagree that you had to do it
21 months ago, but where is the level of certainty that is
22 expressed in these emails coming from?
23      MR. FRANK:  Because there is no prejudice so long as
24 we do it before the time --
25      THE COURT:  It's not what your email said, though.

1 Your email said the law is clear.  That's what they say.
2     MR. FRANK:  I think the law is clear.
3     THE COURT:  Okay.  I guess I'm sort of curious as to
4 whether, you know, where you get the notion that the way to do
5 this is to start, you know, flinging hand grenades right out
6 of the box.
7     MR. FRANK:  Your Honor, I regret my emotions.
8     THE COURT:  No, this is not the first time you have
9 done this, I suspected, because people don't usually do this
10 for the first time in a situation like this.  So is this the
11 way you always do it?
12     MR. FRANK:  No.  This is more emotional than I strive
13 to achieve.  I have an eight-month pregnant attorney who is
14 like a sister to me.  I feel very protective of her.  And
15 defense counsel was, I believe, creating unnecessary extra
16 work for her and falsely accused her of malpractice.
17     THE COURT:  He falsely accused her of malpractice.  I
18 didn't see that email.  Where was that?
19     MR. FRANK:  They accused her of waiving our right to
20 appeal.
21     THE COURT:  Oh, okay.  So he didn't accuse her of
22 malpractice.  He said that the right to appeal was waived as
23 to -- not altogether, but as to a particular issue, right?
24     MR. FRANK:  Well --
25     THE COURT:  Not altogether.

1  MR. FRANK: Their position was that because of that,
2 she was -- we were not allowed to appeal the settlement
3 approval.
4  THE COURT: The underlying settlement. They weren't
5 contesting your right to appeal the attorney's fees.
6  MR. FRANK: Well, but we were seeking to appeal both
7 the settlement approval and the attorney's fees.
8  THE COURT: Yes.
9  MR. FRANK: And, you know, I --
10  THE COURT: So when you said that your -- when you
11 said in your email of November the 30th, quote, "your argument
12 is tendentious and designed," your words, "solely to run up
13 your client's bill and our expenses," close quote -- so, in
14 other words, when you were accusing them of doing something on
15 purpose to increase your expenses, you're saying you're doing
16 that because your colleague was pregnant. Really?
17  MR. FRANK: I'm saying that I was upset that we were
18 going to be forced to spend money on a hearing, and obviously
19 that backfired, and we are here for two hearings and --
20  THE COURT: Yes, you are, and now I'm back to the
21 merits, which is I don't understand why you --
22  If this is a requirement, which, as I say, I don't
23 think it is -- I mean, you know, you appeared -- you all
24 appeared in here. You objected. I considered your
25 objections. You know, you filed an objection out of the

1 motion to reconsider or whatever it's called. I'm going to
2 consider that, too. I think Devlin covers this, but, you
3 know, I can't fault somebody for citing a Seventh Circuit case
4 that is arguably directly on point when there is nothing
5 directly on point on the other side.
6 As the judge who has to decide this motion, I'm
7 wondering why I should let you clean it up after the fact. I
8 mean, maybe you will convince the Seventh Circuit, and I think
9 you probably will, quite frankly, that Devlin governs this,
10 but why should I let you, you know, go back to square one and
11 say, okay, that hurdle was never there?
12 The last time I tried to do something nunc pro tunc,
13 I got kind of slapped down by the Court of Appeals.
14 MR. FRANK: I understand that, your Honor. This is
15 not nunc pro tunc. We're not saying, please tell the Court
16 that we did this in September. We're saying we did this in
17 November, and in November it was timely because Rule 4(a)(4)
18 does not require us to appeal until 30 days after the Rule 59
19 motion is decided, which will not be until 2014 at this point.
20 This is not Justice v. Town of Cicero, 682 F.3d 662,
21 where somebody came in and said, please tell the Court that I
22 did this a day before I actually did it. We did it in
23 November. We think we did it timely. We're not saying this
24 is a "clean it up." We could dismiss our existing appeal and
25 then appeal anew once the Rule 59 motion is decided, and

1  Federal Rule of Appellate Procedure 4(a)(4) gives us that
2  right.
3          I mean, it's a little bit paradoxical that we might
4  have been late if we did it the day before Mr. Siprut filed
5  this Rule 59 motion, but by the fact that he did file this
6  Rule 59 motion, we waited for him to do it.
7          THE COURT: Okay, thoughts. Anything more that
8  anybody wants to say on the other side of this, assuming that
9  you are on the other side, which is not entirely clear, I
10 guess?
11         MR. WELLS: As I think we tried to make clear in our
12 papers, your Honor, we do not oppose intervention for the
13 purposes of challenging the incentive awards and the
14 attorney's fees. But we didn't know what the scope of the
15 intervention was going to be.
16         THE COURT: So one of the points that Ms. Holyoak
17 made in her papers was that it's really -- she probably didn't
18 put it quite this way, but this is the way I would put it.
19 It's not terribly wise for a district judge to go telling the
20 Court of Appeals what people have waived for purposes of
21 appeal. It's better off to let them do that.
22         What is wrong with that argument?
23         MR. WELLS: Well, Judge, I think what's wrong with
24 that is they're asking for an intervention that is very
25 broadly worded. When we finally saw their proposed pleading,

Case: 1:11-cv-08176 Document #: 239 Filed: 07/14/14 Page 10 of 12 PageID #:3151

10

it was much broader than the objection that was specifically stated by Ms. Holyoak at the fairness hearing where she responded to your question.

THE COURT: Sorry for interrupting. I follow that. But wouldn't it be --

I mean, assuming that I am persuaded -- and I guess I haven't made up my mind yet -- but assuming I am persuaded that intervention of some sort should be allotted, wouldn't it preserve your point to say, in granting the motion to intervene, I'm not taking a position on what, you know, was or wasn't waived for purposes of appeal, that's up to the Court of Appeals to decide, and then you go up there and argue to them that they botched the appeal of the underlying settlement, if you will, by not objecting to that, or actually by whatever comments were made at the fairness hearing that I think you're arguing is almost more of a waiver than a failure to object?

MR. WELLS: Well, Judge, two points to that. One, I think it would be instructive to the Court of Appeals to know your position on our waiver argument.

Second, in your order approving the settlement on August 26th, 2013, at page 11, you essentially noted Markow's waiver, and I'm going to quote the Court:

"Markow does not identify in his objection any way in which the benefit to the class members could or should be

Case: 1:11-cv-08176 Document #: 239 Filed: 07/14/14 Page 10 of 12 PageID #:3151

10

it was much broader than the objection that was specifically stated by Ms. Holyoak at the fairness hearing where she responded to your question.

THE COURT: Sorry for interrupting. I follow that. But wouldn't it be --

I mean, assuming that I am persuaded -- and I guess I haven't made up my mind yet -- but assuming I am persuaded that intervention of some sort should be allotted, wouldn't it preserve your point to say, in granting the motion to intervene, I'm not taking a position on what, you know, was or wasn't waived for purposes of appeal, that's up to the Court of Appeals to decide, and then you go up there and argue to them that they botched the appeal of the underlying settlement, if you will, by not objecting to that, or actually by whatever comments were made at the fairness hearing that I think you're arguing is almost more of a waiver than a failure to object?

MR. WELLS: Well, Judge, two points to that. One, I think it would be instructive to the Court of Appeals to know your position on our waiver argument.

Second, in your order approving the settlement on August 26th, 2013, at page 11, you essentially noted Markow's waiver, and I'm going to quote the Court:

"Markow does not identify in his objection any way in which the benefit to the class members could or should be

1 improved other than a complaint about the time limit for
2 submitting claims."
3     THE COURT: Because you already got me saying it.
4 Why do you need me to say it again?
5     MR. WELLS: Again, your Honor, I think it would be
6 instructive to have that on the record for the Court of
7 Appeals.
8     THE COURT: I understand your position.
9     Mr. Siprut, anything more you want to say about this?
10     MR. SIPRUT: Nothing to add, your Honor.
11     THE COURT: Okay. Anything more you want to say on
12 this side?
13     MR. FRANK: Your Honor, nobody has, to my knowledge,
14 ever granted a limited intervention for purposes of appeal and
15 then said you can appeal and make this argument A, B and C and
16 not make the argument D, E and F.
17     THE COURT: Yes. I kind of tend to think this is a
18 yes/no decision and then I let the Court of Appeals --
19 assuming I say yes -- even if I say no, then you would get to
20 appeal the denial of the intervention -- I would let them sort
21 that out. So I will take it under advisement.
22     Just one final thing. Kudos on catching Justice v.
23 Town of Cicero. I'm going to just say this to you, Mr. Frank.
24 If your level of civility was right up there with your level
25 of preparation, you would be a perfect lawyer.

```
1           MR. FRANK:  Thank you.
2           THE COURT:  So just leave this stuff on the cutting
3    room floor next time.
4           Take care.  Thanks for coming out.
5           MR. FRANK:  Thank you.
6           MR. SIPRUT:  Thank you, your Honor.
7           MR. WELLS:  Thank you, your Honor.
8
9       (Which were all the proceedings had in the above-entitled
10   cause on the day and date aforesaid.)
11                       C E R T I F I C A T E
12
13          I hereby certify that the foregoing is a true and
14   correct transcript of the above-entitled matter.
15
16
17   /s/ Laura M. Brennan                          July 7, 2014
18
19   _____        _____
     Laura M. Brennan
20   Official Court Reporter                           Date
     Northern District of Illinois
21
22
23
24
25
```