UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE SOUTHWEST AIRLINES VOUCHER LITIGATION <br><br> GREGORY MARKOW, <br><br> Objector. | Case No. 11-CV-8176 <br><br> Hon. Matthew Kennelly |

**OBJECTOR GREGORY MARKOW'S MOTION FOR ATTORNEYS' FEES AND INCENTIVE AWARD, AND MEMORANDUM OF LAW IN SUPPORT**

## INTRODUCTION

As a direct result of Markow's objection, relief to the class has *tripled*. Markow respectfully requests an award of $80,000 in attorneys' fees and an incentive award of $1,000. This request is modest compared to the value he and his attorneys have provided the class.

Objectors who provide a material benefit to the class through their objections are entitled to fees as a matter of law. *See Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) (objectors are entitled to attorneys' fees when they improve the settlement). Here, Markow's agreement with the settling parties ("Markow Settlement") *triples* the coupon relief class members would have received (an additional 275,210 drink coupons worth $825,630 to class members)[1] and significantly decreases the disproportion between attorneys' fees and relief delivered to the class:

---

[1] Markow believes that the more appropriate method of awarding fees in a coupon settlement is based on the number of coupons actually redeemed. *See In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1184 (9th Cir. 2013). The Seventh Circuit permits fees in a coupon settlement to be awarded under the lodestar method, *In re: Southwest Airlines Voucher Litigation*, 799 F.3d 701, 708 (7th Cir. 2015), and that the *market value* of coupons is the appropriate value when assessing the fairness of a settlement. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). Here, 275,210 additional coupons provided by the Markow Settlement have a face value of $5 each, but their market value is approximately $3, as shown by eBay auctions for similar coupons. *See* Oct. 10, 2014, Frank Declaration (Dkt. 266-1), ¶ 7.

|  | Before Markow Settlement | After Markow Settlement |
|---|---|---|
| Market Value of Coupons Sent to Class | $412,815 | $1,238,445 |
| Total Attorney's Fees | $2,111,462 | $1,883,817 |

Markow requests $80,000 for attorneys' fees, which is modestly proportioned by any measure. The Markow Settlement improves total recovery by 26.4%, so Markow would be entitled to half the improvement, or 13.2% of all attorneys' fees—$226,058. *See Trans Union Corp. Privacy Litig.* 629 F.3d 741, 747 (7th Cir. 2011) (attributing half of settlement improvement to objectors). Instead, Markow seeks only $80,000 in fees, a fraction of what Markow would be entitled to under Seventh Circuit law and a fraction of Markow's attorneys' lodestar of $185,235.

Finally, Markow seeks an incentive award of $1,000, which is reasonable based on the significant benefit conferred and to incentivize future good-faith objectors.

## BACKGROUND

On December 3, 2012, plaintiffs sought preliminary approval of a class action settlement ("Original Settlement") that permitted class members to submit a claim for one drink voucher (face value of $5) for every voucher that the class member had received with their purchase of a Business Select ticket but had not yet redeemed. *See* Motion for Preliminary Approval, Dkt. 83; Settlement, Dkt. 88 at III.B.1. The settling parties did not disclose to this Court how many claims had been submitted. Class counsel requested attorneys' fees of $3 million. *See* Motion for Attorneys' Fees Dkt. 103 at 15.

Objector Gregory Markow, represented by the non-profit Center for Class Action Fairness ("CCAF"), filed an objection to the Original Settlement on April 10, 2013. *See* Markow's Objection to Settlement ("Objection"), Dkt. 105. Markow argued that the requested fees should be based on the actual number of coupons redeemed under the Class Action Fairness Act. *See id.* at 5-6. Markow also objected to the clear-sailing and kicker clauses and argued that class counsel sought a disproportionate share of the constructive common fund. *See id.* at 7. Still, the settling parties did not

disclose to this Court how many claims were submitted; Markow argued that the claims deadline was structured to avoid a comparison between the fee request and the actual number of claims. *See id.*

On August 26, 2013, this Court finally approved the Original Settlement. *See* Memorandum Opinion and Order Granting Final Approval and Incentive Awards, Dkt. No. 141. This Court also awarded class counsel fees and expenses of $1.33 million and later amended that order to award class counsel fees of $1.65 million. *See* Memorandum Opinion and Order Granting Plaintiffs' Petition for Attorneys' Fees in Part, Dkt. 152; Memorandum Opinion and Order Granting in Part Plaintiffs' Motion to Alter or Amend, Dkt. 232. Objector Markow filed an appeal of the settlement approval and fee award, and plaintiffs filed a cross-appeal of the fee award. *See* Markow's Second Amended Notice of Appeal, Dkt. 241; Plaintiffs' Notice of Appeal, Dkt. 233.

While the appeal was pending, Southwest filed a Motion to Correct and/or Modify the Record on Appeal (Dkt. No. 264) which included an affidavit from the Settlement Administrator stating that "[a]fter verification and removal of fraudulent claims, Class Members submitted Claims for 503,396 replacement vouchers." *See* Affidavit of David Garcia, Dkt. 264-1. Markow argued that the market value of the vouchers was $3, and thus the apparent $1.5 million class relief was *less* than the $1.65 million fees awarded to class counsel. On August 20, 2015, the Seventh Circuit Court of Appeals issued its decision denying plaintiffs' cross-appeal and affirmed the Final Judgment but "modif[ied] the district court's judgment to eliminate the $15,000 incentive award for plaintiff Levitt and to reduce the fee award by $15,000, which should be taken from [class counsel] Siprut's individual share of the fee award." *In re: Southwest Airlines Voucher Litigation*, 799 F.3d 701, 716 (7th Cir. 2015). The decision was critical of the clear-sailing and kicker clauses, but found them non-problematic in part because "the district court carefully scrutinized — and significantly reduced — the fee request." *Id.* at 713. Mandate issued on September 24, 2016.

Several months after mandate issued, plaintiffs filed a motion for supplemental fees of $1.35 million. *See* Plaintiffs' Motion for Final Lodestar Calculation, Dkt. 287 at 4. Plaintiffs' Supplemental Fee Motion sought fees for class counsel's time spent on district-court work done before the appeal such as Plaintiffs' Rule 59 Motion, and work done on plaintiffs' cross-appeal, and class counsel's

time defending Markow's appeal. *See* Affidavit of Joseph J. Siprut, Dkt. 287-1. Markow opposed plaintiffs' Supplemental Fee Motion. *See* Markow's Opposition to Plaintiffs' Motion for Attorneys' Fees, Dkt. 289. On April 25, 2016, the district court granted the Supplemental Fee Motion in part, awarding additional fees of $455,294. *See* Order, Dkt. 302 at 12.

On May 23, 2016, Objector Markow filed a Motion to Reconsider the Supplemental Fee Order and to Alter or Amend Final Judgment, Dkt. 303. In his Motion to Reconsider and Amend, Markow argued that the Supplemental Fee Order should be vacated because (1) Rule 23(h) required notice to the class of the Supplemental Fee Motion; (2) class counsel had grossly exaggerated their lodestar calculations; and (3) the Supplemental Fee Order wrongly compensated class counsel for work performed on plaintiffs' Rule 59 motion and plaintiffs' cross-appeal. *See* Motion to Reconsider and Amend, Dkt. 303 at 3-7. Markow further requested that the awarded fees ($455,294), as well as the amount that was sought by class counsel but not awarded ($895,588), be disgorged to the class; Markow moved for alternative relief that if the entire $1.35 million sought by plaintiffs' Supplemental Fee Motion was not disgorged, then Final Judgment and the Settlement Agreement should be vacated under Rule 60(b) because the Supplemental Fee Motion fundamentally changed the class action settlement that was affirmed by the Seventh Circuit. *See* Motion to Reconsider and Amend at 12.

On June 22, 2016, this Court granted in part Markow's Motion to Reconsider or Amend and vacated the Supplemental Fee Order to provide notice and an opportunity to object. *See id.* at 2-3. The Court, however denied Markow's request for disgorgement and denied Markow's Rule 60(b) motion to vacate the Final Judgment. *See id.* at 6, 7. Markow filed a Notice of Appeal on July 21, 2016 appealing the Order Denying Markow's Rule 60(b) Motion. *See* Notice of Appeal, Dkt. 321.

On January 20, 2017, the parties filed a status report with this Court indicating that Objector Markow had reached an agreement with the settling parties. *See* Status Report, Dkt. 353. In exchange for Markow's dismissal of his pending appeal, class counsel would limit the supplemental fee request to $231,176.68 and Southwest would remit two additional vouchers for every voucher remitted to claimants. *Id.* at 4. The Status Report also disclosed that the number of valid claims was not 503,396,

as previously reported to the Seventh Circuit, but only 137,605 claims. *Id.* at 5. Under the Markow Settlement, Southwest would provide an additional 275,210 in vouchers to class members with an estimated value of $825,630 (based on an approximate market value of $3 per voucher). *See* Status Report, Dkt. 353 at 5 n.4; *see In re Southwest Airlines Voucher Litigation*, No. 13-3264, Dkt. No. 72 at 4. This Court approved the Markow Settlement on January 31, 2017. *See* Order, Dkt. 366.

While Markow tripled the relief delivered to the class, Markow seeks only 4% of the total attorneys' fees awarded. Accordingly, Markow seeks attorneys' fees of $80,000, and an incentive award of $1,000 for Markow's role in conferring the benefit achieved.

**ARGUMENT**

**I. Markow is entitled to fees for the $825,630 market value improvement achieved by the Markow Settlement.**

Markow is entitled to a share of the total attorneys' fees awarded in this case because he realized a substantial pecuniary benefit to the class. *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) ("If…objections persuade the judge to disapprove it, and as a consequence a settlement more favorable to the class is negotiated and approved, the objectors will receive a cash award that can be substantial."); *Reynolds v. Beneficial National Bank,* 288 F.3d 277, 288 (7th Cir. 2002) (holding that objectors' "lawyers who contribute materially to the proceeding" are entitled to a fee, even if the judge would have *sua sponte* made same finding without the objection); *see also Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994) (error to deny fees to objector that benefitted class); *Rodriguez v. West Publ'g. Corp.*, 563 F.3d 948 (9th Cir. 2009) (holding that it was "clearly erroneous" to deny an objector attorneys' fees where the objector had raised issues that the court had not previously considered on the record). When such a claim is presented, the court should consider whether the efforts of counsel for the objectors "improved the settlement, assisted the court, and/or enhanced the recovery in any discernible fashion." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PriceWaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 413 (E.D. Wis. 2002).

In *In re Trans Union Corp. Privacy Litigation*, the Seventh Circuit found that an objector's fee award may be calculated as a percentage of the fee awarded to class counsel. 629 F.3d 741, 748 (7th Cir. 2011) (finding that an objector's award "was too small."). The Seventh Circuit affirmed the special master's finding that 50% of the improvement in class benefit should be credited to the objectors (and 50% of the improvement credited to MDL counsel who had negotiated the initial settlement). *Id.* at 747. The Seventh Circuit concluded that because the objector was responsible for 22% of the total benefit conferred, she was entitled to 22% of the total fee award that should have been awarded, increasing her fee award from $2.7 million to $4.125 million. *Id.* at 748; *see also Great Neck*, 212 F.R.D. at 416 (due to lack of marketplace rates for objector counsel, "I will compare the relative value of the objector's counsel's contribution to that of class counsel"); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 273 F. Supp. 2d 563, 572 (D.N.J. 2003) (awarding objector 1.4% of class counsel's fee because objector's efforts enhanced relief by 1.4%).

Here, the Markow Settlement *tripled* class relief and increased the market value of coupons sent to the class by $825,630. As *In re Trans Union*, Markow is jointly responsible for that benefit and if credited with 50% of that increase, Markow is responsible for the $412,815 improvement. The $412,815 increase credited to Markow equals 13.2% of the $3,122,262 settlement benefit ($1,238,445 coupon relief + $1,883,817 total attorneys' fees). *See RadioShack*, 768 F.3d at 630 (settlement benefit includes actual value of coupons plus attorneys' fees). Under *In re Trans Union*, Markow would thus be entitled to no less than 13.2% of the $1.88 million total attorneys' fees sought, or $226,058. Markow's request for $80,000, however, is merely a fraction of that amount.

Markow seeks just 19% of his half of the increase ($412,815), or $80,000. Markow would be within his rights to request $226,000; his actual request for $80,000 is less than one-third of that and well within the range of acceptable fee awards. *See, e.g., Pearson v. NBTY*, No. 1:11-cv-7972, Dkts. 286, 288 at 9 (N.D.Ill. Aug. 25, 2016) (awarding Center for Class Action Fairness $180,000, or 10.9% of $1.64 million improvement credited to objector); *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 662 (E.D. Pa. 2015) (awarding CCAF $742,500 in fees, or 9.9% of the $7.5 million benefit credited to CCAF objector); *Dewey v. Volkswagen of Am.*, No. 07-2249, 2012 U.S. Dist. LEXIS

177844, at *64 (D.N.J. Dec. 14, 2012) (awarding the Center for Class Action Fairness "10.5% of the benefit conferred, well within the range of acceptable percentages-of-recovery"); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 468 (D.P.R. 2011) (finding that "10% [of $3 million benefit conferred] is reasonable and appropriate to reflect Objectors' time, effort, ingenuity and success in increasing the kitty for the benefit of the Class"); *Lan v. Ludrof,* 2008 WL 763763, at *28 (W.D. Pa. Mar, 21, 2008) (awarding objector 25% of the increase in the benefit to the class); *see also In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 12, 2012) (noting that award of $100,000 "if anything" "would have undercompensated CCAF" where $100,000 was roughly 5% of the monetary benefit conferred). Markow's fee request of $80,000 should be granted because it is much less than what he would be entitled to under Seventh Circuit law based on the significant benefit the Markow Settlement provides to the class.

II. **Markow's fee request is a fraction of lodestar even though Seventh Circuit law mandates a multiplier for contingent-fee litigation.**

Here, the lodestar for Markow's attorneys for several years and multiple rounds of briefing, hearings and appeal is $185,235. *See* Declaration of Melissa Holyoak ("Holyoak Decl.") (attached at Exhibit 1), ¶¶ 19-20. The lodestar excludes time after the court's Order of January 31, 2017 that approved the agreement between Markow and the settling parties. *Id.* ¶ 13. The lodestar is conservative and excludes expenses of $14,737. *Id.* ¶ 23. Class counsel's lodestar far exceeded Markow's attorneys' lodestar for the same issues. For example, CCAF's total lodestar of $185,235 is a fraction of class counsel's lodestar of $1.1 million for the time period from responding to objections through the Seventh Circuit appeal. *See* Exhibit 1 to Declaration of Joseph J. Siprut (Dkt. 287-1). Finally, CCAF's lodestar is also understated by at least $150,000 because it excludes time for a former CCAF junior associate, local counsel and Theodore H. Frank. *See* Frank Decl., ¶ 7 (attached at Exhibit 2); Holyoak Decl., ¶ 13.

Objection entails high risks of non-payment. There is no guarantee a court will honor objections. Even a successful objection may merely scuttle a settlement without class benefit

creating an entitlement to attorneys' fees; and, class counsel may still challenge an objector's entitlement to fees even after an objection results in an three-fold improvement in direct benefit to the class (such as here). *E.g., McDonough*, 80 F. Supp. 3d at 660. The risk of nonpayment is particularly high for CCAF because unlike professional objectors, CCAF does not and cannot agree to *quid pro quo* settlements to withdraw appeals or objections in exchange for cash payment. *See* Holyoak Decl., ¶ 15. CCAF could only receive payment if there is a court award after (1) CCAF's objection was successful and (2) a new settlement is negotiated that increases class benefit. Under Seventh Circuit law, attorneys who take on cases on a contingent-fee basis with risk of nonpayment are entitled to a multiplier of their lodestar to compensate them for that *ex ante* risk. *E.g., In re Synthroid Mktg Litig.,* 325 F.3d 974, 978 (7th Cir. 2003); *Florin v. Nationsbank of Georgia, NA*, 60 F.3d 1245, 1248 (7th Cir. 1995) (multiplier mandated when "the lawyers had no sure source of compensation for their services.").

CCAF is a 501(c)(3) non-profit public-interest law firm, which precludes CCAF attorneys from personally profiting from any fee award. *See* Holyoak Decl., ¶ 6. CCAF is also limited by tax law in the amount it can earn from court-awarded fees in a given year to a percentage of its total annual expenses. *Id.* ¶ 7. CCAF attorneys have billed thousands of hours in dozens of cases where no fees were paid to CCAF, even in cases where CCAF was successful on appeal. *Id.* ¶ 9. Given the degree of success, the degree of risk, and the efficiency of the lodestar, an $80,000 award to CCAF for the (understated) $185,235 lodestar time (negative multiplier of 0.43), is a fraction of what Markow is entitled to under Seventh Circuit law.[2] The hundreds of hours spent by Markow's attorneys were a necessary precondition for Objector Markow to be in a position to negotiate the

---

[2] While CCAF, as a non-profit, is limited in the total awards of fees it may receive in any given year-to-year period, Rev. Proc. 92-59, 1992-2 C.B. 411, its non-profit status does not preclude it from being awarded fees as any other counsel. Representation that is pro bono and/or by a non-profit does not preclude a request for attorneys' fees of the same size that a for-profit firm could recover. *E.g., In re Primus*, 436 U.S. 412, 429-31 (1978) (ACLU and NAACP); *Blum v. Stenson*, 465 U.S. 886, 894-95 (1984) (pro bono publico representation not grounds for reducing attorneys' fees) (42 U.S.C. § 1988); *Cuellar v. Joyce*, 603 F.3d 1142 (9th Cir. 2010) ("The fact that Cuellar's lawyers provided their services pro bono does not make a fee award inappropriate.").

Markow Settlement; Markow would have been unable to negotiate the Settlement if his attorneys had not timely objected and previously appealed. *See* Holyoak Decl. ¶ 24.

### III. Markow is entitled to an incentive award.

Markow requests a $1,000 incentive award, which is significantly less than the $15,000 awarded to class representatives. *See* Dkt. 141 at 22. It is appropriate to award objectors incentive awards just as class representatives receive incentive awards. *E.g., Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816-17 (N.D. Ohio 2010); *In re Apple Inc. Sec. Litig.*, No. 5:06-CV-05208-JF, 2011 U.S. Dist. LEXIS 52685, at *16 (N.D. Cal. May 17, 2011). Objector incentive awards are justified for the same reason as class representative awards: "to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001). An objector such as Markow, while not a named representative, is acting on behalf of the class at cost to himself.

By objecting, Markow exposed himself to the risk of private investigation and harassing discovery. Markow also forsook personal gain to benefit the entire class. Objectors, if they are willing to selfishly sell-out the class, are able to settle their objections for substantial sums much larger than the $1,000 incentive payment Markow seeks here. *See, e.g.*, Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 428-32. Even when pro bono counsel is available, class members have little incentive to object and jump through hoops and hurdles erected by the settling parties. Thus, it is no surprise that the predominating response will always be apathy. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, a 1996 FJC survey that found between 42% and 64% of settlements engendered no filings by objectors).

Just as class representatives receive incentive payments, so should objectors whose objections meaningfully contribute to class recovery. Because Markow made a claim, he had standing to challenge the settlement here. Because he came forward, the class is receiving *three times* what they would have received without Markow's Settlement.

**IV.     Objectors' fee awards should be funded from class counsel's fee award.**

"[T]he 'common benefit' theory is premised on a court's equity power" *United Steelworkers of Am. v. Sadlowski*, 435 U.S. 977, 979 (1978); *accord Rodriguez v. Disner*, 688 F.3d 645, 654 (9th Cir. 2012). As between the class members and class counsel, "equity requires that the loss, which in consequence thereof must fall on one of the two, shall be borne by him by whose fault it was occasioned." *Neslin v. Wells*, 104 U.S. 428, 437 (1882). As the venerable Supreme Court reporter and jurist Henry Wheaton observed at oral argument in *Hunt v. Rousmanier's Adm'rs*, 21 U.S. (8 Wheat) 174 (1823), "no maxim of equity is better established than this, 'that no man is entitled to the aid of a Court of equity, when the necessity of resorting to that Court is created by his own fault.'" The objector's fees should be borne by class counsel, who had complete responsibility for the inadequate settlement proposal. The class should not have to pay twice for a benefit they should have received at the outset. *See Classmates*, 2012 U.S. Dist. LEXIS 83480, at *20 ("[C]lass counsel cannot satisfy its duty to the class by ignoring the weaknesses in the settlements it negotiated."); *id.* at *23 (reducing fee to less than 20% of the common fund to "reflect[] that counsel should not benefit from its efforts to win approval of an inadequate settlement."); *McDonough*, 80 F. Supp. 3d at 651 (debiting objector's fee award from class counsel's award because class' benefit was only achieved on the "second try"); *cf. also Belleville Catering Co. v. Champaign Mkt. Place, LLC*, 350 F.3d 691, 694 (7th Cir. 2003) ("[C]lients [should] pay just once for the litigation….[and should] not pay for lawyers' time that has been wasted for reasons beyond the clients' control.").

Perhaps this is why many courts across the nation have held that objector fees should be paid out of class counsel's award.[3]  It is not punitive when, as listed above, objectors' fees are paid

---

[3] *See e.g., In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. 09-2067-NMG, 2014 U.S. Dist. LEXIS 125041, at *27 n.1 (D. Mass. Sept. 8, 2014) (same); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816-817 (N.D. Ohio 2010) (same); *Parker v. Time Warner Entm't Co., L.P.* 631 F. Supp. 2d 242, 277 (E.D.N.Y. 2009) (same); *Prudential*, 273 F. Supp. at 573 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 695, 697 (3d Cir. 2004) (same); *In re Ikon Office Solutions*, 194 F.R.D. 166, 197 (E.D. Pa. 2000) (same); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 2 F. Supp. 2d 175, 176 (D. Mass. 1998) (same); *In re Horizon/CMS Healthcare Corp. Secs. Litig.*, 3 F. Supp. 2d 1208, 1215 (D.N.M. 1998) (same); *In re Citigroup Secs. Litig.*, No. 07-cv-9901(SHS), Dkt. No. 286, Order at 1-2 (S.D.N.Y. Sept. 10, 2013) (same with objector's expenses).

from the same pot awarded to class counsel. Rather, doing so recognizes several realities, equities, and best practices of settlement and class representation. The court's opinion in *Great Neck* provides pertinent discussion of this issue. 212 F.R.D. at 416-17. There, the court recognized its equitable discretion to impose the burden of paying objector's fees on the class but correctly declined to do so, based on its recognized fiduciary obligation to safeguard the class funds, especially in a pre-certification settlement and in light of the fact that the amount per claimant was already modest. *Id.* at 417. Instead, the *Great Neck* court awarded the objector fees from "class counsel and the defendants as they may agree but without diminution of the sum awarded to the class." *Id.*; *accord Ikon Office Solutions*, 194 F.R.D. at 197 (Objectors' "fees and costs will be taken from class counsel's award to avoid dilution of the settlement fund.").

Awarding fees from class counsel's award is also good public policy. It provides a practical incentive for class counsel to avoid proffering settlements that have a high probability of being objectionable to class members and to courts. Plenty of unfavorable settlements are approved quickly, quietly and unopposed, without a single objection filed. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, a 1996 FJC survey of several federal districts that reported between 42% and 64% of settlements engendered no filings by objectors); *see generally In re Continental Ill. Secs. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) ("No class member objected either— but why should he have? His gain from a reduction, even a large reduction, in the fees awarded the lawyers would be minuscule."). Add to that the reality that non-profit watchdog groups cannot be everywhere at one time, and it is readily apparent why class counsel must be encouraged to submit good requests on their own. If they are not even responsible for paying the comparatively minimal fees of successful objectors, then there will be little if any incentive for them to reach good settlements from the very outset.

## CONCLUSION

For the foregoing reasons, Objector Markow respectfully requests the Court to award Competitive Enterprise Institute $80,000 in attorneys' fees and an incentive award of $1,000 to Gregory Markow, with all amounts to be deducted from the Rule 23(h) award to class counsel.

Dated: April 27, 2017 /s/ M.Frank Bednarz
M. Frank Bednarz, (ARDC No. 6299073)
COMPETITIVE ENTERPRISE INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1145 E. Hyde Park Blvd. Apt. 3A
Chicago, IL 60615
Phone: (202) 448-8742
Email: frank.bednarz@cei.com

Attorneys for Objector Gregory Markow

**CERTIFICATE OF SERVICE**

      The undersigned certifies he electronically filed the foregoing Motion for Attorneys' Fees, and Memo in Support via the ECF system for the Northern District of Illinois, thus effecting service on all attorneys registered for electronic filing.

      Dated: April 27, 2017.            <u>/s/ M. Frank Bednarz</u>