```
 1                    IN THE UNITED STATES DISTRICT COURT
                          NORTHERN DISTRICT OF ILLINOIS
 2                              EASTERN DIVISION

 3    IN RE:                                )   Docket No. 11 C 8176
      SOUTHWEST AIRLINES VOUCHER            )
 4    LITIGATION,                           )
                                            )
 5                                          )
                                            )
 6                                          )   Chicago, Illinois
                                            )   May 11, 2017
 7                                          )   10:15 o'clock a.m.

 8               TRANSCRIPT OF PROCEEDINGS - MOTION
              BEFORE THE HONORABLE MATTHEW F. KENNELLY
 9
      APPEARANCES:
10

11    For the Plaintiffs:     SIPRUT PC
                              BY:  MR. TODD McLAWHORN
12                            17 North State Street, Suite 1600
                              Chicago, IL 60602
13                            (312) 236-0000

14

15    For the Defendant:      MASSEY & GAIL LLP
                              BY:  MR. ELI JOHNSON KAY-OLIPHANT
16                            50 East Washington Boulevard, Suite 400
                              Chicago, IL 60602
17                            (312) 283-1590

18

19    For the Objector:       CENTER FOR CLASS ACTION FAIRNESS
                              BY:  MR. M. FRANK BEDNARZ
20                            1145 E. Hyde Park Boulevard
                              Apartment 3A
21                            Chicago, IL 60615
                              (202) 448-8742

22


23
      Court Reporter:         MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
24                            Official Court Reporter
                              219 S. Dearborn Street, Suite 2102
25                            Chicago, Illinois  60604
                              (312) 435-5639
```

1   (The following proceedings were had in open court:)
2   THE CLERK: Case No. 11 C 8176, In Re: Southwest
3   Airlines litigation.
4   THE COURT: Good morning.
5   MR. McLAWHORN: Good morning, your Honor. Todd
6   McLawhorn on behalf of the plaintiffs and class counsel. I'm
7   stepping in for my partner Joe Siprut, who is not with me
8   today.
9   MR. BEDNARZ: Good morning, your Honor. My name is
10  Frank Bednarz. I represent the objector Greg Markow.
11  MR. KAY-OLIPHANT: Good morning, your Honor. Eli
12  Kay-Oliphan from Massey & Gail on behalf of defendant
13  Southwest.
14  THE COURT: Okay. I wondered -- you're here for
15  Southwest.
16  All right. So class counsel has already filed
17  something just yesterday in opposition to Mr. Markow's motion.
18  Do you want to file anything?
19  MR. KAY-OLIPHANT: We would prefer not to file
20  anything. They're not asking for fees from us, and so at this
21  point, we would prefer to not --
22  THE COURT: Okay. Let me ask -- let me ask a few
23  questions then. I guess it would be helpful to me if I could
24  get a little bit better explanation of exactly what it was
25  that happened after the case left me the last time; in other

1  words, what I'll call the settlement. So some things changed
2  about the settlement that I approved, at least that's what Mr.
3  Markow is telling me.
4      MR. BEDNARZ: Yes, that's right.
5      THE COURT: I am not asking you. You are not a party
6  to the case-ish. I'm asking the party that agreed to
7  apparently part with more coupons.
8      MR. KAY-OLIPHANT: So nothing changed, your Honor.
9  We sent the coupons as agreed, three coupons for every one
10 that was validly claimed. Those have been sent.
11     THE COURT: Time out. The first page of Mr. Markow's
12 objection says, Markow's agreement with the settling parties
13 triples the coupon relief class members would have received,
14 an additional 275,210 drink coupons worth $825,630 to class
15 members and significantly decreases the disproportion between
16 attorneys' fees and relief delivered to the class, which I
17 gather is the other side of the same coin. Is that wrong?
18     MR. KAY-OLIPHANT: No, that's absolutely correct.
19     THE COURT: That was after the case left me, is it
20 not?
21     MR. KAY-OLIPHANT: No, that was the final settlement
22 agreement that you approved, your Honor. So we came and
23 presented to you --
24     THE COURT: I must have --
25     MR. KAY-OLIPHANT: Mr. Siprut --

1  THE COURT: My memory is -- I remember the part about
2  the attorneys' fees being reduced. I honestly do not remember
3  the part about the number of coupons going up.
4  MR. KAY-OLIPHANT: No. So, if I may, when last time
5  Mr. Siprut was here, it was he and I, and the objectors did
6  not appear, but it was subsequent to the negotiated settlement
7  three ways between the objectors, Siprut, and Southwest. And
8  the deal was Southwest would kick in the extra coupons,
9  Mr. Siprut would take less fees, and the objectors would, for
10 lack of a better way of saying, walk away.
11 THE COURT: Yeah.
12 MR. KAY-OLIPHANT: And you approved that at that
13 time. That was -- that came to fruition. We sent those drink
14 tickets out. We paid per the terms of the settlement
15 agreement Mr. Siprut's firm on the date that it was
16 appropriate based upon what the parties agreed, so in our
17 opinion --
18 THE COURT: Okay.
19 MR. KAY-OLIPHANT: -- it's all done.
20 THE COURT: Then you have refreshed my memory.
21 My next question is is there any data on the
22 proportion of coupons that were distributed pursuant to this
23 settlement that have been redeemed, or have they even been
24 distributed yet?
25 MR. KAY-OLIPHANT: The tickets -- the drink coupons

1 were distributed last month, and per the terms of the
2 settlement agreement, have a one year expiration date.
3       THE COURT: Okay.
4       MR. KAY-OLIPHANT: I have no data at this time as to
5 whether or not any have been redeemed.
6       THE COURT: So are they -- are these coupons
7 different from other Southwest coupons in a way that would
8 make it trackable how many of these end up getting redeemed?
9       There's all sorts of Southwest drink coupons. Full
10 disclosure. I fly Southwest every now and then. About a
11 month and a half ago in the mail, I got four drink coupons.
12 By the way, they all had a one year expiration date printed on
13 the front of them, so I am not the next plaintiff in the next
14 case. But people get these things.
15       So my question is is anybody ever going to know
16 whether the -- however many coupons -- the 275,000 coupons in
17 this case, how many of those particular coupons get redeemed?
18       MR. KAY-OLIPHANT: So you will have to accept my
19 apology because I had not anticipated that you would ask that
20 question. My expectation is that Southwest is a relatively
21 sophisticated company, may be able to track them because they
22 look a little different from other drink coupons. Now, they
23 are collected by flight attendants, and who knows whether or
24 not there is a good system by which they may be able to track
25 them.

1     I can ask my client that question for you if you
2  would like.  The answer is I don't know.  I'm sorry.
3     THE COURT:  So let me tell you part of the reason why
4  I asked the question.  It kind of goes back to the first point
5  you made when I asked whether you wanted to file anything.
6     So depending upon the proportion of these coupons
7  that actually get redeemed, an argument can be made that if
8  anybody's money got saved, it was yours, and that even though
9  nobody is asking -- nobody that's facing me is asking that
10 Southwest pay all or any part of what Mr. Markow is asking
11 for, that might be something that crosses the mind of me, and
12 I know that was a very grammatically clunky sentence, but the
13 fact is it has crossed the mind of me.
14    MR. KAY-OLIPHANT:  May I respond?
15    THE COURT:  That's why I asked the question.  So I
16 mean, I recognize that if these things just got distributed a
17 month ago, it's going to take a while for anybody to know, if
18 you ever know, what proportion of them get distributed, but
19 that would be a consideration, potentially.
20    MR. KAY-OLIPHANT:  May I respond?
21    THE COURT:  Yeah.
22    MR. KAY-OLIPHANT:  So as of now, as you had
23 mentioned, the motion does not request that Southwest pay the
24 fee, and I can understand why you're asking that question.  If
25 and when there is a motion, we would like to brief that.

Case: 1:11-cv-08176 Document #: 378 Filed: 05/18/17 Page 7 of 14 PageID #:4281

7

1    And just off the top of my head without having the
2 opportunity to look at it deeply, I do know that the original
3 settlement agreement provides that Southwest will not have to
4 pay anything more than what is provided for in the settlement
5 agreement, so it would be problematic from that front.  But to
6 the extent that you would like me to ask my client whether or
7 not there is a way to track the redemption rate of the
8 coupons --
9    THE COURT:  I would like to know that.
10    MR. KAY-OLIPHANT:  Okay.
11    THE COURT:  And then so my next question is going to
12 be whether -- I am blanking on your name.
13    MR. BEDNARZ:  Frank Bednarz.
14    THE COURT:  -- (continuing) whether Mr. Bednarz wants
15 to file a reply.  Do you to what he filed?
16    MR. BEDNARZ:  Your Honor, I could just point out the
17 issues that we see in the response filed by Mr. Siprut.
18    THE COURT:  Go for it.
19    MR. BEDNARZ:  The entire quote here says, As part of
20 these decisions -- that is to say that Markow and his attorney
21 are not asking for payment themselves as part of these
22 discussions.  The reason for that is because we are not
23 professional objectors.  We don't hold up appeals and ask for
24 individual payment, and we wanted to be very clear to
25 everybody that we don't settle unless the class benefits

1 first. So when we settled, we helped negotiate this deal
2 whereby the class gets triple the amount of coupons that they
3 would have.
4     THE COURT: You're basically wordsmithing that
5 sentence. Markow and his attorneys are not asking for any
6 payment to themselves as part of these discussions. What
7 you're saying is it doesn't mean we are not going to ask for
8 it the day after tomorrow.
9     MR. BEDNARZ: That's right.
10     THE COURT: Aye yai yai. That's the way you
11 negotiate?
12     MR. BEDNARZ: Well, your Honor, we weren't keeping it
13 a secret.
14     THE COURT: By the way, I have to push back at you on
15 the question of whether you are professional objectors. Now,
16 maybe by your definition of "professional objectors," you are
17 not, but of course you are; that's what you guys do. That's
18 what you do. You come in and object to settlements. And I
19 don't say that critically, that's what you do. That's a
20 significant part of your work and you're paid to do it.
21 You're a professional, so you are a professional objector.
22     MR. BEDNARZ: Right. In that sense, your Honor --
23     THE COURT: You are not a professional objector in
24 the sense of somebody who is saying, I'll drop my objection if
25 you throw me some change.

1  MR. BEDNARZ: Right. I should just be clear that we
2 are trying to distinguish from things that courts have said
3 about professional objectors in the sense of extorting
4 individual payment. Yeah, we are professionals in the sense
5 that we are paid, we do this full time, but we are not
6 professionals in the sense that we hold up a settlement for
7 private gain.
8  What we want to do is the same thing that the
9 plaintiffs did in this case where we negotiate the benefit to
10 the class first, and then after that's secured, then we --
11  THE COURT: What's the theory under which it ought to
12 come out of Mr. Siprut's pocket then, penalty?
13  MR. BEDNARZ: Well --
14  THE COURT: He didn't benefit. The class benefitted.
15  MR. BEDNARZ: Your Honor, we had an appeal that
16 regarded his fee requests where in the original appeal, they
17 had said that there were a half a million coupons going to be
18 distributed and it turned out there were only 137,000. We
19 also had the --
20  THE COURT: Are you going to answer my question
21 somewhere in here?
22  MR. BEDNARZ: By agreeing to dismiss the appeal, we
23 took out all of the risk of Mr. Siprut and his associates
24 being paid under the agreement. Our appeal, we think, had
25 quite a bit of merit.

1     THE COURT: Which part of it, the part about the fees
2  or the part about the settlement that the Court of Appeals had
3  already approved in a previous ruling?
4     MR. BEDNARZ: Your Honor, about the fees.
5     THE COURT: Okay.
6     MR. BEDNARZ: And he did -- Mr. Siprut -- the
7  plaintiffs, I should say, did agree to take half the amount of
8  the increase of the fees, but by doing that, they secured for
9  themselves $1.88 million in fees, and that's part of the
10 reason that we think it's just to come out of the plaintiff's
11 portion because, in our view, all attorneys' fees are based on
12 old principles where when you secure a benefit to the class,
13 you can claim part of the fees, and the class -- the class
14 basically paid when Siprut -- when the plaintiffs negotiated
15 clear sailing to pay the fees to plaintiffs, that's what
16 Southwest signed up for.
17    THE COURT: But I already approved that. So
18 basically what you're basically coming back and telling me is
19 I approved too much. I already ruled against you on that and
20 you dropped your appeal.
21    The other thing -- the other question I have is one
22 of the points that's made in here -- I am not going to suggest
23 it's the major point, but it's a point you make, and it's made
24 in the introduction, that this is a fraction of the loadstar
25 of $185,235.

1 MR. BEDNARZ: Yes.

2 THE COURT: If I am understanding it correctly -- and
3 I certainly concede that I might be understanding it
4 incorrectly, but if I'm understanding it correctly, that
5 so-called loadstar includes and probably largely includes all
6 of the work that was done before the case came back down to me
7 from the Court of Appeals; am I correct about that?

8 MR. BEDNARZ: Your Honor, it does include that. It
9 does not, however, include the time that would have been spent
10 -- that was spent, I should say, by Ted Frank himself and also
11 by a former associate that left the Center For Class Action
12 Fairness whose time records we don't have. And so although it
13 does include his time from the original appeal, it also
14 includes a significant amount of work that we are unable to
15 itemize. Also --

16 THE COURT: Well, even Mr. Frank's affidavit says
17 that he spent -- it's sort of oddly worded, I spent well over
18 200 and quite likely over 300 hours on this matter. Like,
19 doesn't he know?

20 MR. BEDNARZ: Your Honor, he didn't have
21 contemporaneous time records. He was making an estimate.

22 THE COURT: The record will reflect a long pause.
23 That's pretty astounding. But he says himself that
24 it includes revising the objection and other briefing prior to
25 the appeal, drafting and editing the appellate briefs,

1  assisting with motion practice during the appeal.  All of
2  that's pre-appeal.
3        MR. BEDNARZ:  Yes, you're right.
4        THE COURT:  The relevant loadstar is not the stuff on
5  which you lost, and you did lose, by the way, on appeal.
6  Because the settlement was affirmed, they carved out the
7  incentive fee for one of the plaintiffs and took an equal
8  amount out of Mr. Siprut's fee in the settlement which was the
9  objection that why it was ruled on here was approved and so
10 you lost the appeal.  I'm having a hard time seeing why the
11 relevant loadstar would include anything to do with anything
12 that happened before the case came back down to me.
13       MR. BEDNARZ:  Your Honor, if we had not filed this
14 objection years ago, we would not be in a position to
15 negotiate.
16       THE COURT:  It's not about four tests, though.
17 You're evading my question.  Why is the -- okay.
18       Case one in the district -- case is in the district
19 court, settlement is approved.  You object, goes up on appeal,
20 your objection to the settlement is overruled, the settlement
21 is approved.  The case comes back down only because Mr. Siprut
22 files the fee petition.  Okay?  Then all the litigation
23 involves the fee petition.  And the thing that you say that
24 you added to the benefit of the class are these extra coupons,
25 and you say that what happened there is that, you know,

1  Mr. Siprut saved the risk of losing all or part of the extra
2  fees on appeal, you got the class extra benefits, and that all
3  involved stuff that happened after the case came back down.  I
4  am not persuaded that the relevant loadstar includes anything
5  that happened before the case came back down.
6          I'll give you one more shot to persuade me of that.
7          MR. BEDNARZ:  Your Honor, we would not be in a
8  position to file an appeal if we didn't file an objection
9  years ago.
10         THE COURT:  Okay.  But you wouldn't be in a position
11 to file an appeal if you hadn't gone to law school, so should
12 he pay for that too?  That's a but for, an equally but for.
13         All right.  Well, you might want to pass one little
14 think on to Mr. Frank.  I heard him at the Seventh Circuit
15 Judicial Conference last week say to a crowded room of judges
16 he had never lost an appeal in the Seventh Circuit.
17 Interesting definition of a win.  And that was noticed by not
18 just me.
19         Do you want to file a response or not?  If you do,
20 you got until next Tuesday to do it.  That's the 16th of May.
21         MR. BEDNARZ:  That sounds good.
22         THE COURT:  If I can get just a short filing from the
23 defendant by then just that tells me are you ever going to be
24 able to track what proportion of these particular coupons get
25 paid or not, and if the answer -- depending on the answer, I

1   may ask for some brief additional filing, but it's unlikely.
2            Thanks.
3            MR. KAY-OLIPHANT:  Thank you, your Honor.
4    (Which were all the proceedings had in the above-entitled
5   cause on the day and date aforesaid.)
6     I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.
7
8   Carolyn R. Cox                              Date
    Official Court Reporter
9   Northern District of Illinois
10  /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25